1  LOCKRIDGE GRINDAL NAUEN P.L.L.P.
   REBECCA A. PETERSON (241858)
2  ROBERT K. SHELQUIST
   100 Washington Avenue South, Suite 2200
3  Minneapolis, MN 55401
   Telephone: (612) 339-6900
4  Facsimile: (612) 339-0981
   E-mail: rapeterson@locklaw.com
5          rkshelquist@locklaw.com

6  Attorneys for Plaintiff
7  [Additional Counsel on Signature Page]

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                        OAKLAND DIVISION

11  Ludmila Gulkarov, Individually and on    )   Case No. _____
    Behalf of All Others Similarly Situated, )
12                                            )
                                              )
13                              Plaintiff,    )
    v.                                        )   **CLASS ACTION COMPLAINT FOR:**
14                                            )
    Plum, PBC, a Delaware corporation,        )   (1) NEGLIGENT
15                                            )   MISREPRESENTATION;
                                              )   (2) VIOLATIONS OF THE
16                              Defendant.    )   CALIFORNIA CONSUMER LEGAL
                                              )   REMEDIES ACT;
17                                            )   (3) VIOLATIONS OF THE
                                              )   CALIFORNIA FALSE ADVERTISING
18                                            )   LAW;
                                              )   (4) VIOLATIONS OF THE
19                                            )   CALIFORNIA UNFAIR COMPETITION
                                              )   LAW;
20                                            )   (5) BREACH OF EXPRESS
                                              )   WARRANTY; AND
21                                            )   (6) BREACH OF IMPLIED
                                              )   WARRANTY;
22
                                                  DEMAND FOR JURY TRIAL
23  _____

24

25

26

27

28
                           CLASS ACTION COMPLAINT
857146.1

1.      Plaintiff Ludmila Gulkarov ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned attorneys, brings this Class Action Complaint against Defendant Plum, PBC ("Defendant"), for its negligent, reckless, and/or intentional practice of misrepresenting and failing to fully disclose the presence of dangerous substances in its baby food sold throughout the United States.  Plaintiff seeks both injunctive and monetary relief on behalf of the proposed Class (as defined herein), including requiring full disclosure of all such substances in its marketing, advertising, and labeling and restoring monies to the members of the proposed Class.  Plaintiff alleges the following based upon personal knowledge as well as investigation by her counsel, and as to all other matters, upon information and belief (Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery).

## NATURE OF THE ACTION

2.      Parents like Plaintiff trust manufacturers like Defendant to sell baby food that is safe, nutritious, and free from harmful toxins, contaminants, and chemicals. They certainly expect the food they feed their infants and toddlers to be free from Heavy Metals, substances known to have significant and dangerous health consequences.[1]

3.      Consumers lack the scientific knowledge necessary to determine whether the Defendant's products do in fact contain Heavy Metals or to know or ascertain the true nature of the ingredients and quality of the Products. Reasonable consumers therefore must and do rely on Defendant to honestly report what its products contain.

4.      A recent report by the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform reveals that parents' trust has been violated. Ex. 1. The Subcommittee's investigation of the seven largest baby food manufacturers in the United States, including Defendant, was spurred by "reports alleging high levels of toxic heavy

---

[1] As used herein, the phrase "Heavy Metals" is collectively defined as arsenic, cadmium, lead, and mercury.

metals in baby foods" and the knowledge that "[e]ven low levels of exposure can cause serious and often irreversible damage to brain development." Ex. 1 at 2.

5.      The Subcommittee's report revealed that "[i]nternal company standards permit dangerously high levels of toxic heavy metals, and … that the manufacturers have often sold foods that exceeded these levels." Ex. 1 at 4. Defendant was among the three companies that refused to cooperate with the Subcommittee's investigation, causing "great[] concern that their lack of cooperation might obscure the presence of even higher levels of toxic heavy metals in their baby food products, compared to their competitors' products." Ex. 1 at 5. "[E]ven limited independent testing has revealed the presence of toxic heavy metals in [Defendant's] baby food." Ex. 1 at 45.

6.      Defendant knows that its customers trust the quality of its products and that they expect Defendant's products to be free of Heavy Metals. It also knows that certain consumers seek out and wish to purchase premium baby foods that possess high quality ingredients free of toxins, contaminants, or chemicals and that these consumers will pay more for baby foods they believe possess these qualities than for baby foods they do not believe possess these qualities.

7.      As such, Defendant's promises, warranties, pricing, statements, claims, packaging, labeling, marketing, and advertising (hereinafter collectively referred to as "Marketing" or "Claims") center on representations and pictures that are intended to, and do, convey to consumers that their baby food, including its Contaminated Baby Foods,[2] possess certain qualities and characteristics that justify a premium price.

8.      No reasonable consumer seeing Defendant's Marketing would expect the Contaminated Baby Foods to contain Heavy Metals or other undesirable toxins or contaminants. Furthermore, reasonable consumers, like Plaintiff, would consider the mere inclusion of Heavy

---

[2] The phrase "Contaminated Baby Foods" collectively refers to the following Plum Organics products: Just Sweet Potato Organic Baby Food; Just Peaches Organic Baby Food; Just Prunes Organic Baby Food; Apple & Carrot Organic Baby Food; Pumpkin, Banana, Papaya, and Cardamom Organic Baby Food; Apple, Raisin, & Quinoa Organic Baby Food; Little Teethers Organic Multigrain Teething Wafers- Banana with Pumpkin; Mighty Morning Bar- Blueberry Lemon.  Discovery may reveal additional products that also contain levels of Heavy Metals. Plaintiff reserves her right to include any such products in this action.

Metals or other undesirable toxins or contaminants a material fact when considering what baby food to purchase.

9. Defendant intended for consumers to rely on its Marketing, and reasonable consumers did in fact so rely. However, Defendant's Marketing is deceptive, misleading, unfair, and/or false because, among other things, the Contaminated Baby Foods include undisclosed Heavy Metals or other undesirable toxins or contaminants.

10. Defendant's Contaminated Baby Foods do not have a disclaimer regarding the presence of Heavy Metals or other undesirable toxins or contaminants that would inform consumers that the foods contain Heavy Metals and/or that Heavy Metals can accumulate over time in a child's body to the point where poisoning, injury, and/or disease can occur.

11. Defendant's wrongful Marketing, which includes misleading, deceptive, unfair, and false Marketing and omissions, allowed it to capitalize on, and reap enormous profits from, consumers who paid the purchase price or a price premium for Contaminated Baby Food that was not sold as advertised. And Defendant continues to wrongfully induce consumers to purchase its Contaminated Baby Food that are not as advertised.

12. Plaintiff brings this proposed consumer class action individually and on behalf of all other members of the Class (as defined herein), who, from the applicable limitations period up to and including the present, purchased for use and not resale any of Defendant's Contaminated Baby Foods.

## JURISDICTION AND VENUE

13. This Court has original jurisdiction over all causes of action asserted herein under the Class Fairness Act, 28 U.S.C. §1332(d)(2), because the matter in controversy exceeds the sum or value or $5,000,000 exclusive of interest and costs and more than two-thirds of the Class resides in states other than the state in which Defendant is a citizen and in which this case is filed, and therefore any exemptions to jurisdiction under 28 U.S.C. §1332(d)(2) do not apply.

14. Venue is proper in this Court pursuant to 28 U.S.C. §1391, because Plaintiff suffered injury as a result of Defendant's acts in this district, many of the acts and transactions

CLASS ACTION COMPLAINT

giving rise to this action occurred in this district, and Defendant conducts substantial business in this district and is headquartered in this district.  Defendant has intentionally availed itself of the laws and markets of this district, and Defendant is subject to personal jurisdiction in this district.

## THE PARTIES

15.     Plaintiff is, and at all times relevant hereto has been, a citizen of the state of California.  She purchased the Contaminated Baby Foods, specifically the Plum Organics Sweet Potato Baby Food and Plum Organics Apple & Carrot, for all three of her children from Vons and Albertsons grocery stores.  Plaintiff last purchased the Contaminated Baby Foods for her youngest child from July 2014 to 2017.

16.     Plaintiff believed she was feeding her children healthy, nutritious food.  During the time she purchased and fed her children the Contaminated Baby Foods. Due to the false and misleading claims and omissions by Defendant, she was unaware the Contaminated Baby Foods contained any level of Heavy Metals, and would not have purchased the food if that information had been fully disclosed.

17.     As the result of Defendant's negligent, reckless, and/or knowingly deceptive conduct as alleged herein, Plaintiff was injured when she paid the purchase price or a price premium for the Contaminated Baby Foods that did not deliver what they promised.  She paid the purchase price on the assumption that the labeling of the Contaminated Baby Foods was accurate and that it was free of Heavy Metals and safe to ingest.  Plaintiff would not have paid this money had she known that the Contaminated Baby Food contained excessive degrees of Heavy Metals. Further, should Plaintiff encounter the Contaminated Baby Foods in the future, she could not rely on the truthfulness of the Marketing, absent corrective changes to the packaging and advertising of the Contaminated Baby Foods. Damages can be calculated through expert testimony at trial.

18.     Defendant Plum, PBC was founded in 2007 and is incorporated in Delaware. Its headquarters are located at 1485 Park Avenue, Suite 200, Emeryville, California. Defendant formulates, develops, manufactures, labels, distributes, markets, advertises, and sells the Contaminated Baby Foods under the Plum Organics name throughout the United States. Defendant

1   created, allowed, negligently oversaw, and/or authorized the unlawful, fraudulent, unfair,

2   misleading, and/or deceptive labeling and advertising for the Contaminated Baby Foods.

3           19.     The Marketing for the Contaminated Baby Foods, relied upon by Plaintiff, was

4   prepared, reviewed, and/or approved by Defendant and its agents at its headquarters in California

5   and was disseminated by Defendant and its agents through marketing, advertising, packaging, and

6   labeling that contained the misrepresentations alleged herein.  The Marketing for the Contaminated

7   Baby Foods was designed to encourage consumers to purchase the Contaminated Baby Foods and

8   reasonably misled the reasonable consumer, i.e., Plaintiff and the Class members, into purchasing

9   the Contaminated Baby Foods.

10          20.     Defendant's Products are divided into groups according to the targeted infant or

11  toddler age and/or type of food product.  For example, there are five groups designated for the

12  youngest infants: Stage 1 (4+ months old), Stage 2 (6+ months old), Stage 3 (6+ months old),

13  Super Puffs®, and Little Teethers.

## Stage 1

Stage 1 (4+ months) organic baby food is perfect for introducing solids or first foods to your budding eater. Using only non-GMO, organic ingredients, the blends are all unsalted, unsweetened, and kosher parve. And since our pouches are resealable, you can customize portion sizes that are perfect for your baby.






Peaches Baby Food     Sweet Potato Baby Food     Mangos Baby Food     Prunes Baby Food

## Stage 2

Stage 2 (6+ months) organic baby food pouches are made with blends of fruit, veggies, grains, and Greek yogurt that are perfect for exposing your little foodie to unique flavors and colors.






Apple, Butternut Squash & Granola, 3.5oz     Pear, Blueberry, Avocado & Granola Baby Food     Strawberry, Banana & Granola 3.5oz     Mango, Carrot & Coconut Cream Baby Food


SHOW MORE

CLASS ACTION COMPLAINT

857146.1

## Stage 3

Stage 3 (6+ months), a line of culinary-inspired baby meals, are perfect for budding foodies. These hearty, flavorful meals are cooked to delight & develop baby's palate while helping to transition baby to table food.

  

Carrot, Spinach, Turkey, Corn, Apple & Potato Baby Food

Carrot, Sweet Potato, Corn, Pea & Chicken Baby Food

Carrot, Chickpea, Pea, Beef & Tomato Baby Food

## Super Puffs®

Super Puffs®, a colorful line of bite-sized, nutritious puffed snacks, are made with whole grains and organic veggies and fruit. Packed with 7 essential vitamins and minerals, Super Puffs® delight tiny taste buds with a rainbow of nutritional goodness.

   

Strawberry with Beet Cereal Snack

Apple with Spinach Cereal Snack

Blueberry with Purple Sweet Potato Cereal Snack

Mango with Sweet Potato Cereal Snack

## Little Teethers

Little ones can't wait to sink their gums into these delicious teething wafers. Delight budding palates with unique flavors as you encourage self-feeding.

  

Apple with Leafy Greens Wafers

Banana with Pumpkin Wafers

Blueberry Wafers

a)   Just Sweet Potato Organic Baby Food:



CLASS ACTION COMPLAINT

857146.1

b) Just Peaches Organic Baby Food:



c) Just Prunes Organic Baby Food:



d) Apple & Carrot Organic Baby Food:



- 7 -
CLASS ACTION COMPLAINT

e)   Pumpkin, Banana, Papaya, and Cardamom Organic Baby Food:



f)   Apple, Raisin, & Quinoa Organic Baby Food:



g)   Little Teethers Organic Multigrain Teething Wafer- Banana with Pumpkin:



- 8 -

CLASS ACTION COMPLAINT

h)  Mighty Morning Bar- Blueberry Lemon



## FACTUAL ALLEGATIONS

**I.    A Congressional Investigation Found the Presence Heavy Metals in Baby Foods**

22.     On February 4, 2021, the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform, published a report detailing its findings that Heavy Metals—including arsenic, cadmium, lead, and mercury—were present in "significant levels" in numerous commercial baby food products. Ex. 1.

23.     Defendant was one of the baby food manufacturers from whom the Subcommittee requested internal documents and test results. However, Defendant "refused to cooperate with the Subcommittee's investigation." Ex. 1.  Defendant refused to produce its testing standards and specific test results but instead produced a spreadsheet that "self-declared" that every product met criteria for each of the Heavy Metals, while declining to state what the criteria were.

| Product Name | Testing Date | Arsenic | Cadmium | Lead | Mercury |
|---|---|---|---|---|---|
| Plum Organics® Stage 2 Apple & Carrot, 4oz | 10/29/2017 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Peach, Banana & Apricot, 4oz | 10/29/2017 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Pear & Mango, 4oz | 10/29/2017 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Pear, Spinach & Pea, 4oz | 10/29/2017 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Apple, Cauliflower & Leek, 3.5oz | 10/29/2017 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Eat Your Colors® Cherry, Purple Carrot, Blackberry & Millet, 3.5oz | 5/14/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Eat Your Colors® Cherry, Purple Carrot, Blackberry & Millet, 3.5oz | 5/14/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Mango, Yellow Zucchini, Corn & Turmeric, 3.5oz | 5/1/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Mango, Yellow Zucchini, Corn & Turmeric, 3.5oz | 5/2/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Mango, Yellow Zucchini, Corn & Turmeric, 3.5oz | 5/7/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Mango, Yellow Zucchini, Corn & Turmeric, 3.5oz | 5/16/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Peach, Pumpkin, Carrot & Cinnamon, 3.5oz | 5/17/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Peach, Pumpkin, Carrot & Cinnamon, 3.5oz | 5/17/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Peach, Pumpkin, Carrot & Cinnamon, 3.5oz | 5/25/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Pea, Kiwi, Pear & Avocado, 3.5oz | 5/1/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Pea, Kiwi, Pear & Avocado, 3.5oz | 5/2/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Pea, Kiwi, Pear & Avocado, 3.5oz | 6/27/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Eat Your Colors® Strawberry, Apple, Rhubarb & Oats, 3.5oz | 5/16/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Eat Your Colors® Strawberry, Apple, Rhubarb & Oats, 3.5oz | 5/24/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Eat Your Colors® Strawberry, Apple, Rhubarb & Oats, 3.5oz | 5/24/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Apple, Raisin & Quinoa, 3.5oz | 10/28/2017 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Apple, Plum, Berry & Barley, 3.5oz | 5/15/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Mango, Sweet Potato, Apple & Millet, 3.5oz | 5/15/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Mango, Sweet Potato, Apple & Millet, 3.5oz | 6/27/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Banana, Zucchini & Amaranth, 3.5oz | 5/23/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Banana, Zucchini & Amaranth, 3.5oz | 5/23/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |

CLASS ACTION COMPLAINT

24.     Defendants marked every product that it "meets criteria" without identifying what that criteria is. Ex. 1.  The Subcommittee found Defendant's "grading" concerning and misleading as it "raises questions about what [Defendant's] other thresholds actually are, and whether they exist." Ex. 1.

25.     The investigation found that, when baby food manufacturers were left to self-regulate and establish their own Heavy Metals standards, they routinely failed to abide by their own standards. Ex. 1.

26.     In its conclusion, the Subcommittee stressed the danger associated with the presence of Heavy Metals in baby food: "These toxic heavy metals pose serious health risks to babies and toddlers.  Manufacturers knowingly sell these products to unsuspecting parents, in spite of internal company standards and test results, and without any warning labeling whatsoever." Ex. 1.

27.     In Defendant's published response to the Subcommittee's Report, it stated, "We are confident in the safety and quality of our products.  Our top priority is to serve children healthy, nutritious food made from the best ingredients.  We want to assure you that Plum's products are safe (and delicious) to eat!"[3]

28.     However, under the FAQs section, Defendant fails to describe its "protocol for evaluating heavy metals in products" and simply claims that it looks to guidance from leading health and regulatory bodies, while also failing to identify the "healthy and regulatory bodies."[4]

---

[3] https://www.plumorganics.com/faqs/ (last accessed February 5, 2021).

[4] *Id*.

CLASS ACTION COMPLAINT

857146.1

**II.    Defendant Falsely Marketed Its Contaminated Baby Foods as Healthy While Omitting Any Mention of Heavy Metals**

29.    Defendant packages, labels, markets, advertises, formulates, manufactures, distributes, and sells its Contaminated Baby Foods throughout the United States, including California.

30.    Defendant's advertised mission is to "nourish little ones with the very best food from the very first bite."[5] Defendant repeatedly touts its commitment to and use of organic and non-GMO ingredients in its products, including the Contaminated Baby Foods. Defendant claims that its "top priority" is "to serve children healthy, nutritious food made from the best ingredients."[6]

31.    Based on Defendant's decision to advertise, label, and market its Contaminated Baby Foods as healthy, nutritious, "made from the best ingredients," safe for consumption, and including "only" the healthy fruits, vegetables, or grains pictured on the label, it had a duty to ensure that these statements and the message portrayed by the labels' imagery were true and not misleading. As such, Defendant knew or should have known the Contaminated Baby Foods included nondisclosed levels of Heavy Metals, and that these toxins can accumulate over time.

32.    The Contaminated Baby Foods are available at numerous retail and online outlets. The Contaminated Baby Foods are widely advertised, and Defendant includes a Vice President of Brand and Marketing on its Executive Team.

33.    As discussed above, the Marketing of the Contaminated Baby Foods also fails to disclose they contain or are at risk or containing any level of Heavy Metals or other undesirable toxins or contaminants. Defendant intentionally omitted these contaminants in order to induce and mislead reasonable consumers to purchase its Contaminated Baby Foods.

---

[5]    Plum Organics Mission Highlights, Fiscal Year 2018. Available at https://www.plumorganics.com/wp-content/uploads/2019/05/Plum_MissionReport2018.pdf (last accessed February 4, 2021).

[6] https://www.plumorganics.com/faqs/ (last accessed February 4, 2021).

CLASS ACTION COMPLAINT
857146.1

34.     As a result of Defendant's omissions, a reasonable consumer would have no reason to suspect the presence of Heavy Metals in the Contaminated Baby Foods without conducting his or her own scientific tests or reviewing third party scientific testing of these products.

### III.     Defendant's Marketing Misled and Deceived Consumers

35.     Defendant's Marketing wrongfully conveys to consumers that its Contaminated Baby Foods have certain superior quality and characteristics that they do not actually possess.

36.     For instance, although Defendant misleadingly causes consumers to believe its Contaminated Baby Foods do not contain Heavy Metals through its Marketing and omissions, the Contaminated Baby Foods do in fact contain undisclosed Heavy Metals, which is material information to reasonable consumers.

37.     For example, the following foods were tested and found to contain undisclosed Heavy Metals at the following levels:[7]

| Food | Arsenic (total, ppb) | Arsenic (inorganic, ppb) | Lead (ppb) | Cadmium (ppb) | Mercury (total, ppb) |
|---|---|---|---|---|---|
| Plum Organics Just Sweet Potato Organic Baby Food-1, 4 months | 3.1*[8] | -- | 5.6 | 2.3 | <0.142 |
| Plum Organics Just Peaches Organic Baby Food (Stage 1) | 7.2 | -- | 0.9* | <0.5 | <0.139 |
| Plum Organics Just Prunes Organic Baby Food- 1, 4 months & up | 7.6 | -- | 2.5 | <0.5 | 0.194* |

---

[7] The following chart represents the levels of Heavy Metals in Defendant's products included in the Healthy Babies Bright Futures Report, dated October 2019.     Available at: https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf (last accessed February 4, 2021).

[8] An "*" indicates that test results were estimated, between the limit of detection and the limit of quantitation.

CLASS ACTION COMPLAINT
857146.1

| Food | Arsenic (total, ppb) | Arsenic (inorganic, ppb) | Lead (ppb) | Cadmium (ppb) | Mercury (total, ppb) |
|------|------|------|------|------|------|
| Plum Organics Pumpkin Banana Papaya Cardamom, 6 months & up | 2.4* | -- | 1.4* | 2.4 | <0.139 |
| Plum Organics Apple, Raisin, & Quinoa Organic Baby Food- 2 | 5.6* | -- | 2.2 | 1.9 | 0.145* |
| Plum Organics Little Teethers Organic Multigrain Teething Wafers- Banana with Pumpkin- Baby Crawler | 49.9 | -- | 1.4* | 6.3 | 0.726 |
| Plum Organics Mighty Morning Bar- Blueberry Lemon- Tots, 15 months & up | 40[9] | 39 | 3.4 | 24.3 | <0.137 |

38.     Defendant's Marketing wrongfully fails to disclose to consumers the presence of Heavy Metals in its Contaminated Baby Foods.

39.     Based on Defendant's Marketing, a reasonable consumer would not suspect the presence of Heavy Metals, nor would a reasonable consumer be able to detect the presence of Heavy Metals in the Contaminated Baby Foods without conducting his or her own scientific tests or reviewing scientific testing conducted on the Products.

40.     Reasonable consumers must and do rely on Defendant to honestly report what its Contaminated Baby Foods contain.

41.     In light of Defendant's Marketing, including its "comprehensive" quality controls, Defendant knew or should have known the Contaminated Baby Foods contained Heavy Metals.

42.     Defendant intended for consumers to rely on its Marketing, and reasonable consumers did in fact so rely.

---

[9] "This value is the average of 3 tests of total arsenic (44, 37, and 39 ppb). The original homogenized bar was tested twice, and homogenate of a second, separate bar from the same box was tested once."

CLASS ACTION COMPLAINT

857146.1

43.    Defendant had a duty to ensure the Contaminated Baby Foods were as they were represented and not deceptively, misleadingly, unfairly, and falsely marketed.

44.    Pursuant to the foregoing, Defendant's Marketing is deceptive, misleading, unfair, and false to Plaintiff and other consumers, including under the consumer protection laws of California.

45.    Defendant acted negligently, recklessly, unfairly, and/or intentionally with its deceptive, misleading, unfair, and false Marketing and omissions.

**IV.    Why Defendant's Marketing and Omissions are Misleading**

46.    At all times during the Class Period, Defendant knew or should have known the Contaminated Baby Foods contained Heavy Metals and were not sufficiently tested for the presence of Heavy Metals.

47.    Defendant's Contaminated Baby Foods had a risk of containing Heavy Metals due to Defendant's failure to monitor for their presence in the ingredients and finished products. Defendant was aware of this risk and failed to disclose it to Plaintiff and the Class.

48.    Defendant knew that Heavy Metals are a potentially dangerous contaminant that poses health risks to humans.

49.    Defendant knew or should have known that it owed consumers a duty of care to prevent, or at the very least, minimize the presence of Heavy Metals in the Contaminated Baby Foods to the extent reasonably possible.

50.    Defendant knew or should have known it owed consumers a duty of care to adequately test for Heavy Metals in the Contaminated Baby Foods.

51.    Defendant knew consumers purchased the Contaminated Baby Foods based on the reasonable expectation that Defendant manufactured the Contaminated Baby Foods to the highest standards. Based on this expectation, Defendant knew or should have known consumers reasonably inferred that Defendant would hold the Contaminated Baby Foods to the highest standards for preventing the inclusion of Heavy Metals in the Contaminated Baby Foods and for

CLASS ACTION COMPLAINT

the Heavy Metals testing of the ingredients in the Contaminated Baby Foods as well as the final product.

52.     Arsenic is an odorless and tasteless element that does not degrade or disappear. Arsenic occurs in the environment and can be found in rocks, soil, water, air, plants, and animals. Inorganic arsenic is highly toxic and a known cause of human cancers.  Arsenic exposure can also cause respiratory, gastrointestinal, hematological, hepatic, renal, skin, neurological and immunological effects, and damage children's central nervous systems and cognitive development.[10]  Based on the risks associated with exposure to higher levels of arsenic, both the U.S. Environmental Protection Agency ("EPA") and U.S. Food and Drug Administration ("FDA") have set limits concerning the allowable limit of arsenic at 10 parts per billion ("ppb") for human consumption in apple juice (regulated by the FDA) and drinking water (regulating by the EPA).

53.     Cadmium is associated with decreases in IQ and the development of ADHD.  The U.S. Department of Health and Human Services has determined that cadmium and cadmium compounds are known human carcinogens and the EPA has likewise determined that cadmium is a probable human carcinogen.  It has been specifically noted that "Kidney and bone effects have … been observed in laboratory animals ingesting cadmium."

54.     Lead is a carcinogen and developmental toxin known to cause health problems in children such as behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth.  Because lead can build up in the body over time as one is exposed to and/or ingests it, even a low level of chronic exposure can become toxic and seriously injurious to one's health.  The FDA has set standards that regulate the maximum parts per billion of lead permissible in water: bottled water cannot contain more than 5 ppb of total lead or 10 ppb of total arsenic.  *See* 21 C.F.R. § 165.110(b)(4)(iii)(A).

---

[10] U.S.  House of Representatives Staff Report by the Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform: "Baby foods are tainted with dangerous levels of arsenic,       lead,       cadmium,       and       mercury."       Available       at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (last accessed February 4, 2021).

CLASS ACTION COMPLAINT
857146.1

55.     Mercury is a known toxin, and pre-natal exposure has been associated with affected neuro-development, a lowered IQ, and autistic behaviors.  The impact of the various ways humans and animals are exposed and ingest mercury has been studied for years. In fact, in as early as 1997, the EPA issued a report to Congress that detailed the health risks to both humans and animals. Based on the toxicity and risks of mercury, regulations have been enacted at both the Federal and state level.

56.     While federal regulations regarding levels of Heavy Metals in most baby foods are non-existent, it is not due to a lack of risk. According to Linda McCauley, Dean of the Nell Hodgson Woodruff School of Nursing at Emory University, who studies environmental health effects, stated, "No level of exposure to these [heavy] metals has been shown to be safe in vulnerable infants."[11]

57.     Based on the foregoing, reasonable consumers, like Plaintiff, would consider the inclusion of Heavy Metals a material fact when considering what baby food to purchase.

58.     Defendant knew that properly and sufficiently monitoring for Heavy Metals in its ingredients and Contaminated Baby Foods was not only important but critical.

59.     Defendant also knew that monitoring Heavy Metals was likewise important to its health-conscious consumers.

60.     Finally, Defendant knew or should have known it could control the levels of Heavy Metals in the Contaminated Baby Foods by properly monitoring their ingredients for Heavy Metals and adjusting any formulation or diet to reduce ingredients that contained higher levels of Heavy Metals.

61.     However, Defendant also knew it was not properly and sufficiently testing for Heavy Metals in the Contaminated Baby Foods.  Defendant knew its failure to properly and sufficiently test for Heavy Metals in the Contaminated Baby Foods continued throughout the Class Period.

---

[11]     https://www.nytimes.com/2021/02/04/health/baby-food-metals-arsenic.html   (last accessed February 5, 2021).

CLASS ACTION COMPLAINT
857146.1

62. Defendant's Marketing was misleading due to its failure to properly and sufficiently monitor for and to disclose the risk of the presence of Heavy Metals in the Contaminated Baby Foods.

63. Defendant knew or should have known consumers paid premium prices and expected Defendant to regularly test for Heavy Metals and sufficiently monitor the presence of Heavy Metals in the Contaminated Baby Foods and ingredients.

64. At all times during the Class Period, Defendant did not consistently monitor or test for Heavy Metals in the Contaminated Baby Foods and ingredients.

65. Defendant knew or should have known that consumers reasonably expected it to test for and monitor the presence of Heavy Metals in the Contaminated Baby Foods and ingredients.

66. Defendant knew or should have known the Contaminated Baby Foods contained unmonitored levels of Heavy Metals that were inconsistent with their Marketing.

67. Defendant knew or should have known that consumers expected it to ensure the Contaminated Baby Foods were monitored and tested for Heavy Metals to ensure compliance with their Marketing.

68. Defendant knew, yet failed to disclose, its lack of regular testing and knowledge of the risk or presence of Heavy Metals in the Contaminated Baby Foods and ingredients.

69. Defendant's above-referenced statements, representations, partial disclosures, and omissions are false, misleading, and crafted to deceive the public as they create an image that the Contaminated Baby Foods are healthy, nutritious, and made from the best ingredients, are subject to stringent quality control, and are free of Heavy Metals.

70. Moreover, reasonable consumers, such as Plaintiff and the Class members, would have no reason to doubt Defendant's statements regarding the quality of the Contaminated Baby Foods. Defendant's nondisclosure and/or concealment of the toxins in the Contaminated Baby Foods coupled with the misrepresentations alleged herein that were intended to and did, in fact, cause consumers like Plaintiff and the members of the Class, to purchase products they would not

- 17 -

857146.1

1  have if the true quality and ingredients were disclosed or would not have paid a premium price for

2  such baby food.

3      71.    As a result of Defendant's wrongful Marketing, which includes misleading,

4  deceptive, unfair, and false statements and omissions, Defendant has generated substantial sales

5  of the Contaminated Baby Foods.

6      72.    Defendant's wrongful Marketing, which includes misleading, deceptive, unfair,

7  and false representations and omissions, allowed it to capitalize on, and reap enormous profits

8  from, consumers who paid the purchase price or premium for the Products that were not as

9  advertised.

10      73.    This is not surprising given that, for example, organic baby food was valued at were

11  $1.9 billion in the U.S. in 2018 and is expected to reach $3.32 billion by 2024.[12]

12      74.    The incredible rise in consumer demand for organic baby food is "driven by the

13  growing awareness among consumers to limit that baby's exposure to the harmful chemicals used

14  in conventional food production and the awareness of the benefits of organic products."[13]

15  **DEFENDANT'S STATEMENTS AND OMISSIONS VIOLATE CALIFORNIA LAWS**

16      75.    California law is designed to ensure that a company's claims about its products are

17  truthful and accurate.

18      76.    Defendant violated California law by negligently, recklessly, and/or intentionally

19  incorrectly claiming that the Contaminated Baby Foods are healthy, nutritious, and "made from

20  the best ingredients," and by not accurately detailing that the products contain Heavy Metals.

21

22

23

24  [12]  https://www.businesswire.com/news/home/20200120005436/en/North-America-Organic-
25  Baby-Food-Market-Expected-to-Reach-a-Value-of-3.32-Billion-by-2024-with-a-CAGR-of-9.6---
    ResearchAndMarkets.com (last accessed February 4, 2021).
26
27  [13] https://www.mordorintelligence.com/industry-reports/organic-baby-food-market (last accessed
    February 4, 2021).

28

857146.1

77.    Defendant's marketing and advertising campaign has been sufficiently lengthy in duration, and widespread in dissemination, that it would be unrealistic to require Plaintiff to plead relying upon each advertised misrepresentation.

78.    Defendant has engaged in this long-term advertising campaign to convince potential customers that the Contaminated Baby Foods were healthy, nutritious, and "made from the best ingredients," and did not contain harmful ingredients, such as Heavy Metals.

**PLAINTIFF'S RELIANCE WAS REASONABLE AND FORESEEN BY DEFENDANT**

79.    Plaintiff reasonably relied on Defendant's claims, warranties, representations, advertisements, and other marketing concerning the particular qualities and benefits of the Contaminated Baby Food.

80.    Plaintiff read and relied upon the labels and packaging of the Contaminated Baby Foods when making her purchasing decisions. Had she known Defendant omitted the presence of Heavy Metals from its packaging, she would not have purchase it.

81.    A reasonable consumer would consider the labeling of a product when deciding whether to purchase. Here, Plaintiff relied on the specific statements and omissions on  the Contaminated Baby Foods' labeling that led her to believe it was healthy, nutritious, and free of Heavy Metals.

**DEFENDANT'S KNOWLEDGE AND NOTICE OF ITS BREACHES OF ITS EXPRESS AND IMPLIED WARRANTIES**

82.    Defendant had sufficient notice of its breaches of express and implied warranties. Defendant has, and had, exclusive knowledge of the physical and chemical make-up of the Contaminated Baby Foods.  Moreover, Defendant was put on notice by the Healthy Babies Bright Future Report about the inclusion of Heavy Metals or other undesirable toxins or contaminants in the Contaminated Baby Foods.[14]

---

[14] Nonprofit organization, Healthy Babies Bright Futures, published a report based on a scientific study of the presence of Heavy Metals in baby foods. https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf (last accessed February 5, 2021).

CLASS ACTION COMPLAINT
857146.1

## PRIVITY EXISTS WITH PLAINTIFF AND THE PROPOSED CLASS

83.     Defendant knew that consumers such as Plaintiff and the proposed Class would be the end purchasers of the Contaminated Baby Foods and the target of its advertising and statements.

84.     Defendant intended that the warranties, advertising, labeling, statements, and representations would be considered by the end purchasers of the Contaminated Baby Foods, including Plaintiff and the proposed Class.

85.     Defendant directly marketed to Plaintiff and the proposed Class through statements on its website, labeling, advertising, and packaging.

86.     Plaintiff and the proposed Class are the intended beneficiaries of the expressed and implied warranties.

## CLASS ACTION ALLEGATIONS

87.     Plaintiff brings this action individually and on behalf of the following Class pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who, from February 5, 2015, to the present, purchased the Contaminated Baby Foods for household or business use, and not for resale (the "Class").

88.     Excluded from the Class is the Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

89.     This action is brought and may be properly maintained as a class action.  There is a well-defined community of interests in this litigation and the members of the Class are easily ascertainable.

90.     The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of all Classes members in a single action will provide substantial benefits to the parties and Court.

91.     Questions of law and fact common to Plaintiff and the Class include, but are not limited to, the following:

CLASS ACTION COMPLAINT

1       (a)     whether Defendant owed a duty of care;

2       (b)     whether Defendant knew or should have known that the Contaminated Baby
3 Foods contained Heavy Metals;

4       (c)     whether Defendant represented and continue to represent that the
5 Contaminated Baby Foods are healthy, nutritious, made from the best ingredients, and safe for
6 consumption;

7       (d)     whether Defendant represented and continues to represent that the
8 manufacturing of its Products is subjected to rigorous quality standards;

9       (e)     whether Defendant failed to disclose that the Contaminated Baby Foods
10 contained Heavy Metals;

11       (f)     whether Defendant's representations in advertising, warranties, packaging,
12 and/or labeling are false, deceptive, and misleading;

13       (g)     whether those representations are likely to deceive a reasonable consumer;

14       (h)     whether Defendant had knowledge that those representations were false,
15 deceptive, and misleading;

16       (i)     whether Defendant continues to disseminate those representations despite
17 knowledge that the representations are false, deceptive, and misleading;

18       (j)     whether a representation that a product is healthy, nutritious, made from the
19 best ingredients, and safe for consumption and does not contain Heavy Metals is material to a
20 reasonable consumer;

21       (k)     whether Defendant's Marketing of the Contaminated Baby Foods are likely
22 to mislead, deceive, confuse, or confound consumers acting reasonably;

23       (l)     whether Defendant violated California Business & Professions Code
24 sections 17200, *et seq.*;

25       (m)     whether Defendant violated California Business & Professions Code
26 sections 17500, *et seq.*;

27

28

1            (n)     whether Defendant violated California Civil Code sections 1750, *et seq.*;

2    and

3            (o)     whether Plaintiff and the members of the Class are entitled to declaratory

4    and injunctive relief.

5            92.     Defendant engaged in a common course of conduct giving rise to the legal rights

6    sought to be enforced by Plaintiff individually and on behalf of the other members of the Class.

7    Identical statutory violations and business practices and harms are involved.  Individual questions,

8    if any, are not prevalent in comparison to the numerous common questions that dominate this

9    action.

10           93.     Plaintiff's claims are typical of those of the members of the Class in that they are

11   based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

12           94.     Plaintiff will fairly and adequately represent and protect the interests of the Class,

13   has no interests incompatible with the interests of the Class, and has retained counsel competent

14   and experienced in class action, consumer protection, and false advertising litigation.

15           95.     Class treatment is superior to other options for resolution of the controversy

16   because the relief sought for each member of the Class is small such that, absent representative

17   litigation, it would be infeasible for members of the Class to redress the wrongs done to them.

18           96.     Questions of law and fact common to the Class predominate over any questions

19   affecting only individual members of the Class.

20           97.     As a result of the foregoing, class treatment is appropriate.

21   **<u>COUNT I</u>**

22   **(Negligent Misrepresentation Against Defendant on Behalf of the Class)**

23           98.     Plaintiff incorporates by reference and realleges each and every allegation

24   contained above, as though fully set forth herein.

25           99.     Plaintiff reasonably placed her trust and reliance in Defendant's representations that

26   the Contaminated Baby Foods were as Marketed to her and Class, and were healthy, nutritious,

27   made from the best ingredients, and safe for consumption, and did not contain Heavy Metals.

28

- 22 -

CLASS ACTION COMPLAINT

100.    Because of the relationship between the parties, the Defendant owed a duty to use reasonable care to impart correct and reliable disclosures concerning the presence of Heavy Metals in the Contaminated Baby Foods or, based upon its superior knowledge, having spoken, to say enough to not be misleading.

101.    Defendant breached its duty to Plaintiff and the Class by providing false, misleading, and/or deceptive information regarding the nature of the Contaminated Baby Foods.

102.    Plaintiff and the Class reasonably and justifiably relied upon the information supplied to them by the Defendant.  A reasonable consumer would have relied on Defendant's own warranties, statements, representations, advertising, packaging, labeling, and other marketing as to the quality, make-up, and included ingredients of the Contaminated Baby Foods.

103.    As a result of these misrepresentations, Plaintiff and the Class purchased the Contaminated Baby Foods at a premium.

104.    Defendant failed to use reasonable care in its communications and representations to Plaintiff and the Class, especially in light of its knowledge of the risks and importance of considering ingredients to consumers when purchasing the Contaminated Baby Foods.

105.    By virtue of Defendant's negligent misrepresentations, Plaintiff and the Class have been damaged in an amount to be proven at trial or alternatively, seek rescission and disgorgement under this Count.

## <u>COUNT II</u>
**(Violations of California's Consumer Legal Remedies Act, California Civil Code §§1750, *Et Seq.*, Against Defendant on Behalf of the Class)**

106.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

107.    Plaintiff and each proposed Class member is a "consumer," as that term is defined in California Civil Code section 1761(d).

108.    The Contaminated Baby Foods are "goods," as that term is defined in California Civil Code section 1761(a).

CLASS ACTION COMPLAINT

109.    Defendant is a "person" as that term is defined in California Civil Code section 1761(c).

110.    Plaintiff and each proposed Class member's purchase of Defendant's products constituted a "transaction" as that term is defined in California Civil Code section 1761(e).

111.    Defendant's conduct alleged herein violates the following provisions of California's Consumer Legal Remedies Act (the "CLRA"):

(a)     California Civil Code section 1770(a)(5), by negligently, recklessly, and/or intentionally representing that the Contaminated Baby Foods are healthy, nutritious, made from the best ingredients, and safe for consumption, and by failing to make any mention of Heavy Metals in the Contaminated Baby Foods;

(b)     California Civil Code section 1770(a)(7), by negligently, recklessly, and/or intentionally representing that the Contaminated Baby Foods were of a particular standard, quality, or grade, when they were of another;

(c)     California Civil Code section 1770(a)(9), by negligently, recklessly, and/or intentionally advertising the Contaminated Baby Foods with intent not to sell them as advertised; and

(d)     California Civil Code section 1770(a)(16), by representing that the Contaminated Baby Foods have been supplied in accordance with previous representations when they have not.

112.    As a direct and proximate result of these violations, Plaintiff and the Class have been harmed, and that harm will continue unless Defendant is enjoined from using the misleading marketing described herein in any manner in connection with the advertising and sale of the Contaminated Baby Foods.

113.    Plaintiff seeks an award of attorneys' fees pursuant to, inter alia, California Civil Code section 1780(e) and California Code of Civil Procedure section 1021.5.

857146.1

1
2
3

### COUNT III

**(Violations of California False Advertising Law, California Business & Professions Code §§17500, *Et Seq.*, Against Defendant on Behalf of the Class)**

4   114.   Plaintiff incorporates by reference and realleges each and every allegation
5   contained above, as though fully set forth herein.

6   115.   California's False Advertising Law prohibits any statement in connection with the
7   sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code §17500.

8   116.   As set forth herein, Defendant's claims that the Contaminated Baby Foods are
9   healthy, nutritious, made from the best ingredients, and safe for consumption are literally false and
10  likely to deceive the public.

11  117.   Defendant's claims that the Contaminated Baby Foods are healthy, nutritious, made
12  from the best ingredients, and safe for consumption are untrue or misleading, as is failing to
13  mention the presence of Heavy Metals in the Contaminated Baby Foods.

14  118.   Defendant knew, or reasonably should have known, that all these claims were
15  untrue or misleading.

16  119.   Defendant's conduct is ongoing and continuing, such that prospective injunctive
17  relief is necessary, especially given Plaintiff's desire to purchase these products in the future if she
18  can be assured that, so long as the Contaminated Baby Foods are as advertised: healthy, nutritious,
19  made from the best ingredients, and safe for consumption, and do not contain Heavy Metals.

20  120.   Plaintiff and members of the Class are entitled to injunctive and equitable relief,
21  and restitution in the amount they spent on the Contaminated Baby Foods.

22
### COUNT IV

**(Violations of the Unfair Competition Law, California Business & Professions Code §§17200, *Et Seq.*, Against Defendant on Behalf of the Class)**

23
24

25  121.   Plaintiff incorporates by reference and realleges each and every allegation
26  contained above, as though fully set forth herein.

27
28

- 25 -
CLASS ACTION COMPLAINT

122.    The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code §17200.

**Fraudulent**

123.    Defendant's statements that the Contaminated Baby Foods are healthy, nutritious, made from the best ingredients, and safe for consumption are literally false and likely to deceive the public, as is Defendant's failing to make any mention of Heavy Metals in the Contaminated Baby Foods.

**Unlawful**

124.    As alleged herein, Defendant has advertised the Contaminated Baby Foods with false or misleading claims, such that Defendant's actions as alleged herein violate at least the following laws:

  •    The CLRA, California Business & Professions Code sections 1750, *et seq*.; and

  •    The False Advertising Law, California Business & Professions Code sections 17500, *et seq.*

**Unfair**

125.    Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Contaminated Baby Foods is unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

126.    Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Contaminated Baby Foods is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the False Advertising Law and the CLRA.

127.    Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Contaminated Baby Foods is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one consumers, themselves, can reasonably avoid.

CLASS ACTION COMPLAINT
857146.1

128.     In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign.  Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

129.     On behalf of herself and the Class, Plaintiff also seeks an order for the restitution of all monies from the sale the Contaminated Baby Foods, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

## COUNT V
### (Breach of Express Warranty, California Commercial Code §2313, Against Defendant on Behalf of the Class)

130.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

131.     As set forth herein, Defendant made express representations to Plaintiff and the Class that the Contaminated Baby Foods were healthy, nutritious, made from the best ingredients, and safe for consumption.

132.     These promises became part of the basis of the bargain between the parties and thus constituted express warranties.

133.     There was a sale of goods from Defendant to Plaintiff and the Class members.

134.     On the basis of these express warranties, Defendant sold to Plaintiff and the Class members the Contaminated Baby Foods.

135.     Defendant knowingly breached the express warranties by including Heavy Metals in the Contaminated Baby Foods.

136.     Defendant was on notice of this breach as it was aware of the included Heavy Metals in the Contaminated Baby Foods, and based on the public investigation by the nonprofit organization, Healthy Babies Bright Futures, that showed its baby food products as containing Heavy Metals.

CLASS ACTION COMPLAINT
857146.1

137.    Privity exists because Defendant expressly warranted to Plaintiff and the Class that the Contaminated Baby Foods were healthy, nutritious, made from the best ingredients, and safe for consumption.

138.    Plaintiff and the Class members reasonably relied on the express warranties by Defendant.

139.    As a result of Defendant's breaches of its express warranties, Plaintiff and the Class sustained damages as they paid money for the Contaminated Baby Foods that were not what Defendant represented.

140.    Plaintiff, on behalf of herself and the Class, seek actual damages for Defendant's breach of warranty.

**COUNT VI**

**(Breach of Implied Warranty, California Commercial Code §2314, Against Defendant on Behalf of the Class)**

141.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

142.    Defendant is a merchant engaging in the sale of goods to Plaintiff and the Class members.

143.    There was a sale of goods from Defendant to Plaintiff and the Class members.

144.    As set forth herein, Defendant marketed the Contaminated Baby Foods' labels to Plaintiff and the Class that the Contaminated Baby Foods were healthy, nutritious, made from the best ingredients, and safe for consumption and did not contain Heavy Metals.

145.    The Contaminated Baby Foods did not conform to these affirmations and promises as they contained Heavy Metals at undisclosed and alarming levels.

146.    These promises became part of the basis of the bargain between the parties and thus constituted implied warranties.

147.    Defendant breached the implied warranties by selling the Contaminated Baby Foods that failed to conform to the promises or affirmations of fact made on the container or label as each product contained Heavy Metals.

CLASS ACTION COMPLAINT
857146.1

148.     Defendant was on notice of this breach as it was aware of the inclusion of Heavy Metals in the Contaminated Baby Foods, and based on the public investigation by the nonprofit organization, Healthy Babies Bright Futures, that showed its baby food products as containing Heavy Metals.

149.     Privity exists because Defendant impliedly warranted to Plaintiff and the Class members through the warranting, packaging, advertising, marketing, and labeling that the Contaminated Baby Foods were healthy, nutritious, made from the best ingredients, and safe for consumption and by failing to make any mention of Heavy Metals.

150.     As a result of Defendant's breach of its implied warranties of merchantability, Plaintiff and the Class sustained damages as they paid money for the Contaminated Baby Foods that were not what Defendant represented.

151.     Plaintiff, on behalf of herself and the Class, seek actual damages for Defendant's breach of warranty.

### COUNT XII
### (Unjust Enrichment Against Defendant on Behalf of the Classes)

152.     Plaintiff incorporates by reference and reallege each and every allegation contained above, as though fully set forth herein.

153.     Substantial benefits have been conferred on Defendant by Plaintiff and the Classes through the purchase of the Contaminated Baby Foods. Defendant knowingly and willingly accepted and enjoyed these benefits.

154.     Defendant either knew or should have known that the payments rendered by Plaintiff were given and received with the expectation that the Contaminated Baby Foods would have the qualities, characteristics, ingredients, and suitability for consumption represented and warranted by Defendant. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

155.     Defendant's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiff and the Classes.

CLASS ACTION COMPLAINT

156.    Plaintiff and the Classes are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

157.    Plaintiff and the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, pray for judgment against the Defendant as to each and every count, including:

A.      An order declaring this action to be a proper class action, appointing Plaintiff and her counsel to represent the Class, and requiring Defendant to bear the costs of class notice;

B.      An order enjoining Defendant from selling the Contaminated Baby Foods until the higher and/or unsafe levels of Heavy Metals are removed;

C.      An order enjoining Defendant from selling the Contaminated Baby Foods in any manner suggesting or implying that they are healthy, nutritious, and safe for consumption;

D.      An order requiring Defendant to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing products;

E.      An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct;

F.      An order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of the Unfair Competition Law, False Advertising Law, or CLRA, plus pre- and post-judgment interest thereon;

G.      An order requiring Defendant to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

H.      An order requiring Defendant to pay all actual and statutory damages permitted under the counts alleged herein;

I.      An order requiring Defendant to pay punitive damages on any count so allowable;

- 30 -
CLASS ACTION COMPLAINT

857146.1

1    J.    An order awarding attorneys' fees and costs to Plaintiff, the Class; and

2    K.    An order providing for all other such equitable relief as may be just and proper.

3                                    **JURY DEMAND**

4    Plaintiff hereby demands a trial by jury on all issues so triable.

5    Dated:  February 5, 2021                LOCKRIDGE GRINDAL NAUEN P.L.L.P.
                                             ROBERT K. SHELQUIST
6                                            REBECCA A. PETERSON

7                                            By:  s/  Rebecca A. Peterson

8                                            100 Washington Avenue South, Suite 2200
                                             Minneapolis, MN 55401
9                                            Telephone: (612) 339-6900
                                             Facsimile:  (612) 339-0981
10                                           E-mail: rkshelquist@locklaw.com
                                                     rapeterson@locklaw.com
11
                                             LITE DEPALMA GREENBERG, LLC
12                                           Joseph DePalma
                                             Susana Cruz Hodge
13                                           570 Broad Street, Suite 1201
                                             Newark, NJ 07102
14                                           Telephone: (973) 623-3000
                                             E-mail: jdepalma@litedepalma.com
15                                                   scruzhodge@litedepalma.com
16
                                             CUNEO GILBERT & LADUCA, LLP
17                                           Charles Laduca
                                             Katherine Van Dyck
18                                           C. William Frick
                                             4725 Wisconsin Avenue NW, Suite 200
19                                           Washington, DC 20016
                                             Telephone:(202) 789-3960
20                                           Facsimile:  (202) 789-1813
                                             E-mail: charles@cuneolaw.com
21                                                   kvandyck@cuneolaw.com
22

23

24

25

26

27

28
                                    - 31 -
                              CLASS ACTION COMPLAINT
857146.1