# EXHIBIT 1

LOCKRIDGE GRINDAL NAUEN P.L.L.P.
REBECCA A. PETERSON (241858)
ROBERT K. SHELQUIST
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: rapeterson@locklaw.com
          rkshelquist@locklaw.com

Attorneys for Plaintiff
[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| Ludmila Gulkarov, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>    v.<br><br>Plum, PBC, a Delaware corporation,<br><br>                              Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1) NEGLIGENT MISREPRESENTATION;<br>(2) VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT;<br>(3) VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW;<br>(4) VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW;<br>(5) BREACH OF EXPRESS WARRANTY; AND<br>(6) BREACH OF IMPLIED WARRANTY;<br><br>DEMAND FOR JURY TRIAL |

CLASS ACTION COMPLAINT

857146.1

1.      Plaintiff Ludmila Gulkarov ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned attorneys, brings this Class Action Complaint against Defendant Plum, PBC ("Defendant"), for its negligent, reckless, and/or intentional practice of misrepresenting and failing to fully disclose the presence of dangerous substances in its baby food sold throughout the United States. Plaintiff seeks both injunctive and monetary relief on behalf of the proposed Class (as defined herein), including requiring full disclosure of all such substances in its marketing, advertising, and labeling and restoring monies to the members of the proposed Class. Plaintiff alleges the following based upon personal knowledge as well as investigation by her counsel, and as to all other matters, upon information and belief (Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery).

## **NATURE OF THE ACTION**

2.      Parents like Plaintiff trust manufacturers like Defendant to sell baby food that is safe, nutritious, and free from harmful toxins, contaminants, and chemicals. They certainly expect the food they feed their infants and toddlers to be free from Heavy Metals, substances known to have significant and dangerous health consequences.[1]

3.      Consumers lack the scientific knowledge necessary to determine whether the Defendant's products do in fact contain Heavy Metals or to know or ascertain the true nature of the ingredients and quality of the Products. Reasonable consumers therefore must and do rely on Defendant to honestly report what its products contain.

4.      A recent report by the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform reveals that parents' trust has been violated. Ex. 1. The Subcommittee's investigation of the seven largest baby food manufacturers in the United States, including Defendant, was spurred by "reports alleging high levels of toxic heavy

---

[1] As used herein, the phrase "Heavy Metals" is collectively defined as arsenic, cadmium, lead, and mercury.

CLASS ACTION COMPLAINT

1    metals in baby foods" and the knowledge that "[e]ven low levels of exposure can cause serious

2    and often irreversible damage to brain development." Ex. 1 at 2.

3         5.    The Subcommittee's report revealed that "[i]nternal company standards permit

4    dangerously high levels of toxic heavy metals, and … that the manufacturers have often sold foods

5    that exceeded these levels." Ex. 1 at 4. Defendant was among the three companies that refused to

6    cooperate with the Subcommittee's investigation, causing "great[] concern that their lack of

7    cooperation might obscure the presence of even higher levels of toxic heavy metals in their baby

8    food products, compared to their competitors' products." Ex. 1 at 5. "[E]ven limited independent

9    testing has revealed the presence of toxic heavy metals in [Defendant's] baby food." Ex. 1 at 45.

10        6.    Defendant knows that its customers trust the quality of its products and that they

11   expect Defendant's products to be free of Heavy Metals. It also knows that certain consumers seek

12   out and wish to purchase premium baby foods that possess high quality ingredients free of toxins,

13   contaminants, or chemicals and that these consumers will pay more for baby foods they believe

14   possess these qualities than for baby foods they do not believe possess these qualities.

15        7.    As such, Defendant's promises, warranties, pricing, statements, claims, packaging,

16   labeling, marketing, and advertising (hereinafter collectively referred to as "Marketing" or

17   "Claims") center on representations and pictures that are intended to, and do, convey to consumers

18   that their baby food, including its Contaminated Baby Foods,[2] possess certain qualities and

19   characteristics that justify a premium price.

20        8.    No reasonable consumer seeing Defendant's Marketing would expect the

21   Contaminated Baby Foods to contain Heavy Metals or other undesirable toxins or contaminants.

22   Furthermore, reasonable consumers, like Plaintiff, would consider the mere inclusion of Heavy

23

24   [2] The phrase "Contaminated Baby Foods" collectively refers to the following Plum Organics
     products: Just Sweet Potato Organic Baby Food; Just Peaches Organic Baby Food; Just Prunes
25   Organic Baby Food; Apple & Carrot Organic Baby Food; Pumpkin, Banana, Papaya, and
     Cardamom Organic Baby Food; Apple, Raisin, & Quinoa Organic Baby Food; Little Teethers
26   Organic Multigrain Teething Wafers- Banana with Pumpkin; Mighty Morning Bar- Blueberry
     Lemon.  Discovery may reveal additional products that also contain levels of Heavy Metals.
27   Plaintiff reserves her right to include any such products in this action.

28
                              - 2 -
                    CLASS ACTION COMPLAINT
     857146.1

Metals or other undesirable toxins or contaminants a material fact when considering what baby food to purchase.

9.    Defendant intended for consumers to rely on its Marketing, and reasonable consumers did in fact so rely. However, Defendant's Marketing is deceptive, misleading, unfair, and/or false because, among other things, the Contaminated Baby Foods include undisclosed Heavy Metals or other undesirable toxins or contaminants.

10.    Defendant's Contaminated Baby Foods do not have a disclaimer regarding the presence of Heavy Metals or other undesirable toxins or contaminants that would inform consumers that the foods contain Heavy Metals and/or that Heavy Metals can accumulate over time in a child's body to the point where poisoning, injury, and/or disease can occur.

11.    Defendant's wrongful Marketing, which includes misleading, deceptive, unfair, and false Marketing and omissions, allowed it to capitalize on, and reap enormous profits from, consumers who paid the purchase price or a price premium for Contaminated Baby Food that was not sold as advertised. And Defendant continues to wrongfully induce consumers to purchase its Contaminated Baby Food that are not as advertised.

12.    Plaintiff brings this proposed consumer class action individually and on behalf of all other members of the Class (as defined herein), who, from the applicable limitations period up to and including the present, purchased for use and not resale any of Defendant's Contaminated Baby Foods.

**JURISDICTION AND VENUE**

13.    This Court has original jurisdiction over all causes of action asserted herein under the Class Fairness Act, 28 U.S.C. §1332(d)(2), because the matter in controversy exceeds the sum or value or $5,000,000 exclusive of interest and costs and more than two-thirds of the Class resides in states other than the state in which Defendant is a citizen and in which this case is filed, and therefore any exemptions to jurisdiction under 28 U.S.C. §1332(d)(2) do not apply.

14.    Venue is proper in this Court pursuant to 28 U.S.C. §1391, because Plaintiff suffered injury as a result of Defendant's acts in this district, many of the acts and transactions

CLASS ACTION COMPLAINT

giving rise to this action occurred in this district, and Defendant conducts substantial business in this district and is headquartered in this district. Defendant has intentionally availed itself of the laws and markets of this district, and Defendant is subject to personal jurisdiction in this district.

## **THE PARTIES**

15.     Plaintiff is, and at all times relevant hereto has been, a citizen of the state of California. She purchased the Contaminated Baby Foods, specifically the Plum Organics Sweet Potato Baby Food and Plum Organics Apple & Carrot, for all three of her children from Vons and Albertsons grocery stores. Plaintiff last purchased the Contaminated Baby Foods for her youngest child from July 2014 to 2017.

16.     Plaintiff believed she was feeding her children healthy, nutritious food. During the time she purchased and fed her children the Contaminated Baby Foods. Due to the false and misleading claims and omissions by Defendant, she was unaware the Contaminated Baby Foods contained any level of Heavy Metals, and would not have purchased the food if that information had been fully disclosed.

17.     As the result of Defendant's negligent, reckless, and/or knowingly deceptive conduct as alleged herein, Plaintiff was injured when she paid the purchase price or a price premium for the Contaminated Baby Foods that did not deliver what they promised. She paid the purchase price on the assumption that the labeling of the Contaminated Baby Foods was accurate and that it was free of Heavy Metals and safe to ingest. Plaintiff would not have paid this money had she known that the Contaminated Baby Food contained excessive degrees of Heavy Metals. Further, should Plaintiff encounter the Contaminated Baby Foods in the future, she could not rely on the truthfulness of the Marketing, absent corrective changes to the packaging and advertising of the Contaminated Baby Foods. Damages can be calculated through expert testimony at trial.

18.     Defendant Plum, PBC was founded in 2007 and is incorporated in Delaware. Its headquarters are located at 1485 Park Avenue, Suite 200, Emeryville, California. Defendant formulates, develops, manufactures, labels, distributes, markets, advertises, and sells the Contaminated Baby Foods under the Plum Organics name throughout the United States. Defendant

CLASS ACTION COMPLAINT
857146.1

created, allowed, negligently oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive labeling and advertising for the Contaminated Baby Foods.

19.     The Marketing for the Contaminated Baby Foods, relied upon by Plaintiff, was prepared, reviewed, and/or approved by Defendant and its agents at its headquarters in California and was disseminated by Defendant and its agents through marketing, advertising, packaging, and labeling that contained the misrepresentations alleged herein.  The Marketing for the Contaminated Baby Foods was designed to encourage consumers to purchase the Contaminated Baby Foods and reasonably misled the reasonable consumer, i.e., Plaintiff and the Class members, into purchasing the Contaminated Baby Foods.

20.     Defendant's Products are divided into groups according to the targeted infant or toddler age and/or type of food product.  For example, there are five groups designated for the youngest infants: Stage 1 (4+ months old), Stage 2 (6+ months old), Stage 3 (6+ months old), Super Puffs®, and Little Teethers.

## Stage 1

Stage 1 (4+ months) organic baby food is perfect for introducing solids or first foods to your budding eater. Using only non-GMO, organic ingredients, the blends are all unsalted, unsweetened, and kosher parve. And since our pouches are resealable, you can customize portion sizes that are perfect for your baby.


Peaches Baby Food


Sweet Potato Baby Food


Mangos Baby Food


Prunes Baby Food

## Stage 2

Stage 2 (6+ months) organic baby food pouches are made with blends of fruit, veggies, grains, and Greek yogurt that are perfect for exposing your little foodie to unique flavors and colors.


Apple, Butternut Squash & Granola, 3.5oz


Pear, Blueberry, Avocado & Granola Baby Food


Strawberry, Banana & Granola 3.5oz


Mango, Carrot & Coconut Cream Baby Food

SHOW MORE ❯

CLASS ACTION COMPLAINT

857146.1

## Stage 3

Stage 3 (6+ months), a line of culinary-inspired baby meals, are perfect for budding foodies. These hearty, flavorful meals are cooked to delight & develop baby's palate while helping to transition baby to table food.

  

Carrot, Spinach, Turkey, Corn, Apple & Potato Baby Food

Carrot, Sweet Potato, Corn, Pea & Chicken Baby Food

Carrot, Chickpea, Pea, Beef & Tomato Baby Food

## Super Puffs®

Super Puffs®, a colorful line of bite-sized, nutritious puffed snacks, are made with whole grains and organic veggies and fruit. Packed with 7 essential vitamins and minerals, Super Puffs® delight tiny taste buds with a rainbow of nutritional goodness.

   

Strawberry with Beet Cereal Snack

Apple with Spinach Cereal Snack

Blueberry with Purple Sweet Potato Cereal Snack

Mango with Sweet Potato Cereal Snack

## Little Teethers

Little ones can't wait to sink their gums into these delicious teething wafers. Delight budding palates with unique flavors as you encourage self-feeding.

  

Apple with Leafy Greens Wafers

Banana with Pumpkin Wafers

Blueberry Wafers

a)   Just Sweet Potato Organic Baby Food:



CLASS ACTION COMPLAINT
857146.1

b) Just Peaches Organic Baby Food:



c) Just Prunes Organic Baby Food:



d) Apple & Carrot Organic Baby Food:



CLASS ACTION COMPLAINT

857146.1

e)  Pumpkin, Banana, Papaya, and Cardamom Organic Baby Food:



f)  Apple, Raisin, & Quinoa Organic Baby Food:



g)  Little Teethers Organic Multigrain Teething Wafer- Banana with Pumpkin:

- 8 -

857146.1

h) Mighty Morning Bar- Blueberry Lemon



## **FACTUAL ALLEGATIONS**

### I.   **A Congressional Investigation Found the Presence Heavy Metals in Baby Foods**

22.    On February 4, 2021, the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform, published a report detailing its findings that Heavy Metals—including arsenic, cadmium, lead, and mercury—were present in "significant levels" in numerous commercial baby food products. Ex. 1.

23.    Defendant was one of the baby food manufacturers from whom the Subcommittee requested internal documents and test results. However, Defendant "refused to cooperate with the Subcommittee's investigation." Ex. 1.  Defendant refused to produce its testing standards and specific test results but instead produced a spreadsheet that "self-declared" that every product met criteria for each of the Heavy Metals, while declining to state what the criteria were.

| Product Name | Testing Date | Arsenic | Cadmium | Lead | Mercury |
|---|---|---|---|---|---|
| Plum Organics® Stage 2 Apple & Carrot, 4oz | 10/29/2017 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Peach, Banana & Apricot, 4oz | 10/29/2017 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Pear & Mango, 4oz | 10/29/2017 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Pear, Spinach & Pea, 4oz | 10/29/2017 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Apple, Cauliflower & Leek, 3.5oz | 10/29/2017 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Eat Your Colors® Cherry, Purple Carrot, Blackberry & Millet, 3.5oz | 5/14/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Eat Your Colors® Cherry, Purple Carrot, Blackberry & Millet, 3.5oz | 5/14/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Mango, Yellow Zucchini, Corn & Turmeric, 3.5oz | 5/1/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Mango, Yellow Zucchini, Corn & Turmeric, 3.5oz | 5/2/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Mango, Yellow Zucchini, Corn & Turmeric, 3.5oz | 5/7/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Mango, Yellow Zucchini, Corn & Turmeric, 3.5oz | 5/16/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Peach, Pumpkin, Carrot & Cinnamon, 3.5oz | 5/17/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Peach, Pumpkin, Carrot & Cinnamon, 3.5oz | 5/17/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Peach, Pumpkin, Carrot & Cinnamon, 3.5oz | 5/25/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Pea, Kiwi, Pear & Avocado, 3.5oz | 5/1/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Pea, Kiwi, Pear & Avocado, 3.5oz | 5/2/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Pea, Kiwi, Pear & Avocado, 3.5oz | 6/27/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Eat Your Colors® Strawberry, Apple, Rhubarb & Oats, 3.5oz | 5/16/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Eat Your Colors® Strawberry, Apple, Rhubarb & Oats, 3.5oz | 5/24/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Eat Your Colors® Strawberry, Apple, Rhubarb & Oats, 3.5oz | 5/24/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Apple, Raisin & Quinoa, 3.5oz | 10/28/2017 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Apple, Plum, Berry & Barley, 3.5oz | 5/15/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Mango, Sweet Potato, Apple & Millet, 3.5oz | 5/15/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Mango, Sweet Potato, Apple & Millet, 3.5oz | 6/27/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Banana, Zucchini & Amaranth, 3.5oz | 5/23/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Banana, Zucchini & Amaranth, 3.5oz | 5/23/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |

CLASS ACTION COMPLAINT

857146.1

24.     Defendants marked every product that it "meets criteria" without identifying what that criteria is. Ex. 1.  The Subcommittee found Defendant's "grading" concerning and misleading as it "raises questions about what [Defendant's] other thresholds actually are, and whether they exist." Ex. 1.

25.     The investigation found that, when baby food manufacturers were left to self-regulate and establish their own Heavy Metals standards, they routinely failed to abide by their own standards. Ex. 1.

26.     In its conclusion, the Subcommittee stressed the danger associated with the presence of Heavy Metals in baby food: "These toxic heavy metals pose serious health risks to babies and toddlers.  Manufacturers knowingly sell these products to unsuspecting parents, in spite of internal company standards and test results, and without any warning labeling whatsoever." Ex. 1.

27.     In Defendant's published response to the Subcommittee's Report, it stated, "We are confident in the safety and quality of our products.  Our top priority is to serve children healthy, nutritious food made from the best ingredients.  We want to assure you that Plum's products are safe (and delicious) to eat!"[3]

28.     However, under the FAQs section, Defendant fails to describe its "protocol for evaluating heavy metals in products" and simply claims that it looks to guidance from leading health and regulatory bodies, while also failing to identify the "healthy and regulatory bodies."[4]

---

[3] https://www.plumorganics.com/faqs/ (last accessed February 5, 2021).

[4] Id.

CLASS ACTION COMPLAINT

857146.1

## II. Defendant Falsely Marketed Its Contaminated Baby Foods as Healthy While Omitting Any Mention of Heavy Metals

29.     Defendant packages, labels, markets, advertises, formulates, manufactures, distributes, and sells its Contaminated Baby Foods throughout the United States, including California.

30.     Defendant's advertised mission is to "nourish little ones with the very best food from the very first bite."[5] Defendant repeatedly touts its commitment to and use of organic and non-GMO ingredients in its products, including the Contaminated Baby Foods. Defendant claims that its "top priority" is "to serve children healthy, nutritious food made from the best ingredients."[6]

31.     Based on Defendant's decision to advertise, label, and market its Contaminated Baby Foods as healthy, nutritious, "made from the best ingredients," safe for consumption, and including "only" the healthy fruits, vegetables, or grains pictured on the label, it had a duty to ensure that these statements and the message portrayed by the labels' imagery were true and not misleading. As such, Defendant knew or should have known the Contaminated Baby Foods included nondisclosed levels of Heavy Metals, and that these toxins can accumulate over time.

32.     The Contaminated Baby Foods are available at numerous retail and online outlets. The Contaminated Baby Foods are widely advertised, and Defendant includes a Vice President of Brand and Marketing on its Executive Team.

33.     As discussed above, the Marketing of the Contaminated Baby Foods also fails to disclose they contain or are at risk or containing any level of Heavy Metals or other undesirable toxins or contaminants. Defendant intentionally omitted these contaminants in order to induce and mislead reasonable consumers to purchase its Contaminated Baby Foods.

---

[5]    Plum Organics Mission Highlights, Fiscal Year 2018. Available at https://www.plumorganics.com/wp-content/uploads/2019/05/Plum_MissionReport2018.pdf (last accessed February 4, 2021).

[6]    https://www.plumorganics.com/faqs/ (last accessed February 4, 2021).

CLASS ACTION COMPLAINT

857146.1

34.     As a result of Defendant's omissions, a reasonable consumer would have no reason to suspect the presence of Heavy Metals in the Contaminated Baby Foods without conducting his or her own scientific tests or reviewing third party scientific testing of these products.

### III.     Defendant's Marketing Misled and Deceived Consumers

35.     Defendant's Marketing wrongfully conveys to consumers that its Contaminated Baby Foods have certain superior quality and characteristics that they do not actually possess.

36.     For instance, although Defendant misleadingly causes consumers to believe its Contaminated Baby Foods do not contain Heavy Metals through its Marketing and omissions, the Contaminated Baby Foods do in fact contain undisclosed Heavy Metals, which is material information to reasonable consumers.

37.     For example, the following foods were tested and found to contain undisclosed Heavy Metals at the following levels:[7]

| Food | Arsenic (total, ppb) | Arsenic (inorganic, ppb) | Lead (ppb) | Cadmium (ppb) | Mercury (total, ppb) |
|---|---|---|---|---|---|
| Plum Organics Just Sweet Potato Organic Baby Food- 1, 4 months | 3.1*[8] | -- | 5.6 | 2.3 | <0.142 |
| Plum Organics Just Peaches Organic Baby Food (Stage 1) | 7.2 | -- | 0.9* | <0.5 | <0.139 |
| Plum Organics Just Prunes Organic Baby Food- 1, 4 months & up | 7.6 | -- | 2.5 | <0.5 | 0.194* |

---

[7] The following chart represents the levels of Heavy Metals in Defendant's products included in the Healthy Babies Bright Futures Report, dated October 2019. Available at: https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf (last accessed February 4, 2021).

[8] An "*" indicates that test results were estimated, between the limit of detection and the limit of quantitation.

CLASS ACTION COMPLAINT

857146.1

| Food | Arsenic (total, ppb) | Arsenic (inorganic, ppb) | Lead (ppb) | Cadmium (ppb) | Mercury (total, ppb) |
|------|------|------|------|------|------|
| Plum Organics Pumpkin Banana Papaya Cardamom, 6 months & up | 2.4* | -- | 1.4* | 2.4 | <0.139 |
| Plum Organics Apple, Raisin, & Quinoa Organic Baby Food- 2 | 5.6* | -- | 2.2 | 1.9 | 0.145* |
| Plum Organics Little Teethers Organic Multigrain Teething Wafers- Banana with Pumpkin- Baby Crawler | 49.9 | -- | 1.4* | 6.3 | 0.726 |
| Plum Organics Mighty Morning Bar- Blueberry Lemon- Tots, 15 months & up | 40[9] | 39 | 3.4 | 24.3 | <0.137 |

38.     Defendant's Marketing wrongfully fails to disclose to consumers the presence of Heavy Metals in its Contaminated Baby Foods.

39.     Based on Defendant's Marketing, a reasonable consumer would not suspect the presence of Heavy Metals, nor would a reasonable consumer be able to detect the presence of Heavy Metals in the Contaminated Baby Foods without conducting his or her own scientific tests or reviewing scientific testing conducted on the Products.

40.     Reasonable consumers must and do rely on Defendant to honestly report what its Contaminated Baby Foods contain.

41.     In light of Defendant's Marketing, including its "comprehensive" quality controls, Defendant knew or should have known the Contaminated Baby Foods contained Heavy Metals.

42.     Defendant intended for consumers to rely on its Marketing, and reasonable consumers did in fact so rely.

---

[9] "This value is the average of 3 tests of total arsenic (44, 37, and 39 ppb). The original homogenized bar was tested twice, and homogenate of a second, separate bar from the same box was tested once."

CLASS ACTION COMPLAINT

857146.1

43. Defendant had a duty to ensure the Contaminated Baby Foods were as they were represented and not deceptively, misleadingly, unfairly, and falsely marketed.

44. Pursuant to the foregoing, Defendant's Marketing is deceptive, misleading, unfair, and false to Plaintiff and other consumers, including under the consumer protection laws of California.

45. Defendant acted negligently, recklessly, unfairly, and/or intentionally with its deceptive, misleading, unfair, and false Marketing and omissions.

**IV. Why Defendant's Marketing and Omissions are Misleading**

46. At all times during the Class Period, Defendant knew or should have known the Contaminated Baby Foods contained Heavy Metals and were not sufficiently tested for the presence of Heavy Metals.

47. Defendant's Contaminated Baby Foods had a risk of containing Heavy Metals due to Defendant's failure to monitor for their presence in the ingredients and finished products. Defendant was aware of this risk and failed to disclose it to Plaintiff and the Class.

48. Defendant knew that Heavy Metals are a potentially dangerous contaminant that poses health risks to humans.

49. Defendant knew or should have known that it owed consumers a duty of care to prevent, or at the very least, minimize the presence of Heavy Metals in the Contaminated Baby Foods to the extent reasonably possible.

50. Defendant knew or should have known it owed consumers a duty of care to adequately test for Heavy Metals in the Contaminated Baby Foods.

51. Defendant knew consumers purchased the Contaminated Baby Foods based on the reasonable expectation that Defendant manufactured the Contaminated Baby Foods to the highest standards. Based on this expectation, Defendant knew or should have known consumers reasonably inferred that Defendant would hold the Contaminated Baby Foods to the highest standards for preventing the inclusion of Heavy Metals in the Contaminated Baby Foods and for

CLASS ACTION COMPLAINT

the Heavy Metals testing of the ingredients in the Contaminated Baby Foods as well as the final product.

52.      Arsenic is an odorless and tasteless element that does not degrade or disappear. Arsenic occurs in the environment and can be found in rocks, soil, water, air, plants, and animals. Inorganic arsenic is highly toxic and a known cause of human cancers.  Arsenic exposure can also cause respiratory, gastrointestinal, hematological, hepatic, renal, skin, neurological and immunological effects, and damage children's central nervous systems and cognitive development.[10]  Based on the risks associated with exposure to higher levels of arsenic, both the U.S. Environmental Protection Agency ("EPA") and U.S. Food and Drug Administration ("FDA") have set limits concerning the allowable limit of arsenic at 10 parts per billion ("ppb") for human consumption in apple juice (regulated by the FDA) and drinking water (regulating by the EPA).

53.      Cadmium is associated with decreases in IQ and the development of ADHD.  The U.S. Department of Health and Human Services has determined that cadmium and cadmium compounds are known human carcinogens and the EPA has likewise determined that cadmium is a probable human carcinogen.  It has been specifically noted that "Kidney and bone effects have … been observed in laboratory animals ingesting cadmium."

54.      Lead is a carcinogen and developmental toxin known to cause health problems in children such as behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth.  Because lead can build up in the body over time as one is exposed to and/or ingests it, even a low level of chronic exposure can become toxic and seriously injurious to one's health.  The FDA has set standards that regulate the maximum parts per billion of lead permissible in water: bottled water cannot contain more than 5 ppb of total lead or 10 ppb of total arsenic.  *See* 21 C.F.R. § 165.110(b)(4)(iii)(A).

---

[10] U.S.  House of Representatives Staff Report by the Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform: "Baby foods are tainted with dangerous levels or arsenic,          lead,          cadmium,          and          mercury."          Available          at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (last accessed February 4, 2021).

CLASS ACTION COMPLAINT
857146.1

55.     Mercury is a known toxin, and pre-natal exposure has been associated with affected neuro-development, a lowered IQ, and autistic behaviors.  The impact of the various ways humans and animals are exposed and ingest mercury has been studied for years. In fact, in as early as 1997, the EPA issued a report to Congress that detailed the health risks to both humans and animals. Based on the toxicity and risks of mercury, regulations have been enacted at both the Federal and state level.

56.     While federal regulations regarding levels of Heavy Metals in most baby foods are non-existent, it is not due to a lack of risk. According to Linda McCauley, Dean of the Nell Hodgson Woodruff School of Nursing at Emory University, who studies environmental health effects, stated, "No level of exposure to these [heavy] metals has been shown to be safe in vulnerable infants."[11]

57.     Based on the foregoing, reasonable consumers, like Plaintiff, would consider the inclusion of Heavy Metals a material fact when considering what baby food to purchase.

58.     Defendant knew that properly and sufficiently monitoring for Heavy Metals in its ingredients and Contaminated Baby Foods was not only important but critical.

59.     Defendant also knew that monitoring Heavy Metals was likewise important to its health-conscious consumers.

60.     Finally, Defendant knew or should have known it could control the levels of Heavy Metals in the Contaminated Baby Foods by properly monitoring their ingredients for Heavy Metals and adjusting any formulation or diet to reduce ingredients that contained higher levels of Heavy Metals.

61.     However, Defendant also knew it was not properly and sufficiently testing for Heavy Metals in the Contaminated Baby Foods.  Defendant knew its failure to properly and sufficiently test for Heavy Metals in the Contaminated Baby Foods continued throughout the Class Period.

---

[11]     https://www.nytimes.com/2021/02/04/health/baby-food-metals-arsenic.html  (last accessed February 5, 2021).

CLASS ACTION COMPLAINT
857146.1

62.     Defendant's Marketing was misleading due to its failure to properly and sufficiently monitor for and to disclose the risk of the presence of Heavy Metals in the Contaminated Baby Foods.

63.     Defendant knew or should have known consumers paid premium prices and expected Defendant to regularly test for Heavy Metals and sufficiently monitor the presence of Heavy Metals in the Contaminated Baby Foods and ingredients.

64.     At all times during the Class Period, Defendant did not consistently monitor or test for Heavy Metals in the Contaminated Baby Foods and ingredients.

65.     Defendant knew or should have known that consumers reasonably expected it to test for and monitor the presence of Heavy Metals in the Contaminated Baby Foods and ingredients.

66.     Defendant knew or should have known the Contaminated Baby Foods contained unmonitored levels of Heavy Metals that were inconsistent with their Marketing.

67.     Defendant knew or should have known that consumers expected it to ensure the Contaminated Baby Foods were monitored and tested for Heavy Metals to ensure compliance with their Marketing.

68.     Defendant knew, yet failed to disclose, its lack of regular testing and knowledge of the risk or presence of Heavy Metals in the Contaminated Baby Foods and ingredients.

69.     Defendant's above-referenced statements, representations, partial disclosures, and omissions are false, misleading, and crafted to deceive the public as they create an image that the Contaminated Baby Foods are healthy, nutritious, and made from the best ingredients, are subject to stringent quality control, and are free of Heavy Metals.

70.     Moreover, reasonable consumers, such as Plaintiff and the Class members, would have no reason to doubt Defendant's statements regarding the quality of the Contaminated Baby Foods.  Defendant's nondisclosure and/or concealment of the toxins in the Contaminated Baby Foods coupled with the misrepresentations alleged herein that were intended to and did, in fact, cause consumers like Plaintiff and the members of the Class, to purchase products they would not

- 17 -

CLASS ACTION COMPLAINT

1   have if the true quality and ingredients were disclosed or would not have paid a premium price for

2   such baby food.

3       71.     As a result of Defendant's wrongful Marketing, which includes misleading,

4   deceptive, unfair, and false statements and omissions, Defendant has generated substantial sales

5   of the Contaminated Baby Foods.

6       72.     Defendant's wrongful Marketing, which includes misleading, deceptive, unfair,

7   and false representations and omissions, allowed it to capitalize on, and reap enormous profits

8   from, consumers who paid the purchase price or premium for the Products that were not as

9   advertised.

10      73.     This is not surprising given that, for example, organic baby food was valued at were

11  $1.9 billion in the U.S. in 2018 and is expected to reach $3.32 billion by 2024.[12]

12      74.     The incredible rise in consumer demand for organic baby food is "driven by the

13  growing awareness among consumers to limit that baby's exposure to the harmful chemicals used

14  in conventional food production and the awareness of the benefits of organic products."[13]

15  **DEFENDANT'S STATEMENTS AND OMISSIONS VIOLATE CALIFORNIA LAWS**

16      75.     California law is designed to ensure that a company's claims about its products are

17  truthful and accurate.

18      76.     Defendant violated California law by negligently, recklessly, and/or intentionally

19  incorrectly claiming that the Contaminated Baby Foods are healthy, nutritious, and "made from

20  the best ingredients," and by not accurately detailing that the products contain Heavy Metals.

21

22

23

---

24  [12]     https://www.businesswire.com/news/home/20200120005436/en/North-America-Organic-
25  Baby-Food-Market-Expected-to-Reach-a-Value-of-3.32-Billion-by-2024-with-a-CAGR-of-9.6---
    ResearchAndMarkets.com (last accessed February 4, 2021).
26
    [13] https://www.mordorintelligence.com/industry-reports/organic-baby-food-market (last accessed
27  February 4, 2021).

28
    CLASS ACTION COMPLAINT
    857146.1

77.     Defendant's marketing and advertising campaign has been sufficiently lengthy in duration, and widespread in dissemination, that it would be unrealistic to require Plaintiff to plead relying upon each advertised misrepresentation.

78.     Defendant has engaged in this long-term advertising campaign to convince potential customers that the Contaminated Baby Foods were healthy, nutritious, and "made from the best ingredients," and did not contain harmful ingredients, such as Heavy Metals.

**PLAINTIFF'S RELIANCE WAS REASONABLE AND FORESEEN BY DEFENDANT**

79.     Plaintiff reasonably relied on Defendant's claims, warranties, representations, advertisements, and other marketing concerning the particular qualities and benefits of the Contaminated Baby Food.

80.     Plaintiff read and relied upon the labels and packaging of the Contaminated Baby Foods when making her purchasing decisions. Had she known Defendant omitted the presence of Heavy Metals from its packaging, she would not have purchase it.

81.     A reasonable consumer would consider the labeling of a product when deciding whether to purchase. Here, Plaintiff relied on the specific statements and omissions on  the Contaminated Baby Foods' labeling that led her to believe it was healthy, nutritious, and free of Heavy Metals.

**DEFENDANT'S KNOWLEDGE AND NOTICE OF ITS BREACHES OF ITS EXPRESS AND IMPLIED WARRANTIES**

82.     Defendant had sufficient notice of its breaches of express and implied warranties. Defendant has, and had, exclusive knowledge of the physical and chemical make-up of the Contaminated Baby Foods.  Moreover, Defendant was put on notice by the Healthy Babies Bright Future Report about the inclusion of Heavy Metals or other undesirable toxins or contaminants in the Contaminated Baby Foods.[14]

---

[14] Nonprofit organization, Healthy Babies Bright Futures, published a report based on a scientific study of the presence of Heavy Metals in baby foods. https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf (last accessed February 5, 2021).

CLASS ACTION COMPLAINT

857146.1

**PRIVITY EXISTS WITH PLAINTIFF AND THE PROPOSED CLASS**

83.     Defendant knew that consumers such as Plaintiff and the proposed Class would be the end purchasers of the Contaminated Baby Foods and the target of its advertising and statements.

84.     Defendant intended that the warranties, advertising, labeling, statements, and representations would be considered by the end purchasers of the Contaminated Baby Foods, including Plaintiff and the proposed Class.

85.     Defendant directly marketed to Plaintiff and the proposed Class through statements on its website, labeling, advertising, and packaging.

86.     Plaintiff and the proposed Class are the intended beneficiaries of the expressed and implied warranties.

**CLASS ACTION ALLEGATIONS**

87.     Plaintiff brings this action individually and on behalf of the following Class pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who, from February 5, 2015, to the present, purchased the Contaminated Baby Foods for household or business use, and not for resale (the "Class").

88.     Excluded from the Class is the Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

89.     This action is brought and may be properly maintained as a class action.  There is a well-defined community of interests in this litigation and the members of the Class are easily ascertainable.

90.     The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of all Classes members in a single action will provide substantial benefits to the parties and Court.

91.     Questions of law and fact common to Plaintiff and the Class include, but are not limited to, the following:

- 20 -
CLASS ACTION COMPLAINT

857146.1

1   (a)  whether Defendant owed a duty of care;

2   (b)  whether Defendant knew or should have known that the Contaminated Baby

3 Foods contained Heavy Metals;

4   (c)  whether Defendant represented and continue to represent that the

5 Contaminated Baby Foods are healthy, nutritious, made from the best ingredients, and safe for

6 consumption;

7   (d)  whether Defendant represented and continues to represent that the

8 manufacturing of its Products is subjected to rigorous quality standards;

9   (e)  whether Defendant failed to disclose that the Contaminated Baby Foods

10 contained Heavy Metals;

11   (f)  whether Defendant's representations in advertising, warranties, packaging,

12 and/or labeling are false, deceptive, and misleading;

13   (g)  whether those representations are likely to deceive a reasonable consumer;

14   (h)  whether Defendant had knowledge that those representations were false,

15 deceptive, and misleading;

16   (i)  whether Defendant continues to disseminate those representations despite

17 knowledge that the representations are false, deceptive, and misleading;

18   (j)  whether a representation that a product is healthy, nutritious, made from the

19 best ingredients, and safe for consumption and does not contain Heavy Metals is material to a

20 reasonable consumer;

21   (k)  whether Defendant's Marketing of the Contaminated Baby Foods are likely

22 to mislead, deceive, confuse, or confound consumers acting reasonably;

23   (l)  whether Defendant violated California Business & Professions Code

24 sections 17200, *et seq.*;

25   (m)  whether Defendant violated California Business & Professions Code

26 sections 17500, *et seq.*;

27

28

CLASS ACTION COMPLAINT
857146.1

(n) whether Defendant violated California Civil Code sections 1750, *et seq.*; and

(o) whether Plaintiff and the members of the Class are entitled to declaratory and injunctive relief.

92. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Class. Identical statutory violations and business practices and harms are involved. Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

93. Plaintiff's claims are typical of those of the members of the Class in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

94. Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

95. Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Class is small such that, absent representative litigation, it would be infeasible for members of the Class to redress the wrongs done to them.

96. Questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.

97. As a result of the foregoing, class treatment is appropriate.

## <u>COUNT I</u>
### (Negligent Misrepresentation Against Defendant on Behalf of the Class)

98. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

99. Plaintiff reasonably placed her trust and reliance in Defendant's representations that the Contaminated Baby Foods were as Marketed to her and Class, and were healthy, nutritious, made from the best ingredients, and safe for consumption, and did not contain Heavy Metals.

- 22 -
CLASS ACTION COMPLAINT

100.    Because of the relationship between the parties, the Defendant owed a duty to use reasonable care to impart correct and reliable disclosures concerning the presence of Heavy Metals in the Contaminated Baby Foods or, based upon its superior knowledge, having spoken, to say enough to not be misleading.

101.    Defendant breached its duty to Plaintiff and the Class by providing false, misleading, and/or deceptive information regarding the nature of the Contaminated Baby Foods.

102.    Plaintiff and the Class reasonably and justifiably relied upon the information supplied to them by the Defendant.  A reasonable consumer would have relied on Defendant's own warranties, statements, representations, advertising, packaging, labeling, and other marketing as to the quality, make-up, and included ingredients of the Contaminated Baby Foods.

103.    As a result of these misrepresentations, Plaintiff and the Class purchased the Contaminated Baby Foods at a premium.

104.    Defendant failed to use reasonable care in its communications and representations to Plaintiff and the Class, especially in light of its knowledge of the risks and importance of considering ingredients to consumers when purchasing the Contaminated Baby Foods.

105.    By virtue of Defendant's negligent misrepresentations, Plaintiff and the Class have been damaged in an amount to be proven at trial or alternatively, seek rescission and disgorgement under this Count.

**<u>COUNT II</u>**

**(Violations of California's Consumer Legal Remedies Act, California Civil Code §§1750, *Et Seq.*, Against Defendant on Behalf of the Class)**

106.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

107.    Plaintiff and each proposed Class member is a "consumer," as that term is defined in California Civil Code section 1761(d).

108.    The Contaminated Baby Foods are "goods," as that term is defined in California Civil Code section 1761(a).

CLASS ACTION COMPLAINT
857146.1

109. Defendant is a "person" as that term is defined in California Civil Code section 1761(c).

110. Plaintiff and each proposed Class member's purchase of Defendant's products constituted a "transaction" as that term is defined in California Civil Code section 1761(e).

111. Defendant's conduct alleged herein violates the following provisions of California's Consumer Legal Remedies Act (the "CLRA"):

(a) California Civil Code section 1770(a)(5), by negligently, recklessly, and/or intentionally representing that the Contaminated Baby Foods are healthy, nutritious, made from the best ingredients, and safe for consumption, and by failing to make any mention of Heavy Metals in the Contaminated Baby Foods;

(b) California Civil Code section 1770(a)(7), by negligently, recklessly, and/or intentionally representing that the Contaminated Baby Foods were of a particular standard, quality, or grade, when they were of another;

(c) California Civil Code section 1770(a)(9), by negligently, recklessly, and/or intentionally advertising the Contaminated Baby Foods with intent not to sell them as advertised; and

(d) California Civil Code section 1770(a)(16), by representing that the Contaminated Baby Foods have been supplied in accordance with previous representations when they have not.

112. As a direct and proximate result of these violations, Plaintiff and the Class have been harmed, and that harm will continue unless Defendant is enjoined from using the misleading marketing described herein in any manner in connection with the advertising and sale of the Contaminated Baby Foods.

113. Plaintiff seeks an award of attorneys' fees pursuant to, inter alia, California Civil Code section 1780(e) and California Code of Civil Procedure section 1021.5.

857146.1

## COUNT III

**(Violations of California False Advertising Law, California Business & Professions Code §§17500, *Et Seq.*, Against Defendant on Behalf of the Class)**

114. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

115. California's False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code §17500.

116. As set forth herein, Defendant's claims that the Contaminated Baby Foods are healthy, nutritious, made from the best ingredients, and safe for consumption are literally false and likely to deceive the public.

117. Defendant's claims that the Contaminated Baby Foods are healthy, nutritious, made from the best ingredients, and safe for consumption are untrue or misleading, as is failing to mention the presence of Heavy Metals in the Contaminated Baby Foods.

118. Defendant knew, or reasonably should have known, that all these claims were untrue or misleading.

119. Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiff's desire to purchase these products in the future if she can be assured that, so long as the Contaminated Baby Foods are as advertised: healthy, nutritious, made from the best ingredients, and safe for consumption, and do not contain Heavy Metals.

120. Plaintiff and members of the Class are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Contaminated Baby Foods.

## COUNT IV

**(Violations of the Unfair Competition Law, California Business & Professions Code §§17200, *Et Seq.*, Against Defendant on Behalf of the Class)**

121. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

- 25 -
CLASS ACTION COMPLAINT

857146.1

122.    The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code §17200.

**Fraudulent**

123.    Defendant's statements that the Contaminated Baby Foods are healthy, nutritious, made from the best ingredients, and safe for consumption are literally false and likely to deceive the public, as is Defendant's failing to make any mention of Heavy Metals in the Contaminated Baby Foods.

**Unlawful**

124.    As alleged herein, Defendant has advertised the Contaminated Baby Foods with false or misleading claims, such that Defendant's actions as alleged herein violate at least the following laws:

•    The CLRA, California Business & Professions Code sections 1750, *et seq.*; and

•    The False Advertising Law, California Business & Professions Code sections 17500, *et seq.*

**Unfair**

125.    Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Contaminated Baby Foods is unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

126.    Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Contaminated Baby Foods is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the False Advertising Law and the CLRA.

127.    Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Contaminated Baby Foods is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one consumers, themselves, can reasonably avoid.

857146.1

128.    In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign.  Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

129.    On behalf of herself and the Class, Plaintiff also seeks an order for the restitution of all monies from the sale the Contaminated Baby Foods, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

## **COUNT V**
**(Breach of Express Warranty, California Commercial Code §2313,**
**Against Defendant on Behalf of the Class)**

130.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

131.    As set forth herein, Defendant made express representations to Plaintiff and the Class that the Contaminated Baby Foods were healthy, nutritious, made from the best ingredients, and safe for consumption.

132.    These promises became part of the basis of the bargain between the parties and thus constituted express warranties.

133.    There was a sale of goods from Defendant to Plaintiff and the Class members.

134.    On the basis of these express warranties, Defendant sold to Plaintiff and the Class members the Contaminated Baby Foods.

135.    Defendant knowingly breached the express warranties by including Heavy Metals in the Contaminated Baby Foods.

136.    Defendant was on notice of this breach as it was aware of the included Heavy Metals in the Contaminated Baby Foods, and based on the public investigation by the nonprofit organization, Healthy Babies Bright Futures, that showed its baby food products as containing Heavy Metals.

CLASS ACTION COMPLAINT
857146.1

137. Privity exists because Defendant expressly warranted to Plaintiff and the Class that the Contaminated Baby Foods were healthy, nutritious, made from the best ingredients, and safe for consumption.

138. Plaintiff and the Class members reasonably relied on the express warranties by Defendant.

139. As a result of Defendant's breaches of its express warranties, Plaintiff and the Class sustained damages as they paid money for the Contaminated Baby Foods that were not what Defendant represented.

140. Plaintiff, on behalf of herself and the Class, seek actual damages for Defendant's breach of warranty.

## <u>COUNT VI</u>

**(Breach of Implied Warranty, California Commercial Code
§2314, Against Defendant on Behalf of the Class)**

141. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

142. Defendant is a merchant engaging in the sale of goods to Plaintiff and the Class members.

143. There was a sale of goods from Defendant to Plaintiff and the Class members.

144. As set forth herein, Defendant marketed the Contaminated Baby Foods' labels to Plaintiff and the Class that the Contaminated Baby Foods were healthy, nutritious, made from the best ingredients, and safe for consumption and did not contain Heavy Metals.

145. The Contaminated Baby Foods did not conform to these affirmations and promises as they contained Heavy Metals at undisclosed and alarming levels.

146. These promises became part of the basis of the bargain between the parties and thus constituted implied warranties.

147. Defendant breached the implied warranties by selling the Contaminated Baby Foods that failed to conform to the promises or affirmations of fact made on the container or label as each product contained Heavy Metals.

- 28 -

CLASS ACTION COMPLAINT

857146.1

148.     Defendant was on notice of this breach as it was aware of the inclusion of Heavy Metals in the Contaminated Baby Foods, and based on the public investigation by the nonprofit organization, Healthy Babies Bright Futures, that showed its baby food products as containing Heavy Metals.

149.     Privity exists because Defendant impliedly warranted to Plaintiff and the Class members through the warranting, packaging, advertising, marketing, and labeling that the Contaminated Baby Foods were healthy, nutritious, made from the best ingredients, and safe for consumption and by failing to make any mention of Heavy Metals.

150.     As a result of Defendant's breach of its implied warranties of merchantability, Plaintiff and the Class sustained damages as they paid money for the Contaminated Baby Foods that were not what Defendant represented.

151.     Plaintiff, on behalf of herself and the Class, seek actual damages for Defendant's breach of warranty.

## COUNT XII
### (Unjust Enrichment Against Defendant on Behalf of the Classes)

152.     Plaintiff incorporates by reference and reallege each and every allegation contained above, as though fully set forth herein.

153.     Substantial benefits have been conferred on Defendant by Plaintiff and the Classes through the purchase of the Contaminated Baby Foods. Defendant knowingly and willingly accepted and enjoyed these benefits.

154.     Defendant either knew or should have known that the payments rendered by Plaintiff were given and received with the expectation that the Contaminated Baby Foods would have the qualities, characteristics, ingredients, and suitability for consumption represented and warranted by Defendant. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

155.     Defendant's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiff and the Classes.

CLASS ACTION COMPLAINT

156.     Plaintiff and the Classes are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

157.     Plaintiff and the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, pray for judgment against the Defendant as to each and every count, including:

A.     An order declaring this action to be a proper class action, appointing Plaintiff and her counsel to represent the Class, and requiring Defendant to bear the costs of class notice;

B.     An order enjoining Defendant from selling the Contaminated Baby Foods until the higher and/or unsafe levels of Heavy Metals are removed;

C.     An order enjoining Defendant from selling the Contaminated Baby Foods in any manner suggesting or implying that they are healthy, nutritious, and safe for consumption;

D.     An order requiring Defendant to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing products;

E.     An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct;

F.     An order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of the Unfair Competition Law, False Advertising Law, or CLRA, plus pre- and post-judgment interest thereon;

G.     An order requiring Defendant to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

H.     An order requiring Defendant to pay all actual and statutory damages permitted under the counts alleged herein;

I.     An order requiring Defendant to pay punitive damages on any count so allowable;

- 30 -

CLASS ACTION COMPLAINT

857146.1

1    J.      An order awarding attorneys' fees and costs to Plaintiff, the Class; and

2    K.      An order providing for all other such equitable relief as may be just and proper.

3                                    **JURY DEMAND**

4    Plaintiff hereby demands a trial by jury on all issues so triable.

5    Dated:  February 5, 2021                    LOCKRIDGE GRINDAL NAUEN P.L.L.P.
                                                  ROBERT K. SHELQUIST
6                                                 REBECCA A. PETERSON

7                                                 By:  s/  Rebecca A. Peterson

8                                                 100 Washington Avenue South, Suite 2200
                                                  Minneapolis, MN 55401
9                                                 Telephone: (612) 339-6900
                                                  Facsimile:  (612) 339-0981
10                                                E-mail: rkshelquist@locklaw.com
                                                          rapeterson@locklaw.com
11
                                                  LITE DEPALMA GREENBERG, LLC
12                                                Joseph DePalma
                                                  Susana Cruz Hodge
13                                                570 Broad Street, Suite 1201
                                                  Newark, NJ 07102
14                                                Telephone: (973) 623-3000
                                                  E-mail: jdepalma@litedepalma.com
15                                                        scruzhodge@litedepalma.com

16
                                                  CUNEO GILBERT & LADUCA, LLP
17                                                Charles Laduca
                                                  Katherine Van Dyck
18                                                C. William Frick
                                                  4725 Wisconsin Avenue NW, Suite 200
19                                                Washington, DC 20016
                                                  Telephone:(202) 789-3960
20                                                Facsimile:  (202) 789-1813
                                                  E-mail: charles@cuneolaw.com
21                                                        kvandyck@cuneolaw.com

22

23

24

25

26

27

28
                                    - 31 -
                          CLASS ACTION COMPLAINT
857146.1

# EXHIBIT 2

GUSTAFSON GLUEK PLLC
DENNIS STEWART, SBN: 99152
600 B Street, 17th Floor
San Diego, CA 92101
Telephone:    (619) 595-3299
Facsimile:    (612) 339-6622

***Counsel for Plaintiffs and the Proposed Class***
[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY MCKEON and JOSH CRAWFORD, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>PLUM, PBC; and PLUM, INC., d/b/a PLUM ORGANICS,<br><br>　　　　　Defendants. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.　　　Plaintiffs Kelly McKeon and Josh Crawford, individually and on behalf of all others similarly situated, by and through their undersigned attorneys, bring this Class Action Complaint against Defendants Plum, PBC and Plum, Inc., d/b/a Plum Organics (together "Defendants" or "Plum") for their negligent, reckless, and/or intentional practice of misrepresenting and failing to fully disclose the presence or risk of arsenic, lead, mercury, cadmium (collectively "heavy metals") and/or perchlorate or other ingredients in Plum's Baby Foods that do not conform to the labels, packaging, advertising, and statements of these products sold throughout the United States, including this District. Plaintiffs seek both injunctive and monetary relief on behalf of the proposed

1

Class and Sub-Classes (as defined below) including: (i) requiring full disclosure of all such substances and ingredients in Defendants' marketing, advertising, and labeling; (ii) requiring testing of all ingredients and final products for such substances; and (iii) restoring monies to the members of the proposed Class. Plaintiffs allege the following based upon personal knowledge as well as investigation by their counsel and, as to all other matters, upon information and belief. Plaintiffs believe that a reasonable opportunity for discovery will reveal substantial evidentiary support for the allegations set forth herein.

## DEFENDANTS MARKET THEMSELVES AS SELLING ONLY PREMIUM BABY FOOD THAT IS SAFE FOR HUMAN CONSUMPTION

2.      Plum manufactures, markets, advertises, labels, distributes, and sells baby food products under the brand name Plum Organics throughout the United States, including in this District.

3.      Plum states that it uses "organic, non-GMO, whole and simple ingredients" and its products are "always made without genetically modified ingredients."[1] Plum's mission is "to nourish little ones with the very best food from the very first bite."[2]

4.      Plum's packaging and labels further emphasize quality and safe ingredients, organic, and provides a recipe free of any unnatural ingredients.

5.      Plum's packaging and labels further emphasize that its Baby Food products are organic and safe for human infant consumption.

6.      Yet nowhere in the labeling, advertising, statements, warranties, and/or packaging does Plum disclose that the Baby Foods (as identified below) include and/or have a high risk of containing heavy metals or other ingredients that do not conform to the labels, packaging, advertising, and statements.

7.      Indeed, the Baby Foods have been shown to contain significant levels of arsenic, mercury, lead, cadmium, mercury, and/or perchlorate—all known to pose health risks to humans and particularly infants. *See* Ex. 1 (Healthy Babies Bright Futures, *What's In My Baby's Food?*); Ex. 2.

---

[1] https://www.plumorganics.com/food-philosophy/ (last accessed Feb. 10, 2021).
[2] https://www.plumorganics.com/faqs/ (last accessed Feb. 10, 2021).

CLASS ACTION COMPLAINT

8. Despite this, Plum warrants, promises, represents, misleads, labels, and/or advertises that the Baby Foods are free of any heavy metals, perchlorate, and/or unnatural ingredients by making assurances that the foods are high-quality and safe for infant consumption.

9. Plum asserts that it places the safety of its consumers above all else[3] and that its Baby Foods are organic, in direct contradiction to the true nature of their contents, which include, but are not limited to, heavy metals and/or perchlorate.

10. Plum also asserts that the Baby Foods are safe and appropriate for consumption by babies through its "Stage" representations, which identify the appropriate age range of children who should consume the Baby Foods; for example, "Stage 1, 4 months+," "Stage 2, 6 months+," etc. Each of the Baby Foods contain this "Stage" designation, identifying that they are suitable and appropriate for consumption by a baby or child.

11. It was recently revealed on information and belief that Plum was knowingly, recklessly, and/or negligently selling the Baby Foods containing arsenic, mercury, cadmium, lead, and/or perchlorate.

12. A recent report by the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform ("Subcommittee") reveals that parents' trust has been violated. *See* Ex. 3. The Subcommittee's investigation of the seven largest baby food manufacturers in the United States, including Defendants, was spurred by "reports alleging high levels of toxic heavy metals in baby foods" and the fact that "[e]ven low levels of exposure can cause serious and often irreversible damage to brain development." Ex. 3 at 2.

13. The Subcommittee's report revealed that "[i]nternal company standards permit dangerously high levels of toxic heavy metals and… that the manufacturers have often sold foods that exceeded these levels." Ex. 3 at 4. Defendants were among the three companies that refused to cooperate with the Subcommittee's investigation, causing "great[] concern that their lack of cooperation might obscure the presence of even higher levels of toxic heavy metals in their baby food products, compared to their competitors' products." Ex. 3 at 5. "[E]ven limited independent testing has revealed the presence of toxic heavy metals in [Defendant's] baby food." Ex. 3 at 45.

---

[3] https://www.plumorganics.com/faqs/ (last accessed Feb. 10, 2021).

CLASS ACTION COMPLAINT

14. Plaintiffs bring this action individually and on behalf of all consumers who purchased the Baby Foods, to cause the disclosure of the presence and/or risk of the presence of heavy metals, perchlorate, and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising, and statements in the Baby Foods; to correct the false and misleading perception Plum has created in the minds of consumers that the Baby Foods are high quality, healthy, and safe for infant consumption; and to obtain redress for those who have purchased the Baby Foods.

## JURISDICTION AND VENUE

15. This Court has original jurisdiction over all causes of action asserted herein under the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and more than two-thirds of the Class reside in states other than the states in which Defendants are citizens and in which this case is filed, and therefore any exemptions to jurisdiction under 28 U.S.C. §1332(d) do not apply.

16. Venue is proper in this Court pursuant to 28 U.S.C. §1391, because Plaintiffs have suffered injury as a result of Plum's acts in this district, many of the acts and transactions giving rise to this action occurred in this District, Plum conducts substantial business in this district, Plum has intentionally availed itself of the laws and markets of this district, and Plum is subject to personal jurisdiction in this district.

## PARTIES

17. Plaintiff Kelly McKeon is a resident of Plymouth, Minnesota, and purchased Plum's Baby Foods for her child. Plaintiff McKeon purchased Plum's Baby Foods, including Just Sweet Potato pouches, butternut squash carrot chickpea and corn pouches, apple and spinach Super Puffs, mango and sweet potato super puffs, blueberry Little Teethers multigrain wafers, blueberry Mighty snack bars, strawberry Mighty snack bars, apple and cinnamon Mighty Morning bars, blueberry lemon Mighty Morning bars, and berry Teensy snacks. Plaintiff McKeon purchased the Baby Foods from a Target in Plymouth, Minnesota and a Whole Foods in Minnetonka, Minnesota from approximately 2018 until the present. Prior to purchasing the Baby Foods, Plaintiff McKeon saw Plum's nutritional claims on the packaging, including "organic" and the "Stage"

representations, which she relied on in deciding to purchase the Baby Foods. During that time, based on Plum's material omissions and the false and misleading claims, warranties, representations, advertisements and other marketing by Plum, Plaintiff McKeon was unaware that the Baby Foods contained any level of heavy metals, chemicals, or toxins, and would not have purchased the food if that was fully disclosed, or she would not have paid as much for the Baby Foods if that information was fully disclosed. Plaintiff McKeon was injured by paying a premium for the Baby Foods that have no or *de minimis* value—or whose value was at least less than what she paid for the Baby Food—based on the presence of the alleged heavy metals, chemicals, and toxins.

18.     Plaintiff Josh Crawford is a resident of Harvey's Lake, Pennsylvania, and purchased Plum's Baby Foods for his child. Plaintiff Bryan purchased Plum's Baby Foods, including Just Prunes Organic Baby Food. Plaintiff Bryan purchased the Baby Foods from Target in Wilkes-Barre, Pennsylvania, Weis in Dallas, Pennsylvania, and Amazon.com from 2018 until 2020. Prior to purchasing the Baby Foods, Plaintiff Crawford saw Plum's nutritional claims on the packaging, including "organic" and the "Stage" representations, which he relied on in deciding to purchase the Baby Foods. During that time, based on Plum's omissions and the false and misleading claims, warranties, representations, advertisements and other marketing by Plum, Plaintiff Crawford was unaware that the Baby Foods contained any level of heavy metals, chemicals or toxins, and would not have purchased the food if that was fully disclosed, or he would not have paid as much for the Baby Foods if that information was fully disclosed. Plaintiff Crawford was injured by paying a premium for the Baby Foods that have no or *de minimis* value— or whose value was at least less than what he paid for the Baby Food—based on the presence of the alleged heavy metals, chemicals, and toxins.

19.     As the result of Plum's negligent, reckless, and/or knowingly deceptive conduct as alleged herein, Plaintiffs were injured when they paid the purchase price or a price premium for the Baby Foods that did not deliver what was promised.  They paid the premium price on the assumption and understanding that the labeling of the Baby Foods was accurate and that it was healthy, superior quality, and safe for babies and children to ingest.  Plaintiffs would not have paid

5

this money had they known that the Baby Foods contained any levels of the heavy metals, chemicals and/or toxins. Plaintiffs were further injured because the Baby Foods that they purchased have no or *de minimis* value—or a value that was at least less than what they paid for the Baby Food—based on the presence of the alleged heavy metals, chemicals and toxins. Damages can be calculated through expert testimony at trial. Further, should Plaintiffs encounter the Baby Foods in the future, they could not rely on the truthfulness of the packaging, absent corrective changes to the packaging and advertising of the Baby Foods.

20. Defendant Plum, PBC was founded in 2007 and is incorporated in Delaware. Its headquarters are located at 1485 Park Avenue, Suite 200, Emeryville, California.

21. Defendant Plum, Inc., d/b/a Plum Organics, is a Delaware corporation with its headquarters located at 1485 Park Avenue, Suite 200, Emeryville, California.

22. Plum formulates, develops, manufactures, labels, distributes, markets, advertises, and sells the Baby Foods under the baby food brand name Plum Organics throughout the United States, including in this District, during the Class Period (defined below). The advertising, labeling, and packaging for the Baby Foods, relied upon by Plaintiffs were prepared, reviewed, and/or approved by Plum and its agents in California, and were disseminated from California by Defendant and its agents through marketing, advertising, packaging, and labeling that contained the misrepresentations alleged herein. The marketing, advertising, packaging, and labeling for the Baby Foods were designed to encourage consumers to purchase the Baby Foods and reasonably misled the reasonable consumer, *i.e.,* Plaintiffs and the Class, into purchasing the Baby Foods. Plum owns, manufactures, and distributes the Baby Foods, and created, allowed, negligently oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive labeling and advertising for the Baby Foods. Plum is responsible for sourcing ingredients, manufacturing the products, and conducting all relevant quality assurance protocols, including testing, for the ingredients and finished Baby Foods.

## FACTUAL ALLEGATIONS

### I. THE BABY FOODS

23. The Baby Foods include the following:

(a) Just Sweet Potato Organic Baby Food (Stage 1: 4 months+)



(b) Just Peaches Organic Baby Food (Stage 1: 4 months+)



CLASS ACTION COMPLAINT

(c)  Just Prunes Organic Baby Food (Stage 1: 4 months+)



(d)  Pumpkin Banana Papaya Cardamom (Stage 2: 6 months+)



(e)  Apple, Raisin & Quinoa Organic Baby Food (Stage 2: 6 months+)



(f)  Little Teethers Organic Multigrain Teething Wafers - Banana with Pumpkin - Baby
Crawler



CLASS ACTION COMPLAINT

(g) Mighty Morning Bar - Blueberry Lemon - Tots: 15 months & up



## II. MISLEADING CLAIMS AND OMISSIONS

### A. Organic

24. The following images are some representative examples of Defendant's "organic" claim on the Baby Foods' packaging:

 

10

**B. "Stage" Representations**

25. The following images are some representative examples of Defendant's "Stage" claim on the Baby Foods' packaging:

 

**C. Omissions**

26. As discussed above, Plum's Baby Food packaging also misleadingly omitted the presence, or risk of, heavy metals and perchlorate. Plum intentionally omitted disclosure of the presence or risk of these substances in order to induce and mislead reasonable consumers like Plaintiffs to purchase the Baby Food at premium prices.

**III. THE PRESENCE OF HEAVY METALS AND/OR PERCHLORATE AT ANY LEVEL WOULD BE MATERIAL TO A REASONABLE CONSUMER DUE TO THE INHERENT AND KNOWN RISKS OF CONSUMPTION AND/OR EXPOSURE.**

**A. A Congressional Investigation Found the Presence of Heavy Metals in Baby Foods**

27. On February 4, 2021, the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform, published a report

11

detailing its findings that Heavy Metals—including arsenic, cadmium, lead, and mercury—were present in "significant levels" in numerous commercial baby food products. Ex. 3.

28. The Subcommittee requested internal documents and test results from Plum but Plum "refused to cooperate with the Subcommittee's investigation." Ex. 3 at 2. Plum refused to produce its testing standards and specific test results but instead produced a spreadsheet that "self-declared" that every product met criteria for each of the Heavy Metals, while declining to state what the criteria were.[4]

29. Plum marked on every product that it "meets criteria" without identifying what that criteria is. The Subcommittee found Plum's "grading" concerning and misleading as it "raises questions about what [Plum's] other thresholds actually are, and whether they exist." Ex. 3 at 45.

30. The investigation found that, when baby food manufacturers were left to self-regulate and establish their own Heavy Metals standards, they routinely failed to abide by their own standards.

31. In its conclusion, the Subcommittee stressed the danger associated with the presence of Heavy Metals in baby food: "These toxic heavy metals pose serious health risks to babies and toddlers. Manufacturers knowingly sell these products to unsuspecting parents, in spite of internal company standards and test results, and without any warning labeling whatsoever." Ex. 3 at 59.

32. In Plum's published response to the Subcommittee's Report, it stated, "We are confident in the safety and quality of our products. Our top priority is to serve children healthy, nutritious food made from the best ingredients. We want to assure you that Plum's products are safe (and delicious) to eat!"[5]

33. However, Plum fails to describe its "protocol for evaluating heavy metals in products" and simply claims that it looks to guidance from leading health and regulatory bodies, while also failing to identify the "healthy and regulatory bodies."[6]

---

[4] Campbell, *Product Heavy Metal Test Results* (Dec. 11, 2019) (online at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/12.pdf) (last accessed Feb. 10, 2021).
[5] https://www.plumorganics.com/faqs/ (last accessed Feb. 10, 2021).
[6] *Id*.

---

**B. Heavy Metals**

34.     At all times during the Class Period, Plum knew or should have known that the Baby Foods contained heavy metals, had a risk of containing heavy metals, and/or were not sufficiently tested for heavy metals. During this time, Plum omitted any reference to the presence, or the risk of the presence, of heavy metals from the Baby Foods' packaging.

35.     Plum knew or should have known that heavy metals were a potentially dangerous contaminant that pose health risks to babies and children. Plum knew or should have known that the standards for the presence of heavy metals in baby food have become increasingly stringent in recent years.

36.     Plum knew or should have known that it owed consumers a duty of care to prevent, or at the very least, minimize, the presence, or risk of, of heavy metals in the Baby Foods.

37.     Plum knew or should have known that it owed consumers a duty of care to adequately test for heavy metals in the Baby Foods.

38.     Plum knew or should have known that consumers purchased the Baby Foods based on the reasonable expectation that Defendant manufactured the Baby Foods to the highest standards to be safe and healthy for consumption by babies. Plum knew or should have known that consumers reasonably inferred that Plum would hold the Baby Foods to the highest standards for preventing the presence, or risk, of heavy metals and for testing for heavy metals.

39.     A recent Congressional report from the Subcommittee on Economic and Consumer Policy found that many of the products produced by the country's largest commercial baby food manufacturers "contain significant levels of toxic heavy metals, including arsenic, lead, cadmium and mercury, which can endanger infant neurological development."[7]

40.     The Food and Drug Administration ("FDA") and the World Health Organization ("WHO") have declared arsenic, lead, cadmium, and mercury "dangerous to human health,

---

[7] Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, The Washington Post (Feb. 4, 2021), available at https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed Feb. 10, 2021).

particularly to babies and children, who are most vulnerable to their neurotoxic effects." Ex. 3 at 2.

41.     Arsenic, lead, mercury, and cadmium-- four heavy metals found in the Baby Foods --are neurotoxins, or poisons which affect the nervous system. Exposures to these four heavy metals "diminish quality of life, reduce academic achievement, and disturb behavior, with profound consequences for the welfare and productivity of entire societies." Ex. 1 at 13.

42.     The four heavy metals "can harm a baby's developing brain and nervous system" and cause negative impacts such as "the permanent loss of intellectual capacity and behavioral problems like attention-deficit hyperactivity disorder (ADHD)." Ex. 1 at 6. Even in trace amounts found in food, these heavy metals can alter the developing brain and erode a child's IQ. Ex. 1 at 1.

43.     Research continues to confirm that exposures to food containing arsenic, lead, mercury, and cadmium causes "troubling risks for babies, including cancer and lifelong deficits in intelligence[.]" Ex. 1 at 1.

*Arsenic*

44.     The Baby Foods may contain arsenic which, when children are exposed to it early in life, causes "cognitive deficits among school-age children exposed early in life, and neurological problems in adults who were exposed to arsenic-poisoned milk as infants." Ex. 1 at 13. "There is no evidence that the harm caused by arsenic is reversible." Ex. 1 at 13. Arsenic exposure also creates a risk of "respiratory, gastrointestinal, haematological, hepatic, renal, skin, neurological and immunological effects, as well as damaging effects on the central nervous system[.]" Ex. 3 at 10.

45.     Based on the risks associated with exposure to higher levels of arsenic, both the FDA and U.S. Environmental Protection Agency ("EPA") have set standards for the allowable limit of arsenic at 10 parts per billion ("ppb") for human consumption in apple juice (regulated by the FDA) and drinking water (regulated by the EPA as a maximum contaminant level).

CLASS ACTION COMPLAINT

46.     Moreover, the FDA has set the maximum allowable arsenic levels in bottled water at 10 ppb of inorganic arsenic.[8] The FDA is also considering limiting the action level for arsenic in rice cereals for infants to 100 ppb.[9]

47.     Again, Plum did not cooperate with the Subcommittee's investigation and refused to produce its testing standards and specific test results. Ex. 3 at 2. Plum instead produced a spreadsheet that "self-declared" that every product met criteria for each of the Heavy Metals, while declining to state what the criteria were.[10]

48.     Other reports indicate Plum sold products containing levels as high as 49.9 ppb arsenic. Ex. 1 at 27.

***Lead***

49.     The Baby Foods also may contain lead, which is another carcinogen and developmental toxin known to cause health problems.

50.     Lead exposure can seriously harm children's brain and nervous systems and is associated with a range of negative health outcomes including "behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth." Ex. 3 at 11.

51.     Exposure to lead in food builds up over time.  Buildup can and has been scientifically demonstrated to lead to the development of chronic poisoning, cancer, developmental, and reproductive disorders, as well as serious injuries to the nervous system, and other organs and body systems.

---

[8] Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, The Washington Post (Feb. 4, 2021), available at https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed Feb. 10, 2021).

[9] FDA, Draft Guidance for Industry: Inorganic Arsenic in Rice Cereals for Infants: Action Level (Apr. 2016), https://www.fda.gov/downloads/Food/GuidanceRegulation/GuidanceDocuments RegulatoryInformation/UCM493152.pdf (last accessed Feb. 10, 2021).

[10] Campbell, *Product Heavy Metal Test Results* (Dec. 11, 2019) (online at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/12.pdf) (last accessed Feb. 10, 2021).

---

52. Even very low exposure levels to lead "cause lower academic achievement, attention deficits and behavior problems. No safe level of exposure has been identified." Ex. 1 at 13.

53. One study found that "children age 0 to 24 months lose more than 11 million IQ points from exposure to arsenic and lead in food. Ex. 1 at 7. Additionally, studies have established a link between lead exposure and ADHD. Ex. 3 at 12.

54. Although there is no federal standard for lead in baby food, health experts, including the American Academy for Pediatrics, the Environmental Defense Fund, and Consumer Reports, have agreed that lead in baby foods should not exceed 1 ppb.[11] "The European Union has set the maximum lead level in infant formula to 20 ppb."[12]

55. On January 15, 2021, EPA issued Lead and Copper Rule Revisions, with a new "trigger level" for treatment of 10 ppb lead in drinking water, effective March 16, 2021. 86 F.R. 28691 (Jan. 15, 2021). Previously, EPA had required treatment for water exceeding lead concentrations of 15 ppb. 40 C.F.R. 141, Subpart I.

56. Again, Plum did not cooperate with the Subcommittee's investigation and instead produced a spreadsheet that "self-declared" that every product met criteria for each of the Heavy Metals, while declining to state what the criteria were.[13]

57. Other reports, however, indicate Plum sold products containing levels as high as 14 ppb lead. Ex. 1 at 22.

***Mercury***

58. The Baby Foods also may contain mercury, which increases the risk for cardiovascular disease and can cause vision, intelligence, and memory problems for children exposed in utero. Exposure to mercury has been linked to higher risk of lower IQ scores and

---

[11] Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, The Washington Post (Feb. 4, 2021), available at https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed Feb. 10, 2021).
[12] *Id.*
[13] Campbell, *Product Heavy Metal Test Results* (Dec. 11, 2019) (online at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/12.pdf) (last accessed Feb. 10, 2021).

16

intellectual disability. Ex. 1 at 14. Mercury exposure at two and three years of age has been positively associated with autistic behaviors among pre-school age children. Ex. 3 at 12-13.

59.     The EPA has set a maximum contaminant level for mercury in drinking water of 2 ppb. Ex. 3 at 32.

*Cadmium*

60.     Finally, the Baby Foods may contain cadmium which has been observed to cause anemia, liver disease, and nerve or brain damage in animals eating or drinking cadmium.

61.     Cadmium is linked to neurotoxicity, cancer, and kidney, bone, and heart damage. Scientists have reported a "tripling of risk for learning disabilities and special education among children with higher cadmium exposures, at levels common among U.S. children[.]" Ex. 1 at 14. Cadmium, like lead, "displays a troubling ability to cause harm at low levels of exposure." Ex. 1 at 14. The U.S. Department of Health and Human Services has determined that cadmium and cadmium compounds are known human carcinogens and the EPA has likewise determined that cadmium is a probable human carcinogen.[14]

62.     The EPA has set a maximum contaminant level for cadmium in drinking water of 5 ppb, 40 C.F.R. § 141.62; the FDA has set a maximum level in bottled water to 5 ppb, and the WHO set a maximum cadmium level in drinking water to 3 ppb. Ex. 3 at 29.

63.     Despite Plum's assertion that all of its Baby Foods met criteria for each of the Heavy Metals, reports indicate that Defendants sold products containing levels as high as 6.3 ppb cadmium. Ex. 1 at 27.

64.     Indeed, the FDA has acknowledged that "exposure to [these four heavy] metals are likely to have the most significant impact on public health" and has prioritized them in connection with its heavy metals workgroup looking to reduce the risks associated with human consumption of heavy metals.[15]

---

[14] ATSDR, Public Health Statement: Cadmium (Sept. 2012), https://www.atsdr.cdc.gov/phs/phs.asp?id=46&tid=15 (last accessed Feb. 10, 2021).
[15] FDA, Metals, https://www.fda.gov/Food/FoodborneIllnessContaminants/Metals/default.htm (last accessed Feb. 10, 2021).

CLASS ACTION COMPLAINT

65. Despite the known risks of exposure to these heavy metals, Plum has negligently, recklessly, and/or knowingly sold the Baby Foods without disclosing they may contain levels of arsenic, mercury, cadmium and lead to consumers like Plaintiffs.

66. Additionally, Plum knew or should have been aware that a consumer would be feeding the Baby Foods multiple times each day to his or her child, making it the primary source of food for the child. This leads to repeated exposure of the heavy metals to the child.

67. Plum has wrongfully and misleadingly advertised and sold the Baby Foods without any label or warning indicating to consumers that these products contain heavy metals, or that these toxins can over time accumulate in the baby's body to the point where poisoning, injury, and/or disease can occur.

68. Plum's omissions are material, false, misleading, and reasonably likely to deceive the public. This is true especially considering the long-standing campaign by Plum to market the Baby Foods as healthy, safe, and high-quality to induce consumers, such as Plaintiffs, to purchase the products. For instance, Plum markets the Baby Foods as "organic" and appropriate for certain "Stage[s]" (i.e. 4+ months, 6+ months etc.), both on the products' packaging and on Defendant's websites.

69. Using such descriptions and promises makes Plum's advertising campaign deceptive based on presence, or risk of, of heavy metals in the Baby Foods. Reasonable consumers, like Plaintiffs, would consider the mere presence or risk of heavy metals in the Baby Foods as a material fact in considering what baby food products to purchase. Plum's above-referenced statements, representations, partial disclosures, and omissions are false, misleading, and crafted to deceive the public as they create an image that the Baby Foods are healthy, safe, high-quality and free of contaminants such as arsenic and lead. Moreover, Plum knew or should have reasonably expected that the presence, or risk, of heavy metals in its Baby Foods is something an average consumer would consider in purchasing baby food. Plum's representations and omissions are false, misleading, and reasonably likely to deceive the public.

70. Moreover, reasonable consumers, such as Plaintiffs and other members of the Class (as defined herein), would have no reason to believe and/or anticipate that the Baby Foods are not

CLASS ACTION COMPLAINT

"organic" or appropriate for consumption by a baby in the stated "Stage." Non-disclosure and/or concealment of the presence, or risk of, heavy metals in the Baby Foods coupled with the misrepresentations alleged herein by Plum suggesting that the food is appropriate for consumption by babies is intended to and does, in fact, cause consumers to purchase a product Plaintiffs and members of the class would not have bought if the true quality was disclosed.  As a result of these false or misleading statements and omissions, Plum has generated substantial sales of the Baby Foods.

71. Plaintiffs bring this action individually and on behalf of all other similarly situated consumers who purchased the Baby Foods, in order to cause the disclosure of the presence, or risk, of heavy metals that pose a known risk to infants in the Baby Foods, to correct the false and misleading perception Plum has created in the minds of consumers that the Baby Foods are high quality, safe, and healthy, and to obtain redress for those who have purchased the Baby Foods.

## C. Perchlorate

72. At all times during the Class Period, Plum knew or should have known that the Baby Foods contained perchlorate, were at risk of containing perchlorate, and/or were not sufficiently tested for perchlorate. During this time, Plum omitted any reference to the presence or risk of perchlorate from the Baby Foods' packaging.

73. Plum knew or should have known that perchlorate is a potentially dangerous contaminant that poses health risks to babies and children.

74. Plum knew or should have known that it owed consumers a duty of care to prevent, or at the very least, minimize, the presence of perchlorate in the Baby Foods.

75. Plum knew or should have known that it owed consumers a duty of care to adequately test for perchlorate in the Baby Foods.

76. Plum knew that consumers purchased the Baby Foods based on the reasonable expectation that Defendant manufactured the Baby Foods to the highest standards to be safe and healthy for consumption by babies. Plum knew or should have known that consumers reasonably inferred that Plum would hold the Baby Foods to the highest standards for preventing the presence or risk of perchlorate and for testing for perchlorate.

CLASS ACTION COMPLAINT

77.     Perchlorate disrupts thyroid functions that are crucial to brain development. Perchlorate has been "linked to IQ loss among children born to mothers with thyroid dysfunction." Ex. 1 at 8.

78.     The levels of perchlorate in children's food has increased significantly from 2005. Perchlorate—which is both a naturally occurring and manmade chemical—was approved by the FDA in 2005 for use as an antistatic in plastic food packaging. In 2016, the FDA expanded the approval to cover dry food handling equipment. Hypochlorite bleach, which is used to disinfect food processing equipment, can also create perchlorate as a product of degradation.

79.     The dangers of perchlorate in human food are recognized by the FDA.[16] The EPA has also recognized the dangers of perchlorate in drinking water and has set the maximum contaminant level goal for perchlorate in drinking water of $56\,\mu g/L$. 85 F.R. 43990 (July 21, 2020).

80.     Still, certain Baby Foods are sold by Plum that may contain levels of perchlorate.

81.     Despite the risk and/or actual presence of these unnatural and potentially harmful chemicals, Plum prominently warrants, claims, features, represents, advertises, or otherwise markets the Baby Foods as "organic" and appropriate for consumption by a baby in the stated "Stage" and fails to disclose the presence, or risk of, heavy metals and perchlorate.

## IV.     PLUM FALSELY ADVERTISES THE BABY FOODS AS NUTRITIOUS AND HEALTHY WHILE OMITTING ANY MENTION OF THE RISK AND/OR ACTUAL PRESENCE OF HEAVY METALS AND PERCHLORATE.

82.     Plum formulates, develops, manufactures, labels, packages, distributes, markets, advertises, and sells its extensive lines of baby food products across the United States, including the Baby Foods.

83.     Plum positions the Baby Foods as "organic" products that are free from unnatural ingredients to place them within the premium category of baby food.

---

[16] FDA, Exploratory Survey Data on Perchlorate in Food 2004-2005, https://www.fda.gov/food/chemicals/exploratory-survey-data-perchlorate-food-2004-2005 (last accessed Feb. 10, 2021). ("Human exposure to sufficient doses of perchlorate can interfere with iodide uptake into the thyroid gland, disrupting its functions and potentially leading to a reduction in the production of thyroid hormones.").

CLASS ACTION COMPLAINT

84.     Plum had a duty to ensure that the Baby Foods lived up to these representations and marketing positioning the Baby Foods as high-quality and premium. As such, Plum knew or should have known that the Baby Foods had a high risk and/or actually included heavy metals, perchlorate, and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements, including only organic ingredients.

85.     Plum specifically promises on its website that it is "confident in the safety and quality of [its] products" and that it looks to guidance from leading health and regulatory bodies.

86.     Based on these false representations, Plum charges a premium, knowing that the claimed make-up of the Baby Foods (as well as all of the other alleged false and/or misleading representations discussed herein) is something an average consumer would consider as a reason in picking a more expensive baby food product. By negligently and/or deceptively representing, marketing, and advertising the Baby Foods as high-quality and safe for babies' consumption, Defendant wrongfully capitalized on, and reaped enormous profits from, consumers' strong preference for premium and organic baby food products.

87.     Additionally, Plum knew or should have known that its ingredients, and the final products, could contain materials such as toxins, heavy metals, and perchlorate, and yet they did not test all ingredients and finished products, including the Baby Foods, for such materials.

88.     The Baby Foods are available at numerous retail and online outlets throughout the United States, including in California, Minnesota, and Pennsylvania.

89.     Third-party testing has made clear that the Baby Foods may in fact contain levels of both heavy metals and/or perchlorate.

90.     As a result of Plum's omissions, a reasonable consumer would have no reason to suspect the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising, and statements in the Baby Foods without conducting his or her own scientific tests or reviewing third-party scientific testing of these products.

91.     Plum has wrongfully and misleadingly advertised and sold the Baby Foods without any label or warning indicating to consumers that these products may contain heavy metals,

perchlorate, and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising, and statements, or that these toxins can accumulate over time in the baby's body to the point where poisoning, injury, and/or disease can occur.

## V. PLUM HAD KNOWLEDGE AND NOTICE OF THEIR BREACHES OF THEIR EXPRESS AND IMPLIED WARRANTIES.

92. Defendants had sufficient notice of their breaches of express warranties. Plum has, and had, knowledge of the physical and chemical makeup of the Baby Foods. Plum also had exclusive knowledge of its suppliers and whether any of them supplied ingredients at risk for containing perchlorate.

93. Additionally, Plum received notice of the contaminants in their baby food products, including the Baby Foods, through the Healthy Babies Bright Futures nonprofit organization, which found levels of heavy metals and perchlorate in their baby food products.

94. Plum did not change its packaging or labeling to include a disclaimer that the Baby Foods contained, or may contain, any levels of heavy metals.

## VI. PRIVITY EXISTS WITH THE PLAINTIFFS AND THE PROPOSED CLASS.

95. Plum knew that consumers such as Plaintiffs and the proposed Class would be the end purchasers of the Baby Foods and the target of their advertising and statements.

96. Plum intended that the warranties, advertising, labeling, statements, and representations would be considered by the end purchasers of the Baby Foods, including Plaintiffs and the proposed Class.

97. Plum directly marketed to Plaintiffs and the proposed Class through statements on their website, labeling, advertising, and packaging.

98. Plaintiffs and the proposed Class are the intended beneficiaries of the expressed and implied warranties.

## CLASS ACTION ALLEGATIONS

99. Plaintiffs bring this action individually and on behalf of the following Class pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

22

CLASS ACTION COMPLAINT

All persons in the United States who, from October 1, 2015, to the present, purchased the Baby Foods for household or business use, and not for resale (the "Class").

100.     Plaintiff McKeon brings this action individually and on behalf of the following Minnesota Sub-Class:

All persons who are citizens of the State of Minnesota who, from October 1, 2015, to the present, purchased the Baby Foods for household or business use, and not for resale (the "Minnesota Sub-Class").

101.     Plaintiff Crawford brings this action individually and on behalf of the following Pennsylvania Sub-Class:

All persons who are citizens of the State of Pennsylvania who, from October 1, 2015, to the present, purchased the Baby Foods for household or business use, and not for resale (the "Pennsylvania Sub-Class").

102.     Excluded from the Class and Sub-Classes are the Defendants, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

103.     This action is brought and may be properly maintained as a class action.  There is a well-defined community of interests in this litigation and the members of the Class are easily ascertainable. Purchasers of the Baby Foods can identify their purchases through receipts, store rewards programs, and their own testimony.

104.     The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of all Class members in a single action will provide substantial benefits to the parties and Court.

105.     Questions of law and fact common to Plaintiffs and the Class include, but are not limited to, the following:

         a.   whether Plum owed a duty of care to Plaintiffs and the Class;

CLASS ACTION COMPLAINT

b. whether Plum knew or should have known that the Baby Foods contained, or may contain, heavy metals;

c. whether Plum knew or should have known that the Baby Foods contained, or may contain, perchlorate;

d. whether Plum wrongfully represented and continues to represent that the Baby Foods are organic and safe for human infant consumption;

e. whether Plum wrongfully represented and continues to represent that the Baby Foods are healthy, superior quality, nutritious and safe for consumption;

f. whether Plum wrongfully represented and continues to represent that the Baby Foods are "organic";

g. whether Plum wrongfully represented and continues to represent that the Baby Foods are appropriate for consumption by various "Stage[s]" of babies;

h. whether Plum wrongfully represented and continues to represent that the manufacturing of the Baby Foods are subjected to rigorous standards, including testing for heavy metals;

i. whether Plum wrongfully failed to disclose that the Baby Foods contained, or may contain, heavy metals and/or perchlorate;

j. whether Plum's representations in advertising, warranties, packaging, and/or labeling are false, deceptive, and misleading;

k. whether those representations are likely to deceive a reasonable consumer;

l. whether a reasonable consumer would consider the presence, or risk of, heavy metals and/or perchlorate as a material fact in purchasing baby food;

m. whether Plum had knowledge that those representations were false, deceptive, and misleading;

n. whether Plum continues to disseminate those representations despite knowledge that the representations are false, deceptive, and misleading;

24

o.  whether a representation that a product is healthy, superior quality, nutritious and safe for consumption and does not contain arsenic, mercury, cadmium, lead and/or perchlorate is material to a reasonable consumer;

p.  whether Plum's representations and descriptions on the labeling of the Baby Foods are likely to mislead, deceive, confuse, or confound consumers acting reasonably;

q.  whether Plum violated the laws of the State of California;

r.  whether Plum violated the laws of the State of Minnesota;

s.  Whether Plum violated the laws of the State of Pennsylvania;

t.  whether Plum breached its express warranties;

u.  whether Plum breached its implied warranties;

v.  whether Plum engaged in unfair trade practices;

w.  whether Plum engaged in false advertising;

x.  whether Plum's conduct was negligent per se;

y.  whether Plum made negligent and/or fraudulent misrepresentations and/or omissions;

z.  whether Plaintiffs and the members of the Class are entitled to actual, statutory, and punitive damages; and

aa. whether Plaintiffs and members of the Class are entitled to declaratory and injunctive relief.

106.    Plum engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other members of the Class. Identical statutory violations and business practices and harms are involved. Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

107.    Plaintiffs' claims are typical of those of the members of the Class in that they are based on the same underlying facts, events, and circumstances relating to Plum's conduct.

108.    Plaintiffs will fairly and adequately represent and protect the interests of the Classes, have no interests incompatible with the interests of the Class, and have retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

CLASS ACTION COMPLAINT

109.    Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Class is small such that, absent representative litigation, it would be infeasible for members of the Class to redress the wrongs done to them.

110.    Questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.

111.    As a result of the foregoing, class treatment is appropriate.

## CLAIMS FOR RELIEF

### COUNT I

**Breach of Express Warranty Against Defendants on Behalf of the Class (or, alternatively, the State Subclasses)**

112.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

113.    Plum marketed and sold the Baby Foods into the stream of commerce with the intent that the Baby Foods would be purchased by Plaintiffs and the Class.

114.    Plum expressly warranted, advertised, and represented to Plaintiffs and the Class that their Baby Foods are:

    a.  Organic; and

    b.  Appropriate for certain "Stage[s]" of babies.

115.    Plum made these express warranties regarding the Baby Foods' quality, ingredients, and fitness for consumption in writing through its website, advertisements, and marketing materials and on the Baby Foods' packaging and labels. These express warranties became part of the basis of the bargain that Plaintiffs and the Class entered into upon purchasing the Baby Foods.

116.    Plum's advertisements, warranties, and representations were made in connection with the sale of the Baby Foods to Plaintiffs and the Class. Plaintiffs and the Class relied on Plum's advertisements, warranties, and representations regarding the Baby Foods in deciding whether to purchase Plum's products.

117.    Defendant's Baby Foods do not conform to Plum's advertisements, warranties and representations in that they:

CLASS ACTION COMPLAINT

a.   Are not organic or suitable for consumption by human infants; and

b.   Contain, or may contain, levels of various heavy metals and/or perchlorate;

118.   Plum was on notice of this breach as they were aware of the included heavy metals and/or perchlorate in the Baby Foods and based on the public investigation by the Healthy Babies Bright Futures report that showed their baby food products as unhealthy.

119.   Privity exists because Plum expressly warranted to Plaintiffs and the Class through the warranting, packaging, advertising, marketing, and labeling that the Baby Foods were healthy, safe, and suitable for consumption and by failing to make any mention of heavy metals, perchlorate, and/or unnatural or other ingredients.

120.   As a direct and proximate result of Plum's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Baby Foods that were worth less than the price they paid and they would not have purchased at all had they known of the risk and/or presence of heavy metals, perchlorate, and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

121.   Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Plum's failure to deliver goods conforming to their express warranties and resulting breach.

## COUNT II
### Breach of Implied Warranty of Merchantability Against Defendants on Behalf of the Class (or, alternatively, the State Subclasses)

122.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

123.   Plum is a merchant engaging in the sale of goods to Plaintiffs and the Class.

124.   There was a sale of goods from Plum to Plaintiffs and the Class.

125.   At all times mentioned herein, Plum manufactured or supplied the Baby Foods, and prior to the time the Baby Foods were purchased by Plaintiffs and the Class, Plum impliedly warranted to them that the Baby Foods were of merchantable quality, fit for their ordinary use (consumption by babies), and conformed to the promises and affirmations of fact made on the Baby Foods' containers and labels, including that the food was high-quality and safe and appropriate for human infant

27

consumption. Plaintiffs and the Class relied on Plum's promises and affirmations of fact when they purchased the Baby Foods.

126.     The Baby Foods were not fit for their ordinary use, consumption by babies, and did not conform to Plum's affirmations of fact and promises as they contained, or were at risk of containing, heavy metals, perchlorate, and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

127.     The Baby Foods did not conform to Plum's affirmations of fact that they were organic because they contained the chemical perchlorate.

128.     Plum breached its implied warranties by selling Baby Foods that failed to conform to the promises or affirmations of fact made on the container or label as each product contained heavy metals, perchlorate, and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

129.     Plum was on notice of this breach, as it was aware of the heavy metals and/or perchlorate included, or at risk, in the Baby Foods, and based on the public investigation by Healthy Babies Bright Futures that showed Plum's baby food products as unhealthy and contaminated.

130.     Privity exists because Plum impliedly warranted to Plaintiffs and the Class through the warranting, packaging, advertising, marketing, and labeling that the Baby Foods were high-quality and suitable for consumption by babies, and by failing to make any mention of heavy metals, perchlorate, and/or unnatural or other ingredients.

131.     As a direct and proximate result of Plum's conduct, Plaintiffs and the Class have suffered actual damages in that they have purchased Baby Food that is worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of heavy metals, perchlorate, and/or unnatural or other ingredients.

132.     Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Plum's failure to deliver goods conforming to their implied warranties and resulting breach.

## COUNT III

**Fraudulent Misrepresentation Against Defendants on Behalf of the Class (or, alternatively, the State Subclasses)**

133.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

134.   Plum falsely represented to Plaintiffs and the Class that their Baby Foods are:

   (a) Organic; and

   (b) Appropriate for certain "Stage[s]" of babies.

135.   Plum intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiffs and the Class to purchase its Baby Foods.

136.   Plum knew that their representations about the Baby Foods were false in that the Baby Foods contained, or were at risk of containing, levels of heavy metals, perchlorate, and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements. Plum allowed their packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiffs and the Class.

137.   Plaintiffs and the Class did in fact rely on these misrepresentations and purchased the Baby Foods to their detriment. Given the deceptive manner in which Plum advertised, represented, and otherwise promoted the Baby Foods, Plaintiffs' and the Class's reliance on Plum's misrepresentations was justifiable.

138.   As a direct and proximate result of Plum's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals, perchlorate, and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

139.   Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

29

**COUNT IV**

**Fraud by Omission Against Defendants on Behalf of the Class (or, alternatively, the State Subclasses)**

140. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

141. Plum concealed from and failed to disclose to Plaintiffs and the Class that their Baby Foods contained, or were at risk of containing, heavy metals, perchlorate, and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

142. Plum was under a duty to disclose to Plaintiffs and the Class the true quality, characteristics, ingredients and suitability of the Baby Foods because: (1) Plum was in a superior position to know the true state of facts about its products; (2) Plum was in a superior position to know the actual ingredients, characteristics, and suitability of the Baby Foods for consumption by babies; and (3) Plum knew that Plaintiffs and the Class could not reasonably have been expected to learn or discover that the Baby Foods were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Baby Foods.

143. The facts concealed or not disclosed by Plum to Plaintiffs and the Class are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Baby Foods.

144. Plaintiffs and the Class justifiably relied on Plum's omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of the Baby Foods, which is inferior when compared to how the Baby Foods are advertised and represented by Plum.

145. As a direct and proximate result of Plum's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals, perchlorate, and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

146. Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

CLASS ACTION COMPLAINT

## COUNT V

**Negligent Misrepresentation Against Defendants on Behalf of the Class (or, alternatively, the State Subclasses)**

147.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

148.     Plum had a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the formulation, testing, manufacture, marketing, distribution, and sale of the Baby Foods.

149.     Plum breached its duty to Plaintiffs and the Class by formulating, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiffs and the Class that do not have the ingredients, qualities, characteristics, and suitability for consumption as advertised by Plum and by failing to promptly remove the Baby Foods from the marketplace or to take other appropriate remedial action.

150.     Plum knew or should have known that the ingredients, qualities, and characteristics of the Baby Foods were not as advertised or suitable for their intended use, consumption by infants, and were otherwise not as warranted and represented by Plum. Specifically, Plum knew or should have known that: (1) certain Baby Foods were not organic because they contained, or were at risk of containing, levels of perchlorate; (2) the Baby Foods were not nutritious, superior quality, pure, healthy and safe for consumption because they contained, or had a risk of containing, levels of heavy metals, perchlorate, and/or other unnatural ingredients or contaminants that do not conform to the packaging; (3) the Baby Foods were adulterated, or at risk of being adulterated, by heavy metals and perchlorate; and (4) the Baby Foods were otherwise not as warranted and represented by Plum.

151.     As a direct and proximate result of Plum conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known they contained, or were at risk of containing, heavy metals, perchlorate, and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

152.     Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

**COUNT VI**

**Unjust Enrichment Against Defendants on Behalf of the Class (or, alternatively, the State Subclasses)**

153.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

154.    Substantial benefits have been conferred on Plum by Plaintiffs and the Class through the purchase of the Baby Foods. Plum knowingly and willingly accepted and enjoyed these benefits.

155.    Plum either knew or should have known that the payments rendered by Plaintiffs and the Class were given and received with the expectation that the Baby Foods would have the qualities, characteristics, ingredients, and suitability for consumption represented and warranted by Plum. As such, it would be inequitable for Plum to retain the benefit of the payments under these circumstances.

156.    Plum's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Plum to retain the benefits without payment of the value to Plaintiffs and the Class.

157.    Plaintiffs and the Class are entitled to recover from Plum all amounts wrongfully collected and improperly retained by Plum, plus interest thereon.

158.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**COUNT VII**

**Violation of California's Consumer Legal Remedies Act, California Civil Code §§1750, *et Seq.*, Against Defendants on Behalf of the Class**

159.    Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

160.    Plaintiffs and each Class member is a "consumer," as that term is defined in California Civil Code section 1761(d).

161.    The Baby Foods are "goods," as that term is defined in California Civil Code section 1761(a).

162.    Plum is a "person" as that term is defined in California Civil Code section 1761(c).

32

163.    Plaintiffs and each proposed Class member's purchase of Defendant's products constituted a "transaction," as that term is defined in California Civil Code section 1761(e).

164.    Plum's conduct alleged herein violated the following provisions of California's Consumer Legal Remedies Act (the "CLRA"):

(a) California Civil Code section 1770(a)(5), by negligently, recklessly, and/or intentionally representing that the Baby Foods are:

i.  Organic; and

ii.  Appropriate for certain "Stage[s]" of babies.

(b) California Civil Code section 1770(a)(5), by negligently, recklessly, and/or intentionally representing that the Baby Foods are healthy, nutritious, made from the best ingredients, and safe for consumption, and by failing to make any mention of Heavy Metals in the Contaminated Baby Foods;

(b) California Civil Code section 1770(a)(7), by negligently, recklessly, and/or intentionally representing that the Baby Foods were of a particular standard, quality, or grade, when they were of another;

(c) California Civil Code section 1770(a)(9), by negligently, recklessly, and/or intentionally advertising the Baby Foods with intent not to sell them as advertised; and

(d) California Civil Code section 1770(a)(16), by representing that the Baby Foods have been supplied in accordance with previous representations when they have not.

165.    On February 12, 2021, counsel for Plaintiffs and the Class sent Plum written notice (via U.S. certified mail, return receipt requested) that they are in violation of the CLRA by selling the Baby Foods containing, or at risk of containing, heavy metals, perchlorate, and/or unnatural or other ingredients while claiming, among other things, that the Baby Foods are organic, and fit for consumption by infants.

166.    Assuming Plum fails to provide appropriate relief for their violations of CLRA sections 1770(a)(5), (7), (9), and (16) within thirty days of receipt of Plaintiffs' letter, in

CLASS ACTION COMPLAINT

accordance with CLRA section 1782(b), Plaintiffs and the Class are entitled, under CLRA section 1780, to recover and obtain the following relief for Plum's violations of CLRA sections 1770(a)(5), (7), (9), and (16):

> (a) Actual damages under CLRA section 1780(a)(1);
>
> (b) Restitution of property under CLRA section 1780(a)(3);
>
> (c) Punitive damages under CLRA section 1780(a)(4) and because Plum has engaged in fraud, malice, or oppression; and
>
> (d) Any other relief the Court deems proper under CLRA section 1780(a)(5).

167.    As a direct and proximate result of these violations, Plaintiffs and the Class have been harmed, and that harm will continue unless Plum is enjoined from using the misleading marketing described herein in any manner in connection with the advertising and sale of the Baby Foods.

168.    Plaintiffs seek an award of attorneys' fees pursuant to, *inter alia*, California Civil Code section 1780(e) and California Code of Civil Procedure section 1021.5.

## COUNT VIII
**Violation of California's False Advertising Law, California Business & Professions Code §§17500, *Et Seq*., Against Defendants on Behalf of the Class**

169.    Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

170.    California's False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code §17500.

171.    As set forth herein, Plum's claims that the Baby Foods are organic, nutritious, quality, pure, healthy, and safe for consumption by babies are literally false and likely to deceive the public.

172.    Plum's claims that the Baby Foods are organic, nutritious, superior quality, pure, healthy, and safe for consumption by babies are untrue or misleading, as is failing to make any disclose the presence or risk of heavy metals and/or perchlorate in the Baby Foods.

173.    Plum knew, or reasonably should have known, that all these claims were untrue or misleading.

34

174.     Plum's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiffs' desire to purchase these products in the future if they can be assured that, so long as the Baby Foods are, as advertised, nutritious, superior quality, pure, healthy, and safe for consumption and do not contain heavy metals, perchlorate and/or any other ingredients or contaminants that do not conform to the packaging claims.

175.     Plaintiffs and members of the Class are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Baby Foods.

### COUNT IX
### Violation of the Unfair Competition Law, California Business & Professions Code §§17200, Et Seq., Against Defendants on Behalf of the Class

176.     Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

177.     The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code §17200.

**Fraudulent**

178.     Plum's statements that the Baby Foods are nutritious, superior quality, pure, healthy, and safe for consumption by babies are literally false and likely to deceive the public, as is Plum's failing to make any mention of the presence or risk of heavy metals and/or perchlorate in the Baby Foods.

**Unlawful**

179.     As alleged herein, Plum has advertised the Baby Foods with false or misleading claims, such that Defendant's actions as alleged herein violate at least the following laws:

(a) The CLRA, California Business & Professions Code sections 1750, *et seq*.; and

(b) The False Advertising Law, California Business & Professions Code sections 17500, *et seq*.

**Unfair**

180.     Plum's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Baby Foods is unfair because Defendant's conduct was immoral, unethical,

unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

181.    Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Baby Foods is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the False Advertising Law and the CLRA.

182.    Plum's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Baby Foods is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one consumers, themselves, can reasonably avoid.

183.    In accordance with California Business & Professions Code section 17203, Plaintiffs and the Class seek an order enjoining Plum from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign. Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

184.    On behalf of themselves and the Class, Plaintiffs also seek an order for the restitution of all monies from the sale the Baby Foods, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

## COUNT X
### Violation of Minnesota Unlawful Trade Practices Act
### Minn. Stat. § 325D.13, *et seq.* on Behalf of Plaintiff McKeon and the Minnesota Sub-Class

185.    Plaintiffs incorporate by reference and allege each and every allegation contained above, as though fully set forth herein.

186.    Plum is a "person" within the meaning of the Minnesota Unlawful Trade Practices Act (MUTPA).

187.    Plum violated the MUTPA by knowingly misrepresenting the true quality and ingredients of the Baby Foods by falsely claiming that the Baby Foods are:

(a) "Organic"; and

36

(b) Appropriate for certain "Stage[s] of babies.

188.    Plum knew or should have known that the Baby Foods did not have the quality and ingredients described above because they contained, and/or had a material risk of containing heavy metals, perchlorate, and/or unnatural or other ingredients.

189.    Plum's pattern of knowing misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff McKeon and the Minnesota Sub-Class with respect to the Baby Foods' quality, ingredients, and suitability for consumption by babies.

190.    Plum intended that Plaintiff McKeon and the Minnesota Sub-Class would rely on Plum's misrepresentations, concealment, warranties, deceptions, and/or omissions regarding the Baby Foods' quality, ingredients, and suitability for consumption by babies.

191.    Plum's conduct and omissions described herein occurred repeatedly in Plum's trade or business and were capable of deceiving a substantial portion of the consuming public.

192.    The facts concealed or not disclosed by Plum were material facts in that Plaintiff McKeon and any reasonable consumer would have considered them in deciding whether to purchase the Baby Foods.  Had Plaintiff known the Baby Foods did not have the quality advertised by Plum, she would not have purchased the Baby Foods.

193.    Defendant's unlawful conduct is continuing, with no indication that Plum intends to cease this fraudulent course of conduct.

194.    As a direct and proximate result of Plum's conduct, Plaintiff McKeon and the Minnesota Sub-Class have suffered actual damages in that they purchased the Baby Food that was worth less than the price they paid.

195.    Plaintiff McKeon and the members of the Minnesota Sub-Class would not have purchased the Baby Food at all had they known of the presence or risk of heavy metals, perchlorate and/or any other ingredients or contaminants that do not conform to the packaging claims.

196.    Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325D.15, Plaintiff McKeon and the Minnesota Sub-Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Plum's violations of the MUTPA.

## COUNT XI
### Violation of Minnesota Uniform Deceptive Trade Practices Act
### Minn. Stat. § 325D.44, *et seq.* on Behalf of Plaintiff McKeon and the Minnesota Sub-Class

197.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

198.    Plum is a "person" within the meaning of the Minnesota Uniform Deceptive Trade Practices Act (MUDTPA).

199.    Plum willingly engaged in deceptive trade practices, in violation of the MUDTPA, by knowingly misrepresenting the true quality of the Baby Foods by falsely claiming that the Baby Foods:

(a) "Organic"; and

(b) Appropriate for certain "Stage[s]" of babies.

200.    Plum knew or should have known that the Baby Foods did not have the quality and ingredients described above because they contained, and/or had a material risk of containing, heavy metals, perchlorate, and/or any other ingredients or contaminants that do not conform to the packaging claims.

201.    Plum's misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff McKeon and the Minnesota Sub-Class with respect to the Baby Foods' ingredients, uses, benefits, standards, quality, grade, and suitability for consumption by babies.

202.    Plum intended that Plaintiff McKeon and the Minnesota Sub-Class would rely on Plum's misrepresentations, concealment, warranties, deceptions, and/or omissions regarding the Baby Foods' ingredients, uses, benefits, standards, quality, grade, and suitability for consumption by babies.

203.    Plum's conduct and omissions described herein occurred repeatedly in Plum's trade or business and were capable of deceiving a substantial portion of the consuming public.

204.    The  facts concealed or not disclosed by Plum were material facts in that Plaintiff McKeon and any reasonable consumer would have considered them in deciding whether to

CLASS ACTION COMPLAINT

purchase the Baby Foods. Had Plaintiff McKeon known the Baby Foods did not have the quality advertised by Plum, she would not have purchased the Baby Foods.

205. Plum intended that Plaintiff McKeon and the Minnesota Sub-Class would rely on the deception by purchasing the Baby Foods, unaware of the undisclosed material facts. This conduct constitutes consumer fraud.

206. Plum's unlawful conduct is continuing, with no indication that Plum intends to cease this fraudulent course of conduct.

207. As a direct and proximate result of Plum's conduct, Plaintiff McKeon and the Minnesota Sub-Class have suffered actual damages in that they purchased the Baby Food that was worth less than the price they paid.

208. Plaintiff McKeon and the members of the Minnesota Sub-Class would not have purchased the Baby Foods at all had they known of the presence of these heavy metals, perchlorate, and/or unnatural or other ingredients that do not conform to the packaging.

209. Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325D.45, Plaintiff McKeon and the Minnesota Sub-Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Plum's violations of the MUDTPA.

## COUNT XII
### Violation of Minnesota False Statement in Advertising Act
**Minn. Stat. § 325F.67,** *et. seq.* **on Behalf of Plaintiff McKeon and the Minnesota Sub-Class**

210. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

211. Plaintiff McKeon purchased "goods," specifically the Baby Foods discussed herein, and is a "person" within the meaning of the False Statement in Advertising Act (FSAA).

212. Plaintiff McKeon purchased the Baby Foods through Plum's statements on the packaging that contained numerous material assertions representations, and statements of fact made, published, disseminated, circulated, and placed before the public by Plum that were untrue, deceptive, and misleading.

213. By engaging in the conduct herein, Plum violated and continues to violate Minn. Stat. § 325F.67.

39

---

214.    Plum's misrepresentations, knowing omissions, and use of other sharp business practices include, by way of example, representations that the Baby Foods are:

(a) "Organic"; and

(b) Appropriate for certain "Stage[s]" of babies.

215.    Plum knew or should have known that the Baby Foods did not have the quality and ingredients described above because they contained, and/or had a material risk of containing, heavy metals, perchlorate, and/or any other ingredients or contaminants that do not conform to the packaging claims.

216.    Plum's misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff McKeon and the Minnesota Sub-Class with respect to the Baby Foods' ingredients, uses, benefits, standards, quality, grade, and suitability for consumption by babies.

217.    Plum's conduct and omissions described herein occurred repeatedly in Plum's trade or business and were capable of deceiving a substantial portion of the consuming public.

218.    The facts concealed or not disclosed by Plum were material facts in that Plaintiff McKeon and any reasonable consumer would have considered them in deciding whether to purchase the Baby Foods. Had Plaintiff McKeon known the Baby Foods did not have the quality advertised by Plum, she would not have purchased the Baby Foods.

219.    Plum intended that Plaintiff McKeon and the Minnesota Sub-Class would rely on the deception by purchasing the Baby Foods, unaware of the undisclosed material facts. This conduct constitutes consumer fraud.

220.    Plum's unlawful conduct is continuing, with no indication that Plum intends to cease this fraudulent course of conduct.

221.    As a direct and proximate result of Plum's conduct, Plaintiff McKeon and the Minnesota Sub-Class have suffered actual damages in that they purchased the Baby Foods that was worth less than the price they paid.

CLASS ACTION COMPLAINT

222.    Plaintiff McKeon and the members of the Minnesota Sub-Class would not have purchased the Baby Foods at all had they known of the presence of these non-conforming ingredients, contaminants, and/or unnatural or other ingredients.

223.    Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325F.67, Plaintiff McKeon and the Minnesota Sub-Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Plum's violations of the FSAA.

**COUNT XIII**
**Violation of Minnesota Prevention of Consumer Fraud Act**
**Minn. Stat. § 325F.69, *et. seq.* on Behalf of Plaintiff McKeon and the Minnesota Sub-Class**

224.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

225.    Plaintiff McKeon is a resident of the State of Minnesota.

226.    Plum is a "person" within the meaning of the Minnesota Prevention of Consumer Fraud Act (MPCFA).

227.    Plum's representations with respect to the Baby Foods were made in connection with the sale of the Baby Foods to Plaintiff McKeon and the Minnesota Sub-Class.

228.    Plum knowingly acted, used, and employed fraud, false pretenses, false promises, misrepresentations, misleading statements, and deceptive practices in connection with the sale of their Baby Foods.  Specifically, Plum falsely represented that its Baby Foods were:

(a) "Organic"; and

(b) Appropriate for certain "Stage[s]" of babies.

229.    Plum knew or should have known that the Baby Foods did not have the quality described above because they contained, and/or had a material risk of containing, heavy metals, perchlorate, and/or unnatural or other ingredients that do not conform to the packaging claims.

230.    Plum intended for Plaintiff McKeon and the Minnesota Sub-Class to rely on and accept as true these representations in deciding whether to purchase the Baby Foods.

231.    Plum's unfair or deceptive acts or practices were likely to deceive reasonable consumers about the Baby Foods' quality, ingredients, fitness for consumption and, by extension,

41

the true value of the Baby Foods. Plaintiff McKeon and the Minnesota Sub-Class relied on, and were in fact deceived by, Plum's representations and omissions respect to the Baby Foods' quality, ingredients, and fitness for consumption in deciding to purchase them over competitors' baby foods.

232.    The facts concealed or not disclosed by Plum were material facts in that Plaintiff McKeon and any reasonable consumer would have considered them in deciding whether to purchase the Baby Foods.  Had Plaintiff known the Baby Foods did not have the quality advertised by Plum, she would not have purchased the Baby Foods.

233.    Plum's unlawful conduct is continuing, with no indication that Plum intends to cease this fraudulent course of conduct.

234.    As a direct and proximate result of Plum's conduct, Plaintiff McKeon and the Minnesota Sub-Class have suffered actual damages in that they purchased the Baby Foods that were worth less than the price they paid.

235.    Plaintiff McKeon and the members of the Minnesota Sub-Class would not have purchased the Baby Foods at all had they known of the presence of these non-conforming ingredients, contaminants, and/or unnatural or other ingredients.

236.    Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325F.69, Plaintiff McKeon and the Minnesota Sub-Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Plum's violations of the MPCFA.

## COUNT XIV
**Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. Ann. §§201-1 et seq. (the "UTPCPL") on Behalf of Plaintiff Crawford and the Pennsylvania Sub-Class**

237.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

238.    Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. Ann. §§201-1 et seq. (the "UTPCPL") makes unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

42

239. Plum is a manufacturer, marketer, seller, and distributor of the Baby Foods.

240. Plum markets and sells the Baby Foods with express warranties created on the Products' packaging, labeling, advertisements, marketing literature, and website regarding the qualities, ingredients, and benefits of the Baby Foods.

241. Plaintiff Crawford and the Pennsylvania Sub-Class purchased the Baby Foods for personal, household, or family use.

242. Plum misrepresented the quality of the Baby Foods and the ingredients contained therein on their labels in violation of the UTPCL.

243. Plum's deceptive, false and misleading statements deceived Plaintiff Crawford and Pennsylvania Sub-Class members and deceived a substantial segment of the target consumer audience in violation of the UTPCL.

244. The conduct described above and throughout this Complaint took place within the Commonwealth of Pennsylvania and constitutes unfair methods of competition or unfair or deceptive acts or practices pursuant to §§201-2(4)(v), (vii), and (xxi) of the UTCPL.

245. In violation of the UTPCPL, Defendant omitted and concealed material facts from Plaintiff Crawford and other Pennsylvania Sub-Class members regarding the quality, characteristics, and benefits of the Baby Foods.

246. The omissions and misrepresentations described herein were likely to deceive consumers into purchasing the Baby Foods.

247. Plum knew or reasonably should have known that its representations about the Baby Foods were false, that the Baby Foods contained, or were at risk of containing heavy metals, chemicals or toxins, and otherwise were not as warranted and represented by Plum.

248. Plum knew or should have known, at the time the Baby Foods left their control that they contained heavy metals, chemicals or toxins, and were not made of ingredients fit for consumption by babies.

249. Plum's deception is material as it influenced purchasing and payment decisions.

250. Plaintiff Crawford and Pennsylvania Sub-Class members have been damaged as a direct and proximate result of defendant's deceptive and unfair practices.

43

251.    Plum intended that Plaintiff Crawford and other Pennsylvania Sub-Class members rely on their presentations, as their reliance was crucial to Plum being able to command a premium for the Baby Foods.

252.    Plum deceived and continues to deceive consumers about the quality and ingredients of its Baby Foods as well as the fitness of these products for ingestion by babies. This conduct constitutes unfair or deceptive acts or practices within the meaning of the UTPCPL. This illegal conduct by Plum is continuing, with no indication that it will cease.

253.    Plum's actions in connection with the manufacture and distribution of the Baby Foods as set forth herein evidence a lack of good faith, honesty in fact, and observance of fair dealing so as to constitute unconscionable commercial practices, in violation of the UTPCPL.

254.    Plum acted willfully, knowingly, intentionally, unconscionably, and with reckless indifference when it committed these acts of consumer fraud.

255.    Plum intended that Plaintiff Crawford and the other Pennsylvania Sub-Class members rely on the acts of concealment, omissions and misrepresentations regarding the nature of the Baby Foods so that Plaintiff Crawford and the other Pennsylvania Sub-Class members would purchase the Baby Foods.

256.    Plaintiff Crawford and the other Pennsylvania Sub-Class members relied on the acts of concealment, omissions, and misrepresentations regarding the nature of the Baby Foods.

257.    Plaintiff Crawford and the other Pennsylvania Sub-Class members, had Plum disclosed to them all material information regarding the Baby Foods, would have considered the omitted information material to their decision to purchase the Baby Foods at the price they paid.

258.    As a direct proximate result of Plum's misrepresentations and omissions, Plaintiff Crawford and the other members of the Pennsylvania Sub-Class suffered direct economic loss by purchasing the Baby Foods at a premium, and unwarranted, price. Had Plaintiff Crawford and other members of the Pennsylvania Sub-Class known the heavy metals, chemicals or toxins content of the Baby Foods, they would not have bought them, or they would not have paid the premium price that they did.

259.    Plaintiff Crawford and Pennsylvania Sub-Class Members are entitled to recover compensatory damages, plus interest, attorneys' fees, and costs.

260.    Plum's conduct was intentional, willful, wanton, malicious, and egregious, entitling Plaintiff Crawford and members of the Pennsylvania Sub-Class to recover actual compensatory and statutory damages, as well as attorneys' fees and costs of suit, to the fullest extent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, prays for judgment against Plum as to each and every count, including:

A.    An order declaring this action to be a proper class action, appointing Plaintiffs and their counsel to represent the Class, and requiring Plum to bear the costs of class notice;

B.    An order enjoining Plum from selling the Baby Foods until the levels of heavy metals and/or perchlorate are removed or full disclosure of the presence of such appears on all labels, packaging, and advertising;

C.    An order enjoining Plum from selling the Baby Foods in any manner suggesting or implying that they are healthy, organic, and safe for consumption;

D.    An order requiring Plum to engage in a corrective advertising campaign and engage in further necessary affirmative injunctive relief, such as recalling existing products;

E.    An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Plum from continuing the unlawful practices alleged herein, and injunctive relief to remedy Plum's past conduct;

F.    An order requiring Plum to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of law, plus pre- and post-judgment interest thereon;

G.    An order requiring Plum to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

H.    An order requiring Plum to pay all actual and statutory damages permitted under the counts alleged herein;

I.   An order requiring Plum to pay punitive damages on any count so allowable;

J.   An order awarding attorney's fees and costs, including the costs of pre-suit investigation, to Plaintiffs and the Class; and

K.   An order providing for all other such equitable relief as may be just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated:  February 15, 2021                    Respectfully submitted,

                                             */s/Dennis Stewart*
                                             Dennis Stewart (SBN 99152)
                                             **GUSTAFSON GLUEK PLLC**
                                             600 B Street
                                             17th Floor
                                             San Diego, CA 92101
                                             Tel: (619) 595-3299
                                             dstewart@gustafsongluek.com

                                             Daniel E. Gustafson
                                             Amanda M. Williams
                                             Raina C. Borrelli
                                             Mary M. Nikolai
                                             **GUSTAFSON GLUEK PLLC**
                                             Canadian Pacific Plaza
                                             120 South Sixth Street, Suite 2600
                                             Minneapolis, MN 55402
                                             Tel: (612) 333-8844
                                             dgustafson@gustafsongluek.com
                                             awilliams@gustafsongluek.com
                                             rborrelli@gustafsongluek.com
                                             mnikolai@gustafsongluek.com

                                             Kenneth A. Wexler
                                             Kara A. Elgersma
                                             **WEXLER WALLACE, LLP**
                                             55 West Monroe, Suite 3300
                                             Chicago, IL 60603
                                             Tel: (312) 346-2222
                                             kaw@wexlerwallace.com
                                             kae@wexlerwallace.com

46

---

CLASS ACTION COMPLAINT

Kevin Landau
Miles Greaves
**TAUS, CEBULASH & LANDAU, LLP**
80 Maiden Lane, Suite 1204
New York, NY 10038
Tel: (212) 931-0704
klandau@tcllaw.com
mgreaves@tcllaw.com

Simon B. Paris
Patrick Howard
**SALTZ, MONGELUZZI, &**
**BENDESKY, P.C.**
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Tel: (215) 575-3895
sparis@smbb.com
phoward@smbb.com

Matthew D. Schelkopf
Lori G. Kier
Davina C. Okonkwo
**SAUDER SCHELKOPF**
1109 Lancaster Avenue
Berwyn, PA 19312
Tel: (610) 200-0581
mds@sstriallawyers.com
lgk@sstriallawyers.com
dco@sstriallawyers.com

***Attorneys for Plaintiffs***

CLASS ACTION COMPLAINT