# EXHIBIT F

LOCKRIDGE GRINDAL NAUEN P.L.L.P.
Robert K. Shelquist
Rebecca A. Peterson
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: rkshelquist@locklaw.com
          rapeterson@locklaw.com

Attorneys for Plaintiffs

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| Ludmila Gulkarov, Janine Torrence, Kelly McKeon, and Josh Crawford, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> Plum PBC, and Plum, Inc., <br><br> Defendants. | Case No. 7:21-cv-1534 <br><br> **PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS** |

PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS
532425.1
862279.1

**PROPOUNDING PARTY:** PLAINTIFFS LUDMILA GULKAROV, JANINE TORRENCE, KELLY MCKEON, AND JOSH CRAWFORD

**RESPONDING PARTIES:** DEFENDANTS PLUM, PBC AND PLUM, INC.

**SET NUMBER:** ONE (1)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, PLAINTIFFS Ludmila Gulkarov, Janine Torrence, Kelly McKeon, and Josh Crawford request that DEFENDANTS Plum, PBC and Plum, Inc. respond to the following document requests in writing and under oath, within thirty (30) days from the date of service.

**I.      DEFINITIONS**

1.      The term "Plum" refers to DEFENDANTS Plum, PBC and Plum, Inc., as well as their predecessors, successors, parents, subsidiaries, divisions, or affiliates (foreign or domestic), and respective current and former officers, directors, agents, attorneys, accountants, employees, partners, or other persons occupying similar positions or performing similar functions, and all other persons acting or purporting to act on its behalf.

2.      The term "HARMFUL HEAVY METALS," as used herein, includes, but is not limited to arsenic, cadmium, mercury, and lead.

3.      "CLASS PERIOD" means from February 10, 2015, to the present.

4.      The term "COMMUNICATION" means any exchange of information by any means of transmission, sending or receipt of information of any kind by or through any means including, but not limited to speech, writings, documents, language (machine, foreign or otherwise) of any kind, computer electronics or electronic data, sound, radio or video signals, telecommunication, telephone, teletype, facsimile, telegram, microfilm, microfiche, photographic film of all types or other media of any kind.

5.      The term "CONCERN" and all derivatives thereof means about, addressing, alluding to, analyzing, commenting upon, comprising, in connection with, considering, constituting, containing, defining, describing, determining, disclosing, discussing, embodying, evaluating, evidencing, examining, explaining, regarding, in respect of, memorializing, mentioning, noting, pertaining to, recording, referring to, relating to, reflecting, regarding, relevant

to, respecting, responding to, setting forth, showing, stating, studying, summarizing, supporting, or touching upon, either directly or indirectly, in whole or in part, and should be given the broadest possible scope consistent with the Federal Rules of Civil Procedure.

6. The term "DEFENDANTS" refers to Plum, PBC and Plum, Inc.

7. The term "DOCUMENTS" is intended to have the broadest meaning permitted, and includes, without limitation all written, typed, electronically recorded or other graphic matter, however produced or reproduced, of any kind or description, whether sent or received or neither, including originals, non-identical copies, preliminary versions or revisions of documents, whether or not completed and drafts and both sides thereof, in any medium whatsoever, including: letters, correspondence, electronic mail, papers, memoranda, contracts, agreements, books, journals, ledgers, statements, reports, studies, bills, billings, invoices, financial statements, financial analyses, worksheets, jottings, projections, notes, abstracts, advertisements, drawings, audits, charges, balance sheets, income statements, checks, diagrams, blueprints, diaries, calendars, logs, recordings, instructions, lists, minutes of meetings, orders, resolutions, telegrams, wires, cables, telexes, faxes, messages, resumes, summaries, tabulations, tallies, statistical analyses, tape recordings, videotapes, and all other writing or tangible things on which any information is recorded or reproduced, and any and all amendments or supplements to all the foregoing, whether prepared by a party or any other person.

8. "MARKETING CLAIMS," means any advertising claim or implication in DEFENDANTS' advertising that the ingredients used to make the PRODUCTS are healthy, nutritious, organic, made from the best ingredients, and safe for consumption.

9. "PERSON" includes any natural person, firm, association, organization, partnership, limited partnership, sole partnership, trust, corporation, or legal or government entity, association or body.

10. "PLAINTIFFS" refers to PLAINTIFFS Ludmila Gulkarov, Janine Torrence, Kelly McKeon, and Josh Crawford.

11. "POLICY" or "POLICIES" means any rule(s), procedure(s), or course(s) of conduct, whether formal or informal, written or unwritten, recorded or unrecorded, which were recognized or followed explicitly or implicitly.

12. "PRACTICE(S)" refers to a habitual or customary way of operation.

13. The terms "DEFENDANTS' PRODUCTS" or "PRODUCTS" as used herein, include, but is not limited to the following of DEFENDANTS' food products: Just Sweet Potato Organic Baby Food; Just Peaches Organic Baby Food; Just Prunes Organic Baby Food; Apple & Carrot Organic Baby Food; Apple, Raisin, & Quinoa Organic Baby Food; Pumpkin, Banana, Papaya, & Cardamom Organic Baby Food; Pear, Purple Carrot, & Blueberry Organic Baby Food; Pear, Spinach, & Pea Organic Baby Food; Mighty 4 Blends- Banana, Blueberry, Sweet Potato, Carrot, Greek Yogurt & Millet Tots Pouch and Banana, Kiwi, Spinach, Greek Yogurt & Barley Tots Pouch; Little Teethers Organic Multigrain Teething Wafers- Banana with Pumpkin and Blueberry; Mighty Morning Bar- Blueberry Lemon and Apple Cinnamon; Butternut Squash, Carrot, Chickpea & Corn Organic Baby Food; Apple with Spinach Super Puffs; Mango with Sweet Potato Super Puffs; Mighty Snack Bars- Blueberry and Strawberry; Teensy Snacks- Berry.

14. "TEST(S)" or "TESTING" means all tests, inspections, studies, evaluations, and analyses of DEFENDANT'S PRODUCTS and ingredients used to make the PRODUCTS, including but not limited to the PRODUCTS' composition, chemical or physical properties, and formulation.

15. "QUALITY CONTROL" means the TESTING or other protocols used to ensure the ultimate quality of DEFENDANT'S PRODUCTS, including, but not limited to, the stages of production at which TESTS were performed; the number of PRODUCTS sampled per day; additional TESTING performed during periods of start-up and shut-down; specific types of TESTING performed; and chemical composition analyses conducted on the ingredients or PRODUCTS.

16. The terms "TARGET MARKET(S)" and "TARGET CUSTOMER(S)" refers to particular groups of potential customers, identified by features or statistics such as age, income, level of education, or geographic location, and at whom DEFENDANT aimed its products.

17. The terms "YOU" or "YOUR" refer to DEFENDANTS and their predecessors, successors, parents, subsidiaries, divisions, or affiliates (foreign or domestic), and their respective current and former officers, directors, agents, attorneys, accountants, employees, partners, or other persons occupying similar positions or performing similar functions, and all other persons acting or purporting to act on its behalf.

**II.    GENERAL INSTRUCTIONS**

1. All DOCUMENTS shall be produced in the order they are kept in the ordinary course of business, and shall be produced in their original folders, binders, covers or containers, or facsimile thereof.

2. These requests relate to all DOCUMENTS which are in YOUR possession, custody or control, or in the possession, custody or control of YOUR predecessors, successors, parents, subsidiaries, divisions or affiliates, or YOUR respective officers, directors, agents, attorneys, accountants, employees, partners, or other PERSONS occupying similar positions or performing similar functions. A DOCUMENT is deemed to be in YOUR possession, custody, or control if it is in YOUR physical custody, or if it is in the physical custody of any other PERSON and YOU (a) own such DOCUMENT in whole or in part, (b) have a right, by contract, statute, or otherwise, to use, inspect, examine, or copy such DOCUMENT on any terms, (c) have an understanding, express or implied, that YOU may use, inspect, examine, or copy such DOCUMENT on any terms, or (d) have, as a practical matter, been able to use, inspect, examine, or copy such DOCUMENT when YOU sought to do so.

3. YOU shall produce the original of each DOCUMENT described below or, if the original is not in YOUR custody, then a copy thereof, and in any event, all non-identical copies which differ from the original or from the other copies produced for any reason, including, but not limited to, the making of notes thereon.

4. Format of Production

(a) All DOCUMENTS, including all electronically stored materials and information ("ESI"), will be produced in electronic format, with standard load files suitable for

loading into a litigation support database. The load files will define DOCUMENT breaks, attachments, and other information identified herein.

    (i) *Document Cross-Reference File* ("*.DAT File*"). DEFENDANTS will provide a cross-reference file that identifies the start and end of the DOCUMENT, its attachments, and its corresponding metadata. Such metadata will include, but is not limited to: BEGDOC; ENDDOC; BEGATTACH; ENDATTACH; CUSTODIAN; TO; FROM; CC; BCC; SUBJECT; DOCTITLE; ORIGPATH; DATESENT; DATERCVD; DATECREATED; AUTHOR; DATELASTMODIFIED; MD5_HASH; DOCPAGECOUNT; VOLUME; NATIVELINK; CONVERSATIONINDEX; OCRFILEPATH.

    (ii) *Cross-Reference or Linking File* ("*.OPT File*"). DEFENDANTS will provide a cross-reference file that facilitates the linking of any produced image TIFF file with the litigation database. This cross-reference file will contain fields such as the unique DOCUMENT ID (i.e., BegBates) and the file path of the corresponding image or native file.

  (b) DEFENDANTS will produce all ESI, including e-mails, as kept in the normal course of business in its fully functional native format (e.g., Outlook mail message file, formula-functional Excel spreadsheets, PowerPoint presentations, Word documents, etc.), with all available metadata intact and identify the file, source, and custodian from which each DOCUMENT was obtained.

  (c) DEFENDANTS will produce all ESI as a processed native production with branded natives and proper load files.

  (d) For all ESI produced, DEFENDANTS will maintain family relationships among all parents and attachments by ensuring that attachments immediately follow their parent e-mail or other file, and setting the "BEGATTACH" and "ENDATTACH" metadata fields appropriately.

  (e) If DEFENDANTS determine that an ESI file needs to be redacted on any asserted privilege ground, the file will be rendered in TIFF, and the TIFF will be redacted and produced. However, to the extent that the text is searchable in the native format, DEFENDANTS

1  will provide searchable text for those portions of the DOCUMENT that have not been
2  redacted.  Metadata associated with these redacted ESI files will be produced to the extent that it
3  does not disclose information designed to be protected by the redaction.

4      (f)    If DEFENDANTS intend to produce any ESI that exists in encrypted format
5  or is password protected, the means of gaining access to those files must be provided.

6      (g)    DEFENDANTS will provide extracted text for each DOCUMENT
7  produced.  Each extracted text file will be produced as a .txt file with the filename corresponding
8  to the Bates number of the associated DOCUMENT.

9      (h)    DEFENDANTS will brand all TIFF images in the lower right-hand corner
10 with its corresponding Bates number, using a consistent font type and size.  The Bates number
11 must not obscure any part of the underlying image.

12     (i)    All TIFF image file names will be identical to the corresponding Bates
13 numbered images, with a ".tif" file extension.

14     (j)    DEFENDANTS will use a CD, DVD, hard drive, or share third-party FTP
15 site for its ESI production, and will cooperate in good faith to use the highest-capacity available
16 media to minimize associated overhead.  DEFENDANTS will label the physical media with the
17 production date, media volume name, and DOCUMENT number range.

18     5.    Parties will jointly agree on the steps to be taken to reduce duplication of
19 ESI.  DEFENDANTS will maintain references to all removed duplicate files.

20     6.    If production of DOCUMENTS is withheld on the ground of privilege, as to each
21 such withheld DOCUMENT state the following information:

22     (a)    Which privilege is claimed;

23     (b)    A precise statement of the facts upon which said claim of privilege is based;

24     (c)    The following information describing each purportedly privileged
25 DOCUMENT:

26     (i)    Its nature, e.g., agreement, letter, memorandum, tape, etc.;

27     (ii)    The date it was prepared;

28     (iii)    The date it bears;

      (iv)    The date it was sent;

      (v)    The date it was received;

      (vi)    The number of pages in and the nature and title of the DOCUMENTS, and a description of the general subject matter of the DOCUMENT or COMMUNICATION;

      (vii)    Any identifying index or reference number for the DOCUMENT or the file in which the DOCUMENT is found, as well as the name of any such file;

      (viii)    The identify of each and every attachment or enclosure for the DOCUMENT;

      (ix)    The name, employer, position, and address of each author, preparer (other than stenographic or clerical personnel), sender, addressee and recipient of the DOCUMENT and the name, employer, position, and address of each participant in or witness to the COMMUNICATION;

      (x)    The full name, employer, position, and address of each PERSON now in possession of the original or a copy of the DOCUMENT;

      (xi)    The DOCUMENT request to which the information in the DOCUMENT is responsive; and

      (xii)    A statement as to whom each identified PERSON represented or purported to represent at all relevant times;

(d)    A precise description of the place where each copy of that DOCUMENT is kept, including the title or description of the file in which said DOCUMENT may be found and the location of such file.

7.    Whenever a DOCUMENT is not produced in full or is produced in redacted form, so indicate on the DOCUMENT and state with particularity the reason or reasons it is not being produced in full and describe to the best of YOUR knowledge, information, and belief, and with as much particularity as possible, those portions of the DOCUMENT which are not being produced.

PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT

8. If a DOCUMENT responsive to these requests was at any time in YOUR possession, custody, or control but is no longer available for production, as to each such DOCUMENT state the following information:

    (a) The DOCUMENT'S file or code number;

    (b) The nature and type of the DOCUMENT;

    (c) A description of the DOCUMENT'S contents;

    (d) The form of the DOCUMENT and its mode of storage, e.g., paper, cards, tapes, film, electronic, facsimile, computer storage devices, videotape, or other medium;

    (e) The number of pages of the DOCUMENT;

    (f) The names and addresses of the DOCUMENT'S authors and the name and address of the company by which the authors were employed;

    (g) The dates the DOCUMENT was in YOUR custody, possession, and control and the individuals who had such custody, possession, or control of the DOCUMENT, along with their position;

    (h) Whether the DOCUMENT is missing, damaged, destroyed, transferred, or otherwise disposed of, the date that action occurred or was discovered, and the PERSONS who took that action and the PERSONS who ordered, directed, advised or approved that action;

    (i) The DOCUMENT'S current location and the name and address of its current custodian, if any; and

    (j) All PERSONS having knowledge of the information contained in the DOCUMENT.

9. With respect to any category of DOCUMENTS, if the production of which YOU contend is in some way "burdensome" or "oppressive," please state the specific reasons for that objection.

10. The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the following requests inclusive rather than exclusive; the singular includes the plural and the plural includes the singular; and the use of the verb in any tense shall be construed

as the use of the verb in all other tenses whenever necessary to bring within the scope of the following requests DOCUMENTS that may otherwise be construed to be outside their scope.

11.     The relevant time period for each of the requests shall be the CLASS PERIOD unless otherwise specified in the request.

### III.     REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**

DOCUMENTS sufficient to show the relationship between DEFENDANTS and the PRODUCTS, including, without limitation, the entity's roles and responsibilities as they relate to the ingredients, ingredient sourcing, formulation, ingredient TESTING, marketing, manufacture, packaging, sales, and distribution of any of the PRODUCTS.

**REQUEST NO. 2:**

All DOCUMENTS CONCERNING the marketing, advertising, or labeling of any of DEFENDANTS' PRODUCTS with the MARKETING CLAIMS, including but not limited to draft and final copies of advertisements, labels, and marketing materials that were disseminated to consumers.

**REQUEST NO. 3:**

All DOCUMENTS CONCERNING the presence of HEAVY METALS or Perchlorate in DEFENDANTS' PRODUCTS.

**REQUEST NO. 4:**

All DOCUMENTS CONCERNING any actual and/or estimated increases in sales due to the marketing, advertising, and/or labeling of DEFENDANTS' PRODUCTS with the MARKETING CLAIMS including but not limited to internal projections, reports, research, analyses, surveys, studies, sales data comparisons (e.g. year-over-year), and internal communications.

**REQUEST NO. 5:**

All DOCUMENTS CONCERNING marketing budgets, marketing plans, and communications between and among members of DEFENDANTS' marketing team relating to marketing the PRODUCTS with the MARKETING CLAIMS.

**REQUEST NO. 6:**

All DOCUMENTS CONCERNING any market research and/or analyses that form the basis of the MARKETING CLAIMS made in the marketing, advertising, and/or labeling of DEFENDANTS' PRODUCTS, including but not limited to surveys, studies, and internal communications.

**REQUEST NO. 7:**

All DOCUMENTS CONCERNING DEFENDANTS' TARGET CUSTOMER(S) or TARGET MARKET(S), including but not limited to surveys, studies, and internal communications.

**REQUEST NO. 8:**

All DOCUMENTS CONCERNING how and whether the use of the MARKETING CLAIMS impact consumer purchasing decisions, including but not limited to surveys, studies, and internal communications.

**REQUEST NO. 9:**

All DOCUMENTS CONCERNING whether the presence of any HARMFUL HEAVY METALS or Perchlorate in any of DEFENDANTS' PRODUCTS impacts consumer purchasing decisions or willingness to pay for DEFENDANTS' PRODUCTS.

**REQUEST NO. 10:**

ALL DOCUMENTS CONCERNING COMMUNICATIONS to or from DEFENDANTS relating to ingredients in the PRODUCTS and whether they reflect the MARKETING CLAIMS or contain HARMFUL HEAVY METALS or Perchlorate, including but not limited to communications from regulators (e.g., FDA, FTC), federal and state governments, self-regulatory organizations, industry or trade organizations, competitors, retailers, third-party advertising agencies and market research firms, regardless of whether or not DEFENDANTS engaged, hired, contracted, or did business with the agency, or firm, and regardless of whether or not DEFENDANTS responded or replied to those COMMUNICATIONS.

**REQUEST NO. 11:**

ALL DOCUMENTS CONCERNING COMMUNICATIONS with, from, or to consumers regarding DEFENDANTS' PRODUCTS containing any of the HARMFUL HEAVY METALS or Perchlorate.

**REQUEST NO. 12:**

ALL DOCUMENTS CONCERNING COMMUNICATIONS with, from, or to consumers regarding the ingredients in DEFENDANTS' PRODUCTS and whether or not they reflect the MARKETING CLAIMS.

**REQUEST NO. 13:**

All DOCUMENTS CONCERNING any change in the use of any ingredients in DEFENDANTS' PRODUCTS as a result of that ingredient containing HARMFUL HEAVY METALS or Perchlorate.

**REQUEST NO. 14:**

All DOCUMENTS and COMMUNICATIONS reflecting discussions, proposals, or suggestions to alter the marketing, advertising, and/or labeling of the DEFENDANTS' PRODUCTS in any way due to the presence of any HARMFUL HEAVY METALS or Perchlorate.

**REQUEST NO. 15:**

All DOCUMENTS CONCERNING any research, TESTING, and/or analysis that support the MARKETING CLAIMS made in the marketing, advertising, and/or labeling of DEFENDANTS' PRODUCTS.

**REQUEST NO. 16:**

All DOCUMENTS CONCERNING the standards and specifications the DEFENDANTS require the suppliers of the ingredients used in their PRODUCTS to meet.

**REQUEST NO. 17:**

All DOCUMENTS CONCERNING the standards, practices, and protocols implemented or referenced during the manufacturing process of DEFENDANTS' PRODUCTS.

**REQUEST NO. 18:**

All DOCUMENTS CONCERNING any QUALITY CONTROL or quality assurance program for DEFENDANTS' PRODUCTS, including but not limited to TESTING of ingredients, production line TESTING, and TESTING to determine whether ingredients or products meet production specifications.

**REQUEST NO. 19:**

DOCUMENTS sufficient to identify each SKU (stock-keeping unit) used for DEFENDANTS' PRODUCTS during the CLASS PERIOD.

**REQUEST NO. 20:**

All DOCUMENTS sufficient to show the monthly and annual sales of DEFENDANTS' PRODUCTS by SKU (stock-keeping unit) by state from February 10, 2015, to the present.

**REQUEST NO. 21:**

All DOCUMENTS sufficient to show the nature of DEFENDANTS' business relationships with any third parties with responsibilities during the CLASS PERIOD that relate to: (i) research and development and formulation of the PRODUCTS; (ii) ingredients in any of the PRODUCTS, including ingredient sourcing and TESTING; (iii) manufacturing, packaging, and distributing any of the PRODUCTS; and (iv) advertisement of any of the PRODUCTS.

**REQUEST NO. 22:**

All DOCUMENTS, including but not limited to COMMUNICATIONS, CONCERNING any change in formulation of DEFENDANTS' PRODUCTS during the CLASS PERIOD.

**REQUEST NO. 23:**

All DOCUMENTS sufficient to identify the locations of any offices, warehouses, manufacturing facilities, distribution center or other properties where DEFENDANTS' employees were located or that were otherwise used by DEFENDANTS during the CLASS PERIOD.

**REQUEST NO. 24:**

All DOCUMENTS CONCERNING DEFENDANTS' TARGET CUSTOMER(S) or TARGET MARKET(S), including but not limited to surveys, studies, and internal communications.

**REQUEST NO. 25:**

ALL DOCUMENTS sufficient to IDENTIFY all PERSONS responsible for approving any advertisement and labels of PRODUCTS with the MARKETING CLAIMS.

**REQUEST NO. 26:**

All organizational charts and similar documents that discuss lines of authority or personnel reporting requirements within DEFENDANTS' organization.

**REQUEST NO. 27:**

The corporate by-laws or similar governing documents for DEFENDANTS.

**REQUEST NO. 28:**

All DOCUMENTS concerning the formulation and ingredients of each PRODUCT, including but not limited to the recipes, finished product specifications, and COMMUNICATIONS.

**REQUEST NO. 29:**

All DOCUMENTS concerning any POLICIES, procedures, reporting and tracking of issues, deviations, or changes in the manufacturing of the PRODUCTS during the manufacturing process, including but not limited to, all completed non-conformance forms, corrective action forms and communications with the FDA.

**REQUEST NO. 30:**

All DOCUMENTS sufficient to show the retail price or manufacturer's suggested retail price (MSRP) and/or retail price for DEFENDANTS' PRODUCTS from February 10, 2015, to the present.

**REQUEST NO. 31:**

All COMMUNICATIONS and DOCUMENTS relating to the presence of HEAVY

METALS or Perchlorate in DEFENDANTS' PRODUCTS between DEFENDANTS and any commercial clients, contractors, suppliers, retailers, and distributors.

**REQUEST NO. 32:**

All DOCUMENTS, including drafts, of DEFENDANTS' QUALITY CONTROL and TESTING POLICIES, PROCEDURES, and requirements relating to HEAVY METALS or Perchlorate.

**REQUEST NO. 33:**

All TESTING results, analysis, and reports relating to HEAVY METALS or Perchlorate created by or produced to DEFENDANTS.

**REQUEST NO. 34:**

All DOCUMENTS and COMMUNICATIONS created for, sent to, or received from a government, governmental entity, or regulatory agency relating to HEAVY METALS or Perchlorate in DEFENDANTS' PRODUCTS. This includes, for example, DOCUMENTS transmitted between YOU and: (1) members of Congress; (2) the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform; (3) the United States Food and Drug Administration (FDA); (4) the Federal Trade Commission; and (5) any state attorneys general, regardless of whether or not DEFENDANTS responded or replied to those COMMUNICATIONS.

**REQUEST NO. 35:**

All DOCUMENTS and COMMUNICATIONS created for, sent to, or received from the Baby Food Council relating to HEAVY METALS or Perchlorate, regardless of whether or not DEFENDANTS responded or replied to those COMMUNICATIONS.

PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT

| | | |
|---|---|---|
| Dated: March 25, 2021 | | LOCKRIDGE GRINDAL NAUEN P.L.L.P. |

By: s/ Rebecca A. Peterson
Robert K. Shelquist
Rebecca A. Peterson
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: rkshelquist@locklaw.com
         rapeterson@locklaw.com

Charles LaDuca
Katherine Van Dyck
C. William Frick
4725 Wisconsin Avenue NW, Suite 200
Washington, DC 20016
Telephone:(202) 789-3960
Facsimile: (202) 789-1813
E-mail: charles@cuneolaw.com
         kvandyck@cuneolaw.com
         bill@cuneolaw.com

LITE DEPALMA GREENBERG & AFANADOR, LLC
Joseph DePalma
Steven J. Greenfogel
Susana Cruz-Hodge
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
E-mail:  jdepalma@litedepalma.com
         sgreenfogel@litedepalma.com
         scruzhodge@litedepalma.com

GUSTAFSON GLUEK PLLC
Daniel E. Gustafson
Amanda M. Williams
Raina C. Borrelli
Mary M. Nikolai
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
E-mail: dgustafson@gustafsongluek.com
         awilliams@gustafsongluek.com
         rborrelli@gustafsongluek.com
         mnikolai@gustafsongluek.com

|   |   |
|---|---|
| 1 | GUSTAFSON GLUEK PLLC |
|   | Dennis Stewart (SBD 99152) |
| 2 | 600 B Street |
|   | 17th Floor |
| 3 | San Diego, CA 92101 |
|   | Telephone: (619) 595-3299 |
| 4 | E-mail: dstewart@gustafsongluek.com |

WEXLER WALLACE, LLP
Kenneth A. Wexler
Kara A. Elgersma
55 West Monroe, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
E-mail: kaw@wexlerwallace.com
         kae@wexlerwallace.com

TAUS, CEBULASH & LANDAU, LLP
Kevin Landau
Miles Greaves
80 Maiden Lane, Suite 1204
New York, NY 10038
Telephone: (212) 931-0704
E-mail: klandau@tcllaw.com
         mgreaves@tcllaw.com

SALTZ, MONGELUZZI, & BENDESKY, P.C.
Simon B. Paris
Patrick Howard
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Telephone: (215) 575-3895
E-mail: sparis@smbb.com
         phoward@smbb.com

SAUDER SCHELKOPF
Matthew D. Schelkopf
Lori G. Kier
Davina C. Okonkwo
1109 Lancaster Avenue
Berwyn, PA 19312
Telephone: (610) 200-0581
E-mail: mds@sstriallawyers.com
         lgk@sstriallawyers.com
         dco@sstriallawyers.com

*Attorneys for Plaintiffs*

- 16 -
PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT

**DECLARATION OF SERVICE**

I, the undersigned, declare:

That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of Hennepin, over the age of 18 years, and not a party to or interest in the within action; that declarant's business address is 100 Washington Avenue South, Suite 2200, Minneapolis, Minnesota 55401.

That on March 25, 2021, declarant served via e-mail a true and correct copy thereof of the following document to the parties listed on the attached Service List:

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT**

That on March 26, 2021, declarant also served the above-referenced document via U.S. Mail by placing in a United States mailbox at Minneapolis, Minnesota in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached Service List.

That there is regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury under the laws of the State of Minnesota that the foregoing is true and correct.

                                          */s/ Barbara R. Gilles*
                                          BARBARA R. GILLES

# SERVICE LIST

Dale J. Giali
Keri E. Borders
Rebecca B. Johns
**MAYER BROWN LLP**
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503
dgiali@mayerbrown.com
kborders@mayerbrown.com
rjohns@mayerbrown.com

Hope Freiwald
**DECHERT LLP**
2929 Arch Street,
Philadelphia, PA 19104-2808
hope.freiwald@dechert.com

Mark Cheffo
**DECHERT LLP**
1095 Avenue of the Americas,
New York, NY, 10036-6797
mark.cheffo@dechert.com

Christina Sarchio
**DECHERT LLP**
1900 K Street, NW,
Washington, DC, 20006-1110
christina.sarchio@dechert.com