**CARLSON LYNCH, LLP**
Todd D. Carpenter (SBN 234464)
tcarpenter@carlsonlynch.com
Scott G. Braden (SBN 305051)
sbraden@carlsonlynch.com
1350 Columbia Street, Suite 603
San Diego, CA 92101
Tel:    619-762-1910
Fax:    619-756-6991

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PLUM BABY FOOD LITIGATION | Master File No. 4:21-cv-00913-YGR |
| This Document Relates to: 21-cv-2059, David. | |
| JESSICA DAVID, HEATHER AGE, and MAYRA MOORE, individually, and on behalf of all others similarly situated, | **FIRST AMENDED COMPLAINT** |
| Plaintiffs, | **CLASS ACTION** |
| v. | **DEMAND FOR JURY TRIAL** |
| PLUM, PBC.; and DOES 1 through 10, inclusive, | |
| Defendants. | |

Plaintiffs Jessica David, Heather Age, and Mayra Moore ("Plaintiffs"), on behalf of themselves and the Class and Subclasses (defined below) of all others similarly situated, bring this class action against Defendant Plum, PBC. ("Plum" or "Defendant"), based on Defendant's misleading, deceptive and unfair business practices with respect to the marketing, advertising, labeling, packaging and sale of its baby food products, which contain levels of toxic heavy metals.

## NATURE OF ACTION

1.     This case involves a straightforward and systematic course of false, misleading, and unlawful conduct: Defendant has misrepresented and falsely advertised that the baby food products it sells are, among various things, organic, non-GMO, free from artificial preservatives, and safe and suitable for consumption by infants and young children.[1]

---

[1] *See e.g.*, https://www.plumorganics.com/products/peaches-baby-food/; *see also* https://www.walmart.com/ip/Plum-Organics-Jammy-Sammy-Peanut-Butter-Strawberry-5-1oz-6-Packs-of-5/902827112.

1

2.      Parents and other caregivers, including Plaintiff and members of the Class, reasonably believe that the baby food they purchase will be healthy, nutritious, and free from harmful substances and contaminants. However, on February 4, 2021, The United States House of Representatives Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform ("Subcommittee") published a report ("Subcommittee Report"), revealing its findings that numerous baby foods are "tainted with significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury."[2] Plum did not cooperate with the Subcommittee's investigation, leaving the Subcommittee gravely concerned about Plum's lack of transparency.

3.      Additionally, Healthy Babies Bright Futures—an alliance of nonprofit organizations, scientists and donors that design and implement programs to reduce babies' exposure to toxic chemicals— tested a variety of baby foods to determine the levels of heavy metals contained in their products and published their report in or around October 2019 ("Healthy Babies Bright Futures Report").[3] The Healthy Babies Bright Futures Report revealed that several of Defendant Plum's products contained various levels of toxic heavy metals.[4]

4.      Given the health risks associated with the consumption of high levels of toxic heavy metals, the presence of these substances is material to consumers.

5.      Defendant Plum knew that the presence of toxic heavy metals in its baby food products was material to consumers, which is evidenced by its representations that its baby food products are tested for such substances. Yet Defendant Plum chose to omit and conceal that its baby food products contained, or were at risk of containing, levels of heavy toxic metals, and therefore deceptively misled Plaintiffs and members of the Classes that purchased these products in reliance on Plum's representations.

6.      Plaintiffs seek relief in this action individually, and on behalf of all other similarly situated individuals who purchased Defendant's falsely and deceptively labeled baby food products during the statute of limitations period, for breach of express and implied warranty, fraud by omission, intentional and negligent misrepresentation, quasi contract, unjust enrichment, and restitution, and for violations of

---

[2] *See Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*, Staff Report, Staff of H. Subcomm. On Econ. And Consumer Policy, Comm. On Oversight and Reform, 117th Cong., https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (Feb. 4, 2021) ("Subcommittee Report").
[3] *See generally* Healthy Babies Bright Futures Report.
[4] *See generally id.*

Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.* ("FDUTPA"), California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA"), California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* ("FAL"), and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL").

## **THE PARTIES**

7.      Plaintiff Heather Age ("Plaintiff Age") is a citizen of the State of Kentucky and is a member of the Nationwide Class and the Kentucky Subclass. Plaintiff Age purchased various Plum Organics Products, including its Stage 2 Pouches in the flavors Sweet Potato, Apple & Corn; Pear, Purple Carrot & Blueberry; Pear, Spinach & Pea; and Apple & Broccoli.

8.      Plaintiff Jessica David ("Plaintiff David") is a citizen of the State of Florida and is a member of the Nationwide Class and the Florida Subclass. Plaintiff David purchased various flavors of Plum Organics baby food Pouches.

9.      Plaintiff Mayra Moore ("Plaintiff Moore") is a citizen of the State of California and resides in San Diego County, California. Plaintiff Moore purchased the following products ("Products"):

- Plum Organics Stage 1 (4+ months) Just Sweet Potato Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Mango, Sweet Potato, Apple & Millet Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Mango, Yellow Zucchini, Corn & Turmeric Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Pea, Kiwi, Pear & Avocado Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Peach, Banana & Apricot Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Pear & Mango Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Pear, Purple Carrot & Blueberry Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Pear, Spinach & Pea Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Sweet Potato, Apple & Corn Organic Baby Food Pouch
- Plum Organics Banana with Pumpkin Little Teethers Wafers
- Plum Organics Blueberry Little Teethers Wafers
- Plum Organics Tots Jammy Sammy–Peanut Butter & Strawberry Bar

10.     Plaintiffs believed they were feeding their children healthy, nutritious foods during the time they purchased and fed their children Defendant Plum's baby food Products. Due to the false and misleading claims and omissions by Defendant Plum as described herein, Plaintiffs were unaware that the baby food Products sold by Plum contained any level of toxic heavy metals, and Plaintiffs would not have purchased the Products if that information had been fully disclosed.

11.     Defendant Plum is a Delaware public benefit corporation, with its principal place of business and headquarters located at 1485 Park Avenue, Suite 200, Emeryville, California, 94608. Plum was acquired by Campbell Soup Company in 2013. Defendant Plum does business throughout the United States, and manufactures, markets, advertises, labels, represents, warrants, distributes, and sells baby food products online and at brick-and-mortar retail stores.

## JURISDICTION AND VENUE

12.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the Class of plaintiffs are citizens of states different from Plum. Further, greater than two-thirds of the Class members reside in states other than the state in which Plum is a citizen.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) in that Defendant is a corporation that maintains its principal place of business in this jurisdiction. Further, venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiffs suffered injury as a result of Defendant's acts in this district; Defendant is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district through the promotion, marketing, distribution and sale of its products in this district; Defendant does substantial business in this district; and Defendant is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

### A.     Defendant Falsely Marketed and Advertised its Baby Food Products

14.     Defendant Plum manufactures, markets, advertises, labels, represents, warrants, distributes, and sells baby food products throughout the United States under the Plum Organics label.

Plum makes various representations about its Products, including that they are organic, non-GMO, and contain "no added preservatives or artificial flavors."[5]

15.     Plum claims on its website that it is confident in the safety and quality of its Products, and its top priority is to serve children healthy, nutritious foods made from the best ingredients.[6]  Plum promises that it is committed to minimizing environmental contaminants including heavy metals within its Products, and assures its products are safe to eat.[7]

16.     The Products at issue are various types of Plum's baby food products that contain, or are at risk of containing, heavy metals, including, but not limited to, the Products purchased by Plaintiffs,[8] and may include other Plum Organics baby food Products, such as:

- Plum Organics Stage 1 (4+ months) Just Peaches Organic Baby Food Pouch
- Plum Organics Stage 1 (4+ months) Just Sweet Potato Organic Baby Food Pouch
- Plum Organics Stage 1 (4+ months) Just Mangos Organic Baby Food Pouch
- Plum Organics Stage 1 (4+ months) Just Prunes Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Banana & Pumpkin Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Banana, Zucchini & Amaranth Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Apple Butternut Squash & Granola Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Pear Blueberry Avocado & Granola Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Strawberry Banana & Granola Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Mango Carrot & Coconut Cream Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Apple, Blackberry & Coconut Cream Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Apple, Cauliflower & Leek Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Pumpkin, banana, Papaya & Cardamom Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Apple, Plum, Berry & Barley Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Apple, Raspberry, Spinach & Greek Yogurt Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Apple, Spinach & Avocado Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Apple, Raisin & Quinoa Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Apple & Broccoli Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Apple & Carrot Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Butternut Squash, Carrot, Chickpea & Corn Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Carrot, Bean, Spinach & Tomato Organic Baby Food Pouch

---

[5] *See e.g.*, https://www.plumorganics.com/products/peaches-baby-food/; *see also* https://www.walmart.com/ip/Plum-Organics-Jammy-Sammy-Peanut-Butter-Strawberry-5-1oz-6-Packs-of-5/902827112.
[6] *Plum Organics, FAQs*, https://www.plumorganics.com/faqs/
[7] *Id.*
[8] Plaintiffs reserve the right to amend this definition upon completion of discovery.

- Plum Organics Stage 2 (6+ months) Guava, Pear & Pumpkin Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Kale, Corn, Carrot & Tomato Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Mango, Sweet Potato, Apple & Millet Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Mango, Yellow Zucchini, Corn & Turmeric Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Pea, Kiwi, Pear & Avocado Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Peach, Banana & Apricot Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Peach, Pumpkin, Carrot & Cinnamon Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Pear & Mango Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Pear, Green Bean & Greek Yogurt Organic Food Pouch
- Plum Organics Stage 2 (6+ months) Pear, Purple Carrot & Blueberry Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Pear, Spinach & Pea Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Pumpkin, Spinach, Chickpea & Broccoli Organic Baby Food Pouch
- Plum Organics Stage 2 (6+ months) Sweet Potato, Apple & Corn Organic Baby Food Pouch
- Plum Organics Stage 3 (6+ months) Carrot, Spinach, Turkey, Corn, Apple & Potato Organic Baby Food Pouch
- Plum Organics Stage 3 (6+ months) Carrot, Sweet Potato, Corn, Pea & Chicken Organic Baby Food Pouch
- Plum Organics Stage 3 (6+ months) Carrot, Chickpea, Pea, Beef & Tomato Organic Baby Food Pouch
- Plum Organics Apple with Spinach Cereal Super Puffs
- Plum Organics Strawberry with Beet Cereal Super Puffs
- Plum Organics Mango with Sweet Potato Cereal Super Puffs
- Plum Organics Blueberry with Purple Sweet Potato Cereal Super Puffs
- Plum Organics Apple with Leafy Greens Little Teethers Wafers
- Plum Organics Banana with Pumpkin Little Teethers Wafers
- Plum Organics Blueberry Little Teethers Wafers
- Plum Organics Tots Mighty 4 Blends Mango & Pineapple, White Bean, Butternut Squash, & Oat Organic Baby Food Pouch
- Plum Organics Tots Mighty 4 Blends Sweet Potato, Banana & Passionfruit, Greek Yogurt & Oat Organic Baby Food Pouch
- Plum Organics Tots Mighty 4 Blends Strawberry Banana, Greek Yogurt, Kale, Oat & Amaranth Organic Baby Food Pouch
- Plum Organics Tots Mighty 4 Blends Banana, Blueberry, Sweet Potato, Carrot, Greek Yogurt & Millet Organic Baby Food Pouch
- Plum Organics Tots Mighty 4 Blends Apple, Blackberry, Purple Carrot, Greek Yogurt & Oat Organic Baby Food Pouch
- Plum Organics Tots Mighty 4 Blends Banana, Kiwi, Spinach, Greek Yogurt & Barley Organic Baby Food Pouch
- Plum Organics Tots Mighty 4 Blends Banana, Peach, Pumpkin, Carrot, Greek Yogurt & Oat Organic Baby Food Pouch
- Plum Organics Tots Mighty 4 Blends Guava, Pomegranate, Black Bean, Carrot, & Oat Organic Baby Food Pouch
- Plum Organics Tots Mighty 4 Blends Pear, Cherry, Blackberry, Strawberry, Black Bean, Spinach & Oat Organic Baby Food Pouch
- Plum Organics Tots Mighty Veggie Sweet Potato, Apple, Banana, Carrot Organic Baby Food Pouch
- Plum Organics Tots Mighty Veggie Zucchini, Apple, Watermelon & Barley Organic Baby Food Pouch

- Plum Organics Tots Mighty Veggie Spinach, Grape, Apple & Amaranth Organic Baby Food Pouch
- Plum Organics Tots Mighty Veggie Carrot, Pear, Pomegranate & Oats Organic Baby Food Pouch
- Plum Organics Tots Mighty Protein & Fiber Mango, Banana, White Bean, Sunflower Seed Butter & Chia Organic Baby Food Pouch
- Plum Organics Tots Mighty Protein & Fiber Banana, White Bean, Strawberry & Chia Organic Baby Food Pouch
- Plum Organics Tots Mighty Protein & Fiber Pear, White Bean, Blueberry, Date & Chia Organic Baby Food Pouch
- Plum Organics Tots Mighty Snack Bars–Pumpkin Banana
- Plum Organics Tots Mighty Snack Bars–Strawberry
- Plum Organics Tots Mighty Snack Bars–Blueberry
- Plum Organics Tots Mighty Morning–Banana, Blueberry, Oat, Quinoa Organic Baby Food Pouch
- Plum Organics Tots Mighty Morning Bar–Apple Cinnamon
- Plum Organics Tots Mighty Morning Bar–Blueberry Lemon
- Plum Organics Tots Mighty Nut Butter Bar–Almond Butter
- Plum Organics Tots Mighty Nut Butter Bar–Peanut Butter
- Plum Organics Tots Teensy Snacks–Peach Tot Fruit Snacks
- Plum Organics Tots Teensy Snacks–Berry Tot Fruit Snacks
- Plum Organics Tots Jammy Sammy–Peanut Butter & Strawberry Bar
- Plum Organics Tots Jammy Sammy–Peanut Butter & Grape Bar
- Plum Organics Tots Jammy Sammy–Blueberry & Oatmeal Bar
- Plum Organics Tots Jammy Sammy–Apple Cinnamon & Oatmeal Bar
- Plum Organics Kids Mashups–Applesauce Blueberry Carrot Pouch
- Plum Organics Kids Mashups–Applesauce Carrot & Mango Pouch
- Plum Organics Kids Mashups–Applesauce Strawberry & Beet Pouch
- Plum Organics Kids Mashups–Applesauce Strawberry & Banana Pouch
- Plum Organics Infant Gentle Organic Infant Formula with Iron, Milk-Based Powder, 0–12 Months

17.     Plum uses words such as "organic" and categorizes its products by milestones such as "baby," "tots," and "kids," and stages such as "Stage 1 (4+ months)", "Stage 2 (6+ months)", "Stage 3 (6+ months)" to emphasize the foods suitability for consumption by infants and young children.

18.     Plum's labels and packaging do not disclose that the Products contain, or may contain, levels of toxic heavy metals.

**B.     Defendant's Marketing and Advertising Misled and Deceived Consumers**

19.     Parent consumers are drawn to representations such as the ones claimed on Plum's website because parents pay attention to what ingredients are in the baby food they purchase for their child. Parents are cautious and vigilant because they do not want to expose their children to potentially harmful substances or chemicals, such as heavy metals like arsenic, lead, mercury, and cadmium.

20.     Plum's marketing of its Products wrongfully conveys to consumers that the Products have certain superior quality and characteristics that they do not actually possess. For example, Plum's

misrepresentations caused Plaintiffs and other consumers to believe that its Products do not contain high levels of toxic heavy metals through its marketing and omissions, which is material information to a reasonable consumer.

21.     In light of Plum's marketing, including its professed commitment to providing organic, non-GMO products that are free added preservatives and artificial flavors,[9] Plum knew or should have known that the Products contained toxic heavy metals or potentially dangerous contaminants that pose health risks to humans, and particularly to infants and young children. Plum knew consumers purchased the Products based on the reasonable expectation that Plum manufactured the Products in a way that was prescribed by its marketing and advertising.

22.     Plum intended that Plaintiffs and Class Members and other consumers rely on these representations, as evidenced by the intentional and conspicuous omission on the Products' packaging that they contain dangerously levels of heavy metals, as well as Plum's advertising, marketing, and labeling of the Products as organic, non-GMO, free from added preservatives and artificial flavors, and safe for consumption by infants and young children.[10]

23.     Based on Plum's decision to advertise, label, and market its Products as organic, non-GMO, free from added preservatives and artificial flavors, and safe for consumption by infants and young children, Plum had a duty to ensure that these statements were true and not misleading. As such, Plum knew or should have known that the Products included nondisclosed levels of toxic heavy metals.

24.     However, Plum's marketing is deceptive, misleading, unfair and false to Plaintiff and other consumers of its Products. Plum failed to disclose that the Products contain or may contain any level of heavy metals or other undesirable toxins or contaminants. Plum intentionally omitted this in order to induce and mislead reasonable consumers like Plaintiff and members of the Classes to purchase the Products.

---

[9] *See e.g.*, https://www.plumorganics.com/products/peaches-baby-food/; *see also* https://www.walmart.com/ip/Plum-Organics-Jammy-Sammy-Peanut-Butter-Strawberry-5-1oz-6-Packs-of-5/902827112; *see also* Plum Organics, Food Philosophy, https://www.plumorganics.com/food-philosophy/.

[10] *See e.g.*, https://www.plumorganics.com/products/peaches-baby-food/; *see also* https://www.walmart.com/ip/Plum-Organics-Jammy-Sammy-Peanut-Butter-Strawberry-5-1oz-6-Packs-of-5/902827112; *see also* Plum Organics, Food Philosophy, https://www.plumorganics.com/food-philosophy/.

25.     As a result of Plum's omissions, a reasonable consumer would have no reason to suspect the presence of heavy metals in the Products without conducting his or her own tests or relying on tests conducted by a third party.

26.     Plum therefore acted negligently, recklessly, unfairly, and/or intentionally with its deceptive, misleading, unfair, and false marketing and omissions as described herein.

**C.     Heavy Metals**

27.     Heavy metals such as arsenic, lead, mercury, and cadmium are known as "developmental neurotoxins" that can harm a baby's developing brain and nervous system. Exposure to these neurotoxins can result in a loss of intellectual capacity and behavioral problems like attention-deficit hyperactivity disorder ("ADHD").[11] Though heavy metals are naturally found in the environment, most heavy metals in foods come from contaminated soil or water. The contamination comes from either farming or manufacturing practices, such as the use of pesticides, mining, and smelting or pollution.

28.     The U.S. Food and Drug Administration ("FDA") has declared that inorganic arsenic, lead, cadmium, and mercury are dangerous, particularly to infants and children, and "lead to illness, impairment, and in high doses, death."[12]

29.     Healthy Babies Bright Futures—an alliance of nonprofit organizations, scientists and donors that design and implement programs to reduce babies' exposure to toxic chemicals—tested a variety of baby foods to determine the levels of heavy metals contained in their products and published the report in or around October 2019 ("Healthy Babies Bright Futures Report").[13]

30.     The Healthy Babies Bright Futures Report revealed that Plum's Little Teethers Multigrain Wafers (Banana and Pumpkin) contained 49.9 parts per billion ("ppb") of arsenic, 1.4 ppb of lead, 6.3 ppb of cadmium, and .726 ppb of mercury.[14]

31.     In addition to the Healthy Babies Bright Futures Report, as mentioned above, the Subcommittee published a report revealing findings that numerous baby foods are "tainted with significant

---

[11] Jane Houlihan and Charlotte Brody, *What's in my baby's food?*, Healthy Babies Bright Futures, at 9 (Oct. 2019), https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf "(Healthy Babies Bright Futures Report").
[12] Subcommittee Report at 9.
[13] *See generally* Healthy Babies Bright Futures Report.
[14] *Id.* at 27.

levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury."[15] According to the Subcommittee Report, Plum Organics refused to cooperate with the Subcommittee's investigation, and did not produce testing results or any specific internal testing standards for substances such as heavy metals. The Subcommittee is greatly concerned that these companies may be obscuring the presence of even higher levels of toxic heavy metals in their baby food products than their competitors' products. Plum seemed to only have provided a spreadsheet self-declaring that all of its products "meet criteria."[16]

32.     As noted by the Subcommittee, babies' developing brains are "exceptionally sensitive to injury caused by toxic chemicals, and several developmental processes have been shown to be highly vulnerable to chemical toxicity."[17]

33.     Furthermore, the Subcommittee Report noted that exposing children to toxic heavy metals causes permanent decreases in IQ, an increased risk of future criminal and antisocial behavior, and "untreatable and frequently permanent" brain damage. The Subcommittee Report demonstrated the consequences that can result due to exposure to toxic heavy metals, noting that one study showed that for each IQ point lost, a child's lifetime estimated earning capacity will decrease by over $18,000.[18]

**a.     Arsenic**

34.     Arsenic is a heavy metal contaminant that is found in food and drinking water from its long-time use as a pesticide and additive in animal feed. Arsenic has been known to cause bladder, lung, and skin cancer, and can also harm the developing brain and nervous system.[19] At least 13 studies link arsenic to IQ loss for children exposed to it in utero or during the first few years of life.[20]

35.     Another study on the effects of arsenic revealed an average loss of 5-6 IQ points among those who drank well water contaminated with arsenic at or above 5 ppb.[21] Studies find lasting impacts

---

[15] Subcommittee Report at 9.
[16] *Id.* at 3; 43–44.
[17] *Id.* at 9.
[18] *Id.*
[19] Healthy Babies Bright Futures Report at 13.
[20] *Id.*
[21] *Id.*

FIRST AMENDED CLASS ACTION COMPLAINT

when young children are exposed to arsenic early in life.[22] There is also no evidence that the effects of arsenic exposure are reversible.[23]

36.     The harmful effects of exposure to arsenic have caused the FDA to set standards limiting the allowable amount of inorganic arsenic in various products, such as 10 ppb for bottled water.[24]

**b.    Cadmium**

37.     Cadmium is a heavy metal that has been linked to neurotoxicity, cancer, kidney damage, bone damage, and heart damage.[25]

38.     Cadmium is a number seven on the Agency For Toxic Substances and Disease Registry's ("ATSDR") list of substances that is present in the environment that pose the most significant potential threat to human health, and is associated with decreases in IQ and the development of ADHD.[26]

39.     The harmful effects of exposure to cadmium has caused the FDA to set the maximum allowable level of cadmium in bottled water at 5 ppb.[27]

**c.    Lead**

40.     Lead is a heavy metal that widely contaminates food from its long-time use as a pesticide, its use in food processing equipment, and its presence at elevated levels in soil.[28] Lead is a number two on ATSDR's list of substances present in the environment that pose the most significant potential threat to human health, and is associated with behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth.[29]

41.     According to the FDA, lead is especially dangerous to infants and young children.[30] Lead exposure has been shown to severely affect academic achievement in children, and the effects of early childhood exposure appear to be permanent.[31]

---

[22] *Id.* ("Studies find lasting impacts when children are exposed to arsenic early in life, including persistent IQ deficits in children two years after their polluted drinking water was replaced, cognitive deficits among school-age children exposed early in life, and neurological problems in adults who were exposed to arsenic-poisoned milk as infants."
[23] *Id.*
[24] 21 C.F.R. § 165.110; Subcommittee report at 4.
[25] Subcommittee report at 4.
[26] *Id.* at 12.
[27] *Id.* at 4.
[28] Healthy Babies Bright Futures Report at 13.
[29] Subcommittee Report at 11.
[30] *Id.*
[31] *Id.*

42.     The harmful effects of lead have caused the FDA to set the maximum allowable levels in bottled water at 5 ppb of lead.[32]

**d.     Mercury**

43.     Mercury is a pollutant released from coal-fired power plants, mining operations and other sources.[33] Mercury is number three on ATSDR's list of substances present in the environment that pose the most significant potential threat to human health.[34]

44.     Pre-natal mercury exposure has been "consistently associated with adverse subsequent neuro-development," and post-natal mercury exposure has been associated with autistic behaviors among preschool-age children.[35]

45.     The FDA has capped the allowable level of mercury in drinking water at 2 ppb.[36] Notably, according to the Subcommittee Report, Plum provided notes that it has "no specific threshold established because no high-risk ingredients are used" for testing its products for mercury. The Subcommittee stated that this "misleading framing—of meeting criteria that do not exist—raises questions about what [Plum's] other thresholds actually are, and whether they exist."[37]

**D.     Plaintiffs and Class Members' Reliance was Reasonable**

46.     Plaintiffs and Class Members reasonably relied on Defendant's claims, warranties, representations, advertisements, and other marketing sources concerning the quality of the Products.

47.     Plaintiffs and Class Members read and relied upon the labels and packaging of the Products when making purchasing decisions. Had Plaintiffs and Class Members known Plum's Products actually contained high levels of heavy metals, Plaintiffs and Class Members would not have purchased the Products.

48.     A reasonable consumer would consider the labeling of a product when deciding whether or not to purchase it. Here, Plaintiffs and Class Members relied on the statements and omissions on the Products' labeling that led them to believe the Products were organic, free from added preservatives and artificial flavors, and safe for consumption by infants and young children.

---

[32] *Id.* at 4.
[33] Healthy Babies Bright Futures Report at 14.
[34] Subcommittee Report at 12.
[35] *Id.* at 12–13.
[36] *Id.* at 4.
[37] *Id.* at 45.

**CLASS ACTION ALLEGATIONS**

49.     Plaintiffs bring this action individually and on behalf of all other similarly situated Class Members pursuant to Rule 23 of the Federal Rules of Civil Procedure and seeks certification of the following Classes:

**Nationwide Class**

All persons within the United States who purchased Plum Organics Baby Food Products for household or business use during the applicable statute of limitations and who have not received a refund or credit for their purchase(s).

**Florida Subclass**

All persons within the State of Florida who purchased Plum Organics Baby Food Products for household or business use during the applicable statute of limitations and who have not received a refund or credit for their purchase(s).

**Kentucky Subclass**

All persons within the State of Kentucky who purchased Plum Organics Baby Food Products for household or business use during the applicable statute of limitations and who have not received a refund or credit for their purchase(s).

**California Subclass**

All persons within the State of California who purchased Plum Organics Baby Food Products for household or business use during the applicable statute of limitations and who have not received a refund or credit for their purchase(s).

50.     Excluded from the Classes are the following individuals and/or entities: Defendant and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

51.     Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or add subclasses before the Court determines whether certification is appropriate.

52.     **Numerosity**: The proposed Class and Subclass are so numerous that joinder of all members would be impractical. The Products are sold throughout the United States, directly and by third-party retailers. The number of individuals who purchased the Products during the relevant time period is at least in the thousands. Accordingly, Class members are so numerous that their individual joinder herein is

impractical. While the precise number of Class members and their identities are unknown to Plaintiff at this time, these Class members are identifiable and ascertainable.

53. **Common Questions Predominate**: There are questions of law and fact common to the proposed Class and Subclasses that will drive the resolution of this action and will predominate over questions affecting only individual Class members. These questions include, but are not limited to, the following:

        a.     Whether Defendant misrepresented material facts and/or failed to disclose material facts in connection with the packaging, marketing, distribution, and sale of the Products;

        b.     Whether Defendant's use of false or deceptive packaging and advertising constituted false or deceptive advertising;

        c.     Whether Defendant engaged in unfair, unlawful and/or fraudulent business practices;

        d.     Whether Defendant's representations concerning the Products were likely to deceive a reasonable consumer;

        e.     Whether Defendant's unlawful conduct, as alleged herein, was intentional and knowing;

        f.     Whether Defendant represents to consumers that the Products have characteristics, benefits, or qualities that they do not have;

        g.     Whether Plaintiffs and the Classes are entitled to damages and/or restitution, and in what amount;

        h.     Whether Defendant is likely to continue using false, misleading or unlawful conduct such that an injunction is necessary; and

        i.     Whether Plaintiffs and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

54. Defendant has engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiffs and members of the Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact,

namely, Defendant's deceptive packaging and advertising of the Products. Each instance of harm suffered by Plaintiffs and members of the Classes has directly resulted from a single course of illegal conduct. Each Class member has been exposed to the same deceptive practice, as each of the Products: (a) bear the materially same representations regarding the health and quality of the Products, in that they are organic, free from added preservatives and artificial flavors, and safe for consumption by infants and young children, and (b) the Products actually contain levels of toxic heavy metals. Therefore, individual questions, if any, pale in comparison to the numerous common questions predominating in this action.

55.   **Typicality**: The representative Plaintiffs' claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by Defendant's uniform unlawful conduct as alleged herein.

56.   **Adequacy**: Plaintiffs will fairly and adequately protect the interests of the proposed Classes as their interests do not conflict with, and are in no way antagonistic to, the interests of the putative Class members they seek to represent.  Plaintiffs have also retained counsel competent and experienced in class action litigation and they intend to prosecute this action vigorously. The interests of the members of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

57.   **Superiority**: The nature of this action and the nature of the laws available to Plaintiffs and the Classes make the use of the class action format a particularly efficient and appropriate procedure to afford relief to them and the Classes for the wrongs alleged. The damages or other financial detriment suffered by individual Class members is miniscule compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for Plaintiffs and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Absent the class action, Class members would not likely recover, or would not likely have the chance to recover, damages and/or restitution from Defendant, which would continue to retain the proceeds of its wrongful conduct. Additionally, injunctive relief for the benefit of Class members and the public would not be possible absent class treatment and Defendant's wrongful conduct would persist unabated. Further, individualized litigation would increase the delay and expense to all parties and would multiply the burden on the judicial system presented by the complex legal and factual issues of this case. Finally, Defendant has acted, or failed to act, on grounds generally applicable to Plaintiffs and the

proposed Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes. Individualized litigation presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Breach of Express Warranty**
*(On behalf of the Classes)*

58.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1-57, as though fully set forth herein.

59.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Plum for breach of express warranty.

60.     Plum marketed and sold the Products into the stream of commerce with the intent that the Products would be purchased by Plaintiffs and members of the Classes.

61.     Plum expressly warranted, advertised, and represented to Plaintiffs and members of the Classes that the Products were and are organic, free from added preservatives and artificial flavors, and safe for consumption by infants and young children.

62.     Plum made these express warranties regarding the Products' quality, ingredients, and suitability for consumption in writing through its website, advertisements, and marketing materials and on the Products' packaging and labels. These express warranties became part of the basis of the bargain that Plaintiffs and members of the Classes entered into upon purchasing the Products.

63.     Plum's advertisements, warranties, and representations were made in connection with the sale of the Products to Plaintiffs and members of the Classes. Plaintiffs and members of the Classes relied on Plum's advertisements, warranties, and representations regarding the Products in deciding whether or not to purchase Plum's Products.

64.     Plum's Products do not conform to Plum's advertisements, warranties and representations in that they are not safe or appropriate for consumption by infants and young children, and contain, or may contain, levels of various heavy toxic metals.

65.     Plum was on notice of this breach, as Plum was aware of the included heavy metals in the Products due to its own testing, and based on the investigation in the Healthy Babies Bright Futures report that revealed the Products as containing various levels of toxic heavy metals.

66.     Privity exists because Plum expressly warranted to Plaintiffs and members of the Classes through the warranting, packaging, advertising, marketing, and labeling that the Products were organic, free from added preservatives and artificial flavors, and safe for consumption by infants and young children, and by failing to make any mention of heavy metals and/or unnatural or other ingredients.

67.     As a direct and proximate result of Plum's conduct, Plaintiffs and members of the Classes have suffered actual damages in that they purchased Products that were worth less than the price they paid and they would not have purchased had they known of the risk and/or presence of heavy metals and/or other contaminants that do not conform to the products' marketing and advertisements.

68.     Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Plum's failure to deliver goods conforming to their express warranties and resulting breach.

## SECOND CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability
### *(On behalf of the Classes)*

69.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1-57, as though fully set forth herein.

70.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Plum for breach of implied warranty of merchantability.

71.     Plum is a merchant engaging in the manufacturing and sale of goods that were purchased by Plaintiffs and members of the Classes.

72.     At all times mentioned herein, Plum manufactured or supplied the Products, and prior to the time the Products were purchased by Plaintiffs and members of the Classes, Plum impliedly warranted to them that the Products were of merchantable quality, fit for their ordinary use, and conformed to the promises and affirmations of fact made on the Products' containers and labels, including that the food organic, free from added preservatives and artificial flavors, and safe for consumption by infants and

young children. Plaintiffs and members of the Classes relied on Plum's promises and affirmations of fact when they purchased the Products.

73.     Contrary to these representations and warranties, the Products were not fit for their ordinary use, consumption by infants or young children, and did not conform to Plum's affirmations of fact and promises as they contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

74.     Plum breached its implied warranties by selling Products that failed to conform to the promises or affirmations of fact made on the container or label, as each Product contained heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

75.     Plum was on notice of this breach, as Plum was aware of the included heavy metals in the Products due to its own testing, and based on the investigation in the Healthy Babies Bright Futures report that revealed the Products as containing various levels of toxic heavy metals.

76.     Privity exists because Plum impliedly warranted to Plaintiffs and members of the Classes through the warranting, packaging, advertising, marketing, and labeling that the Products were organic, free from added preservatives and artificial flavors, and safe for consumption by infants and young children, and by failing to make any mention of heavy metals and/or unnatural or other ingredients.

77.     As a direct and proximate result of Plum's conduct, Plaintiffs and members of the Classes have suffered actual damages in that they have purchased Products that are worth less than the price they paid and that they would not have purchased at all had they known the presence or risk of heavy metals and/or unnatural or other ingredients.

78.     Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**THIRD CAUSE OF ACTION**
**Fraud by Omission**
*(On behalf of the Classes)*

79.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1-57, as though fully set forth herein.

80.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Plum for fraud by omission.

81.     Plum concealed from, and failed to disclose to, Plaintiffs and members of the Classes that the Products contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients that do not conform to the Products' labels, packaging, advertising, and statements.

82.     Plum was under a duty to disclose to Plaintiffs and members of the Classes the true quality, characteristics, ingredients and suitability of the Products because: (1) Plum was in a superior position to know the true state of facts about its Products; (2) Plum was in a superior position to know the actual ingredients, characteristics, and suitability of the Products for consumption by infants and young children; and (3) Plum knew that Plaintiffs and members of the Classes could not reasonably have been expected to learn or discover that the Products were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Products.

83.     The facts concealed or not disclosed by Plum to Plaintiffs and members of the Classes are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Products.

84.     Plaintiffs and members of the Classes justifiably relied on Plum's omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of the Products, which is inferior when compared to how the Products are advertised and represented by Plum.

85.     As a direct and proximate result of Plum's conduct, Plaintiffs and members of the Classes have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

86.     Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

### FOURTH CAUSE OF ACTION
**Negligent Misrepresentation**
***(On behalf of the Classes)***

87.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1-57, as though fully set forth herein.

88.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Plum for negligent misrepresentation.

89.     Plum marketed the Products in a manner indicating that the Products were and are organic, free from added preservatives and artificial flavors, and safe for consumption by infants and young children. However, the Products contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging. Therefore, Plum has made misrepresentations about the Products.

90.     Plum's misrepresentations regarding the Products are material to a reasonable consumer because they relate to the safety of the product the consumer is receiving and paying for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in deciding whether or not to purchase the Product.

91.     At all relevant times when such misrepresentations were made, Plum knew or had been negligent in not knowing that the Products contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients or contaminants. Plum has no reasonable grounds for believing its misrepresentations were not false and misleading.

92.     Plum intended that Plaintiffs and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Products' packaging by Plum, as well as its advertising, marketing, and labeling of the Products as organic, free from added preservatives and artificial flavors, and safe for consumption by infants and young children.

93.     Plaintiffs and members of the Classes have reasonably and justifiably relied on Plum's negligent misrepresentations when purchasing the Products, and had the correct facts been known, would not have purchased the Products at all.

94.     Therefore, as a direct and proximate result of Plum's negligent misrepresentations, Plaintiffs and members of the Classes have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

95.     Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**FIFTH CAUSE OF ACTION**
**Intentional Misrepresentation**
*(On behalf of the Classes)*

96.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1-57, as though fully set forth herein.

97.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Plum for intentional misrepresentation.

98.     Plum marketed the Products in a manner indicating that the Products were and are organic, free from added preservatives and artificial flavors, and safe for consumption by infants and young children. However, the Products contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging. Therefore, Plum has made misrepresentations about the Products.

99.     Plum's misrepresentations regarding the Products are material to a reasonable consumer because they relate to the safety of the product the consumer is receiving and paying for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in deciding whether or not to purchase the Product.

100.    At all relevant times when such misrepresentations were made, Plum knew that the representations were misleading, or have acted recklessly in making the representations, without regard to the truth.

101.    Plum intended that Plaintiffs and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Products' packaging by Plum, as well as its advertising, marketing, and labeling of the Products as organic, free from added preservatives and artificial flavors, and safe for consumption by infants and young children.

102.    Plaintiffs and members of the Classes have reasonably and justifiably relied on Plum's intentional misrepresentations when purchasing the Products, and had the correct facts been known, would not have purchased them at all.

103.    Therefore, as a direct and proximate result of Plum's intentional misrepresentations, Plaintiffs and members of the Classes have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

104.    Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## SIXTH CAUSE OF ACTION
### Quasi Contract/Unjust Enrichment/Restitution
### (*On behalf of the Classes*)

105.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1-57, as though fully set forth herein.

106.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Plum for quasi contract, unjust enrichment, and restitution.

107.    As alleged herein, Plum has intentionally and recklessly made misleading representations to Plaintiffs and members of the Classes to induce them to purchase the Products. Plaintiffs and members of the Classes have reasonably relied on the misleading representations and have not received all of the benefits promised by Plum. Plaintiffs and members of the Classes therefore have been induced by Plum's misleading and deceptive representations about the Products, and paid more money to Plum for the Products than they otherwise would and/or should have paid.

108.    Plaintiffs and members of the Classes have conferred a benefit upon Plum as Plum has retained monies paid to them by Plaintiffs and members of the Classes.

109.    The monies received were obtained under circumstances that were at the expense of Plaintiffs and members of the Classes – i.e., Plaintiffs and members of the Classes did not receive the full value of the benefit conferred upon Plum.

110.    Therefore, it is inequitable and unjust for Plum to retain the profit, benefit, or compensation referred upon it without paying Plaintiffs and the members of the Classes back for the difference of the full value of the benefits compared to the value actually received.

111.     As a direct and proximate result of Plum's unjust enrichment, Plaintiffs and members of the Classes are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Plum from its deceptive, misleading, and unlawful conduct as alleged herein.

### SEVENTH CAUSE OF ACTION
**Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")**
**Fla. Stat. §§ 501.201 *et seq.***
**(*On behalf of Plaintiff Jessica David and the Florida Subclass*)**

112.     Plaintiff David repeats and realleges the allegations contained in paragraphs 1-57, as if fully set forth herein.

113.     Plaintiff David brings this claim individually and on behalf of the members of the proposed Florida Subclass against Plum for violations of FDUTPA.  O Fla. Stat. §§ 501.201, *et seq.*

114.     Plaintiff David and members of the Florida Subclass are "consumers," as defined by Fla. Stat. § 501.203(7), the products sold by Defendant Plum are "goods" within the meaning of FDUTPA, and the transactions at issue constitute "trade or commerce" as defined by FDUTPA.

115.     FDUTPA, Fla. Stat. § 501.204, provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

116.     For the reasons discussed herein, Plum violated and continues to violate FDUTPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Fla. Stat. § 501.201, *et seq.* Plum's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including Plaintiff David and members of the Florida Subclass and other consumers acting reasonably under the circumstances, to their detriment.

117.     At all times mentioned herein, Plum engaged in trade or commerce in Florida, as defined by Fla. Stat. § 501.203(8), in that they advertised, offered or sale, sold or distributed goods or services in Florida and/or engaged in trade or commerce directly or indirectly affecting the people of Florida.

118.     Plum repeatedly advertised on the labels for its Products, on its websites, and through national advertising campaigns, among other things, that its Products were organic, free from added

preservatives and artificial flavors, and safe for consumption by infants and young children. Plum failed to disclose the material information that its Products contained unsafe levels of toxic heavy metals.

119.    Plum's representations and omissions were material because they were likely to deceive reasonable consumers and to induce them to purchase Plum's Products without knowing that the Products contained unsafe levels of toxic heavy metals. As a direct and proximate result of Plum's unfair and deceptive acts or practices, Plaintiff David and members of the Florida Subclass suffered damages by purchasing Plum's Products because they would not have purchased Plum's Products had they known the truth, that the Products contain, or may contain, levels of toxic heavy metals.

120.    Plum's deceptive trade practices caused Plaintiff David and members of the Florida Subclass to suffer injury in fact and actual damages in the form of the loss or diminishment of value of the Products they purchased, which allowed Plum to profit at the expense of Plaintiff David and members of the Florida Subclass. The injuries Plaintiff David and members of the Florida Subclass suffered were to legally protected interests. The gravity of the harm of Defendant Plum's actions is significant and there is no corresponding benefit to consumers of such conduct.

121.    Plaintiff David and members of Florida Subclass seek relief for the injuries they have suffered as a result of Plum's unfair and deceptive acts and practices, as provided by FDUTPA and applicable law.

### EIGHTH CAUSE OF ACTION
**California's Consumers Legal Remedies Act ("CLRA")**
**California Civil Code § 1750, *et seq*.**
***(On behalf of Plaintiff Mayra Moore and the California Subclass)***

122.    Plaintiff Moore repeats and realleges the allegations contained in paragraphs 1-57, as though fully set forth herein.

123.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Plum pursuant to the CLRA. Cal. Civ. Code § 1750, *et seq*.

124.    The Products are "goods" within the meaning of Cal. Civ. Code § 1761(a), Defendant is a "person" within the meaning of Cal. Civ. Code § 1761(c), and the purchases of such Products by Plaintiff Moore and members of the Class constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

125.    Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have…" By marketing the Products with their current packaging, Defendant has represented and continues to represent that the Products have characteristics (i.e., are organic, non-GMO, free from added preservatives and artificial flavors, and safe for consumption by infants and young children) that they do not have. Therefore, Defendant has violated § 1770(a)(5) of the CLRA.

126.    Cal. Civ. Code § 1770(a)(7) prohibits "[r]espresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By marketing the Products with their current packaging, Defendant has represented and continues to represent that the Products are of a particular standard (i.e., are organic, non-GMO, free from added preservatives and artificial flavors, and safe for consumption by infants and young children) which they are not. Therefore, Defendant has violated § 1770(a)(7) of the CLRA.

127.    Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By marketing the Products as organic, non-GMO, free from added preservatives and artificial flavors, and safe for consumption by infants and young children, but not intending to sell the Products as such, Defendant has violated § 1770(a)(9) of the CLRA.

128.    At all relevant times, Defendant has known or reasonably should have known that the Products contained or were at risk of containing levels of toxic heavy metals, and that Plaintiff Moore and other members of the California Subclass would reasonably and justifiably rely on the packaging in purchasing the Products.

129.    Plaintiff Moore and members of the California Subclass have justifiably relied on Defendant's misleading representations when purchasing the Products. Moreover, based on the materiality of Defendant's misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiff Moore and members of the California Subclass.

130.    Plaintiff Moore and members of the California Subclass have suffered and continue to suffer injuries caused by Defendant because they would not have purchased them at all, had they known that the Products contain or were at risk of containing levels of toxic heavy metals.

131.    In accordance with Cal. Civ. Code § 1780(d), Plaintiff is filing a declaration of venue, attached hereto as Exhibit A to this Complaint.

132.    On April 5, 2021, Plaintiff Moore, by and through her counsel, sent a notice letter by certified mail to Plum notifying it of the particular violations of § 1770 of the CLRA and demanding that it rectify such violations and give notice to all affected consumers its intent to act. The notice letter further notified Defendant of Plaintiff Moore's intent to pursue claims under the CLRA if Defendant did not take the opportunity to cure, consistent with Cal. Civ. Code § 1782. Defendant failed to respond appropriately to Plaintiff Moore's letter, nor did it agree to rectify any violations of § 1770 of the CLRA and/or give notice to all affected consumers within 30 days of the date of written notice, as prescribed by § 1782. Therefore, Plaintiff Moore further seeks claims for actual, punitive and statutory damages, as appropriate, against Defendant.

133.    Plaintiff Moore further requests that this Court enjoin Defendant from continuing to violate the CLRA as discussed herein and/or from violating the CLRA in the future and to order restitution to Plaintiff and the Class. Plaintiff also requests an award of attorneys' fees and costs, and any other relief that the Court deems proper, pursuant to Cal. Civ. Code § 1780(a).

### Ninth CAUSE OF ACTION
**California's False Advertising Law ("FAL")**
**California Business & Professions Code § 17500, *et seq.***
**(*On behalf of Plaintiff Mayra Moore and the California Subclass*)**

134.    Plaintiff Moore repeats and realleges the allegations contained in paragraphs 1-57, as though fully set forth herein.

135.    Plaintiff Moore brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant pursuant to the FAL. Cal. Bus. & Prof. Code § 17500, *et seq.*

136.    The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

137.    Defendant has represented and continues to represent to the public, including Plaintiff Moore and members of the California Subclass, through its deceptive packaging, that the Products are organic, non-GMO, free from added preservatives and artificial flavors, and safe for consumption by infants and young children. Because Defendant has disseminated misleading information regarding the Products, and Defendant knows, knew, or should have known through the exercise of reasonable care that the representations were and continue to be misleading, Defendant has violated the FAL.

138.    As a result of Defendant's false advertising, Defendant has and continues to unlawfully obtain money from Plaintiff Moore and members of the California Subclass.

139.    Plaintiff Moore requests that this Court cause Defendant to restore this fraudulently obtained money to her and members of the California Subclass, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the FAL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff Moore and members of the California Subclass may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**Tenth CAUSE OF ACTION**
**California's Unfair Competition Law ("UCL")**
**California Business & Professions Code § 17200, *et seq.***
**(*On behalf of Plaintiff Mayra Moore and the California Subclass*)**

140.    Plaintiff Moore repeats and realleges the allegations contained in paragraphs 1-57, as though fully set forth herein.

141.    Plaintiff Moore brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

142.    The UCL, Cal. Bus. & Prof Code § 17200, provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

143.    Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law. Defendant's false and misleading advertising of the Products was and continues to be "unlawful" because it violates the CLRA, the FAL, and any other applicable laws described herein. As a result of Defendant's unlawful business acts and practices, Defendant has unlawfully obtained money from Plaintiff Moore and members of the California Subclass.

144.    Under the UCL, a business act or practice is "unfair" if it is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims. Defendant's conduct was and continues to be of no benefit to purchasers of the Products, as it is misleading, unfair, unlawful, and is injurious to consumers who rely on the packaging. Deceiving consumers as to the safety of the Products can make is of no benefit to consumers. Therefore, Defendant's conduct was and continues to be "unfair." As a result of Defendant's unfair business acts and practices, Defendant has and continues to unfairly obtain money from Plaintiff and members of the Class.

145.    Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Products are safe and suitable for consumption by infants and young children. Because Defendant misled Plaintiff Moore and members of the California Subclass, Defendant's conduct was "fraudulent." As a result of Defendant's fraudulent business acts and practices, Defendant has and continues to fraudulently obtain money from Plaintiff Moore and members of the California Subclass.

146.    Plaintiff Moore requests that this Court cause Defendant to restore this unlawfully, unfairly, and fraudulently obtained money to her, and members of the California Subclass, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff Moore and members of the California Subclass may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, respectfully prays for following relief:

A.    Certification of this case as a class action on behalf of the Classes defined above, appointment of Plaintiffs as Class representatives, and appointment of their counsel as Class counsel;

B.      A declaration that Defendant's actions, as described herein, constitute violations of the claims described herein;

C.      An award of all economic, monetary, actual, consequential, and compensatory damages caused by Defendant's conduct, trebled where appropriate;

D.      An award to Plaintiffs and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiffs and the proposed Classes as a result of its unlawful, unfair and fraudulent business practices described herein;

E.      An award of injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them all money it is required to pay;

F.      An order directing Defendant to engage in a corrective advertising campaign;

G.      An award to Plaintiffs and their counsel of their reasonable expenses and attorneys' fees;

H.      An award to Plaintiffs and the proposed Classes of pre- and post-judgment interest, to the extent allowable; and

I.      For such further relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all claims presented herein so triable.

Dated: May 18, 2021                          **CARLSON LYNCH LLP**

                                      By:  */s/Todd D. Carpenter*
                                            Todd D. Carpenter (234464)
                                            tcarpenter@carlsonlynch.com
                                            Scott G. Braden (305051)
                                            sbraden@carlsonlynch.com
                                            1350 Columbia St., Ste. 603
                                            San Diego, CA 92101
                                            Tel.:   619-762-1900
                                            Fax:   619-756-6991

FIRST AMENDED CLASS ACTION COMPLAINT

**LEEDS BROWN LAW, P.C.**
Jeffrey K. Brown (to apply pro hac vice)
jbrown@leedsbrownlaw.com
Michael A. Tompkins (to apply pro hac vice)
mtompkins@leedsbrownlaw.com
Brett R. Cohen (to apply pro hac vice)
bcohen@leedsbrownlaw.com
One Old Country Road, Suite 347
Carle Place, NY 11514
Tel:     516-873-9550

*Attorneys for Plaintiffs*

FIRST AMENDED CLASS ACTION COMPLAINT