Annick M. Persinger (SBN #272996)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
T: (510) 254-6808
F: (202) 973-0950
Email: *apersinger@tzlegal.com*

Hassan A. Zavareei (SBN #181547)
Allison W. Parr*
**TYCKO & ZAVAREEI LLP**
1828 L Street, NW Suite 1000
Washington, DC 20036
T: (202) 973-0900
F: (202) 973-0950
Email: *hzavareei@tzlegal.com*
*aparr@tzlegal.com*

[Additional counsel listed on signature page]

*Pro Hac Vice* Forthcoming

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| *In re Plum Baby Food Litigation*<br><br>This Document Relates To: All Actions | Master File No: 4:21-CV-00913-YGR<br><br>**NOTICE OF MOTION AND MOTION FOR APPOINTMENT OF INTERIM CO-LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>[*Declaration of Annick M. Persinger and [Proposed] Order filed concurrently herewith*]<br><br>Date: August 3, 2021<br>Time: 2:00 pm<br>Courtroom: 1, Fourth Floor<br>Honorable Yvonne Gonzalez Rogers |

1

## NOTICE OF MOTION AND MOTION

2    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, please take notice that on

3 August 3, 2021, at 2:00 pm, or as soon thereafter as the matter may be heard by the Honorable

4 Yvonne Gonzalez Rogers of the United States District Court for the Northern District of California,

5 Oakland Division, located at 1301 Clay Street, Oakland, California, Courtroom 1, Fourth Floor,

6 Plaintiff Sarah Brown will and hereby does move the Court pursuant to Federal Rule of Civil

7 Procedure 23(g)(3) for an order appointing interim co-lead class counsel.

8    This motion is based on this notice of motion and motion, the attached memorandum of

9 points and authorities in support, the declaration of Annick M. Persinger, the pleadings and papers

10 on file in this action, and such other matters as the Court may consider.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................1

II.     BACKGROUND ...................................................................................................2

III.    PROPOSED INTERIM CLASS COUNSEL.........................................................3

      A.      Melissa Weiner's Qualifications...................................................................3

      B.      Annick M. Persinger's Qualifications...........................................................5

      C.      Rachel Soffin's Qualifications.......................................................................9

IV.    ARGUMENT .......................................................................................................10

      A.      The WPS Slate Has Significant Experience in Successfully Litigating Complex Cases, Superior Knowledge of the Applicable Law, and Is Comprised of Attorneys from Diverse Backgrounds with Complementary Skill Sets.............................................................................11

      B.      The WPS Slate Will Commit the Resources Needed to Represent the Class, Coordinate Efforts Among Counsel, and Ensure the Effective and Efficient Resolution of This Litigation.................................13

      C.      The Entire Proposed Slate Should Be Selected to Most Effectively and Efficiently Handle the Litigation .......................................................14

V.     CONCLUSION....................................................................................................16

# TABLE OF AUTHORITIES

## CASES

*Dean v. Colgate-Palmolive Co.*,
No. EDCV 15-0107 JGB (DTBx), 2015 WL 399931 (C.D. Cal. June 17, 2015) ................................................................................................. 7

*Debernardis v. IQ Formulations, LLC*,
942 F.3d 1076 (11th Cir. 2019) ...................................................... 10

*Farrell v. Bank of America*,
*N.A.*, 327 F.R.D. (S.D. Cal. 2018) ...................................................... 9

*Forcellati v. Hyland's, Inc.*,
No. CV-12-1983-GHK (MRWx), 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014).................... 7

*Forcellati v. Hyland's, Inc.*,
No. CV-12-1983-GHK (MRWx), 2015 WL 13664061 (C.D. Cal. Oct. 23, 2015) ................................................................................................. 7

*Forcellati v. Hyland's, Inc.*,
No. CV-12-1983-GHK (MRWx), 2017 WL 6514678 (C.D. Cal. Aug. 14, 2017) ................................................................................................. 7

*In re: Deva Concepts Prods. Liability Litig.*,
No. 1:20-cv-01234-GHW (S.D.N.Y. July 30, 2021) ............................ 15

*In re: Syngenta AG MIR162 Corn Litig.*,
No. 14-MD-2591, 2015 WL 13679782 (D. Kan. Feb 13, 2015) ............ 15

*Pizana v. SanMedica Int'l, LLC*,
No. 1:18-cv-00644-DAD-SKO, 2019 WL 4747947 (E.D. Cal. Sept. 30, 2019).................... 7

*Salazar v. Honest Tea, Inc.*,
No. 2:13-cv-02318-KJM-EFB, 2015 WL 7017050 (E.D. Cal. Jan. 6, 2015) .......................... 7

*Salazar v. Honest Tea, Inc.*,
74 F.Supp.3d 1304 (E.D. Cal. 2014) .................................................. 7

*Vassigh v. Bai Brands LLC*,
No. 14-cv-05127-HSG, 2015 WL 4238886 (N.D. Cal. July 13, 2015) ................................ 7

*Walker v. Discover Fin. Servs.*,
No. 10-CV-6994, 2011 WL 2160889 (N.D. Ill. May 26, 2011) ............ 14

## STATUTES

FED. R. CIV. P. 23(g)(1)(A) ................................................................................ 11

FED. R. CIV. P. 23(g)(1)(A)(i) ........................................................................... 15

FED. R. CIV. P. 23(g)(1)(A)(ii) ...................................................................... 11, 15

FED. R. CIV. P. 23(g)(1)(A)(iii). ........................................................................ 15

FED. R. CIV. P. 23(g)(1)(A)(iv) .......................................................................... 14

FED. R. CIV. P. 23(g)(1)(B) ............................................................................... 11

FED. R. CIV. P. 23(g)(2) .................................................................................... 11

FED. R. CIV. P. 23(g)(3) .................................................................................... 11

## OTHER AUTHORITIES

BLOCH JUDICIAL INSTITUTE, *Guidelines and Best Practices for Large and
     Mass-Tort MDLs* (2d Ed.), available at https://judicialstudies.duke.edu/wp-
     content/uploads/2018/09/MDL-2nd-Edition-2018-For-Posting.pdf .................................. 1, 13

David Rock and Heidi Grant, *Why Diverse Teams Are Smarter*, Harv. Bus. Rev.
     (Nov. 4, 2016), https://hbr.org/2016/11/why-diverse-teams-are-smarter; *Panel
     1: Data on and Barriers for Women and Diverse Lawyers Attaining
     Leadership Positions*, Duke Law Bolch Jud. Inst.,
     https://judicialstudies.duke.edu/conferences/diversify-leadership-
     positions/panelists. .......................................................................................... 1, 13

MANUAL FOR COMPLEX LITIGATION § 10.23 (4th ed. 2004). ................................. 11, 12

*Woman and Minorities at Law Firms—What Has Changed and What Has Not in
     the Past 25 Years*, NALP Bulletin (Feb. 2018),
     https://www.nalp.org/0218research (last visited May 27, 2021). ........................... 5

## I.       INTRODUCTION

Plaintiff Sarah Brown respectfully asks the Court to appoint Melissa S. Weiner of Pearson, Simon & Warshaw, LLP, Annick M. Persinger of Tycko & Zavareei LLP, and Rachel Soffin of Milberg Coleman Bryson Phillips Grossman, PLLC (collectively, the "WPS Slate") as interim co-lead class counsel in these consolidated actions.

The WPS Slate brings together a streamlined leadership team of three highly skilled consumer class action attorneys from leading class action firms with deep personnel and financial resources—Melissa S. Weiner of Simon & Warshaw, LLP, Annick M. Persinger of Tycko & Zavareei LLP, and Rachel Soffin of Milberg Coleman Bryson Phillips Grossman, PLLC. The WPS Slate is perfectly suited for this litigation, with each member having led teams of lawyers to achieve outstanding results in important food, consumer products, and product defect cases in state and federal courts across the country.

Importantly, the WPS Slate submits a diverse group of three female attorneys to represent the proposed class of purchasers of Defendant's baby food products that allegedly contain harmful levels of heavy metals that are dangerous to infant and children's health. The diversity of the WPS Slate's accomplished attorneys is a critical distinguishing asset that will ensure that the best interests of the class are protected, and it comports with guidance from the Duke Law Bloch Judicial Institute's *Standards and Best Practices for Large and Mass-Tort MDLs*,[1] which encourage "appointment of an experienced slate of attorneys" who will "fairly represent all plaintiffs, keeping in mind the benefits of diversity of experience, skills, and backgrounds."[2] Further, the WPS Slate is made up of three attorneys who are forty or under, who are already partners and practice leaders at their law firms, and who all have been recognized by Super Lawyers for their accomplishments in the field of class action litigation.

---

[1] BLOCH JUDICIAL INSTITUTE, *Guidelines and Best Practices for Large and Mass-Tort MDLs* (2d Ed.), available at https://judicialstudies.duke.edu/wp-content/uploads/2018/09/MDL-2nd-Edition-2018-For-Posting.pdf (hereinafter, the "*Duke Standards*").

[2] David Rock and Heidi Grant, *Why Diverse Teams Are Smarter*, Harv. Bus. Rev. (Nov. 4, 2016), https://hbr.org/2016/11/why-diverse-teams-are-smarter; *Panel 1: Data on and Barriers for Women and Diverse Lawyers Attaining Leadership Positions*, Duke Law Bolch Jud. Inst., https://judicialstudies.duke.edu/conferences/diversify-leadership-positions/panelists.

The WPS Slate includes an attorney who is a mother of three from the Midwest, an attorney who is a mother of two from the Southeast, and an LGBTQ-identified attorney from California. The WPS Slate's firms also offer a strong local presence in California, as Pearson, Simon & Warshaw, LLP maintains two offices in the state (in Los Angeles and San Francisco), Tycko & Zavareei LLP maintains two offices in the state (in Los Angeles and Oakland), and Milberg maintains one office in the state (in Los Angeles). Ms. Persinger has practiced in California for eleven years, and the WPS Slate's firms have more than a dozen attorneys licensed in or practicing in California.

Each member of the WPS Slate enjoys the support of their colleagues at preeminent class action law firms, who have experience managing complex matters and stand ready to assist as requested or needed. Accordingly, the proposed leadership structure will permit Plaintiffs to prosecute this case efficiently and in the best interests of the putative class.

## II.    BACKGROUND

This litigation arises out of claims against Defendant, Plum, PBC, which sells baby food products under the brand name "Plum Organics." Defendant's baby food products allegedly contain harmful levels of heavy metals, including arsenic, lead, mercury, and/or cadmium. Through a uniform, pervasive marketing campaign, including representations that its Plum Organics baby foods are "organic," "always made without genetically modified ingredients," and "the very best food from the very first bite," Defendant has led unsuspecting consumers to believe that the baby food they are purchasing is safe for consumption by infants and children. Contrary to these representations, the Plum Organics baby food products contain dangerous ingredients that are not organic, healthy, or safe. Defendant has misrepresented the nature of these baby food products, and it has also failed to disclose these dangerous ingredients to unsuspecting consumers, including parents, who would not have purchased the products on the same terms or for the same price had they known that the baby food contained dangerous levels of heavy metals and/or toxins.

Accurate, truthful, and trustworthy labeling and advertising is especially important with respect to baby food products because the intended consumers—infants and young children—are among the most vulnerable populations. Scientific research indicates that exposure to the heavy

metals present in Plum Organics baby food can lead to behavioral impairments, brain damage, and even death. Parents rely on manufacturers like Defendant to fully disclose the nature and contents of these vital products.

The WPS Slate has an extensive track record of successfully representing consumers in highly complex and resource-intensive class actions and have combined their backgrounds, resources and skills to successfully prosecute this action.  *See* Persinger Decl. Ex. A (firm resumes).

Prior to filing their complaint, the WPS Slate conducted substantial investigation into the claims at issue. Their investigation included research into the legal and factual claims, review of the analysis of testing performed by Healthy Babies Bright Futures on the products at issue in these actions, analysis of a recent Congressional Report that confirmed that metals like those in Defendant's baby food are dangerous to infant health, consultation with industry experts, interviews of consumers appalled by the news that these metals were present in the baby food they bought, and identification of topics for discovery.

On June 28, 2021, the WPS Slate filed a complaint on behalf of Sarah Brown and all others similarly situated against Defendant.

## III.    PROPOSED INTERIM CLASS COUNSEL

The WPS Slate was crafted to ensure the leadership is comprised of counsel who have varied strengths and experience and who are ready and interested in committing their personal time to this litigation.

### A.    Melissa Weiner's Qualifications

A skilled and strategic advocate in the courtroom and a leader in her local and national legal community, Ms. Weiner's varied experience in class action litigation includes a particular focus on food litigation, and includes cases involving consumer protection, product defect, data breach, intellectual property, automotive defects, false advertising, copyright and Fair Credit Reporting Act. She is a Partner at Pearson, Simon & Warshaw, LLP ("PSW"), a nationally recognized class action and antitrust law firm that has achieved appointment in some of the largest complex matters in history.  A stickler for the details and always committed to personally

delivering the high-quality work and time necessary to litigate any matter she is involved in, Ms. Weiner consistently brings a fresh perspective as a newer leader in the bar.

Since her admission to the bar in 2007, Ms. Weiner has earned appointment in a variety of MDL's and class actions throughout the country. She has extensive experience in organizing complex actions as she chairs the Plaintiffs' Executive Committee ("PEC") in *In Re Santa Fe Natural Tobacco Company Marketing & Sales Practices and Products Liability Litigation*, 1:16-md-02695-JB-LF (D.N.M.). In that role, she is responsible for leading and directing pretrial matters, including the delegation of common benefit work responsibilities to the members of the PEC. She had a substantial role in strategizing and preparing the opposition to the motion to dismiss and was lead in arguing the motion to dismiss, which resulted in a 249-page order favorable to the plaintiffs. Additionally, Ms. Weiner co-led all strategy related to class certification, which culminated with a one-week hearing in December 2020. Additionally, in a contested motion, Ms. Weiner was appointed as Co-Lead Interim Class Counsel in *In re Fairlife Milk Products Marketing and Sales Practices Litigation*, MDL No. 2909, No. 19-cv-3924 (N.D. Ill.), a nationwide false advertising class action. Ms. Weiner was also appointed to the Plaintiffs' Steering Committee in *In re: Blackbaud, Inc., Customer Data Breach Litigation*, MDL No. 2972 (D.S.C.).

Particularly relevant for this action, Ms. Weiner has been named class counsel—and achieved significant results for consumers in deceptive labeling cases—in the following actions: *Frohberg v. Cumberland Packing Corp.*, No. 1:14-cv-00748-KAM-RLM (E.D.N.Y.) (misleading "natural" sweetener); *Martin et al. v. Cargill, Inc.*, Civil No. 1:14-cv-00218-LEKBMK (D. Haw.) (misleading "natural" sweetener); *Gay v. Tom's of Maine, Inc.*, 0:14-cv-60604-KMM (S.D. Fla.) (misleading "natural" cosmetics); *Baharestan v. Venus Labs., Inc. d/b/a Earth Friendly Prods., Inc.*, 315-cv-03578-EDL (N.D. Cal.) (misleading "natural" snack foods); *Barron v. Snyder's-Lance, Inc.*, 0:13-cv-62496-JAL (S.D. Fla.) (misleading "natural" snack foods).

Specifically, in *Martin v. Cargill*, Ms. Weiner was instrumental in consolidating four separate actions filed throughout the country and played a central role in negotiating a $6.1 million settlement—one of the largest in a "natural" food litigation. Her exceptional skill in negotiating

substantial relief for consumers was further on display in *Baharestan v. Venus Laboratories*. There, in addition to monetary relief, Ms. Weiner was able to negotiate significant injunctive relief inclusive of label changes as well as product reformulations. To date, this is one of the few "natural" product litigations to achieve both forms of injunctive relief.

Equally a consistent contributor outside the courtroom, Ms. Weiner is a frequent lecturer at food law and litigation conferences, serves in the non-profit sector and teaches food law as an adjunct professor at Mitchell Hamline School of Law. Ms. Weiner is a member of the Executive Committee of Public Justice, a national nonprofit legal advocacy organization advocating for the rights of employees and consumers and presently serves as the Vice Chair of the Development Committee. Additionally, Ms. Weiner has served on the Food & Drug Law Counsel for the Minnesota State Bar Association for many years and speaks each year at their FDA Forum. Ms. Weiner is especially proud of her work as former Co-Chair for the Mass Tort and Class Action Practice Group for the Minnesota Chapter of the Federal Bar Association where in collaboration with the Bench, she helped institute new recommended procedures for inclusion of newer and diverse attorneys in key litigation roles to combat the steep decline of in-court opportunities that disproportionally impacts women, diverse attorneys and other underrepresented groups.[3]

It is a point of emphasis in Ms. Weiner's practice to work cooperatively with others because cooperation and professional courtesy enable the timely and smooth completion of everything from discovery to trial or settlement. Ms. Weiner is learning from some of the best: PSW's partners have held leadership roles in numerous significant cases and have the resources to effectively lead and litigate this action. *See* PSW Firm Resume, Persinger Decl. Ex. A.

**B.  Annick M. Persinger's Qualifications**

Ms. Persinger is Managing partner of the California offices of Tycko & Zavareei, a leading class action and *qui tam* firm with offices in the Oakland, Los Angeles, and the District of

---

[3] While men and women have been enrolling in law schools at roughly the same rate for decades and the percentage of women associates at larger firms is comparable to the number of men associates, the percentage of partners who are women remains below 25 percent. The percentage of diverse attorneys who are associates at larger firms has increased to almost 25 percent, yet the percentage of diverse attorneys who are partners remains below ten percent. *See Woman and Minorities at Law Firms—What Has Changed and What Has Not in the Past 25 Years*, NALP Bulletin (Feb. 2018), https://www.nalp.org/0218research (last visited May 27, 2021).

Columbia. Ms. Persinger dedicates her practice to advocating for consumers and to representing whistleblowers who expose their employer's fraudulent practices. During her eleven years of practice, Ms. Persinger has led the litigation of a wide array of class actions, including actions alleging violation of various state consumer protection law based on the false and misleading advertising of food products, and the false and misleading advertising of supplement products, as well as other complex consumer class actions such as product defect litigation. Ms. Persinger understands the responsibility of a leadership appointment and is committed to approaching this litigation with professionalism and to delivering high quality work product.

Ms. Persinger is also a leader in her legal community. Based on her vast experience and expertise in food and supplement labeling class actions, Ms. Persinger was selected to serve on the steering committee for the Cambridge Forum on Plaintiffs' Food Fraud Litigation, an annual meeting of leading Plaintiffs' lawyers who litigate consumer-oriented food law and food mislabeling matters. At the Cambridge Forum's annual meeting this year, Ms. Persinger will lead a discussion topic on issues from planning a successful schedule for management of complex actions.

Ms. Persinger also worked on judicial endorsements in her role as Judiciary Chair of Bay Area Lawyers for Individual Freedom ("BALIF"), the Bay Area's LGBTQI bar association. Ms. Persinger then served as Co-Chair of BALIF's Board of Directors from 2018 to 2019. Additionally, Ms. Persinger prioritizes the mentorship of minority lawyers within Tycko & Zavareei and in the broader legal community through her connections with BALIF and the National Center for Lesbian Rights.

Ms. Persinger has extensive experience in food and supplement false advertising actions. From the start of her legal career, Ms. Persinger brought false advertising claims against the manufacture of infant formula, and the manufacturers of fake medicine for children. *See e.g.*, *Forcellati v. Hyland's, Inc.*, No. CV-12-1983-GHK (MRWx), 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) (certifying a class of purchasers of Hyland's cold medicine for children); *Forcellati v. Hyland's, Inc.*, No. CV-12-1983-GHK (MRWx), 2015 WL 13664061 (C.D. Cal. Oct. 23, 2015) (denying summary judgment where the company's testing and expert testimony showed the

product was no different than a placebo); *Forcellati v. Hyalnd's, Inc.*, No. CV-12-1983-GHK (MRWx), 2017 WL 6514678 (C.D. Cal. Aug. 14, 2017) (granting final approval of class action settlement).

Ms. Persinger has also originated and successfully litigated cases against sellers that violated the Food and Drug and Cosmetics Act and state law that incorporated the Act by making misleading labeling claims about antioxidants. *See, e.g.*, *Salazar v. Honest Tea, Inc.*, No. 2:13-cv-02318-KJM-EFB, 2015 WL 7017050 (E.D. Cal. Nov. 12, 2015) (denying summary judgment in action alleging that Honest Tea, owned by Coca-Cola, made misleading antioxidant claims in violation of the FDCA and parallel state law); *Salazar v. Honest Tea, Inc.*, No. 2:13-cv-02318-KJM-EFB, 2015 WL 75223 (E.D. Cal. Jan. 6, 2015); (denying motion to dismiss first amended complaint); *Salazar v. Honest Tea, Inc.*, 74 F.Supp.3d 1304 (E.D. Cal. 2014) (denying motion to dismiss in part); *Vassigh v. Bai Brands LLC*, No. 14-cv-05127-HSG, 2015 WL 4238886 (N.D. Cal. July 13, 2015) (denying in part motion to dismiss complaint alleging that Bai Brands made deceptive antioxidant representations).

Other false labeling cases that Ms. Persinger has litigated include cases pertaining to tuna, toothpaste, dietary supplements, and olive oil. *See Hendricks v. Starkist Co.,* 30 F. Supp. 3d 917 (N.D. Cal. 2014) (denying in part motion to dismiss in case alleging violation of the FDCA and state consumer protection law after product testing revealed that cans were underfilled); *Dean v. Colgate-Palmolive Co.*, No. EDCV 15-0107 JGB (DTBx), 2015 WL 3999313 (C.D. Cal. June 17, 2015) (denying motion to dismiss in case alleging that Colgate falsely advertised that its Optic White toothpaste could "deeply clean" teeth where testing and expert testimony showed that the Optic White formula could only clean at surface level); *Pizana v. SanMedica Int'l, LLC*, No. 1:18-cv-00644-DAD-SKO, 2019 WL 4747947 (E.D. Cal. Sept. 30, 2019) (denying motion to dismiss action for violation of California consumer protection laws where studies and expert reports demonstrated that the supposed anti-aging and weight-loss miracle, SeroVital, was nothing more than a placebo); *Koller v. Deoleo USA Inc.*, No. 3:14-cv-02400-RS (N.D. Cal.) (Ms. Persinger's team achieved a $7 million settlement in case involving olive oil products inappropriately marketed as "imported from Italy" and/or "extra virgin").

While working on these cases over the years—through every stage of the litigation—Ms. Persinger has studied the law related to food litigation and has used product testing to hold defendants responsible for their wrongdoing. She is thus uniquely qualified to take a leading role in this action.

Ms. Persinger has also achieved excellent results for classes of consumers in many other types of false advertising cases. *See, e.g., Vasquez v. Libre by Nexus, Inc.*, 4:17-cv-00755-CW (N.D. Cal.) ($3.2 million value settlement in action involving exorbitant fees, invasive monitoring, and other deceptive practices in connection with company's offer of credit to consumers for immigration bonds); *Wallace v. Wells Fargo & Co.*, No. 17CV317775 (Cal. Super. Ct.) ($10 million class settlement in overdraft fee litigation); *Simmons v. Apple Inc.*, No. 17-CV-312251 (Cal. Super. Ct.) ($9.75 million value settlement in case alleging false advertising of Apple Powerbeats 2 earphones); *Gorzo v. Rodan & Fields, LLC*, No. CGC-18-565628 (Cal. Super. Ct.) (negotiated class settlement in false advertising case alleging that a cosmetic product contained an undisclosed drug with dangerous side effects); *Wang v. Stubhub, Inc.*, No. CGC18564120 (Cal. Super. Ct.) (after submitting motion for class certification in case alleging that by hiding fees until the last stage of the transaction StubHub operated a misleading bait-and-switch scheme, counsel negotiated class settlement that will provide significant relief).

Additionally, Ms. Persinger and her firm have litigated numerous cases before this Court. *See, e.g., Hendricks*, No. 13-cv-729 YGR (N.D. Cal.); *Perez v. Rash Curtis & Assocs.*, No. 16-cv-03396-YGR (N.D. Cal.); *Stathakos v. Columbia Sportswear Co.*, No. 4:15-cv-04543-YGR (N.D. Cal.); *West v. Cal. Servs. Bureau*, No. 16-cv-3124-YGR (N.D. Cal.); *Kumar v. Salov N. Am.*, No. 14-CV-2411-YGR (N.D. Cal.).

Ms. Persinger's firm, Tycko & Zavareei, has held numerous leadership roles in high stakes class litigation, including leadership roles in certified class actions against national and regional banks involving unlawful transactional fees, class actions involving product labeling and defect, class actions for violations of the TPCA, and class actions focused on protecting consumer privacy. Following these appointments, Tycko & Zavareei's resources and significant experience litigating complex multi-state class actions has inured to the benefit of hundreds of thousands of consumers.

For instance, as co-lead counsel in *Farrell v. Bank of America, N.A.*, 327 F.R.D. 422 (S.D. Cal. 2018), Tycko & Zavareei secured a class action settlement valued at $66.6 million along with $1.2 billion in injunctive relief, a result the court described as a "remarkable" accomplishment achieved through "tenacity and great skill." *Id.* at 432. *See* Tycko & Zavareei Firm Resume, Ex. A.

### C.     Rachel Soffin's Qualifications

Ms. Soffin is a partner and practice leader in the Consumer Products Group at Milberg Coleman Bryson Phillips Grossman, PLLC, a firm with offices in New York, London, California, Georgia, Mississippi, Washington, Tennessee, Florida, North Carolina, South Carolina, Kentucky, Louisiana, and Puerto Rico. Ms. Soffin has been litigating complex actions for sixteen years, with an exclusive focus on consumer class actions for the last eleven years. Throughout her career, Ms. Soffin has represented consumers and served as class counsel in numerous successful MDLs and class actions, including class actions involving consumer protection, product defects, false advertising, automotive defects and breach of contract , including: *Hamm v. Sharp Electronics Corporation,* 5-19-cv-00488 (M.D. Fla.) (over $100M value settlement in action involving allegedly defective microwaves); *In Re: Allura Fiber Cement Siding Products Liability Litigation*, 2:19-mn-02886-DCN (D.S.C.) ($12.5M settlement involving allegedly defective fiber cement siding); *Berman et al v. General Motors LLC*, No. 2:18-cv-14371 (S.D. Fla.) ($40 million settlement in action involving allegedly defective automobiles); *Price et al. v. L'Oréal USA, Inc. et al.*, No. 1:17-cv-00614 (S.D.N.Y.) (certified class action for alleged deceptive conduct in labeling of hair care products); *De Leon v. Bank of America, N.A.* (USA), No. 6:09-cv-01251 (M.D. Fla.) ($10 million settlement for consumers subjected to breach of their Cardholder Agreement and deceptive trade practices); *Swift v. Bank of America*, No. 3:14-cv-01539 (M.D. Fla) ($1 million settlement for consumers subjected to TCPA violations); *In Re: Tracfone Unlimited Service Plan Litigation*, No. 13-cv-03440 (N.D. Cal) ($40 million settlement for consumers subjected to deceptive cellular phone data plan practices).

Ms. Soffin also has significant experience in food and supplement false advertising actions. *See, e.g.*, *In Re: Horizon Organic Milk Plus DHA Omega-3 Marketing and Sales Practice Litigation*, No. 1:12-MD-02324 (S.D. Fla.) ($1.3 million settlement value for consumers subjected

to deceptive trade practices involving milk product misrepresentations); *Debernardis v. IQ Formulations, LLC,* 942 F.3d 1076, 1080 (11th Cir. 2019) (in action involving dietary supplements, finding "plaintiffs plausibly alleged that they suffered an economic loss when they purchased supplements that were worthless because the FDCA prohibited sale of the supplements."). In addition, Ms. Soffin's firm, Milberg, has significant experience in product mislabeling class actions including, recently, *Bailey v. Rite Aid Corp.* No. 4:18-cv-06926 YGR (N.D. Cal. Apr. 28, 2021) (certifying, in part, class action involving alleged mislabeling of Rite Aid's over-the-counter acetaminophen products).

Currently, Ms. Soffin serves as court-appointed Co-Lead Counsel in the deceptive representations and omissions cookware litigation, *All-Clad Metalcrafters, LLC, Cookware Marketing and Sales Practices Litigation,* 2:21-mc-00491-NR (W.D. Pa.). Ms. Soffin also serves as court-appointed counsel on the Plaintiffs' Steering Committee in litigation involving defective breast implants, *In re: Allergan Biocell Textured Breast Implant Product Liability Litigation*, 2:19-md-02921-BRM-ESK (D.N.J.). Ms. Soffin has also been a speaker at national continuing legal education conferences on complex class action litigation topics. In addition, Ms. Soffin was designated by Super Lawyers as a Florida Rising Star from 2011 to 2013 and as a Florida Super Lawyer from 2014 to 2018, in the fields of Class Actions and Mass Torts.

Ms. Soffin's firm, Milberg, has nearly 100 attorneys operating on three continents, and represents plaintiffs in the areas of consumer protection, false advertising, automobile emissions claims, defective drugs and devices, environmental litigation, financial and insurance litigation, antitrust, securities, financial fraud, and cyber law and security. The firm and its affiliates have recovered over $50 billion in verdicts and settlements.

## IV.   ARGUMENT

A court may appoint interim class counsel before deciding whether the action may be certified as a class. Fed. R. Civ. P. 23(g)(3). When, as here, there is a contested application process, "the court must appoint the applicant best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2). In making this determination, the court must consider (i) counsel's work in identifying or investigating potential claims, (ii) counsel's experience in handling class actions and the types

of claims involved, (iii) counsel's knowledge of the applicable laws, and (iv) the resources counsel commits to representing the class. Fed. R. Civ. P. 23(g)(1)(A). A court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). *See also* MANUAL FOR COMPLEX LITIGATION § 10.22. The WPS Slate fully satisfies each of these factors.

### A. The WPS Slate Has Significant Experience in Successfully Litigating Complex Cases, Superior Knowledge of the Applicable Law, and Is Comprised of Attorneys from Diverse Backgrounds with Complementary Skill Sets

As shown in the attached firm resumes at Exhibit A, the WPS Slate includes some of the nation's most respected attorneys and firms that represent plaintiffs in complex class actions. Their wealth of experience weighs in favor of their appointment. Fed. R. Civ. P. 23(g)(1)(A)(ii). In that regard, as detailed in Section III above, and in the attached firm resumes, the members of the WPS Slate have demonstrated that they are specifically skilled and knowledgeable in the areas of false advertising and consumer products litigation, having successfully certified class action involving consumer products and settled numerous cases involving defective products for hundreds of millions of dollars on behalf of consumers. *Id.* This specialized experience militates strongly in favor of their appointment.

The WPS Slate is comprised of subject matter experts on food labeling and false advertising issues, and its attorneys have already committed significant time and resources to litigating this case. Through their work in this action, as well as the similar actions that they have filed against other baby food manufacturers nationwide, the WPS Slate has become intimately familiar with the claims available to the putative class. Specifically, the WPS Slate began investigating the claims in this action several months ago and have performed substantial work to date, including, investigating the alleged defect and corresponding false advertising at issue, interviewing consumers who purchased the defective baby food products; researching legal and regulatory issues and claims, drafting initial pleadings, identifying and interviewing potential experts, and beginning to explore topics for discovery.

Another important consideration in selecting leadership is the ability to work well as a team, with opposing counsel, and with the Court. The role of leadership in complex litigation

1    requires a commitment to professionalism, cooperation, courtesy, and acceptance of the

2    obligations owed as officers of the court, all of which are "critical to successful management of

3    the litigation." MANUAL FOR COMPLEX LITIGATION § 10.23 (4th ed. 2004). One of the demanding

4    aspects of complex litigation is "the difficult[y] of having to communicate and establish effective

5    working relationships with numerous attorneys (many of whom may be strangers to each other)."

6    *Id.* § 10.21.

7          Here, not only has the WPS Slate demonstrated that it will efficiently and effectively

8    conduct this litigation, but the WPS Slate already has a proven history of successfully working

9    together in other consumer cases. The firms of Ms. Persinger, Ms. Soffin, and Ms. Weiner are

10   actively working on numerous class action cases in federal and state courts across the country in

11   which at least two of the three firms are co-counsel. Together, the firms have achieved significant

12   success on behalf of consumers in a wide range of consumer class actions, including several false

13   advertising and product defect actions. *See, e.g.*, *Hamm v. Sharp Elecs. Corp.*, No. 5:19-cv-00488-

14   JSM-PRL (M.D. Fla.) (over $100 million value settlement); *Simmons v. Apple Inc.*, No. 17-CV-

15   312251 (Cal. Super. Ct.) ($9.75 million value settlement); *Daniels v. Delta Air Lines, Inc.*, No.

16   1:20-cv-01664-ELR (N.D. Ga.) (serving as lead counsel for class of consumers challenging Delta's

17   refund policies during the COVID-19 pandemic); *Vakilzadeh v. Trs. of the Cal. State Univ.*, No.

18   20STCV23124 (Cal. Super. Ct.) (representing class of students in breach of contract action for

19   tuition and fees); and *Lee v. Regents of the Univ. of Cal.*, RG20062491 (Cal. Super. Ct.) (same).

20         Selecting lawyers who have previously worked together has numerous benefits. They have

21   developed working relationships, know of complimentary talents, and have "developed certain

22   systems for handling workflow and comparative advantages that will help expedite the case

23   relative to a leadership committee working together for the first time." Duke Standards at 43. The

24   WPS Slate is truly a team of significantly qualified individuals who complement each other's skills

25   and have a long-established relationship of working effectively, efficiently and cooperatively in

26   the best interest of consumers.

27         Furthermore, the WPS Slate has a strong working relationship with the lawyers at Mayer

28   Brown who are defending Plum, PBC, as a result of having litigated with them in other cases. *See,*

*e.g.*, *In re Kind LLC "Healthy and All Natural" Litig.*, No. 15-MD-2645 (S.D.N.Y.); *Grossman v. Simply Nourish Pet Food Co. LLC*, No. 20-CV-1603 (KAM)(ST) (E.D.N.Y.); *Valdes v. Am. Sugar Refining, Inc.*, No. 1:17-cv-05213-CBA-PK (E.D.N.Y.).

The WPS Slate also reflects the diversity of the bar and the plaintiff class—from the standpoint of gender, age, geography, background, and experience, thus meeting the guidance from Duke Law's Bloch Judicial Institute, a leader in developing complex litigation standards:

> [In] appointing a leadership team, courts should be mindful of the benefits of diversity of all types. In particular, the strong repeat player dynamic that has historically existed reduces fresh outlooks and innovative ideas, and increases pressure to go along with the group and conform, all of which may negatively impact the plaintiffs whose cases are being pursued in the MDL. At the same time, leadership needs repeat players who understand the ropes. Thus a balanced team, with diversity of skills, expertise, prior casework and role, and demographics, should be sought.

*Duke Standards* at 37.[4]

In short, because of their successes working with each other in many cases of this sort, their efforts to date in this and other similar cases, and the professional manner in which they have conducted themselves in many cases in this District and in federal courts throughout the United States, this Court has assurance that, if the WPS Slate is selected, the litigation will be zealously and expeditiously pursued by a diverse team of lawyer working efficiently and zealously to protect the interests of the plaintiffs and the putative class members.

**B.      The WPS Slate Will Commit the Resources Needed to Represent the Class, Coordinate Efforts Among Counsel, and Ensure the Effective and Efficient Resolution of This Litigation**

Rule 23(g)(1)(A)(iv) instructs the Court to consider the resources that counsel will commit to representing the class. The WPS Slate has the resources necessary to prosecute and finance a case of this magnitude, as they have shown by successfully prosecuting materially similar cases in the past. As shown in the firm resumes attached as Exhibit A, the WPS Slate's law firms are responsible for achieving some of the largest class action recoveries in some of the most complex,

---

[4] *See also* David Rock and Heidi Grant, *Why Diverse Teams Are Smarter*, HARV. BUS. REV. (Nov. 4, 2016), available at https://hbr.org/2016/11/why-diverse-teams-are-smarter (positing that diverse teams "focus more on facts," "process those facts more carefully," and are "more innovative").

document-intensive, and high-profile class actions. *See generally* Persinger Decl. Ex. A. Moreover, while each firm is committed to expending the resources necessary to achieve a favorable result for the class, all counsel are cognizant of the need to control costs, having diligently done so in the other complex litigation they have led together. *See, e.g.*, *Hamm v. Sharp Elecs. Corp.*, No. 5:19-cv-00488-JSM-PRL (M.D. Fla.); *Simmons v. Apple Inc.*, No. 17-CV-312251 (Cal. Super. Ct.); *Daniels v. Delta Air Lines, Inc.*, No. 1:20-cv-01664-ELR (N.D. Ga.). The WPS does not need—nor would it seek—any litigation financing to support the prosecution of this litigation.

## C.     The Entire Proposed Slate Should Be Selected to Most Effectively and Efficiently Handle the Litigation

This streamlined proposed leadership structure will permit Plaintiffs to prosecute this case efficiently and effectively in the best interests of the putative class. In determining which counsel is best suited to act as interim class counsel, courts "have frequently appointed more than one firm" when it is in the best interests of the proposed class members. *See Walker v. Discover Fin. Servs.*, No. 10-CV-6994, 2011 WL 2160889, at *3 (N.D. Ill. May 26, 2011) (collecting cases). The WPS Slate presents an appropriate co-lead structure that spreads litigation risk sufficiently and that includes a strong local presence and familiarity with practicing in this District. Ms. Persinger practices in California, her firm maintains two offices in California—including the one where Ms. Persinger maintains an office in Oakland, and she has significant experience litigating in this Court; Ms. Weiner's firm maintains two offices in California, and she, too, has significant experience litigating in this District; and Ms. Soffin's firm maintains an office in California. The WPS Slate submits that they are well-equipped to bring this case efficiently and knowledgeably in this District.

The WPS Slate has proposed a three-way co-leadership as they submit it promotes efficiency through appointing three individuals who are accountable to both the strategy and execution of that strategy without unnecessary expense. While in some instances an Executive Committee can prove effective, the WPS Slate believes it is more efficient to adopt an informal committee structure, if necessary, to engage other counsel. *See* Memorandum Opinion and Order Granting Motion to Appoint Interim Lead Counsel, *In re: Deva Concepts Prods. Liability Litig.*,

No. 1:20-cv-01234-GHW (S.D.N.Y. July 30, 2021), ECF No. 66 (granting substantially modified leadership proposal, which "slash[ed] the leadership structure from a three-tiered structure comprising of twelve attorneys to just four co-lead interim counsel," following court's concern that an "expansive leadership structure might generate unnecessary expenses and could ultimately detract from the class members' recovery," and also finding proposed co-lead structure, which included two women, represented a diverse slate).

The WPS Slate's experience in handling complex litigation, knowledge of the applicable law, and commitment to effective and efficient litigation plainly satisfies Fed. R. Civ. P. 23(g)(1)(A)(i), (ii), and (iii). The extensive successful experience that the WPS Slate firms have had individually and collectively in other class action litigation demonstrates what the Court can expect in this case for necessary collaboration, division of work, and effective management of litigation costs. Accordingly, although each of the WPS Slate commits to working with any plaintiff's counsel appointed, adding or subtracting lawyers from the proposed group could well create the potential for inefficiency. *See In re: Syngenta AG MIR162 Corn Litig.*, No. 14-MD-2591, 2015 WL 13679782, at *2 (D. Kan. Feb. 13, 2015) (declining suggestion to pick and choose a slate from competing lead counsel applications in favor of a single slate "that has the distinct advantage of having committed itself in advance to solving this problem together").

The WPS Slate will ensure the lean and careful litigation of this matter. The WPS Slate intends to litigate the case zealously, and they are fully aware of the Court's expectation that they prosecute the case efficiently and without duplication. Specifically, the WPS Slate has significant experience monitoring billing and minimizing duplication through careful assignment of case-related work. Upon appointment, the WPS Slate would propose a Time and Expense Reporting Protocol to the Court for adoption and implementation. This will include submission of monthly billing reports to Co-Lead Counsel for auditing, a requirement for the maintenance of contemporaneous time records, billing in increments no larger than one-tenth of an hour, restrictions on billing only for work assigned by Co-Lead Counsel and staffing the case efficiently on an as-needed basis with staff of appropriate seniority, skill set and expertise. In addition, unless otherwise authorized by Co-Lead Counsel, only Co-Lead Counsel and counsel responsible for the

relevant discovery will be permitted to attend depositions. Further, Plaintiffs' Counsel shall only seek reimbursement for reasonable accommodations, airfare and meal, and Plaintiffs' Counsel shall not seek reimbursement for expenses or costs incurred as part of normal firm overhead costs.

The WPS Slate has had positive experience in other complex litigation with regular status conferences and would welcome the opportunity to keep the Court informed in the manner best suited to this Court's needs. Moreover, the WPS Slate welcomes guidance from the Court regarding any proposed protocol and agrees to abide by and enforce its terms.

## V.      CONCLUSION

For the reasons set forth above, the WPS Slate respectfully requests that the Court grant its application to serve as interim co-lead class counsel.

Dated: June 29, 2021                      Respectfully submitted,

*s/ Annick M. Persinger*

Annick M. Persinger (SBN #272996)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
T: (510) 254-6808
F: (202) 973-0950
Email: *apersinger@tzlegal.com*

Hassan A. Zavareei (SBN #181547)
Allison W. Parr*
**TYCKO & ZAVAREEI LLP**
1828 L Street, NW Suite 1000
Washington, DC 20036
T: (202) 973-0900
F: (202) 973-0950
Email: *hzavareei@tzlegal.com*
        *aparr@tzlegal.com*

Daniel L. Warshaw (SBN #185365)
Michael H. Pearson (SBN #277857)
**PEARSON SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
T: 818-788-8300
F: 818-788-8104
Email: *dwarshaw@pswlaw.com*
        *mpearson@pswlaw.com*

Melissa S. Weiner*
Daniel K. Asiedu*
**PEARSON SIMON & WARSHAW, LLP**
800 LaSalle Avenue, Suite 2150
Minneapolis, Minnesota 55402
T: 612-389-0600
F: 612-389-0610
Email: *mweiner@pswlaw.com*
        *dasiedu@pswlaw.com*

Rebecca K. Timmons (Fla. Bar No. 121701)*
**LEVIN PAPANTONIO RAFFERTY**
316 S. Baylen Street, Suite 600
Pensacola, Florida 32502
T: (850) 435-7140
Email: *btimmons@levinlaw.com*

Blake Hunter Yagman*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
100 Garden City Plaza, Suite 500
Garden City, New York 11530
T: (212) 594-5300
Email: *byagman@milberg.com*

Rachel Soffin*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
T: (865) 247-0080
Email: *rsoffin@milberg.com*

*\*Pro Hac Vice* Forthcoming

*Attorneys for Plaintiff and Proposed Class*