UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PLUM BABY FOOD LITIGATION,<br><br>This Document Relates to:  All Actions | CASE NO.  21-CV-913-YGR<br><br>ORDER DENYING MOTION TO TRANSFER AND GRANTING IN PART THE *GULKAROV* PLAINTIFFS' MOTION FOR APPOINTMENT OF INTERIM CO-LEAD CLASS COUNSEL<br><br>Re: Dkt. Nos. 34, 70, 71 |

This consolidated action alleges, *inter alia*, consumer protection claims arising from a congressional report dated February 4, 2021, in which the U.S. House of Representatives Subcommittee on Economic and Consumer Policy found that many popular baby and toddler foods possibly contained excessive levels of heavy metals, including arsenic, cadmium, lead, and mercury.  Following release of the report, at least 80 actions were filed against baby food manufacturers, including defendants Plum, PBC and its then-parent company Campbell Soup Company.  Five of those actions were: *Ludmila Gulkarov, et al. v. Plum, PBC and Plum, Inc.* (Case No. 4:21-CV-913-YGR); *Vanessa Mathiesen v. Plum, PBC* (Case No. 4:21-CV-1763-YGR); *Cindy Pereira v. Campbell Soup Co. and Plum, PBC* (Case No. 4:21-CV-1767-YGR); *Autumn Ellison v. Plum, PBC and Plum, Inc.* (Case No. 21-CV-2015-YGR); and *Jessica David, et ano. v. Plum PBC* (Case No. 4:21-CV-2059-YGR) (collectively, the "Consolidated Action").[1]

Currently pending before the Court is defendants' motion to transfer the Consolidated Action[2] to the District of New Jersey, where four similar actions (also now consolidated) are

---

[1] A motion for centralization had been filed with the Judicial Panel of Multidistrict Litigation ("JPML") to coordinate and transfer actions arising out of the House Subcommittee Report under the multidistrict litigation procedures.  *See In re Baby Food Marketing, Sales, Practice and Products Liability Litig.*, MDL. No. 2997.  On June 7, 2021, the JPML denied the motion.  (Dkt. No. 66.)

[2] *Brown v. Plum, PBC* (Case No. 21-4953-YGR), was filed on June 28, 2021, after the May 3, 2021 Order consolidating the five aforementioned actions.  By Order dated July 15, 2021,

pending. (Dkt. No. 34.)[3] Also before the Court are two motions of appointment of interim class counsel, one brought by plaintiff Sarah Brown and the other brought by plaintiffs Ludmila Gulkarov, Janine Torrence, Kelly McKeon, Josh Crawford, Mayra Moore, Jessica David, Heather Age, Autumn Ellison, and Vanessa Mathiesen (the "*Gulkarov* plaintiffs"). (Dkt. No. 70, 71.)[4] Having carefully considered the papers submitted, the Court hereby **DENIES** the motion to transfer and **APPOINTS** Rebecca A. Peterson and Susana Cruz Hodge as Interim Co-Lead Class Counsel for plaintiffs and other members of the proposed classes in the Consolidated Action.

I. **MOTION TO TRANSFER**

Consideration of a motion to transfer venue is a two-step inquiry. First, the Court must determine whether this action is one that "might have been brought" in the transferee forum. 28 U.S.C. § 1404(a). Second, it must determine whether transferring the action is warranted based on the convenience of the parties and witnesses and the interests of justice. *Id.*

A. **STEP ONE**

With respect to the first inquiry, this action "might have been brought" in the District of New Jersey if subject matter jurisdiction over the claims, personal jurisdiction over the defendants, and venue would have all been proper in that district had the case been brought there originally. *See Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960). For purposes of general personal jurisdiction, it was not clear that Plum primarily conducted business in New Jersey upon the Court's review of the papers. It was also not clear that any of the claims brought by plaintiffs in this district arise from or relate to Plum's activities there for purposes of specific personal

---

the Court deemed *Brown* related to the consolidated action. (Dkt. No. 77.) However, *Brown* is not subject to the pending motion to transfer, which had been filed prior to commencement of that action.

[3] Those actions are *Erin Smid v. Campbell Soup Co. and Plum, PBC* (Case No. 1:21-CV-2417-NLH); *Richard Chase and Stacey Chase v. Campbell Soup Co. and Plum, PBC* (Case No. 1:21-CV-4650-NLH); *Emily Baccari, Jillian Geffken, Heather Hyden, and Mercedes Jones v. Campbell Soup. Co. and Plum, PBC* (Case No. 1:21-CV-4749-NLH); and *Smith v. Campbell Soup Co. and Plum, PBC* (Case No. 1:21-CV-8567-NLH).

[4] The remaining plaintiff Cindy Pereira did not move to appoint counsel.

jurisdiction. Thus, the Court requested the parties to further brief whether courts in New Jersey, where Campbell is headquartered, could properly exercise personal jurisdiction over Plum. (Dkt. No. 74.)[5]

Plaintiffs raised legitimate questions as to the location of Plum's principal place of business.[6] In particular, plaintiffs pointed to, among other things, (1) a January 27, 2021 filing with the California Secretary of State which lists Emeryville, California as the location of Plum's principal executive office as well as each of its officers; and (2) a copy of Plum's Terms of Service viewed on March 9, 2021, listing Emeryville, California as its contact address. (Dkt. Nos. 53-2, 53-3.)

For their part, defendants originally provided a declaration by Keely Stewart, Campbell's senior corporate counsel and assistant secretary, representing that "Plum's principal place of business was in Camden, New Jersey, and [that] it maintained no employees, headquarters, offices, or corporate operations in California." (Dkt. No. 34-1, ¶ 4.) Defendants supplemented this with a four-paragraph declaration from Mr. Stewart which added that Plum's board of directors, corporate officers, and employees all worked out of Campbell's Camden, New Jersey headquarters between the December 2018 closure of Plum's Emeryville offices and May 3, 2021, when Campbell no longer owned Plum. (Dkt. No. 76.) According to an amended certification of interested parties, Sun-Maid Growers of California acquired Plum on this latter date. (Dkt. No. 65.)

Having reviewed the evidence submitted, the Court is still not persuaded that courts in New Jersey could properly exercise personal jurisdiction over Plum in the cases subject to this motion. Aside from two self-serving declarations by Campbell, defendants have failed to proffer any evidence demonstrating that Plum was, in fact, headquartered in New Jersey or that any of the

---

[5] "Personal jurisdiction over each defendant must be analyzed separately." *Harris Rutsky & Co. Ins. Servs, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1130 (9th Cir. 2003) (citing *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1258 (9th Cir. 1989)). The Court assumes that plaintiffs' theory of Campbell's liability is predicated on that of Plum, its former indirect wholly owned subsidiary. (Dkt. No. 76, ¶ 2.)

[6] Plaintiffs do not dispute that Plum is incorporated in Delaware.

3

relevant activities giving rise to the claims occurred there. Conversely, plaintiffs proffer a Statement of Information filed on January 27, 2021, with the California Secretary of State indicating that Plum's mailing address, principal executive office, and executive officers are all based in Emeryville, California. When confronted with this document, defendants claim that this was an erroneous filing (without any further explanation) and proffered a Certificate of Surrender filed on February 22, 2021 with the California Secretary of State. (Dkt. No. 75-9.)[7] However, this subsequent filing does not establish that Plum's executive office and officers were in New Jersey. Rather, it only lists a Camden, New Jersey mailing address for copies of legal service. Moreover, even assuming that this document effectuated a change in Plum's principal place of business, there is no indication that it functioned retroactively. The *Gulkarov* action, the first action filed in this District arising from the congressional report, commenced on February 5, 2021.[8] Accordingly, the Certificate of Surrender does not support a finding of personal jurisdiction over Plum in New Jersey.

      Plaintiffs also provided a purported copy of Plum Organic's Terms of Service obtained from Plum's website on March 9, 2021 by plaintiffs' counsel. Under "How to Contact Us," Plum lists the same Emeryville, California address. Defendants again asserted, without explaining, that the website terms were in error but do not provide the Court with a corrected copy. Accordingly, without any evidence corroborating Campbell's representations or overcoming plaintiffs' evidence, the Court is unable to conclude, based on defendants' showing on this motion, that this action could have properly been brought in New Jersey.

**B.    STEP TWO**

      Even assuming this action could have properly been brought in New Jersey, defendants fail

---

[7] The Court is skeptical as to defendants' claimed error in light of a Statement of Information dated December 26, 2019, also filed with the California Secretary of State, again listing Emeryville, California as the location of its principal executive office and its corporate officers. (Dkt. No. 75-8.)

[8] Indeed, Plum purportedly represented that "[t]he corporation consents to process against it in any action upon any liability or obligated incurred within the State of California prior to the filing of this Certificate of Surrender may be served upon the California Secretary of State." (Dkt. No. 75-9 at 2.)

4

to show that the requested transfer would better convenience the parties and witnesses and serve the interests of justice. With respect to this second inquiry, relevant factors the Court may consider include: (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum. *Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009). Weighing of the factors is "best left to the discretion" of the Court. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

As an initial matter, in weighing the factors, the Court focuses on Plum, whose products are the subject of this case. The products at issue all bear Plum's name, and there are no specific allegations that Campbell manufactured, sold, or marketed the subject baby foods. Moreover, only one of the five California actions that are subject to this motion to transfer named Campbell as a defendant. That action, *Pereira*, makes no specific allegations that Campbell had any involvement with the baby foods at issue or that Campbell otherwise directed Plum's activities in any relevant way. Thus, the Court pays particular attention to Plum in assessing the Section 1404(a) factors.[9]

The Court first considers convenience of the parties and witnesses. The nine plaintiffs in the cases comprising the consolidated actions hail from seven states across the country: California (Gulkarov, Mathiesen, and Moore); Florida (David); Kentucky (Age); Minnesota (McKeon); New York (Torrence); Pennsylvania (Crawford); and Oregon (Ellison). However, plaintiffs chose to file their claims in California. Moreover, there is no indication that plaintiffs in the California actions are also plaintiffs in the New Jersey actions. Thus, the Court infers that California is the more convenient forum for plaintiffs. Nevertheless, the Court recognizes that the critical witnesses in a class action such as this one will likely be those of defendants. Notwithstanding, while Mr. Stewart avers that "Plum's day-to-day business operations were managed in association

---

[9] The Court makes these observations solely for purposes of determining venue without commenting one way or the other as to Campbell's ultimate liability.

with Campbell from Campbell's corporate headquarters" (Dkt. No. 78, ¶ 3), this is no longer the case in light of the May 2021 change in ownership. Nor is there any indication that the relevant witnesses remained in New Jersey since then. Indeed, Mr. Stewart avers that "[s]ubsequent to the closure of the Emeryville office, and until May 2021, none of Plum's executives and corporate officers routinely worked out of or made Plum-related business decisions from any location in California." (*Id.* ¶ 4.) In other words, before and after this period of time, these individuals were not based in New Jersey. Thus, the Court cannot find that convenience of the parties and witnesses weigh decidedly in favor of transfer.

For these same reasons, the ease of access to the evidence does not necessarily weigh in favor of transferring this action to the District of New Jersey. Mr. Stewart avers that "[a]t the time *Gulkarov* was filed, all of Plum's corporate files were also located in Camden, New Jersey." (Dkt. No. 76, ¶ 4.) The declaration does not say whether that is still true given that Plum is no longer owned by the Camden-based company. Thus, the Court is not convinced that the ease of access to evidence coming from Plum supports transfer to New Jersey.

The Court acknowledges that five now-consolidated actions are pending in the District of New Jersey. (Dkt. No. 78.) In this regard, defendants point to *Hawkins v. Gerber Products*, 942 F. Supp. 2d 1208 (S.D. Cal. Feb. 20, 2013), in which the court observed that the transfer motion in that case "is unlike the typical binary 'either-or' transfer motion, because the consolidated *In re Gerber* action will continue in New Jersey regardless of the outcome of this transfer motion. Thus, the Court cannot simply weigh the benefits and costs of California versus New Jersey as the forum for Plaintiff's case; instead, the question is whether this suit should be consolidated with *In re Gerber* in New Jersey, or whether it should proceed simultaneously—and separately in California." *Id.* at 1213. Defendants argue that the same is true here and that declining to transfer would be "highly inefficient, including a waste of the parties and the Court's time and resources, to simultaneously litigate materially identical cases involving the same claims and the same putative classes, in more than one court." (Dkt. No. 34 at 10.)

The existing litigation in New Jersey gives the Court serious concerns about judicial efficiency and also implicates consideration of the feasibility of consolidation with other claims.

6

However, these concerns must be balanced against the equally serious judicial crisis faced by the District of New Jersey. Defendants point out that the President has made a number of nominations to that court. Even if the open seats are filled, the Court must also consider the forums' relative caseloads. Defendants point out that, as of September 30, 2020, in the District of New Jersey, the median time from filing to disposition in civil cases was 9.9 months, and from filing to trial in civil cases was 37.1 months. Conversely, in the Northern District of California, the median time from filing to disposition in civil cases was 11.4 months and from filing to trial in civil cases was 44.5 months. (Dkt. No. 57 at 4–5.) However, according to the same database, in the 12-month period ending March 31, 2021, there were 1,542 civil filings per judgeship in the District of New Jersey compared to 682 of the same in the Northern District of California.[10] Thus, despite the feasibility of consolidation with the New Jersey cases, the Court finds that this factor is outweighed by the relative court congestion (indeed, double the caseload) in the District of New Jersey.

The Court finds that the other remaining factors are either neutral or weigh against transfer. For example, prior to consolidation, the individual actions brought state law claims spanning a number of different states (not only California), which both federal courts are capable of adjudicating. Thus, the forums' relative familiarity with applicable law is neutral. In addition, California appears to have a stronger local interest in the controversy since Plum, a company previously based in California and now acquired by a California company, is involved. Lastly, "[a]lthough great weight is generally accorded plaintiff's choice of forum . . . when an individual . . . represents a class, the named plaintiff's choice of forum is given less weight." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). Therefore, plaintiffs' choice of forum is neutral.

In sum, the balance of the factors weighs against transfer. Defendants fail to persuade the Court that the convenience of the parties and witnesses and ease of access to the evidence weigh in favor of transfer. While feasibility of consolidation with other claims supports transfer, relative

---

[10] *See* United States District Courts – National Judicial Caseload Profile, available at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2021.pdf (last viewed on July 30, 2021).

7

court congestion and local interest in the controversy do not. The remaining factors, plaintiff's choice of forum and familiarity with the applicable law, are neutral. Accordingly, based on its discretion, the Court concludes that transfer is not appropriate and thus **DENIES** the motion.

## II.   APPOINTMENT OF INTERIM CO-LEAD CLASS COUNSEL

On June 29, 2021, the Court received applications for co-lead counsel from (1) the *Gulkarov* plaintiffs for the appointment of Rebecca A. Peterson of Lockridge Grindal Nauen P.L.L.P. and Susana Cruz Hodge of Lite DePalma Greenberg & Afanador, LLC as Interim Co-Lead Counsel, and Stephen R. Basser of Barrack Rodos Bacine as an Executive Committee member of this action (Dkt. No. 70); and (2) plaintiff Sarah Brown for the appointment of Melissa S. Weiner of Pearson, Simon & Warshaw, LLP, Annick M. Persinger of Tycko & Zavareei LLP, and Rachel Soffin of Milberg Coleman Bryson Phillips Grossman, PLLC as Interim Co-Lead Counsel (Dkt. No. 71). Defendants take no position on these motions. (Dkt. No. 73.)

Having carefully reviewed the submissions by proposed counsel, the Court hereby **APPOINTS** Rebecca A. Peterson of Lockridge Grindal Nauen P.L.L.P and Susana Cruz Hodge of Lite DePalma Greenberg & Afanador, LLC as Interim Co-Lead Class Counsel for plaintiffs and other members of the proposed classes in the Consolidated Action. Interim Co-Lead Counsel must assume responsibility for the following duties during all phases of the Consolidated Action:

a) Coordinating the work of preparing and presenting all of plaintiffs' claims in the Consolidated Action and otherwise coordinating all proceedings, including organizing and supervising the efforts of plaintiffs' counsel in a manner to ensure that plaintiffs' pretrial preparation is conducted effectively, efficiently, expeditiously, and economically;

b) Delegating work responsibilities and monitoring the activities of all plaintiffs' counsel in the Consolidated Action—including, but not limited to, those counsel serving on the Executive Committee—in a manner to promote the orderly and efficient conduct of this litigation and to avoid unnecessary duplication and expense;

c) Calling meetings of counsel for plaintiffs in the Consolidated Action for any appropriate purpose, including coordinating responses to questions of other parties or

of the Court, and initiating proposals, suggestions, schedules, and any other appropriate matters;

d) Determining (after consultation with members of the Executive Committee and other co-counsel as may be appropriate) and presenting (in briefs, oral argument, or such other fashion as he or his designee may deem appropriate) to the Court and opposing parties the position of the plaintiffs in the Consolidated Action on all matters arising during pretrial (and, if appropriate, trial) proceedings;

e) Serving as the primary contact for all communications between plaintiffs and defendants in the Consolidated Action, and acting as spokespersons for all plaintiffs vis-à-vis defendants and the Court;

f) Directing and executing on behalf of plaintiffs the filing of pleadings and other documents with the Court in the Consolidated Action;

g) Appearing at all court hearings and conferences regarding the case as most appropriate for effective and efficient representation, and speaking for plaintiffs in the Consolidated Action at all such hearings and conferences;

h) Receiving and initiating communication with the Court and the Clerk of the Court (including receiving orders, notices, correspondence, and telephone calls) and dispensing the content of such communications among plaintiffs' counsel in the Consolidated Action;

i) Initiating and conducting discussions and negotiations with counsel for defendants on all matters, including settlement in the Consolidated Action;

j) Negotiating and entering into stipulations with opposing counsel as necessary for the conduct of the Consolidated Action;

k) Initiating, coordinating, and conducting all discovery on behalf of plaintiffs in the Consolidated Action and ensuring its efficiency;

l) Selecting, consulting with, and employing experts for plaintiffs, as necessary for the Consolidated Action;

m) Encouraging and enforcing efficiency among all plaintiffs' counsel in the Consolidated Action;

n) Assessing plaintiffs' counsel for the costs of the Consolidated Action;

o) Consulting with the Executive Committee to fulfill the Committee's obligations as Interim Co-Lead Counsel shall direct;

p) Preparing and distributing periodic status reports to the Court and to the parties as ordered;

q) Develop and recommend for Court approval practices and procedures pertaining to attorneys' fees and expenses as further detailed below and, on an ongoing basis, monitor and administer such procedures. At such time as may be appropriate, Interim Co-Lead Counsel also will recommend apportionment and allocation of fees and expenses subject to Court approval; and

r) Performing such other duties as are necessary in connection with the prosecution of this Consolidated Acton or as may be further directed by the Court.

The foregoing assignment of tasks applies to all actions included in the above-captioned consolidated matters and all subsequently consolidated actions. At this juncture, the Court declines to formally appoint an Executive Committee member. Nothing prohibits Interim Co-Lead Counsel from delegating responsibilities to Mr. Basser. If necessary, Interim Co-Lead Class Counsel may petition the Court to formally appoint one but would have to show good cause. However, at this point, the Court finds that such a structure would merely increase administrative expense.

### III.  CONCLUSION

The motion to transfer is **DENIED**. The *Gulkarov* plaintiffs' motion for appointment of interim class counsel is **GRANTED IN PART AND DENIED IN PART**. Plaintiff Brown's motion in this regard is **DENIED**. The parties are directed to meet and confer and file a proposed schedule for the filing of the amended complaint and response thereto within **five (5) business days** of the date of this Order.

Interim Co-Lead Counsel must serve a copy of this Order promptly by overnight delivery service, electronic mail, facsimile, or other expeditious electronic means on counsel for plaintiffs in each related action not yet consolidated in this proceeding to the extent that Interim Co-Lead Counsel is aware of any such action(s) and on all attorneys for plaintiffs whose cases have been so

consolidated but who have not yet registered for ECF.

This Order terminates Docket Numbers 34, 70, and 71.

**IT IS SO ORDERED.**

Dated:  July 30,  2021

_____
YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE