LOCKRIDGE GRINDAL NAUEN P.L.L.P.
REBECCA A. PETERSON (241858)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
E-mail: rapeterson@locklaw.com

LITE DEPALMA GREENBERG & AFANADOR, LLC
SUSANA CRUZ HODGE, *Pro Hac Vice*
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
E-mail: scruzhodge@litedepalma.com
**Co-Lead Interim Class Counsel**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| IN RE PLUM BABY FOOD LITIGATION | ) Case No. 21-cv-00913-YGR |
| | ) |
| This document relates to: | ) **FIRST AMENDED CONSOLIDATED CLASS** |
| | ) **ACTION COMPLAINT FOR:** |
| All Actions | ) (1) VIOLATIONS OF THE CALIFORNIA |
| | ) CONSUMERS LEGAL REMEDIES ACT; |
| | ) (2) VIOLATIONS OF THE CALIFORNIA |
| | ) FALSE ADVERTISING LAW; |
| | ) (3) VIOLATIONS OF THE CALIFORNIA |
| | ) UNFAIR COMPETITION LAW; |
| | ) (4) BREACH OF IMPLIED WARRANTY; |
| | ) (5) UNJUST ENRICHMENT; |
| | ) (6) FRAUDULENT MISREPRESENTATION |
| | ) BY OMISSION; |
| | ) (7) FRAUD BY OMISSION |
| | ) (8) VIOLATIONS OF NEW YORK |
| | ) DECEPTIVE PRACTICES ACT, GBL § 349; |
| | ) (9) VIOLATIONS OF NEW YORK FALSE |
| | ) ADVERTISING ACT, GBL § 350; |
| | ) (10) VIOLATION OF MINNESOTA |
| | ) UNLAWFUL TRADE PRACTICES ACT; |
| | ) (11) VIOLATION OF MINNESOTA UNIFORM |
| | ) DECEPTIVE TRADE PRACTICES ACT; |
| | ) (12) VIOLATION OF MINNESOTA FALSE |
| | ) STATEMENT IN ADVERTISING ACT; |
| | ) (13) VIOLATION OF MINNESOTA |
| | ) PREVENTION OF CONSUMER FRAUD ACT; |
| | ) (14) VIOLATION OF PENNSYLVANIA |
| | ) UNFAIR TRADE PRACTICES AND |
| | ) CONSUMER PROTECTION LAW; AND |
| | ) (15) VIOLATION OF ILLINOIS CONSUMER |
| | ) FRAUD AND DECEPTIVE BUSINESS |
| | ) PRACTICES ACT. |
| | ) |
| | **DEMAND FOR JURY TRIAL** |

1.      Plaintiffs Ludmila Gulkarov, Janine Torrence, Kelly McKeon, Josh Crawford, Vanessa Mathiesen, Autumn Ellison, Jessica David, Sarah Brown, Tommy Nurre, and Christina Gonzalez (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned attorneys, bring this Class Action Complaint against Defendant Plum, PBC and Defendant Plum, Inc. (collectively "Defendants"), for their negligent, reckless, and/or intentional practice of failing to fully disclose the presence of arsenic, cadmium, lead, or mercury (collectively "Heavy Metals"), perchlorate, and/or other undesirable toxins or contaminants in their baby food. The baby food is sold throughout the United States and does not conform to its packaging. Plaintiffs seek both injunctive and monetary relief on behalf of the proposed Classes (as defined herein), including requiring full disclosure of all such substances in their packaging and restoring monies to the members of the proposed Classes. Plaintiffs allege the following based upon personal knowledge, as well as investigation by their counsel as to themselves, and as to all other matters, upon information and belief. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

2.      Reasonable parents, like Plaintiffs, trust manufacturers, like Defendants, to sell baby food that is healthy, nutritious, and free from harmful toxins, contaminants, and chemicals. They certainly expect the food they feed their infants and toddlers to be free from Heavy Metals or perchlorate, substances known to have significant and dangerous health consequences.

3.      Consumers lack the scientific knowledge necessary to determine whether the Defendants' products do in fact contain Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants, or to ascertain the true nature of the ingredients and quality of the products. Reasonable consumers therefore must and do rely on Defendants to properly and fully disclose what their products contain. This is especially true for a product's contents like arsenic, lead, cadmium, mercury and perchlorate that are material to a reasonable parent's purchasing decisions.

4.      Defendants manufacture, market, advertise, package, distribute, and sell baby food

- 1 -

**FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
Court File 21-cv-000913-YGR

products under the brand name Plum Organics throughout the United States, including in this District.

5.      Defendants' packaging emphasizes that the Baby Foods[1] are high quality, organic,

---

[1] "Baby Foods" collectively refers to the following Plum Organics products:

- Stage 1 Organic Baby Food Pouch: (1) Just Peaches; (2) Just Sweet Potato; (3) Just Prunes

- Stage 2 Organic Baby Food Pouch: (1) Pear, Spinach & Pea; (2) Banana & Pumpkin; (3) Banana, Zucchini & Amaranth; (4) Apple, Butternut Squash & Granola; (5) Strawberry, Banana & Granola; (6) Apple, Cauliflower & Leek Organic Baby Food; (7) Apple, Plum, Berry & Barley Granola; (8) Apple, Raspberry, Spinach & Greek Yogurt; (9) Apple & Broccoli; (10) Apple & Carrot; (11) Guava , Pear, & Pumpkin; (12) Kale, Corn, Carrot & Tomato; (13) Mango, Yellow Zucchini, Corn & Turmeric; (14) Peach, Pumpkin, Carrot & Cinnamon; (15) Pear, Green Bean & Greek Yogurt; (16) Pear, Purple Carrot & Blueberry; (17) Pear, Spinach & Pea; (18) Pumpkin, Spinach, Chickpea & Broccoli; (19) Sweet Potato, Apple & Corn; (20) Peach, Banana, & Apricot; (21) Apple, Raisin & Quinoa; (22) Pumpkin, Banana, Papaya, & Cardamom; (23) Mango, Sweet Potato, Apple & Millet; (24) Pea, Kiwi, Pear & Avocado; (25) Pear & Mango; (26) Butternut Squash, Carrot, Chickpea & Corn; (27) Mango, Carrot & Coconut Cream; (28) Pear, Blueberry, Avocado & Granola; (29) Strawberry, Banana & Granola

- Stage 3 Organic Baby Food Pouch: (1) Carrot, Sweet Potato, Corn, Pea & Chicken; (2) Carrot, Sweet Potato, Corn, Pea & Chicken; (3) Carrot, Spinach, Turkey, Corn, Apple & Potato

- Mighty 4 Blends: (1) Pear, Cherry, Blackberry, Strawberry, Spinach & Oat; (2) Banana, Blueberry, Sweet Potato, Carrot, Greek Yogurt & Millet; (3) Banana, Kiwi, Spinach, Greek Yogurt & Barley; (4) Apple, Blackberry, Purple Carrot, Greek Yogurt & Oat; (5) Banana, Peach, Pumpkin, Carrot, Greek Yogurt & Oat

- Little Teethers Multigrain Teething Wafers: (1) Banana with Pumpkin; (2) Blueberry

- Mighty Morning Snack Bar: (1) Blueberry; (2) Strawberry; (3) Blueberry Lemon; (4) Apple Cinnamon

- Mighty Morning Tots Pouches: Banana, Blueberry, Oat, Quinoa

- Mighty Veggie Blends: (1) Zucchini, Apple, Watermelon & Barley; (2) Sweet Potato, Apple, Banana & Carrot; (3) Carrot, Pear, Pomegranate, & Oats

- Teensy Snacks: (1) Peach; (2) Berry

- Tots Pouches: Banana, Blueberry, Oat, Quinoa

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

1  and made with superior ingredients to justify a premium price and induce reasonable consumers

2  to believe in the quality and safety of their products for consumption by infants and children.

3
4
5
6
7     
8
9
10
11
12  
13
14
15

16      6.      Based on the impression given by the packaging, no reasonable consumer could

17  expect or understand that the Baby Foods contained Heavy Metals and perchlorate.

18      7.      Defendants further state they use "organic, non-GMO, whole and simple

19  ingredients" and their products are "always made without genetically modified ingredients."[2]

20

21  _____

22  •  <u>Jammy Sammy Sandwich Bar</u>: Apple, Cinnamon & Oatmeal

23  •  <u>Mashup Pouches</u>: (1) Applesauce, Blueberry, Carrot; (2) Applesauce, Carrot & Mango; (3)
24     Applesauce, Blueberry, Carrot; (4) Applesauce Strawberry & Beet; (5) Applesauce,
       Strawberry & Banana

25  •  <u>Super Puffs</u>: (1) Mango with Sweet Potato; (2) Apple with Spinach; (3) Blueberry with
26     Purple Sweet Potato

27  [2] https://www.plumorganics.com/food-philosophy/ (last accessed Sept. 3, 2021).

28  FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
    Court File 21-cv-000913-YGR

Defendants' mission is "to nourish little ones with the very best food from the very first bite."[3] Defendants assure consumers that the Baby Foods are healthy, nutritious, "made from the best ingredients," high quality, and safe for infant and children consumption.

8.      Defendants claim they place the safety of their customers above all else,[4] and that their Baby Foods are organic, in direct contradiction to the true nature of the Baby Foods' contents, which include Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants.

9.      Yet nowhere on the packaging do Defendants disclose that the Baby Foods include Heavy Metals, perchlorate, and/or other ingredients.

10.      The Baby Foods have been shown to contain detectable levels of arsenic, cadmium, lead, mercury, and/or perchlorate, all known to pose health risks to humans, and particularly to infants and children.[5]

11.      Despite this, Defendants fail to disclose to consumers that the Baby Foods contain (or have a material risk of containing) Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants. Nowhere on the Baby Foods' packaging is it disclosed that they contain (or have a material risk of containing) Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants (hereinafter collectively referred to as "Omissions").

12.      The Baby Foods' packaging does not include any type of disclaimer or disclosure regarding the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants that would inform consumers of their presence. Likewise, there is nothing on the packaging stating that Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants can be unsafe or accumulate over time resulting in developmental issues, poisoning, injury, and/or

---

[3] https://www.plumorganics.com/faqs/ (last accessed Sept. 3, 2021).

[4] https://www.plumorganics.com/faqs/ (last accessed Sept. 3, 2021).

[5] *See* Healthy Babies Bright Futures' Report: *What's in My Baby's Food?* ("HBBF Report"), available at https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf (last accessed Sept. 3, 2021).

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

1    disease.

2        13.    Instead, Defendants chose to focus on promoting their Baby Foods as high quality,

3    organic, and made with superior ingredients to  justify a premium price.

4        14.    On information and belief, it was recently revealed that Defendants were

5    knowingly, recklessly, and/or negligently selling baby food that contained arsenic, cadmium, lead,

6    mercury, perchlorate, and/or other undesirable toxins or contaminants.

7        15.    In February 2021, a report by the U.S. House of Representatives' Subcommittee on

8    Economic and Consumer Policy, Committee on Oversight and Reform (the "Subcommittee")

9    revealed that parents' trust has been violated. Ex. 1. The Subcommittee's investigation of the seven

10   largest baby food manufacturers in the United States, including Defendants, was spurred by

11   "reports alleging high levels of toxic heavy metals in baby foods" and the knowledge that "[e]ven

12   low levels of exposure can cause serious and often irreversible damage to brain development." Ex.

13   1 at 2.

14       16.    The Subcommittee's report (the "House Report") revealed that "[i]nternal company

15   standards permit dangerously high levels of toxic heavy metals, and … that the [baby food]

16   manufacturers have often sold foods that exceeded these levels." Ex. 1 at 4. Defendants were

17   among the three manufacturers that refused to cooperate with the Subcommittee's investigation,

18   causing "great[] concern that their lack of cooperation might obscure the presence of even higher

19   levels of toxic heavy metals in their baby food products, compared to their competitors' products."

20   Ex. 1 at 5. "[E]ven limited independent testing has revealed the presence of toxic heavy metals in

21   [Defendants'] baby food." Ex. 1 at 45.

22       17.    The House Report concluded by finding that "Manufacturers knowingly sell these

23   products to unsuspecting parents, in spite of internal company standards and test results, and

24   without any warning labeling whatsoever," and recommended that there be mandatory *testing*,

25   *label disclosure*, voluntary phase out of toxic ingredients and regulatory rules setting maximum

26   standards, among other things. Ex. 1 at 58-59.

27       18.    In response to the House Report, Defendants acknowledged that Heavy Metals are

28

**FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
Court File 21-cv-000913-YGR

in foods "to an extent" and that they are committed to minimizing their presence in Plum Baby Foods.[6]

19.     Recent testing conducted on two Plum products, however, confirmed alarming levels of arsenic and significant levels of cadmium. These results show that Heavy Metals are significantly present in the Baby Foods and Defendants' purported attempt to minimize Heavy Metals in these products is failing:

| Food | Arsenic (ppb) | Cadmium (ppb) | Lead (ppb) | Mercury (ppb) |
|------|------|------|------|------|
| Super Puffs Mango with Sweet Potato | 177 | 15.9 | 4.0 | < 1.9 |
| Super Puffs Apple with Spinach | 114 | 21.2 | 5.0 | < 1.7 |

20.     Based on the Omissions, no reasonable consumer had any reason to know or expect that the Baby Foods contained Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants. Furthermore, reasonable parents, like Plaintiffs, who were feeding the Baby Foods to their babies (often multiple times a day) would consider the mere presence (or risk) of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants a material fact when considering whether to purchase the Baby Foods.

21.     Defendants know their customers trust the quality of their products and expect the Baby Foods to be free of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants. They also know their consumers seek out and wish to purchase premium baby foods that possess high quality ingredients free of toxins, contaminants, or chemicals, and that these consumers will pay more for baby foods they believe possess these qualities. Defendants also know no reasonable consumer would knowingly provide their children with baby food that contained Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants.

22.     Defendants knew the parents to whom they market would find the Omissions

---

[6] *Id.*

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

material and that they were in a special position of public trust to those consumers. As Subcommittee Chairman Krishnamoorthi stated:

> Baby food manufacturers hold a special position of public trust.  But consumers mistakenly believe that these companies would not sell unsafe products.  The Subcommittee's staff report found that these manufacturers knowingly sell baby food containing high levels of toxic heavy metals.  I hope companies will commit to making safer baby foods.  Regardless, it's time that we develop much better standards for the sake of future generations.[7]

23.    The Omissions are deceptive, misleading, unfair, and/or false because the Baby Foods contain undisclosed levels of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants.

24.    The Omissions allowed Defendants to capitalize on, and reap enormous profits from, reasonable consumers who paid a premium price for Baby Foods that omitted material information as to the foods' true quality and value. Defendants continue to wrongfully induce consumers to purchase their Baby Foods.

25.    Plaintiffs bring this proposed consumer class action individually and on behalf of all other members of the Class (as defined herein), who, from the applicable limitations period up to and including the present, purchased for use and not resale any of Defendants' Baby Foods.

## JURISDICTION AND VENUE

26.    This Court has original jurisdiction over all causes of action asserted herein under the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), because the matter in controversy exceeds the sum or value or $5,000,000 exclusive of interest and costs and more than two-thirds of the Class resides in states other than the state in which Defendants are citizens and in which this case

---

[7]    https://oversight.house.gov/news/press-releases/oversight-subcommittee-staff-report-reveals-top-baby-foods-contain-dangerous (last accessed Sept. 3, 2021).

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

1   is filed, and therefore any exemptions to jurisdiction under 28 U.S.C. §1332(d)(2) do not apply.

2       27.    Venue is proper in this Court pursuant to 28 U.S.C. §1391, because Plaintiffs

3   suffered injury as a result of Defendants' acts in this district, many of the acts and transactions

4   giving rise to this action occurred in this district, and Defendants conduct substantial business in

5   this district and are headquartered in this district.

6   **THE PARTIES**

7       28.    Plaintiff Ludmila Gulkarov ("Plaintiff Gulkarov") is, and at all times relevant

8   hereto has been, a citizen of the state of California.  She purchased the Baby Foods, including:

9   Stage 1 Organic Baby Food Pouch: Just Sweet Potato; Stage 2 Organic Baby Food Pouch: Apple

10   & Carrot.

11       29.    Plaintiff Gulkarov purchased these foods for all three of her children from Vons

12   and Albertsons grocery stores, beginning in approximately July 2014.  Plaintiff Gulkarov last

13   purchased the Baby Foods for her youngest child in 2017.

14       30.    Plaintiff Gulkarov believed she was feeding her children healthy, nutritious baby

15   food.  Prior to purchasing the Baby Foods, Plaintiff Gulkarov saw and relied upon the packaging

16   of the Baby Foods. During the time she purchased and fed her children the Baby Foods, and due

17   to the Omissions by Defendants, she was unaware the Baby Foods contained (or had a material

18   risk of containing) any level of Heavy Metals, perchlorate, and/or other undesirable toxins or

19   contaminants, and would not have purchased the Baby Foods if that information had been fully

20   disclosed. Plaintiff would be willing to purchase Plum Organics products in the future if she could

21   be certain that they do not contain (of have a material risk of containing) Heavy Metals or

22   perchlorate.

23       31.    Plaintiff Janine Torrence ("Plaintiff Torrence") is, and at all times relevant hereto

24   has been, a citizen of the state of New York.  She purchased the Baby Foods, specifically the Plum

25   Organics Variety Packs of the pouches for: Stage 2 Organic Baby Food Pouch: (1) Apple,

26   Butternut Squash, & Granola; (2) Pear, Blueberry, Avocado & Granola; (3) Strawberry, Banana,

27   & Granola; (4) Mango, Carrot, & Coconut Cream.

28

1      32.    Plaintiff Torrence generally purchased these foods from Shop Rite, Stop & Shop,
2 and Target stores. Plaintiff Torrence purchased the Baby Foods for her daughter from
3 approximately June 2020 until February 2021.

4      33.    Plaintiff Torrence believed she was feeding her child healthy, nutritious baby food.
5 Prior to purchasing the Baby Foods, Plaintiff Torrence saw and relied upon the packaging of the
6 Baby Foods. During the time she purchased and fed her child the Baby Foods, and due to the
7 Omissions by Defendants, she was unaware the Baby Foods contained (or had a material risk of
8 containing) Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants, and would
9 not have purchased the Baby Foods if that information had been fully disclosed. Plaintiff would
10 be willing to purchase Plum Organics products in the future if she could be certain that they do not
11 contain (of have a material risk of containing) Heavy Metals or perchlorate and if she needed to
12 purchase baby food again.

13      34.    Plaintiff Kelly McKeon ("Plaintiff McKeon") is, and at all times relevant hereto
14 has been, a citizen of the state of Minnesota.  She purchased the Baby Foods for her child,
15 including: <u>Stage 1 Organic Baby Food Pouch</u>: Just Sweet Potato; <u>Stage 2 Organic Baby Food</u>
16 <u>Pouch</u>: Butternut Squash, Carrot, Chickpea & Corn; <u>Little Teethers Multigrain Teething Wafers</u>:
17 Blueberry; <u>Mighty Morning Snack Bar</u>: (1) Blueberry; (2) Strawberry; (3) Apple Cinnamon (4)
18 Blueberry Lemon; <u>Teensy Snacks</u>: Berry; <u>Super Puffs</u>: (1) Apple with Spinach; (2) Mango with
19 Sweet Potato.

20      35.    Plaintiff McKeon generally purchased these foods from Target and Whole Foods
21 stores, from approximately the spring or summer of 2018 until approximately February 2021 when
22 she learned of the presence of Heavy Metals in the Baby Foods.

23      36.    Plaintiff McKeon believed she was feeding her child healthy, nutritious baby food.
24 Prior to purchasing the Baby Foods, Plaintiff McKeon saw and relied upon the packaging of the
25 Baby Foods.  During the time she purchased and fed her child the Baby Foods, and due to the
26 Omissions by Defendants, she was unaware the Baby Foods contained (or had a material risk of
27 containing) Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants, and would

- 9 -

28

1  not have purchased the Baby Foods if that information had been fully disclosed. Plaintiff would

2  be willing to purchase Plum Organics products in the future if she could be certain that they do not

3  contain (of have a material risk of containing) Heavy Metals or perchlorate.

4       37.    Plaintiff Josh Crawford ("Plaintiff Crawford") is, and at all times relevant hereto

5  has been, a citizen of the state of Pennsylvania. He purchased the Baby Foods for his child,

6  including: <u>Stage 1 Organic Baby Food Pouch</u>: Just Prunes; <u>Little Teethers Multigrain Teething</u>

7  <u>Wafers</u>: Banana with Pumpkin.

8       38.    Plaintiff Crawford generally purchased the Baby Foods from Walmart and Weis

9  Markets, from approximately the fall or winter of 2018 until approximately the end of 2020.

10       39.    Plaintiff Crawford believed he was feeding his child healthy, nutritious baby food.

11  Prior to purchasing the Baby Foods, Plaintiff Crawford saw and relied upon the packaging of the

12  Baby Foods. During the time he purchased and fed his child the Baby Foods, and due to the

13  Omissions by Defendants, he was unaware the Baby Foods contained (or had a material risk of

14  containing) Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants, and would

15  not have purchased the Baby Foods if that information had been fully disclosed. Plaintiff would

16  be willing to purchase Plum Organics products in the future if he could be certain that they do not

17  contain (of have a material risk of containing) Heavy Metals or perchlorate.

18       40.    Plaintiff Vanessa Mathiesen ("Plaintiff Mathiesen") is, and at all times relevant

19  hereto has been, a citizen of the state of California. She purchased the Baby Foods for her child,

20  including: <u>Stage 2 Organic Baby Food Pouch</u>: (1) Pear, Spinach & Pea; (2) Apple & Broccoli; (3)

21  Peach Banana & Apricot; (4) Apple, Raspberry, Spinach & Greek Yogurt; (5) Banana & Pumpkin;

22  <u>Mighty Morning Tots Pouches</u>: Banana, Blueberry, Oat, Quinoa; <u>Teensy Snacks</u>: Berry.

23       41.    Plaintiff Mathiesen generally purchased these foods from approximately October

24  to December of 2018 until she learned of the presence of Heavy Metals in the Baby Foods.

25       42.    Plaintiff Mathiesen believed she was feeding her child healthy, nutritious baby

26  food.  Prior to purchasing the Baby Foods, Plaintiff Mathiesen saw and relied upon the packaging

27  of the Baby Foods. During the time she purchased and fed her child the Baby Foods, and due to

- 10 -

28

the material Omissions by Defendants, she was unaware the Baby Foods contained (or had a material risk of containing) Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants, and would not have purchased the Baby Foods if that information had been fully disclosed. Plaintiff would be willing to purchase Plum Organics products in the future if she could be certain that they do not contain (of have a material risk of containing) Heavy Metals or perchlorate.

43.     Plaintiff Autumn Ellison ("Plaintiff Ellison") is, and at all times relevant hereto has been, a citizen of the state of Oregon. She purchased the Baby Foods for her child, including: <u>Stage 2 Organic Baby Food Pouch</u>: (1) Peach, Banana, & Apricot; (2) Pear, Purple Carrot, & Blueberry; (3) Apple & Broccoli; (4) Peach, Banana & Apricot.

44.     Plaintiff Ellison generally purchased these foods from Kroger and Walmart, from approximately June 2020 until approximately middle of February 2021, when she learned about the presence of Heavy Metals in the Baby Foods.

45.     Plaintiff Ellison believed she was feeding her child healthy, nutritious baby food. Prior to purchasing the Baby Foods, Plaintiff Ellison saw and relied upon the packaging of the Baby Foods.  During the time she purchased and fed her child the Baby Foods, and due to the Omissions by Defendants, she was unaware the Baby Foods contained (or had a material risk of containing) Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants, and would not have purchased the Baby Foods if that information had been fully disclosed. Plaintiff would be willing to purchase Plum Organics products in the future if she could be certain that they do not contain (of have a material risk of containing) Heavy Metals or perchlorate.

46.     Plaintiff Jessica David ("Plaintiff David") is, and at all times relevant hereto has been, a citizen of the state of Florida.  She purchased the Baby Foods for her child, including: <u>Stage 1 Organic Baby Food Pouches</u>: (1) Just Peaches; (2) Just Sweet Potato; (3) Banana and Pumpkin; (4) Banana & Zucchini & Amaranth; <u>Stage 2 Organic Baby Food Pouches</u>: (1) Apple Butternut Squash & Granola; (2) Strawberry, Banana & Granola ; (3) Apple, Cauliflower & Leek; (4) Apple, Plum, Berry & Barley Granola; (5) Apple, Raspberry, Spinach & Greek Yogurt; (6)

- 11 -

Apple & Broccoli; (7) Apple & Carrot; (8) Apple Butternut Squash & Granola; (9) Guava , Pear, & Pumpkin; (10) Kale, Corn, Carrot & Tomato; (11) Mango, Yellow Zucchini, Corn & Turmeric; (12) Peach, Pumpkin, Carrot & Cinnamon; (13) Pear, Green Bean & Greek Yogurt; (14) Pear, Purple Carrot & Blueberry; (15) Pear, Spinach & Pea; (16) Pumpkin, Spinach, Chickpea & Broccoli; (17) Sweet Potato, Apple & Corn; (18) Carrot, Spinach, Turkey, Corn, Apple & Potato; (19) Carrot, Sweet Potato, Corn, Pea & Chicken; Mighty 4 Blends: (1) Apple, Blackberry, Purple Carrot, Greek Yogurt & Oat; (2) Banana, Peach, Pumpkin, Carrot, Greek Yogurt & Oat; Mighty Morning Tots Pouches: Banana, Blueberry, Oat, Quinoa; Mighty Veggie Blends: (1) Zucchini, Apple, Watermelon & Barley; (2) Sweet Potato, Apple, Banana & Carrot; (3) Carrot, Pear, Pomegranate, & Oats; Mashup Pouches: (1) Applesauce, Blueberry, Carrot; (2) Applesauce, Carrot & Mango; (3) Applesauce, Blueberry, Carrot; (4) Applesauce Strawberry & Beet; (5) Applesauce, Strawberry & Banana; Super Puffs: (1) Apple with Spinach; (2) Blueberry with Purple Sweet Potato.

47.     Plaintiff David generally purchased these foods from Walmart, Dollar General, and Winn Dixie from approximately spring 2014 through May 2018.

48.     Plaintiff David believed she was feeding her child healthy, nutritious baby food. Prior to purchasing the Baby Foods, Plaintiff David saw and relied upon the packaging of the Baby Foods.  During the time she purchased and fed her child the Baby Foods, and due to the Omissions by Defendants, she was unaware the Baby Foods contained (or had a material risk of containing) Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants, and would not have purchased the foods if that information had been fully disclosed. Plaintiff David reasonably relied upon and expected Defendants to disclose all potential contaminants in the Baby Foods and to disclose this information to consumers.

49.     Plaintiff Sarah Brown ("Plaintiff Brown") is, and at all times relevant hereto has been, a citizen of the state of Florida. She purchased the Baby Foods for her child, including: Stage 2 Organic Baby Food Pouch: Pear, Spinach & Pea; Stage 3 Organic Baby Food Pouch: (1) Carrot, Spinach, Turkey, Corn, Apple & Potato; (2) Carrot, Sweet Potato, Corn, Pea & Chicken; Mighty

- 12 -

1   4 Blends: (1) Banana, Blueberry, Sweet Potato, Carrot, Greek Yogurt & Millet; (2) Pear, Cherry,

2   Blackberry, Strawberry, Spinach & Oat; Mighty Veggie Blends: (1) Zucchini, Apple, Watermelon

3   & Barley; (2) Sweet Potato, Apple, Banana, Carrot; Teensy Snacks: (1) Peach; (2)  Berry; Jammy

4   Sammy Sandwich Bar: Apple Cinnamon & Oatmeal.

5          50.    Plaintiff Brown generally purchased the Baby Foods from Target, Walmart, and

6   Publix from approximately January 2020 until February 2021.

7          51.    Plaintiff Brown believed she was feeding her child healthy, nutritious baby food.

8   Prior to purchasing the Baby Foods, Plaintiff Brown saw and relied upon the packaging of the

9   Baby Foods. During the time she purchased and fed her child the Baby Foods, and due to the

10  Omissions by Defendants, she was unaware the Baby Foods contained (or had a material risk of

11  containing) Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants, and would

12  not have purchased the Baby Foods if that information had been fully disclosed. Plaintiff would

13  be willing to purchase Plum Organics products in the future if she could be certain that they do not

14  contain (of have a material risk of containing) Heavy Metals or perchlorate.

15         52.    Plaintiff Tommy Nurre ("Plaintiff Nurre") is, and at all times relevant hereto has

16  been, a citizen of the state of Illinois. He purchased the Baby Foods for his child, specifically the

17  pouches from approximately November 2019 until approximately February 2020. He purchased

18  the Baby Foods from Costco, Mariano's, Heinen's, Grand Food Center, and online.

19         53.    Plaintiff Nurre believed he was feeding his child healthy, nutritious baby food.

20  Prior to purchasing the Baby Foods, Plaintiff Nurre saw and relied upon the packaging of the Baby

21  Foods.  During the time he purchased and fed his child the Baby Foods, and due to the Omissions

22  by Defendants, he was unaware the Baby Foods contained (or had a material risk of containing)

23  Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants, and would not have

24  purchased the Baby Foods if that information had been fully disclosed. Plaintiff would be willing

25  to purchase Plum Organics products in the future if he could be certain that they do not contain (of

26  have a material risk of containing) Heavy Metals or perchlorate.

27         54.    Plaintiff Christina Gonzalez ("Plaintiff Gonzalez") is, and at all times relevant

28

- 13 -

1 hereto has been, a citizen of the state of Illinois. She purchased the Baby Foods, specifically the

2 Organic Baby Food Pouches containing bananas.

3   55. Plaintiff Gonzalez generally purchased these foods for her children from Target,

4 beginning in approximately 2015. Plaintiff Gonzalez last purchased the Baby Foods for her

5 children in 2017.

6   56. Plaintiff Gonzalez believed she was feeding her children healthy, nutritious baby

7 food.  Prior to purchasing the Baby Foods, Plaintiff Gonzalez saw and relied upon the packaging

8 of the Baby Foods. During the time she purchased and fed her children the Baby Foods, and due

9 to the Omissions by Defendants, she was unaware the Baby Foods contained (or had a material

10 risk of containing) Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants,

11 and would not have purchased the Baby Foods if that information had been fully disclosed.

12 Plaintiff would be willing to purchase Plum Organics products in the future if she could be certain

13 that they do not contain (of have a material risk of containing) Heavy Metals or perchlorate.

14   57. As the result of Defendants' negligent, reckless, and/or knowingly deceptive

15 conduct as alleged herein, Plaintiffs were injured when they paid the purchase price or a price

16 premium for the Baby Foods that did not deliver what they promised.  Plaintiffs paid the purchase

17 price on the reasonable assumptions that the packaging was accurate, the Baby Foods were free of

18 Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants, and the Baby Foods

19 were safe for consumption by infants or children.  Plaintiffs would not have paid this money had

20 they known that the Baby Foods included levels of Heavy Metals, perchlorate, and/or other

21 undesirable toxins or contaminants.  Further, should Plaintiffs encounter the Baby Foods in the

22 future, they could not rely on the truthfulness of the packaging, absent corrective changes to the

23 packaging and advertising of the Baby Foods. Damages can be calculated through expert testimony

24 at trial.

25   58. Defendant Plum, PBC ("Plum PBC") was founded in 2007 and is incorporated in

26 Delaware. In 2019 and 2021, Plum PBC filed with the California Secretary of State indicating that

27 their mailing address, principal executive office, and executive officers were all based in

- 14 -

28

1  Emeryville, California. Its Terms & Conditions state it is "governed and [] interpreted pursuant to

2  the laws of the State of California," and that exclusive jurisdiction and venue is in Fresno County.[8]

3  Defendants later filed a Certificate of Surrender on February 22, 2021, with the California Secretary

4  of State that stated "[t]he corporation consents to process against it in any action upon any liability or

5  obligated incurred within the State of California prior to the filing of this Certificate of Surrender may

6  be served upon the California Secretary of State." In the spring of 2021, Plum PBC was acquired by

7  Sun-Maid Growers, whose corporate headquarters is located at 6795 North Palm Avenue, Second

8  Floor, Fresno, California.  Defendants have intentionally availed themselves of the laws and

9  markets of this district, and Defendants are subject to personal jurisdiction in this district.

10      59.      Defendant Plum, Inc. (doing business as "Plum Organics") is incorporated in

11  Delaware with its headquarters and principal place of business located at 1485 Park Avenue,

12  Emeryville, California.  In 2019 and 2021, Defendants filed with the California Secretary of State

13  indicating that their mailing address, principal executive office, and executive officers were all

14  based in Emeryville, California. Its Terms & Conditions state it is "governed and [] interpreted

15  pursuant to the laws of the State of California," and that exclusive jurisdiction and venue is in

16  Fresno County.[9] Defendants later filed a Certificate of Surrender on February 22, 2021, with the

17  California Secretary of State that stated "[t]he corporation consents to process against it in any action

18  upon any liability or obligated incurred within the State of California prior to the filing of this

19  Certificate of Surrender may be served upon the California Secretary of State." Defendants have

20  intentionally availed themselves of the laws and markets of this district, and Defendants are subject

21  to personal jurisdiction in this district.

22      60.      Defendants have formulated, developed, manufactured, labelled, distributed,

23  marketed, advertised, and sold the Baby Foods under the Plum Organics name throughout the

24  United States, including in this District. They have done so continuously throughout the Class

25
   _____

26  [8] https://www.plumorganics.com/terms-of-use/ (last accessed Sept. 3, 2021).

27  [9] https://www.plumorganics.com/terms-of-use/ (last accessed Sept. 3, 2021).

28

Period (February 5, 2015 to present). Defendants knowingly created, allowed, oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive packaging and related marketing for the Baby Foods that did not disclose the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants.  Defendants are also responsible for sourcing ingredients, manufacturing the products, and conducting all relevant quality assurance protocols, including testing of both the ingredients and finished baby foods.

61.    Plaintiffs relied upon the material Omissions missing from the Baby Foods' packaging which was prepared, reviewed, and/or approved by Defendants and their agents at their headquarters in California and disseminated by Defendants and their agents through packaging that contained the Omissions.  The Omissions were nondisclosed material content that a reasonable consumer would consider in purchasing the Baby Foods.

62.    Defendants' Products are divided into groups according to the targeted infant or toddler age and/or type of food product. For example:



**BABY**

## Stage 1

Stage 1 (4+ months) organic baby food is perfect for introducing solids or first foods to your budding eater. Using only non-GMO, organic ingredients, the blends are all unsalted, unsweetened, and kosher parve. And since our pouches are resealable, you can customize portion

   

**BABY**

## Stage 2

Stage 2 (6+ months) organic baby food pouches are made with blends of fruit, veggies, grains, and Greek yogurt that are perfect for exposing your little foodie to unique flavors and colors.

   

     

Apple, Butternut Squash & Granola, 3.5oz

Pear, Blueberry, Avocado & Granola Baby Food

Strawberry, Banana & Granola 3.5oz

Mango, Carrot & Coconut Cream Baby Food

**BABY**

**TOTS**

## Mighty Morning™

Fuel your tot with Mighty Morning,® a delicious snack filled with organic fruit & whole grains. We squeezed these breakfast favorites all into one easy pouch, so your mighty tot can snack on morning goodness anytime.

  

Banana, Blueberry, Oat, Quinoa Tots Pouches

Carrot, Sweet Potato, Corn, Pea & Chicken Baby Food

Carrot, Chickpea, Pea, Beef & Tomato Baby Food

TOTS

## Teensy Snacks®

———

Teensy Snacks® is a line of soft, fruit snacks made with yummy fruit. Sized perfectly for little mouths to chew, these soft bites offer a full serving of fruit, made simple for your teensy tot.

 

Peach Tot Fruit Snacks.          Berry Tots Snacks.

BABY

## Super Puffs®

———

Super Puffs®, a colorful line of bite-sized, nutritious puffed snacks, are made with whole grains and organic veggies and fruit. Packed with 7 essential vitamins and minerals, Super Puffs® delight tiny taste buds with a rainbow of nutritional goodness.

   

Apple with Spinach Cereal   Strawberry with Beet Cereal   Mango with Sweet Potato   Blueberry with Purple Sweet
Snack                       Snack                         Cereal Snack              Potato Cereal Snack

TOTS

## Mighty Snack Bars®

———

Make every bite mighty with a tasty snack that has whole grains and 11 essential vitamins and minerals. And they're sized just right, so your little on-the-go eater can snack mighty any time!

  

Pumpkin Banana Bar          Strawberry Bar                Blueberry Bar

BABY

## Little Teethers

———

Little ones can't wait to sink their gums into these delicious teething wafers. Delight budding palates with unique flavors as you encourage self-feeding.

  

Apple with Leafy Greens     Banana with Pumpkin Wafers    Blueberry Wafers
Wafers

TOTS

## Mighty Protein & Fiber

———

Mighty Protein & Fiber pouches are the perfect on-the-go snack for tots with protein from veggies, seeds & fruit.

  

Mango, Banana, White Bean,   Banana, White Bean,          Pear, White Bean, Blueberry
Sunflower Seed Butter & Chia  Strawberry & Chia Tots Pouch  Date & Chia Tots Pouch
Tots Pouch

TOTS

## Mighty 4® Blends

Mighty 4® pouches, a puree of organic fruits, veggies, protein and grains, are the perfect snack for toddlers. Every pouch is filled with essential nutrients from 4 food group favorites to fuel your active tot.

   

Blends Mango & Pineapple, White Bean, Butternut Squash, Oats Tots Pouch | Blends Sweet Potato, Banana & Passion Fruit, Greek Yogurt, Oat Tots Pouch | Blends Strawberry Banana, Greek Yogurt, Kale, Oat & Amaranth Tots Pouch | Blends Banana, Blueberry, Sweet Potato, Carrot, Greek Yogurt & Millet Tots Pouch

TOTS

## Mighty Nut Butter Bar™

We put a nutty twist on this mighty snack: a multigrain bar made with whole grains and a creamy nut butter filling! Our Mighty Nut Butter Bar even offers omega-3 ALA from chia – now that's a mighty win for you and your tot!

 

Almond Butter Bar | Peanut Butter Bar

TOTS

## Jammy Sammy®

Jammy Sammy® is a snack-size twist on a lunchbox favorite. Each pocket-friendly bar is made with flavors that kids love.

   

Peanut Butter & Strawberry Bar | Peanut Butter & Grape Bar | Blueberry & Oatmeal Bar | Apple Cinnamon & Oatmeal Bar

KIDS

## Mashups®

Squeeze the most out of snack time with Mashups® applesauce pouches. Mashups combine the goodness of organic apples with other delicious ingredients for unique flavor combos kids love.

   

Applesauce Blueberry Carrot | Applesauce Carrot & Mango | Applesauce Strawberry & Beet | Applesauce Strawberry & Banana

TOTS

## Mighty Morning Bar™

Pack some whole grains and omega-3s into your tot's morning routine – with zero fuss! Our soft-baked multigrain bars are not only great on-the-go snacks but they also pair perfectly with milk, yogurt or fruit.

 

Apple Cinnamon Bar | Blueberry Lemon Bar

TOTS

## Mighty Veggie®

Mighty Veggie® blends surprise little taste buds with a full serving of organic veggies that's as tasty as it is nutritious. Each garden-inspired pouch delivers fiber and Omega 3-ALA to fuel your active tot.

   

Sweet Potato Apple Banana Carrot Tots Pouch | Zucchini, Apple, Watermelon & Barley Tots Pouch | Spinach, Grape, Apple & Amaranth Tots Pouch | Carrot, Pear, Pomegranate & Oats Tots Pouch

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

1

2

63.     The Baby Foods, at a minimum, include:

3

a)   Just Sweet Potato Organic Baby Food:

4

5

6

7

8

9

10

11

12



13

b)   Just Peaches Organic Baby Food:

14

15

16

17

18

19

20

21



22

23

24

25

26

27

28

**FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
Court File 21-cv-000913-YGR

c)   Just Prunes Organic Baby Food:



d)   Apple & Carrot Organic Baby Food:



e)   Pear, Purple Carrot, & Blueberry Organic Baby Food:



1    f)  Pear, Spinach, & Pea Organic Baby Food:



10   g)  Butternut Squash, Carrot, Chickpea & Corn Organic Baby Food:



19   h)  Banana & Pumpkin Organic Baby Food:



- 21 -

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

i) Carrot, Sweet Potato, Corn, Pea, & Chicken Baby Food:



j) Pumpkin, Banana, Papaya, and Cardamom Organic Baby Food:



k) Apple, Raisin, & Quinoa Organic Baby Food:



FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

1        l)   Mango, Carrot, & Coconut Cream Organic Baby Food:



m)  Apple, Butternut Squash, & Granola Organic Baby Food:



n)  Strawberry, Banana, & Granola Organic Baby Food:



FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

o)  Pear, Blueberry, Avocado, & Granola Organic Baby Food:



p)  Fruit & Veggie Blends with Peach, Banana, & Apricot Organic Baby Food, and Pear, Purple Carrot, & Blueberry Organic Baby Food:



1

q)  Little Teethers Organic Multigrain Teething Wafers- Banana with Pumpkin:

2

3



4

5

6

7

8

9

r)  Little Teethers Organic Multigrain Teething Wafers- Blueberry

10



11

12

13

14

15

16

s)  Mighty Morning Bar- Blueberry Lemon:

17

18



19

20

21

22

23

24

25

26

27

28

**FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
Court File 21-cv-000913-YGR

1

2

t)   Mighty Morning Bar- Apple Cinnamon



10   u)   Mighty Snack Bar- Blueberry:



v)   Mighty Snack Bar- Strawberry:



w) Mighty 4 Blends- Banana, Blueberry, Sweet Potato, Carrot, Greek Yogurt & Millet Tots Pouch:



x) Mighty 4 Blends- Banana, Kiwi, Spinach, Greek Yogurt & Barley Tots Pouch:



FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

y)  Super Puffs- Apple with Spinach:



z)  Super Puffs- Mango with Sweet Potato:



aa) Teensy Snacks- Berry:



FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

1

# **FACTUAL ALLEGATIONS**

2

**I.**   **A Congressional Investigation Found the Presence of Heavy Metals in Baby Foods**

3

64.   On February 4, 2021, the House Report was published detailing findings that Heavy

4

Metals—including arsenic, cadmium, lead, and mercury—were present in "significant levels" in

5

numerous commercial baby food products. Ex. 1.

6

65.   The Subcommittee requested internal documents and test results from Defendants.

7

However, Defendants "refused to cooperate with the Subcommittee's investigation." Ex. 1 at 2.

8

Defendants refused to produce their testing standards and specific test results, and instead

9

produced a spreadsheet that "self-declared" that every product met criteria for each of the Heavy

10

Metals, while declining to state what the criteria were. Ex. 1 at 44.

11

| Product Name | Testing Date | Arsenic | Cadmium | Lead | Mercury |
|---|---|---|---|---|---|
| Plum Organics® Stage 2 Apple & Carrot, 4oz | 10/29/2017 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Peach, Banana & Apricot, 4oz | 10/29/2017 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Pear & Mango, 4oz | 10/29/2017 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Pear, Spinach & Pea, 4oz | 10/29/2017 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Apple, Cauliflower & Leek, 3.5oz | 10/29/2017 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Eat Your Colors® Cherry, Purple Carrot, Blackberry & Millet, 3.5oz | 5/14/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Eat Your Colors® Cherry, Purple Carrot, Blackberry & Millet, 3.5oz | 5/14/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Mango, Yellow Zucchini, Corn & Turmeric, 3.5oz | 5/1/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Mango, Yellow Zucchini, Corn & Turmeric, 3.5oz | 5/2/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Mango, Yellow Zucchini, Corn & Turmeric, 3.5oz | 5/7/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Mango, Yellow Zucchini, Corn & Turmeric, 3.5oz | 5/16/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Peach, Pumpkin, Carrot & Cinnamon, 3.5oz | 5/17/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Peach, Pumpkin, Carrot & Cinnamon, 3.5oz | 5/17/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Peach, Pumpkin, Carrot & Cinnamon, 3.5oz | 5/25/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Pea, Kiwi, Pear & Avocado, 3.5oz | 5/1/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Pea, Kiwi, Pear & Avocado, 3.5oz | 5/2/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Pea, Kiwi, Pear & Avocado, 3.5oz | 6/27/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Eat Your Colors® Strawberry, Apple, Rhubarb & Oats, 3.5oz | 5/16/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Eat Your Colors® Strawberry, Apple, Rhubarb & Oats, 3.5oz | 5/24/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Eat Your Colors® Strawberry, Apple, Rhubarb & Oats, 3.5oz | 5/24/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Apple, Raisin & Quinoa, 3.5oz | 10/28/2017 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Apple, Plum, Berry & Barley, 3.5oz | 5/15/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Mango, Sweet Potato, Apple & Millet, 3.5oz | 5/15/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Mango, Sweet Potato, Apple & Millet, 3.5oz | 6/27/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Banana, Zucchini & Amaranth, 3.5oz | 5/23/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Banana, Zucchini & Amaranth, 3.5oz | 5/23/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

66.     The House Report stated that Defendants' "testing summary hides more than it reveals, since it does not show the levels of heavy metals that the testing found or the levels of heavy metals that would 'meet criteria.'" Ex. 1 at 45. Further, the Subcommittee found Defendants' "grading" concerning and misleading as it "raises questions about what [Defendants'] other thresholds actually are, and whether they exist." Ex. 1 at 45.

67.     Notably, in the testing results submitted by Defendants to the Subcommittee, Defendants admitted there is no standard for mercury levels in their Baby Foods: "No specific threshold established because no high-risk ingredients are used."[10]

68.     The Subcommittee also stated it had "grave concerns about baby food products manufactured by" Defendants, and was "greatly concerned" that Defendants' lack of cooperation could "obscure the presence of even higher levels of toxic heavy metals in their baby products, compared to their competitors' products." Ex. 1 at 5.

69.     The investigation found that when baby food manufacturers were left to self-regulate and establish their own heavy metals standards, they routinely failed to abide by their own standards. Ex. 1 at 33.

70.     The Subcommittee further stressed the danger associated with the presence of Heavy Metals in baby food: "These toxic heavy metals pose serious health risks to babies and toddlers.  Manufacturers knowingly sell these products to unsuspecting parents, in spite of internal company standards and test results, and without any warning labeling whatsoever." Ex. 1. at 59.

71.     Contrary to the Subcommittee's statement that Defendants "refused to cooperate with the Subcommittee's investigation," Defendants claim they worked with the investigation: "[W]e cooperated with the Committee's baby food review. We responded quickly to their questions and never refused anything requested of us. We are surprised that the Committee would

---

[10] Campbell, *Product Heavy Metal Test Results* (Dec. 11, 2019), available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/12.pdf at 6 (last accessed Sept. 3, 2021).

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

suggest that we were less than full partners in this mission."[11]

72.     In Defendants' published response to the House Report, they stated, "We are confident in the safety and quality of our products.  Our top priority is to serve children healthy, nutritious food made from the best ingredients.  We want to assure you that Plum's products are safe (and delicious) to eat!"[12]

## II.    Defendants Falsely Marketed Their Baby Foods as Healthy By Omitting Any Mention of Heavy Metals or Perchlorate

73.     Defendants' package, market, advertise, formulate, manufacture, distribute, and sell their Baby Foods throughout the United States, including California.

74.     Defendants' Baby Foods are available at numerous retail and online outlets. The Baby Foods are widely advertised, and there is a Director or Vice President of Brand Marketing on Defendants' Executive Team.

75.     Defendants' advertised mission is to "nourish little ones with the very best food from the very first bite."[13] Defendants repeatedly tout their commitment to and use of organic and non-GMO ingredients in their products, including the Baby Foods.[14]



[11] https://www.plumorganics.com/faqs/ (last accessed Sept. 3, 2021).

[12] *Id.*

[13] Plum    Organics    Mission    Highlights,    Fiscal    Year    2018.    Available    at https://www.plumorganics.com/wp-content/uploads/2019/05/Plum_MissionReport2018.pdf  (last accessed Sept. 3, 2021).

[14] https://www.plumorganics.com/food-philosophy/ (last accessed Sept. 3, 2021).

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR




76.    Defendants also claim their "top priority" is "to serve children healthy, nutritious food made from the best ingredients."[15]

77.    Defendants tout their commitment to organic, healthy food: the "very best food."[16]



78.    Defendants even state, "Our recipes always begin with organic, non-GMO ingredients from real foods like fruits, vegetables, whole grains, and proteins."[17]

79.    Defendants promote their Baby Foods as organic and free from unnatural ingredients in order to justify placement of their products within the premium category of baby food.

80.    Defendants also claim to have a "comprehensive quality and food safety program

---

[15] https://www.plumorganics.com/faqs/ (last accessed Sept. 3, 2021).

[16] Plum Organics Mission Highlights, Fiscal Year 2018.     Available at https://www.plumorganics.com/wp-content/uploads/2019/05/Plum_MissionReport2018.pdf (last accessed Sept. 3, 2021).

[17]    https://web.archive.org/web/20200922014219/https://www.plumorganics.com/ingredients-glossary/ (last accessed Sept. 3, 2021).

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

that encompasses an ingredient testing program for new suppliers which includes testing for heavy metals."[18]

81.     Defendants state they have a "protocol for evaluating heavy metals in products" and look to guidance from "leading health and regulatory bodies."[19] However, they fail to describe their protocol or identify the "health and regulatory bodies."[20]

82.     Additionally, Defendants claim, "Any level [of heavy metals] detected in Plum's [products] are below those allowed by applicable government standards."[21] However, in direct contradiction to that claim, Defendants state, "there is no federal standard on heavy metals in baby food… [and a] lack of specific FDA guidance on baby food."[22]

83.     Based on Defendants' decision to wholly omit mention of the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants in the Baby Foods, and to instead advertise, package, and market their Baby Foods as healthy, nutritious, organic, "made from the best ingredients," safe for consumption, and including "only" the healthy fruits, vegetables, or grains pictured on the packaging, they had a duty to ensure that these statements and the message portrayed by the packaging's imagery were true and not misleading. As such, Defendants knew or should have known the Baby Foods included nondisclosed Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants and that over time, these toxins can accumulate and remain in infants' and children's bodies, to their detriment.

84.     Defendants intentionally omitted the presence or material risk of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants in the Baby Foods in order to induce

---

[18]  https://www.plumorganics.com/faqs/ (last accessed Sept. 3, 2021).

[19] https://www.plumorganics.com/faqs/ (last accessed Sept. 3, 2021).

[20] *Id.*

[21] *Id.*

[22] *Id.*

1    and mislead reasonable consumers to purchase their Baby Foods.

2          85.    As a result of the material Omissions, a reasonable consumer would have no reason

3    to suspect the presence or material risk of Heavy Metals, perchlorate, and/or other undesirable

4    toxins or contaminants in the Baby Foods without conducting his or her own scientific tests (which

5    are time consuming and expensive) or reviewing third-party scientific testing of these products.

6    **III.    Due to the Presence and Material Risk of Heavy Metals and/or Perchlorate in the
          Baby Foods, The Omissions are Misleading**
7
          **A.    Heavy Metals**
8
          86.    At all times during the Class Period, Defendants knew or should have known the
9
     Baby Foods included undisclosed Heavy Metals and were not sufficiently tested for the presence
10
     and material risk of Heavy Metals.
11
          87.    Defendants' Baby Foods included undisclosed levels of Heavy Metals due to
12
     Defendants' failure to monitor for their presence in the ingredients and finished products.
13
     Defendants were aware of this risk and failed to disclose it to Plaintiffs and the Class despite having
14
     a duty to disclose.
15
          88.    In response to a question in the FAQ section on Defendants' website as to whether
16
     the Baby Foods contain Heavy Metals, Defendants state that heavy metals *will be* present and that
17
     they (now) try to minimize the exposure in the Baby Foods.
18
          Heavy metals are present throughout the environment, including soil and water. Whether
19
          you are growing your own produce in your backyard, buying fresh produce from a farmer's
20
          market or purchasing a product in the supermarket, *these substances will be present in the*
21
          *food to some extent. Plum is committed to minimizing environmental contaminants*
22
          *including heavy metals within our products.*[23]
23
          89.    Defendants knew or should have known that Heavy Metals pose health risks to
24
     infants and children.
25

26   _____

27   [23] *Id.* (emphasis added).

28
     **FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
     Court File 21-cv-000913-YGR

90.     Defendants knew or should have known that they owed consumers a duty of care to prevent, or at the very least, minimize the presence of Heavy Metals in the Baby Foods to the extent reasonably possible.

91.     Defendants knew or should have known they owed consumers a duty of care to adequately test for Heavy Metals in the Baby Foods.

92.     Defendants knew consumers purchased the Baby Foods based on the reasonable expectation that Defendants manufactured the Baby Foods to the highest standards. Based on this expectation, Defendants knew or should have known consumers reasonably inferred that Defendants would hold the Baby Foods to the highest standards for preventing the inclusion of Heavy Metals in the Baby Foods, which would include testing the Baby Foods' ingredients and finished products for Heavy Metals.

93.     The House Report found that many of the products produced by the country's largest commercial baby food manufacturers "contain significant levels of toxic heavy metals, including arsenic, lead, cadmium and mercury, which can endanger infant neurological development."[24]

94.     The Food and Drug Administration ("FDA") and the World Health Organization ("WHO") have declared arsenic, lead, cadmium, and mercury "dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects." Ex. 1 at 2.

95.     Additionally, while there are no federal regulations regarding levels of Heavy Metals in most baby foods, it is not due to a lack of risk. According to Linda McCauley, Dean of the Nell Hodgson Woodruff School of Nursing at Emory University, who studies environmental health effects, "No level of exposure to these [heavy] metals has been shown to be safe in

---

[24] Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, The Washington Post (Feb. 4, 2021), available at https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed Sept. 3, 2021).

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

1 vulnerable infants."[25]

2        96.    Indeed, the FDA has acknowledged that "exposure to [these four heavy] metals are

3 likely to have the most significant impact on public health" and has prioritized them in connection

4 with its heavy metals workgroup looking to reduce the risks associated with human consumption

5 of heavy metals.[26]

6        97.    Arsenic, lead, mercury, and cadmium—four heavy metals found in the Baby

7 Foods—are neurotoxins, or poisons which affect the nervous system. Exposure to these four heavy

8 metals "diminish quality of life, reduce academic achievement, and disturb behavior, with

9 profound consequences for the welfare and productivity of entire societies."[27]

10        98.    The four heavy metals (arsenic, cadmium, lead, and mercury) "can harm a baby's

11 developing brain and nervous system" and cause negative impacts such as "the permanent loss of

12 intellectual capacity and behavioral problems like attention-deficit hyperactivity disorder

13 ("ADHD")."[28] Even when trace amounts are found in food, these heavy metals can alter the

14 developing brain and erode a child's intelligence quotient ("IQ"). Ex. 1 at 1.

15        99.    Because Heavy Metals accumulate in the body, including in the kidneys and other

16 internal organs, the risk they pose grows over time and can remain in one's body for years.[29]

17        100.    Due to their smaller physical size and still-developing brain and organs, infants and

18 toddlers are particularly susceptible to the toxic effects of heavy metals because "[t]hey also absorb

19

20 [25] *Some Baby Food May Contain Toxic Metals, U.S. Reports*; available at https://www.nytimes.com/2021/02/04/health/baby-food-metals-arsenic.html (last accessed Sept. 3, 2021).

21

22 [26]FDA: *Metals and Your Food*; available at https://www.fda.gov/Food/FoodborneIllnessContaminants/Metals/default.htm (last accessed Sept. 3, 2021).

23

24 [27] HBBF Report at 13.

25 [28] *Id.* at 6.

26 [29] https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/ (last accessed Sept. 3, 2021).

27

28

more of the heavy metals that get into their bodies than adults do."[30]

101.   Of additional concern to developing infants are the health risks related to simultaneous exposure to multiple Heavy Metals as "co-exposures can have interactive adverse effects."[31] Heavy Metals disturb the body's metabolism and cause "significant changes in various biological processes such as cell adhesion, intra- and inter-cellular signaling, protein folding, maturation, apoptosis, ionic transportation, enzyme regulation, and release of neurotransmitters."[32]

102.   Exposure to heavy metals, even in small amounts, can lead to life-long effects. According to Victor Villarreal, Ph.D., Assistant Professor in the Department of Educational Psychology at the University of Texas at San Antonio who has studied the effects of heavy metals on childhood development, "[t]he effects of early exposure to heavy metals can have long-lasting impacts that may be impossible to reverse."[33]

103.   Due to the impact of heavy metals on child development, certain senators have urged the FDA to "finalize action levels that eliminate [] toxic heavy metals."[34]

104.   Because heavy metals can bioaccumulate in the body, even regular consumption of

---

[30] *Id.*

[31] Morello-Frosch R., Cushing L.J., Jesdale B.M., Schwartz J.M., Guo W., Guo T., Wang M., Harwani S., Petropoulou S.E., Duong W., Park J.S., Petreas M., Gajek R., Alvaran J., She J., Dobraca D., Das R., Woodruff T.J. *Environmental Chemicals in an Urban Population of Pregnant Women and Their Newborns from San Francisco.* Environ Sci Technol. 2016 Nov 15;50(22):12464-12472. doi: 10.1021/acs.est.6b03492. Epub 2016 Oct 26. PMID: 27700069; PMCID: PMC6681912. Available at https://stacks.cdc.gov/view/cdc/80511 (last accessed Sept. 3, 2021).

[32] Jaishankar, M., Tseten, T., Anbalagan, N., Mathew, B. B., & Beeregowda, K. N. (2014). *Toxicity, mechanism and health effects of some heavy metals.* Interdisciplinary toxicology, 7(2), 60–72. Available at https://doi.org/10.2478/intox-2014-0009 (last accessed Sept. 3, 2021).

[33] https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/ (last accessed Sept. 3, 2021).

[34] https://www.klobuchar.senate.gov/public/_cache/files/9/9/996f2cad-5295-432b-a543-f69312988a78/37D015A1AC9DDF0E31B341F629469169.6.22.2021-formatted-letter-to-fda-on-baby-food-recall.pdf (last accessed Sept. 3, 2021).

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

1  small amounts can increase the risk of various health issues, including the risk of bladder, lung,

2  and skin cancer; cognitive and reproductive problems; and type 2 diabetes.[35]

3     105.   Research continues to confirm that exposures to food containing arsenic, lead,

4  mercury, and cadmium causes "troubling risks for babies, including cancer and lifelong deficits in

5  intelligence[.]"[36]

6     106.   However, the knowledge of the risks associated with exposure to heavy metals is

7  not a new phenomenon. Defendants knew or should have known the risks associated with the

8  presence of heavy metals in foods consumed by infants and children.[37]

9     107.   Despite the known risks of exposure to these heavy metals, Defendants have

10 negligently, recklessly, and/or knowingly sold the Baby Foods without disclosing the presence of

11 risk of arsenic, mercury, cadmium, and lead to consumers like Plaintiffs.

12 *Arsenic*

13    108.   The Baby Foods contain (or have a material risk of) arsenic, which can cause

14 cognitive deficits in children who are exposed early in life, and even neurological problems in

15 adults who were exposed as infants.[38] "There is no evidence that the harm caused by arsenic is

16 reversible."[39]

17    109.   Inorganic arsenic is highly toxic and a known cause of human cancers.  Arsenic

18

---

19 [35] https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/ (last accessed Sept.
20 3, 2021).

21 [36] HBBF Report at 1.

22 [37] *See e.g.*, *FDA Compliance Program Guidance Manual: Toxic Elements in Food and Foodware,*
   *and Radionuclides in Food- Import and Domestic*, available at http://wayback.archive-
23 it.org/7993/20170404233343/https://www.fda.gov/downloads/Food/ComplianceEnforcement/UC
   M073204.pdf (last accessed Sept. 3, 2021); *see also* 21 CFR 172, available at
24 https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfcfr/CFRSearch.cfm?CFRPart=172&showF
   R=1 (last accessed Sept. 3, 2021).

25
26 [38] HBBF at 13.

27 [39] *Id.*

28 FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
   Court File 21-cv-000913-YGR

exposure can also cause respiratory, gastrointestinal, hematological, hepatic, renal, skin, neurological and immunological effects, and damage children's central nervous systems and cognitive development. Ex. 1 at 10. Exposure to arsenic can also cause diabetes, atherosclerosis, and cardiovascular disease.[40]

110.   "Studies have shown that consuming products with arsenic over time can lead to impaired brain development, growth problems, breathing problems, and a compromised immune system."[41] And "even low levels of arsenic exposure can impact a baby's neurodevelopment."[42]

111.   Based on the risks associated with exposure to higher levels of arsenic, both the U.S. Environmental Protection Agency ("EPA") and FDA have set limits concerning the allowable limit of arsenic at 10 parts per billion ("ppb") for human consumption in apple juice (regulated by the FDA) and drinking water (regulating by the EPA as a maximum contaminant level).

112.   Moreover, the FDA has set the maximum allowable arsenic levels in bottled water at 10 ppb of inorganic arsenic.[43]   The FDA has issued an action level guidance for inorganic arsenic in infant rice cereals of 100 ppb.[44]

---

[40] States J.C., Singh A.V., Knudsen T.B., Rouchka E.C., Ngalame N.O., Arteel G.E., et al. (2012) *Prenatal Arsenic Exposure Alters Gene Expression in the Adult Liver to a Proinflammatory State Contributing to Accelerated Atherosclerosis*. PLOS ONE 7(6): e38713. *Available at* https://doi.org/10.1371/journal.pone.0038713 (last accessed Sept. 3, 2021).

[41] https://www.klobuchar.senate.gov/public/_cache/files/9/9/996f2cad-5295-432b-a543-f69312988a78/37D015A1AC9DDF0E31B341F629469169.6.22.2021-formatted-letter-to-fda-on-baby-food-recall.pdf (last accessed Sept. 3, 2021) (citing Dartmouth Toxic Metals Superfund Research Program (2021), Arsenic and Children, https://sites.dartmouth.edu/arsenicandyou/arsenic-and-children/).

[42] *Id.*

[43] Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, The Washington Post (Feb. 4, 2021), available at https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed Sept. 3, 2021).

[44] FDA, Guidance for Industry: Inorganic Arsenic in Rice Cereals for Infants: Action Level (Apr. 2016), https://www.fda.gov/media/97234/download#:~:text=The%20action%20level%20for%20inorga

1

113.    Baby products comprised of rice are at particular risk for arsenic. Healthy Baby

2   Bright Future's Research Director, Jane Houlihan, stated, "Rice-based foods like infant rice cereal

3   are high in inorganic arsenic, the most toxic form of arsenic."[45]

4

114.    Routine testing of samples of infant rice cereal manufactured by a different U.S.

5   baby food manufacturer found levels of inorganic arsenic above the FDA guidance level.[46] In June

6   2021, the company announced a recall and discontinue production of its rice cereal due to concerns

7   related to its ability to source rice flour with levels below the FDA guidance level.[47]

8

115.    Defendants list rice flour as the first ingredient and brown rice flour within the top

9   five ingredients in several Baby Foods.

10

11

12

13                                      

14

15

16

17

18

19

20

21

nic,on%20sampling%20and%20testing%20results (last accessed Sept. 3, 2021).

22

[45]    https://www.hbbf.org/blog/2021-06/hbbf-statement-beech-nuts-rice-cereal-recall-step-right-
direction (last accessed Sept. 3, 2021).

23

24     [46]    https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/beech-nut-nutrition-
company-issues-voluntary-recall-one-lot-beech-nut-single-grain-rice-cereal-and   (last accessed

25   Sept. 3, 2021).

26

[47] Id.

27

28



INGREDIENTS

Organic Rice Flour, Organic Whole Grain Oat Flour, Organic Dried Cane Syrup, Organic Brown Rice Flour, Organic Annatto Extract (For Color), Natural Mango Flavor, Tri-And Dicalcium Phosphate, Organic Mango Powder, Natural Sweet Potato Flavor, Organic Sweet Potato Powder, Mixed Tocopherols (For Freshness). Vitamins & Minerals: Tricalcium Phosphate, L-Choline Bitartrate, Reduced Iron, Zinc Sulfate, Dl-Alpha Tocopheryl Acetate (Vitamin E), Niacinamide, Retinol Palmitate (Vitamin A), Folic Acid, Thiamine Hydrochloride (Vitamin B1), Riboflavin (Vitamin B2), Pyridoxine Hydrochloride (Vitamin B6), Cyanocobalamin (Vitamin B12).

116.    While both white and brown rice products contain inorganic arsenic, brown rice generally contains higher levels.[48]  Additionally, products containing rice have also been found to have higher levels of lead and cadmium concentrations.[49]

117.    Defendants' use of organic rice flours does not insulate the Baby Foods from the presence of Heavy Metals because organic products are just as likely to contain Heavy Metals as non-organic products.[50]

118.    Again, Defendants did not cooperate with the Subcommittee's investigation and refused to produce their testing standards and specific test results.  Ex. 1 at 2.  Defendants instead produced a spreadsheet that "self-declared" that every product met criteria for each of the Heavy Metals, including arsenic, while declining to state what the criteria were.[51]

---

[48] https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/ (last accessed Sept. 3, 2021).

[49] https://www.sciencedirect.com/science/article/abs/pii/S0048969718334442?via%3Dihub (last accessed Sept. 3, 2021).

[50] https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/ (last accessed Sept. 3, 2021).

[51] Campbell, *Product Heavy Metal Test Results* (Dec. 11, 2019) (available online at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/12.pdf) (last accessed Sept.

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

119.     Despite Defendants' assertion that all their Baby Foods met criteria for each of the Heavy Metals, recent testing by Plaintiffs shows two products (Super Puffs Mango with Sweet Potato and Super Puffs Apple with Spinach) tested over 100ppb for arsenic.

***Cadmium***

120.     The Baby Foods also contain (or have a material risk of containing) cadmium, which has been shown to cause anemia, liver disease, and nerve or brain damage in animals that eat or drink it.

121.     Cadmium is linked to neurotoxicity, cancer, and kidney, bone, and heart damage. Scientists have reported a "tripling of risk for learning disabilities and special education among children with higher cadmium exposures, at exposure levels common among U.S. children[.]"[52]

122.     Cadmium, like lead, "displays a troubling ability to cause harm at low levels of exposure."[53] The U.S. Department of Health and Human Services has determined that cadmium and cadmium compounds are known human carcinogens and the EPA has likewise determined that cadmium is a probable human carcinogen.[54] Compounding such concerns is the fact that cadmium has a prolonged half-life as it "sequesters in [human] tissue."[55]

123.     The EPA has set a maximum contaminant level for cadmium in drinking water of 5 ppb, 40 C.F.R. § 141.62; the FDA has set a maximum level in bottled water to 5 ppb; and the WHO set a maximum cadmium level in drinking water to 3 ppb. Ex. 1 at 29.

---

3, 2021).

[52] HBBF Report at 14.

[53] *Id*.

[54] Agency for Toxic Substances and Disease Registry, *Public Health Statement for Cadmium*, available at https://wwwn.cdc.gov/TSP/PHS/PHS.aspx?phsid=46&toxid=15 (last accessed Sept. 3, 2021).

[55] Genuis S.J., Schwalfenberg G., Siy A.-K.J., Rodushkin I. (2012) *Toxic Element Contamination of Natural Health Products and Pharmaceutical Preparations*, PLOS ONE 7(11): e49676, available *at* https://doi.org/10.1371/journal.pone.0049676 (last accessed Sept. 3, 2021).

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

124.    Again, Defendants did not cooperate with the Subcommittee's investigation and instead produced a spreadsheet that "self-declared" that every product met criteria for each of the Heavy Metals, including cadmium, while declining to state what the criteria were.[56]

125.    Despite Defendants' assertion that all their Baby Foods met criteria for each of the Heavy Metals, laboratory tests indicate that Defendants sold products containing cadmium levels as high as 24.3 ppb.[57]

***Lead***

126.    The Baby Foods contain (or have a material risk of containing) lead, which is another carcinogen and developmental toxin known to cause health problems in children.

127.    Lead exposure can seriously harm the brain and nervous system in infants and children and is associated with a range of negative health outcomes such as behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth.

128.    Exposure to lead in foods builds up over time. Build up can and has been scientifically demonstrated to lead to the development of chronic poisoning, cancer, developmental, and reproductive disorders, as well as serious injuries to the nervous system, and other organs and body systems.

129.    Even very low exposure levels to lead can "cause lower academic achievement, attention deficits and behavior problems. No safe level of exposure has been identified."[58]

130.    Lead is extremely toxic, and its effects cannot be reversed or remediated.[59]

---

[56]   Campbell, *Product Heavy Metal Test Results* (Dec. 11, 2019); available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/12.pdf (last accessed Sept. 3, 2021).

[57] HBBF Report at 27.

[58] *Id*. at 13.

[59] Consumer Reports, *Heavy Metals in Baby Food: What You Need to Know*, available at https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/ (last accessed Sept. 3, 2021).

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

131.    One study found that "children age 0 to 24 months lose more than 11 million IQ points from exposure to arsenic and lead in food."[60]  Additionally, studies have established a link between lead exposure and ADHD. Ex. 1 at 12.

132.    Although there is no federal standard for lead in baby food, health experts, including the American Academy for Pediatrics, the Environmental Defense Fund, and Consumer Reports, have agreed that lead in baby foods should not exceed 1 ppb.[61]

133.    On January 15, 2021, the EPA issued Lead and Copper Rule Revisions, with a new "trigger level" for treatment of 10 ppb lead in drinking water, effective March 16, 2021.[62] Previously, the EPA had required treatment for water exceeding lead concentrations of 15 ppb. 40 C.F.R. 141, Subpart I.

134.    Again, Defendants did not cooperate with the Subcommittee's investigation and instead produced a spreadsheet that "self-declared" that every product met criteria for each of the Heavy Metals, including lead, while declining to state what the criteria were.[63]

135.    Laboratory tests, however, indicate Defendants sold products containing lead levels as high as 14 ppb.[64]

***Mercury***

136.    The Baby Foods contain (or have a material risk of containing) mercury, which

---

[60]  HBBF Report at 7.

[61] Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, The Washington Post (Feb. 4, 2021), available at https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed Sept. 3, 2021).

[62] U.S. EPA, Revised Lead and Copper Rule available at https://www.epa.gov/ground-water-and-drinking-water/revised-lead-and-copper-rule (last accessed Sept. 3, 2021).

[63]    Campbell, *Product Heavy Metal Test Results*; available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/12.pdf (last accessed Sept. 3, 2021).

[64] HBBF Report at 22.

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

increases the risk for cardiovascular disease and can cause vision, intelligence, and memory problems for children exposed in utero. Exposure to mercury has been linked to higher risk of lower IQ scores and intellectual disability.[65] Mercury exposure at two and three years of age has been positively associated with autistic behaviors among pre-school age children. Ex. 1 at 12-13.

137.    The EPA has set a maximum contaminant level for mercury in drinking water at 2 ppb. Ex. 1 at 32.

138.    Despite Defendants' assertion that all their Baby Foods met criteria for each of the Heavy Metals, including mercury, they also admitted there is no standard for mercury levels in their Baby Foods, stating: "No specific threshold is established because no high-risk ingredients are used."[66]

**B. Perchlorate**

139.    The Baby Foods may contain perchlorate, a neurotoxic chemical compound. Perchlorate can disrupt the function of the thyroid, which is crucial for normal growth and development of the central nervous system in infants and young children.[67] It has also been "linked to IQ loss among children born to mothers with thyroid dysfunction."[68]

140.    The levels of perchlorate in children's food have increased significantly from 2005. Perchlorate, which is both a naturally occurring and manmade chemical, was approved by the FDA in 2005 for use as an antistatic in plastic food packaging. In 2016, the FDA expanded the approval to cover dry food handling equipment. Hypochlorite bleach, which is used to disinfect food processing equipment, can also create perchlorate as a product of degradation.

---

[65] *Id*. at 14.

[66] https://oversight.house.gov/sites/democrats.oversight.house.gov/files/12.pdf at 6 (last accessed Sept. 3, 2021).

[67] https://www.fda.gov/food/chemicals/perchlorate-questions-and-answers (last accessed Sept. 3, 2021).

[68] HBBF Report at 8.

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

141.    The dangers of perchlorate in human food are recognized by the FDA.[69] The EPA has also recognized the dangers of perchlorate in drinking water and as of July 2020 and has set the maximum contaminant level goal for perchlorate in drinking water to 56 μg/L. 85 F.R. 43990.

142.    At all times during the Class Period, Defendants knew or should have known the Baby Foods included (or have a material risk of containing) undisclosed levels of perchlorate, and/or were not sufficiently tested for perchlorate. During this time, Defendants omitted any reference to the presence or risk of perchlorate from the Baby Foods' packaging.

143.    Defendants knew or should have known that perchlorate is a potentially dangerous contaminant that poses health risks to infants and children.

144.    Defendants knew or should have known they owed consumers a duty of care to prevent, or at the very least, minimize, the presence of perchlorate in the Baby Foods.

145.    Defendants knew or should have known they owed consumers a duty of care to adequately test for perchlorate in the Baby Foods and had a duty to disclose the inclusion of perchlorate to consumers.

146.    Defendants knew or should have known consumers purchased the Baby Foods based on the reasonable expectation that Defendants manufactured the Baby Foods to the highest standards to be safe and healthy for consumption by infants and children. Defendants knew or should have known consumers reasonably inferred that Defendants would hold the Baby Foods to the highest standards for preventing the presence or risk of perchlorate and for testing for perchlorate.

147.    Still, certain Baby Foods are sold by Defendants that may contain levels of perchlorate, such as the Mighty Morning Bar (Blueberry Lemon).

---

[69]    FDA, Exploratory Survey Data on Perchlorate in Food 2004-2005, https://www.fda.gov/food/chemicals/exploratory-survey-data-perchlorate-food-2004-2005 (last accessed Sept. 3, 2021) ("Human exposure to sufficient doses of perchlorate can interfere with iodide uptake into the thyroid gland, disrupting its functions and potentially leading to a reduction in the production of thyroid hormones.").

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

148.     Despite the risk and/or actual presence of these unnatural and potentially harmful chemicals, Defendants prominently warrant, claim, feature, represent, advertise, or otherwise market the Baby Foods as "organic" and appropriate for consumption by infants and children and fail to disclose the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants.

**IV.     Baby Food Products Can Be Manufactured Without Measurable Levels of Heavy Metals**

149.     In contrast to the levels of Heavy Metals found in the Baby Foods, other baby food manufacturers have produced baby food products that are free of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants or with levels that are not measurable.

150.     The Clean Label Project tests products for more than 400 contaminants, including heavy metals, chemicals, and plastics, and presents its Purity Award to companies with products with the lowest levels of the contaminants when compared to other products in a given category.[70]

151.     Cerebelly, a manufacturer of shelf-stable pureed baby food pouches (recognized by the Clean Label Project for manufacturing products that were free from heavy metals) and Once Upon a Farm, a manufacturer of cold-pressed, refrigerated blends for infants and children, were both recipients of the Clean Label Project's Purity Award.[71]

152.     Nature's One is another baby food manufacturer of organic pediatric nutritional products, including infant and toddler formulas, who received the Clean Label Project's Purity Award.[72] According to independent laboratory tests, its products regularly test at zero for harmful contaminants.[73]

---

[70]     https://cleanlabelproject.org/purity-award/     (last   accessed   Sept.   3,   2021); https://cleanlabelproject.org/Once%20Upon%20A%20Farm/ (last accessed Sept. 3, 2021).

[71]     https://www.foodnavigator-usa.com/Article/2021/02/08/Cerebelly-receives-The-Clean-Label-Project-Purity-Award-confirming-its-products-are-free-from-heavy-metals# (last accessed Sept. 3, 2021).

[72] https://cleanlabelproject.org/Natures-one/ (last accessed Sept. 3, 2021).

[73]     https://wjla.com/news/spotlight-on-america/exclusive-as-baby-food-industry-is-slow-to-

**FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
Court File 21-cv-000913-YGR

153.     Yet another baby food manufacturer and recipient of the Clean Label Project's Purity Award, Yumi, takes numerous proactive steps to ensure its products are safe for infants and children.[74] Yumi does not use ingredients such as rice and fruit juice, both known to contain high levels of arsenic.[75] Yumi also uses "heavy metal fighters," ingredients that can block the body's absorption of Heavy Metals.[76] Yumi also regularly tests both the ingredients and finished products for Heavy Metals.[77]

154.     Additionally, testing by Consumer Reports identified baby food products with heavy metal levels low enough to not cause concern, as well as some products with heavy metal levels that were not measurable, and none were manufactured by Defendants.[78]  "[T]here are ways for [baby food] manufacturers to significantly reduce or eliminate these [heavy] metals from their products."[79]

155.     In testing conducted by Consumer Reports, approximately one-third of tested products had levels of heavy metals that were below levels of concern and other products had immeasurable levels of heavy metals.[80]  As stated by Dr. James E. Rogers, the Consumer Reports Director of Food Safety Research and Testing, "Every category of food was represented in that lower-risk group. That indicates that there are ways for manufacturers to significantly reduce or

---

reduce-toxic-metals-blueprint-already-exists (last accessed Sept. 3, 2021).

[74] https://helloyumi.com/heavy-metals/ (last accessed Sept. 3, 2021).

[75] *Id.*

[76] *Id.*

[77] *Id.*

[78] https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/ (last accessed Sept. 3, 2021).

[79] *Id.*

[80] *Id.*

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

eliminate these [heavy] metals from their products."[81]

156.    In addition, as a result of public health efforts, exposure to lead has consistently and notably decreased over the past 40 years.[82] These efforts include increasing awareness of the dangers of even low levels of lead exposure to young children.[83] The progress towards decreasing childhood exposure to lead was so impressive that the Centers for Disease Control and Prevention ("CDC") identified "childhood lead poisoning prevention as 1 of 10 great U.S. public health achievements during 2001 to 2010."[84]

**V.    The Material Omissions Misled and Deceived Reasonable Consumers**

157.    The Omissions wrongfully convey to consumers that Defendants' Baby Foods have certain superior quality and characteristics that they do not actually possess.

158.    For instance, although Defendants misleadingly cause consumers to believe their Baby Foods do not contain Heavy Metals, perchlorate, and/or other undesired toxins or contaminants due to the material Omissions, the Baby Foods do in fact contain undisclosed levels of Heavy Metals, perchlorate, and/or other undesired toxins or contaminants, which is material information to reasonable consumers.

159.    For example, the following products manufactured by Defendants were tested and found to contain undisclosed Heavy Metals and/or perchlorate at the following levels:[85]

---

[81] *Id.*

[82] Dignam, T., Kaufmann, R. B., LeStourgeon, L., & Brown, M. J. (2019). *Control of Lead Sources in the United States, 1970-2017: Public Health Progress and Current Challenges to Eliminating Lead Exposure*. Journal of public health management and practice: JPHMP, 25 Suppl 1, Lead Poisoning Prevention (Suppl 1 LEAD POISONING PREVENTION), S13–S22. Available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6522252/#R6 (last accessed Sept. 3, 2021).

[83] *Id.*

[84] *Id.*

[85] The following chart represents the levels of Heavy Metals in Defendants' products included in the HBBF Report.

| Food | Arsenic (total, ppb) | Arsenic (inorganic, ppb) | Lead (ppb) | Cadmium (ppb) | Mercury (total, ppb) | Perchlorate (ppb) |
|------|------|------|------|------|------|------|
| Gentle Organic Infant Formula with Iron, Milk-Based Powder | 4.6 | --[86] | 4.7 | < 1.1 | < 0.278 | -- |
| Stage 1 Pouch (Just Sweet Potato) | 3.1*[87] | -- | 5.6 | 2.3 | <0.142 | -- |
| Stage 1 Pouch (Just Peaches) | 7.2 | -- | 0.9* | <0.5 | <0.139 | -- |
| Stage 1 Pouch (Just Prunes) | 7.6 | -- | 2.5 | <0.5 | 0.194* | -- |
| Stage 2 Pouch (Pumpkin Banana Papaya Cardamom) | 2.4* | -- | 1.4* | 2.4 | <0.139 | -- |
| Stage 2 Pouch (Apple, Raisin, & Quinoa) | 5.6* | -- | 2.2 | 1.9 | 0.145* | -- |
| Little Teethers Multigrain Teething Wafers (Banana with Pumpkin) | 49.9 | -- | 1.4* | 6.3 | 0.726 | -- |
| Mighty Morning Snack Bar (Blueberry Lemon) | 40[88] | 39 | 3.4 | 24.3 | <0.137 | 1.8(J) |

160.    Testing recently conducted for Plaintiffs by an independent laboratory further confirmed the presence of undisclosed Heavy Metals in the Baby Foods:

---

[86] "--" indicates that analysis was not performed by Healthy Babies Bright Futures.

[87] An "*" indicates that test results were estimated, between the limit of detection and the limit of quantitation.

[88] "This value is the average of 3 tests of total arsenic (44, 37, and 39 ppb).  The original homogenized bar was tested twice, and homogenate of a second, separate bar from the same box was tested once."

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

| Food | Arsenic (ppb) | Cadmium (ppb) | Lead (ppb) | Mercury (ppb) |
|---|---|---|---|---|
| Stage 2 Pouch (Pear, Purple Carrot, & Blueberry) (Sample 1) | 7.6 | 3.4 | 4.6 | < 1.9 |
| Stage 2 Pouch (Pear, Purple Carrot, & Blueberry) (Sample 2) | 7.5 | 4.3 | 4.3 | < 1.9 |
| Stage 2 (Pear, Spinach, & Pea) (Sample 1) | 3.4 | 20.1 | 1.6 | < 1.7 |
| Stage 2 (Pear, Spinach, & Pea) (Sample 2) | 4.0 | 27.3 | 1.8 | < 1.7 |
| Stage 1 (Just Sweet Potato) (Sample 1) | 3.0 | 3.5 | 31.0 | < 1.8 |
| Stage 1 (Just Sweet Potato) (Sample 2) | 2.9 | 3.9 | 30.0 | < 1.6 |
| Mighty 4 Blends (Banana, Blueberry, Sweet Potato, Carrot, Greek Yogurt & Millet) | 2.8 | 2.9 | 2.7 | < 1.7 |
| Mighty 4 Blends (Banana, Kiwi, Spinach, Greek Yogurt & Barley) | 7.4 | 7.7 | 3.9 | < 1.8 |

161.    Recent testing conducted by an independent laboratory for Plaintiffs also disclosed the presence of Heavy Metals in Defendants' Super Puffs, which are made with rice flour as their first ingredient. Alarmingly, these products contained over the daily recommended amount of 100 ppb of arsenic, as well as high levels of cadmium concentrations.

| Food | Arsenic (ppb) | Cadmium (ppb) | Lead (ppb) | Mercury (ppb) |
|---|---|---|---|---|
| Super Puffs Mango with Sweet Potato | 177 | 15.9 | 4.0 | < 1.9 |
| Super Puffs Apple with Spinach | 114 | 21.2 | 5.0 | < 1.7 |

162.    Additionally, Consumer Reports conducted testing of selected samples of baby food products sold by Defendants and other baby food manufacturers. Every product had measurable levels of at least cadmium, arsenic, or lead.[89] The Baby Foods identified below were

---

[89] https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/ (last accessed Sept. 3, 2021).

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

all found to contain Heavy Metals at levels that pose a greater risk of presenting potential health risks to a child:[90]



**Plum Organics Little Yums Organic Teething Wafers, Pumpkin & Banana**[1]

SERVING SIZE: 1 WAFER
**DAILY LIMIT: <5.5 SERVINGS**



**Plum Organics Mighty Sticks Whole Grain Snacks, Berry Beet**[1]

SERVING SIZE: 1 PACK
**DAILY LIMIT: <1.5 SERVINGS**



**Plum Organics Just Sweet Potato Organic Baby Food**

SERVING SIZE: 1 POUCH
**DAILY LIMIT: <1 SERVING**

163.    Results from the FDA's Total Diet Study further echo the Consumer Reports' findings that baby food cereals and snacks have higher levels of heavy metals than baby food fruits and vegetables and that baby food products containing rice commonly have heavy metals.[91]

164.    A study conducted by scientists from the University of Miami, the Clean Label

---

[90] Consumer Reports calculated the daily limit a child could consume of each product before it would pose potential health risks due to exposure to cadmium, arsenic, and lead. The lower the daily limit, the greater the risk from that food [products with "daily limit" noted in red are those with greater risk]. https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/ (last accessed June 24, 2021).

[91] https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/ (last accessed Sept. 3, 2021); https://www.fda.gov/media/77948/download (last accessed Sept. 3, 2021).

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

Project, and Ellipse Analytics investigated lead and cadmium in U.S. baby food products.[92] They found lead in 37% of the samples and cadmium in 57%.[93] The study also found no correlation between organic and conventional foods and heavy metal levels, but did conclude that products containing rice had higher levels of both lead and cadmium.[94]

165.   Defendants wrongfully fail to disclose to reasonable consumers material information on the presence (or material risk of) Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants in their Baby Foods.

166.   Based on the Omissions, a reasonable consumer would not suspect the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants, nor would a reasonable consumer be able to detect the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants in the Baby Foods without conducting his or her own scientific tests or reviewing scientific testing conducted on the Products.

167.   Reasonable consumers must and do rely on Defendants to honestly report what their Baby Foods contain.

168.   Based on the impression given by the packaging, no reasonable consumer could expect or understand that the Baby Foods contained Heavy Metals and perchlorate.

169.   In light of Defendants' statements regarding the quality of the Baby Foods, including their comprehensive quality controls, Defendants knew or should have known the Baby Foods contained or may contain Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants.

170.   Defendants had a duty to ensure the Baby Foods were not deceptively,

---

[92] Gardener, et al., *Lead and cadmium contamination in a large sample of United States infant formulas and baby foods*, 651 SCI. TOTAL ENVIRON. 1, 822-827 (2019), available at: https://www.sciencedirect.com/science/article/abs/pii/S0048969718334442?via%3Dihub   (last accessed Sept. 3, 2021).

[93] *Id.*

[94] *Id.*

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

1  misleadingly, unfairly, and falsely marketed and all material information was properly and fully

2  disclosed.

3       171.    Defendants acted negligently, recklessly, unfairly, and/or intentionally with their

4  deceptive packaging based on the material Omissions.

5       172.    Defendants knew that properly and sufficiently monitoring the Baby Foods for

6  Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants in their ingredients

7  and finished Baby Foods was not only important, but critical.

8       173.    Additionally, Defendants knew or should have been aware that a reasonable

9  consumer would be feeding the Baby Foods multiple times each day to his or her child, making it

10  a significant source of food for the child.  This leads to repeated exposure to the Heavy Metals,

11  perchlorate, and/or other undesirable toxins or contaminants to the child.

12       174.    Finally, Defendants knew or should have known they could control the levels of

13  Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants in the Baby Foods by

14  properly monitoring their ingredients for Heavy Metals, perchlorate, and/or other undesirable

15  toxins or contaminants and adjusting any formulation or diet to reduce ingredients that contained

16  or may contain higher levels of Heavy Metals, perchlorate, and/or other undesirable toxins or

17  contaminants.

18       175.    The Omissions are material and reasonably likely to deceive reasonable consumers

19  in their purchasing decisions, such as Plaintiffs.  This is true especially considering the long-

20  standing campaign by Defendants to market the Baby Foods as healthy, nutritious, organic, and

21  made from the best ingredients, and to induce consumers, such as Plaintiffs, to purchase the

22  products.

23       176.    The Omissions make the Baby Foods' packaging deceptive based on the presence

24  or risk of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants in the Baby

25  Foods.  Reasonable consumers, like Plaintiffs, would consider the mere presence or risk of Heavy

26  Metals, perchlorate, and/or other undesirable toxins or contaminants in the Baby Foods a material

27  fact when considering what baby food to purchase.

28

- 54 -

177.   At all times during and throughout the Class Period, Defendants knew they were not sufficiently and consistently monitoring or testing the Baby Foods or their ingredients for Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants.

178.   Defendants knew, yet failed to disclose, their lack of regular testing, monitoring, and knowledge that the Baby Foods and/or ingredients used in the Baby Foods included undisclosed levels of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants.

179.   Defendants' packaging was misleading due to Defendants' failure to properly and sufficiently monitor for and to disclose the risk of the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants in the Baby Foods.

180.   Defendants knew or should have known the Baby Foods contained or may contain undisclosed levels of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants that were inconsistent with their packaging.

181.   Defendants knew or should have known that reasonable consumers expected them to ensure the Baby Foods and ingredients were monitored and tested for Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants to ensure compliance with their packaging. And Defendants have publicly stated in response to the House Report that foods do contain Heavy Metals and they attempt to minimize the presence in their products.

182.   Defendants knew or should have known consumers paid premium prices and expected Defendants to regularly test for Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants and sufficiently monitor the Baby Foods and ingredients for the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants.

183.   The Omissions are material and render the Baby Food packaging deceptive as without full disclosure, reasonable consumers believe the Baby Foods are high quality, healthy, nutritious, organic, and a superior product, and are free of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants.

184.   Moreover, reasonable consumers, such as Plaintiffs and the Class members, would have no reason to doubt or question Defendants' statements regarding the quality of the Baby

- 55 -

1   Foods.  Based on the impression given by the packaging, no reasonable consumer could expect or

2   understand that the Baby Foods contained Heavy Metals and perchlorate.

3        185.    The Omissions were intended to and did, in fact, cause consumers like Plaintiffs

4   and the members of the Class, to purchase products they would not have if the true quality and

5   ingredients were disclosed or for which they would not have paid a premium price.

6        186.    As a result of Defendants' deceptive packaging of the Baby Foods, Defendants

7   were able to generate substantial sales, which allowed Defendants to capitalize on, and reap

8   enormous profits from, consumers who paid the purchase price or premium for the Baby Foods

9   that were not as advertised.

10       187.    This is not surprising given that, for example, organic baby food was valued at $1.9

11  billion in the U.S. in 2018 and is expected to reach $3.32 billion by 2024.[95]

12       188.    The incredible rise in consumer demand for organic baby food is "driven by the

13  growing awareness among consumers to limit that baby's exposure to the harmful chemicals used

14  in conventional food production and the awareness of the benefits of organic products."[96]

15                  **DEFENDANTS' OMISSIONS VIOLATE CALIFORNIA LAWS**

16       189.    California law is designed to ensure that a company's claims about its products are

17  truthful and accurate.

18       190.    Defendants violated California law by negligently, recklessly, and/or intentionally

19  incorrectly claiming that the Baby Foods are healthy, nutritious, organic, and "made from the best

20  ingredients," and by not accurately detailing that the products contain Heavy Metals, perchlorate,

21

22  [95] *North America Organic Baby Food Market Expected to Reach a Value of $3.32 Billion by 2024*

23  *with    a    CAGR    of    9.6%*,    available    at    https://www.businesswire.co
        m/news/home/20200120005436/en/North-America-Organic-Baby-Food-Market-

24  Expected-to-Reach-a-Value-of-3.32-Billion-by-2024-with-a-CAGR-of-9.6---
    ResearchAndMarkets.com (last accessed Sept. 3, 2021).

25
    [96] *Organic Baby Food Market- Growth, Trends, COVID-19 Impact, and Forecast*, available at
26  https://www.mordorintelligence.com/industry-reports/organic-baby-food-market   (last   accessed
    Sept. 3, 2021).
27

28          FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
                      Court File 21-cv-000913-YGR

1    and/or other undesirable toxins or contaminants.

2        191.    Defendants have engaged in this long-term advertising campaign omitting any

3    mention the Baby Foods contain (or have a material risk of containing) Heavy Metals, perchlorate,

4    and/or other undesirable toxins or contaminants.

5    **PLAINTIFFS' RELIANCE WAS REASONABLE AND FORESEEN BY DEFENDANTS**

6        192.    Plaintiffs read and relied upon the packaging of the Baby Foods when making their

7    purchasing decisions. Had they known Defendants omitted and failed to disclose the presence of

8    Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants from their packaging,

9    they would not have purchased the Baby Foods.

10       193.    A reasonable consumer would consider the packaging of a product when deciding

11   whether to purchase it.

12   **DEFENDANTS' KNOWLEDGE AND NOTICE OF THEIR BREACH OF**
13   **THEIR IMPLIED WARRANTIES**

14       194.    Defendants had sufficient notice of their breach of implied warranties.  Defendants

15   have, and had, exclusive knowledge of the physical and chemical make-up of the Baby Foods.

16   Defendants also had exclusive knowledge of their suppliers, and whether any suppliers provided

17   ingredients that included levels of Heavy Metals, perchlorate, and/or other undesirable toxins or

18   contaminants.

19       195.    Moreover, Defendants were put on notice by several reports and articles that

20   identified the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or

21   contaminants in their Baby Foods. For example, in August 2018, Consumer Reports published an

22   article that included results from heavy metals testing of samples of Defendants' Baby Foods and

23   other baby food manufacturers.[97]  And, in October 2018, the HBBF Report tested samples of baby

24

25

---

26   [97] https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/ (last accessed Sept.

27   3, 2021).

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

28

food products, including Defendants' Baby Foods, for heavy metals and toxic chemicals.[98] In February 2019, the University of Miami, the Clean Label Project, and Ellipse Analytics published an article describing their study on lead and cadmium in baby food products.[99] Additionally, in November 2019, the Subcommittee requested internal documents and test results from Defendants as part of its investigation into the presence of Heavy Metals in baby foods. Ex. 1 at 2.

196.    Defendants did not change their packaging to include any disclaimer that the Baby Foods included levels of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants.

**PRIVITY EXISTS WITH PLAINTIFFS AND THE PROPOSED CLASSES**

197.    Defendants knew that reasonable consumers such as Plaintiffs and the proposed class members would be the end purchasers of the Baby Foods and the targets of their advertising, marketing, and statements.

198.    Defendants intended that the packaging and implied warranties, would be considered by the end purchasers of the Baby Foods, including Plaintiffs and the proposed class members.

199.    Defendants directly marketed to Plaintiffs and the proposed Classes through their packaging.

200.    Plaintiffs and the proposed class members are the intended beneficiaries of the implied warranties.

**CLASS ACTION ALLEGATIONS**

201.    Plaintiffs bring this action individually and on behalf of the following Class pursuant to Rules 23(a), 23(b)(2) and (3), and 23(c)(4) of the Federal Rules of Civil Procedure:

---

[98] HBBF Report.

[99] Gardener, et al., *Lead and cadmium contamination in a large sample of United States infant formulas and baby foods*, 651 SCI. TOTAL ENVIRON. 1, 822-827 (2019), available at: https://www.sciencedirect.com/science/article/abs/pii/S0048969718334442?via%3Dihub    (last accessed Sept. 3, 2021).

1
2

> All persons who, from February 5, 2015 to the present, purchased the Baby Foods for household or business use, and not for resale (the "Class").

3

202.    Plaintiffs Gulkarov and Mathiesen bring this action individually and on behalf of

4

the following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil

5

Procedure:

6
7

> All persons who are citizens of California, and from February 5, 2015 to the present purchased the Baby Foods for household or business use, and not for resale (the "California Subclass").

8

203.    Plaintiff Torrence brings this action individually and on behalf of the following

9

Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

10
11

> All persons who are citizens of New York and from February 5, 2015 to the present, purchased the Baby Foods for household or business use, and not for resale (the "New York Subclass").

12

204.    Plaintiff McKeon brings this action individually and on behalf of the following

13

Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

14
15

> All persons who are citizens of Minnesota and from February 5, 2015 to the present, purchased the Baby Foods for household or business use, and not for resale (the "Minnesota Subclass").

16

205.    Plaintiff Crawford brings this action individually and on behalf of the following

17

Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

18
19

> All persons who are citizens of Pennsylvania and from February 5, 2015 to the present, purchased the Baby Foods for household or business use, and not for resale (the "Pennsylvania Subclass").

20

206.    Plaintiff Ellison brings this action individually and on behalf of the following

21

Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

22
23

> All persons who are citizens of Oregon and from February 5, 2015 to the present, purchased the Baby Foods for household or business use, and not for resale (the "Oregon Subclass").

24

207.    Plaintiffs David and Brown bring this action individually and on behalf of the

25

following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil

26

Procedure:

27
28

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

> All persons who are citizens of Florida and from February 5, 2015
> to the present, purchased the Baby Foods for household or business
> use, and not for resale (the "Florida Subclass").

208.    Plaintiffs Nurre and Gonzalez bring this action individually and on behalf of the following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who are citizens of Illinois and from February 5, 2015
> to the present, purchased the Baby Foods for household or business
> use, and not for resale (the "Illinois Subclass").

209.    Excluded from the Class and Subclasses (collectively, "Classes") are the Defendants, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

210.    This action is brought and may be properly maintained as a class action.  There is a well-defined community of interests in this litigation and the members of the Classes are easily ascertainable.

211.    The members in the proposed Classes are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of all Classes in a single action will provide substantial benefits to the parties and Court.

212.    Questions of law and fact common to Plaintiffs and the Classes include, but are not limited to, the following:

(a)     whether Defendants owed a duty of care;

(b)     whether Defendants owed a duty to disclose;

(c)     whether Defendants knew or should have known that the Baby Foods contained or may contain Heavy Metals;

(d)     whether Defendants knew or should have known the Baby Foods contained or may contain perchlorate;

(e)     whether Defendants failed to disclose that the Baby Foods contained or may contain Heavy Metals;

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

1            (f)      whether Defendants failed to disclose that the Baby Foods contained or may

2 contain perchlorate;

3            (g)      whether the claims of the Plaintiffs and the Classes serve a public benefit;

4            (h)      whether Defendants' packaging is false, deceptive, and misleading based

5 on the Omissions;

6            (i)      whether the Omissions are material to a reasonable consumer;

7            (j)      whether the inclusion of Heavy Metals, perchlorate, and/or other

8 undesirable toxins or contaminants in the Baby Foods is material to a reasonable consumer;

9            (k)      whether the Omissions are likely to deceive a reasonable consumer;

10            (l)      whether Defendants had knowledge that the Omissions were material and

11 false, deceptive, and misleading;

12            (m)      whether Defendants breached their duty of care;

13            (n)      whether Defendants breached their duty to disclose;

14            (o)      whether Defendants violated the laws of the State of California;

15            (p)      whether Defendants violated the laws of the State of New York;

16            (q)      whether Defendants violated the laws of the State of Minnesota;

17            (r)      whether Defendants violated the laws of the State of Pennsylvania;

18            (s)      whether Defendants violated the laws of the State of Oregon;

19            (t)      whether Defendants violated the laws of the State of Florida;

20            (u)      whether Defendants violated the laws of the State of Illinois;

21            (v)      whether Defendants breached their implied warranties;

22            (w)      whether Defendants engaged in unfair trade practices;

23            (x)      whether Defendants engaged in false advertising;

24            (y)      whether Defendants made fraudulent omissions;

25            (z)      whether Plaintiffs and members of the Classes are entitled to actual,

26 statutory, and punitive damages; and

27

28

**FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
Court File 21-cv-000913-YGR

1   (aa)   whether Plaintiffs and members of the Classes are entitled to declaratory

2   and injunctive relief.

3   213.   Defendants engaged in a common course of conduct giving rise to the legal rights

4   sought to be enforced by Plaintiffs individually and on behalf of the other members of the Classes.

5   Identical statutory violations and business practices and harms are involved.  Individual questions,

6   if any, are not prevalent in comparison to the numerous common questions that dominate this

7   action.

8   214.   Plaintiffs' claims are typical of those of the members of the Classes in that they are

9   based on the same underlying facts, events, and circumstances relating to Defendants' conduct.

10   215.   Plaintiffs will fairly and adequately represent and protect the interests of the

11   Classes, have no interests incompatible with the interests of the Classes, and have retained counsel

12   competent and experienced in class action, consumer protection, and false advertising litigation.

13   216.   Class treatment is superior to other options for resolution of the controversy

14   because the relief sought for each member of the Classes is small such that, absent representative

15   litigation, it would be infeasible for members of the Class to redress the wrongs done to them.

16   217.   Questions of law and fact common to the Classes predominate over any questions

17   affecting only individual members of the Classes.

18   218.   As a result of the foregoing, class treatment is appropriate.

19   ## COUNT I

20   **(Violations of California's Consumers Legal Remedies Act, California Civil Code §§1750, *et seq.*, Against Defendants on Behalf of the Class, or Alternatively, the California Subclass)**

21   219.   Plaintiffs incorporate by reference and reallege each and every allegation contained

22   above, as though fully set forth herein.

23   220.   Plaintiffs and each proposed Class member are a "consumer," as that term is

24   defined in California Civil Code §1761(d).

25   221.   The Baby Foods are "goods," as that term is defined in California Civil Code

26   §1761(a).

27

28
FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

222.    Defendants are a "person" as that term is defined in California Civil Code §1761(c).

223.    Plaintiffs and each proposed Class member's purchase of Defendants' products constituted a "transaction" as that term is defined in California Civil Code §1761(e).

224.    Defendants' conduct alleged herein violates at least the following provisions of California's Consumers Legal Remedies Act (the "CLRA"):

        (a)    California Civil Code §1770(a)(5), by failing to make any mention of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants in the Baby Foods;

        (b)    California Civil Code §1770(a)(7), by knowingly, recklessly, and/or intentionally representing that the Baby Foods were of a particular standard, quality, or grade, when they were of another; and

        (c)    California Civil Code §1770(a)(9), by knowingly, recklessly, and/or intentionally advertising the Baby Foods with intent not to sell them as advertised.

225.    The Omissions were material as reasonable consumers such as Plaintiffs and the Class would deem the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants important in determining whether to purchase the Baby Foods.

226.    The Omissions also relate to the risk of harm presented to infants and children due to consuming the Baby Foods.

227.    Defendants were obligated to disclose the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants in the Baby Foods because:

        (a)    Defendants had exclusive knowledge of the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants in the Baby Foods that were not known or reasonably accessible to Plaintiffs and the Class;

        (b)    Defendants actively concealed the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants from the Plaintiffs and the Class; and

        (c)    Defendants made partial statements on the Baby Foods' packaging that gave a misleading impression to reasonable consumers without further information because the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants had not been

- 63 -

disclosed.

228.    Plaintiffs and the Class relied upon the information supplied to them by the Defendants' packaging as to the quality, make-up, and included ingredients of the Baby Foods.

229.    As a direct and proximate result of these violations, Plaintiffs and the Class have been harmed, and that harm will continue unless Defendants are enjoined from using the misleading marketing described herein in any manner in connection with the advertising and sale of the Baby Foods.

230.    On February 12, 2021, counsel for Plaintiffs and the Class sent Defendants written notice (via U.S. certified mail, return receipt requested) that their conduct is in violation of the CLRA.

231.    Defendants failed to provide appropriate relief for their violations of the CLRA §§1770(a)(5), (7), and (9) within thirty days of receipt of Plaintiffs' notification. In accordance with CLRA §1782(b), Plaintiffs and the Class are entitled, under CLRA §1780, to recover and obtain the following relief for Defendants' violations of CLRA §§1770(a)(5), (7), (9), and (16):

        (a)    Actual damages under CLRA §1780(a)(1);

        (b)    Restitution of property under CLRA §1780(a)(3);

        (c)    Punitive damages under CLRA §1780(a)(4); and

        (d)    Any other relief the Court deems proper under CLRA §1780(a)(5).

232.    Plaintiffs seek an award of attorneys' fees pursuant to, *inter alia*, California Civil Code §1780(e) and California Code of Civil Procedure §1021.5.

## <u>COUNT II</u>

**(Violations of California False Advertising Law, California Business & Professions Code §§17500, *et seq.*, Against Defendants on Behalf of the Class, or Alternatively, the California Subclass)**

233.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

234.    California's False Advertising Law prohibits any statement or omission in connection with the sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code §17500.

**FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
Court File 21-cv-000913-YGR

235.     As set forth herein, Defendants' failure to disclose the presence (or risk of presence) of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants in the Baby Food is likely to deceive the public.

236.     Defendants knew that the Baby Foods contained undisclosed levels of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants, which are potentially dangerous substances. Defendants had a duty to disclose the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants and by omitting their presence, misled consumers.

237.     Defendants knew, or reasonably should have known, that these omissions were misleading.

238.     Defendants' conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiffs' desire to purchase these products in the future if they can be assured that, so long as the Baby Foods are as advertised: healthy, nutritious, organic, made from the best ingredients, and safe for consumption, and do not contain Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants.

239.     Plaintiffs and members of the Class are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Baby Foods.

## COUNT III

**(Violations of the Unfair Competition Law, California Business & Professions Code §§17200, *et seq.*, Against Defendants on Behalf of the Class, or Alternatively, the California Subclass)**

240.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

241.     The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code §17200.

**Fraudulent**

242.     Defendants' failure to disclose the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants in the Baby Foods is likely to deceive the public.

**Unlawful**

243.    As alleged herein, Defendants' failure to disclose the presence (or risk of presence) of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants in the Baby Food violate at least the following laws:

> •    The CLRA, California Business & Professions Code §§1750, *et seq.*; and
>
> •    The False Advertising Law, California Business & Professions Code §§17500, *et seq.*

**Unfair**

244.    Defendants' conduct with respect to the packaging and sale of the Baby Foods is unfair because Defendants' conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

245.    Defendants' conduct with respect to the packaging and sale of the Baby Foods is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the False Advertising Law.

246.    Defendants' conduct with respect to the packaging and sale of the Baby Foods is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one that consumers, themselves, can reasonably avoid.

247.    Defendants were obligated to disclose the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants in the Baby Foods because:

(a)    Defendants had exclusive knowledge of the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants in the Baby Foods that were not known or reasonably accessible to Plaintiffs and the Class;

(b)    Defendants actively concealed the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants from Plaintiffs and the Class; and

(c)    Defendants made partial statements on the Baby Foods' packaging that gave a misleading impression to reasonable consumers without further information because the presence

- 66 -

of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants had not been disclosed.

248.     The Omissions were contrary to the representations Defendants made on the Baby Foods' packaging.

249.     Plaintiffs and the Class relied upon the Baby Foods' packaging provided to them by Defendants when making their purchasing decisions. Had Plaintiffs and the Class known Defendants failed to disclose the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants from their packaging, they would not have purchased the Baby Foods.

250.     In accordance with California Business & Professions Code §17203, Plaintiffs seek an order enjoining Defendants from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign.  Defendants' conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

251.     On behalf of themselves and the Class, Plaintiffs also seek an order for the restitution of all monies from the sale of the Baby Foods, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

### COUNT IV
**(Breach of Implied Warranty of Merchantability Against Defendants on Behalf of the Class or, Alternatively, the State Subclasses)**

252.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

253.     Defendants are a merchant engaging in the sale of goods to Plaintiffs and the Class members.

254.     There was a sale of goods from Defendants to Plaintiffs and the Class members.

255.     As set forth herein, Defendants manufactured and sold the Baby Foods, and prior to the time the Baby Foods were purchased by Plaintiffs and the Class, impliedly warranted that the Baby Foods were of merchantable quality and fit for their ordinary use (consumption by infants and children).

256.     Plaintiffs and the Class relied on these implied warranties when they purchased the Baby Foods.

257.     The Baby Foods were not fit for their ordinary use (consumption by infants and children) as they include undisclosed levels of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants that do not conform to the packaging.

258.     These promises became part of the basis of the bargain between Defendants and Plaintiffs and the Class members, and thus constituted implied warranties.

259.     Defendants breached the implied warranties by selling Baby Foods that contain Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants.

260.     Defendants were on notice of this breach as they were aware of the inclusion of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants in the Baby Foods, and based on the public investigation by Healthy Babies Bright Futures and Consumer Reports, and the study by the University of Miami, the Clean Label Project, and Ellipse Analytics that showed the Baby Foods contain Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants.

261.     Privity exists because Defendants impliedly warranted to Plaintiffs and the Class members through the packaging that the Baby Foods were healthy, nutritious, organic, made from the best ingredients, and safe for consumption and by failing to mention or disclose the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants.

262.     As a direct and proximate result of Defendants' breach of their implied warranties, Plaintiffs and the Class suffered actual damages as they purchased the Baby Foods that were worth less than the price paid and that they would not have purchased at all had they known of the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants.

263.     Plaintiffs, on behalf of themselves and the Class, seek actual damages for Defendants' failure to deliver goods that conform to their implied warranties and resulting breach.

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

## COUNT V
### (Unjust Enrichment Against Defendants on Behalf of the Class or, Alternatively, the State Subclasses)

264.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

265.   Substantial benefits have been conferred on Defendants by Plaintiffs and the Class through the purchase of the Baby Foods. Defendants knowingly and willingly accepted and enjoyed these benefits.

266.   Defendants either knew or should have known that the payments rendered by Plaintiffs were given and received with the expectation that the Baby Foods would not contain Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants. As such, it would be inequitable for Defendants to retain the benefit of the payments under these circumstances.

267.   Defendants were obligated to disclose the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants in the Baby Foods because:

(a)   Defendants had exclusive knowledge of the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants in the Baby Foods that were not known or reasonably accessible to the Plaintiffs and the Class;

(b)   Defendants actively concealed the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants from the Plaintiffs and the Class; and

(c)   Defendants made partial statements on the Baby Foods' packaging that gave a misleading impression to reasonable consumers without further information because the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants had not been disclosed.

268.   Defendants' acceptance and retention of the benefits of the payments from Plaintiffs and the Class under the circumstances alleged herein make it inequitable for Defendants to retain the benefits without payment of the value to Plaintiffs and the Class.

269.   Plaintiffs and the Class are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants, plus interest thereon.

270.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**<u>COUNT VI</u>**

**(Fraudulent Misrepresentation by Omission Against Defendants on Behalf of the New York, Illinois, Oregon, Pennsylvania, Florida and Minnesota Subclasses)**

271.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

272.    Plaintiffs and members of the Subclasses were buyers and Defendants were sellers in a commercial exchange.

273.    Plaintiffs and the Subclasses were ordinary non-business consumers who trusted Defendants to manufacture, distribute, market, and sell Baby Foods to be free of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants.

274.    As baby food manufacturers, Defendants are in a special position of trust upon which consumers rely.

275.    Defendants failed to disclose that the Baby Foods contained (or have a material risk of containing) Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants.

276.    Defendants intentionally, knowingly, and/or recklessly made these Omissions to induce Plaintiffs and the Subclasses to purchase the Baby Foods.

277.    Defendants knew the Baby Foods included undisclosed levels of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants.

278.    Defendants have admitted Heavy Metals are in foods.

279.    Defendants allowed their packaging to intentionally mislead consumers, such as Plaintiffs and the Subclasses.

280.    Defendants' packaging that omitted the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants in the Baby Foods were made with the intent to deceive and defraud consumers, such as Plaintiffs and the Subclasses

281.    Defendants intended for Plaintiffs and the Subclasses to rely on the Omissions.

- 70 -

1 Defendants know their customers trust the quality of their products and that they are in a special

2 position of trust with the public.

3     282.   Defendants also know reasonable consumers expected the Baby Foods to be free

4 of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants.

5     283.   Defendants also know that reasonable consumers seek out and wish to purchase

6 premium baby foods that possess high quality ingredients free of toxins, contaminants, or

7 chemicals, and that these consumers will pay more for baby foods they believe possess these

8 qualities.

9     284.   Defendants knew that Plaintiffs and the Subclasses were ignorant of the presence

10 (or material risk) of Heavy Metals, perchlorate, and/or other undesirable toxins or chemicals in the

11 Baby Foods.

12     285.   Defendants knew that Plaintiffs and the Subclasses could not reasonably have been

13 expected to learn or discover that the Baby Foods' packaging omitted the presence of Heavy

14 Metals, perchlorate, and/or other undesirable toxins or contaminants prior to purchasing the Baby

15 Foods.

16     286.   Defendants were under a duty to disclose the presence (or material risk) of Heavy

17 Metals, perchlorate, and/or other undesirable toxins or contaminants in their Baby Foods to

18 Plaintiffs and the Subclasses because:

19     (a)   Defendants were in possession of special facts that could not have been

20 discovered by Plaintiffs and the Subclasses.

21     (b)   Defendants' packaging disclosed misleading information to consumers by

22 omitting the presence (or material risk) of Heavy Metals, perchlorate, and/or other undesirable

23 toxins or contaminants in their Baby Foods.

24     (c)   Based on Defendants partial statements on the Baby Foods' packaging that

25 gave a misleading impression to reasonable consumers without further information on the presence

26 of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants had not been

27 disclosed, Defendants assumed the obligation to make a full and fair disclosure of the whole truth.

28

- 71 -

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

287.    The presence (or material risk) of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants in Defendants' Baby Food was a material fact to Plaintiffs and the Subclasses as Plaintiffs and the Subclasses relied on the Omissions when purchasing the Baby Foods.

288.    Plaintiffs and the Subclasses had a right to rely on the Defendants' packaging as the truth because customers like Plaintiffs and the Subclasses trust the quality of Defendants' products and they expect the Baby Foods to be free of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants and seek out and wish to purchase premium baby foods that possess high quality ingredients free of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants.

289.    Plaintiffs and the Subclasses did in fact rely on the material Omissions and purchased the Baby Foods to their detriment. Given the materiality of the Omissions, Plaintiffs' and the Subclasses' reliance on the Omissions was justifiable.

290.    As a direct and proximate result of Defendants' conduct, Plaintiffs and the Subclasses have suffered actual pecuniary damages in that they purchased Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known the Baby Foods included undisclosed Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants that do not conform to the products' packaging.

291.    Plaintiffs and the Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## COUNT VII
**(Fraud by Omission Against Defendants on Behalf of the Class or, Alternatively, the California, New York, Illinois and Florida Subclasses)**

292.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

293.    Defendants knew or should have known the Baby Foods contained or may contain undisclosed levels of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants.

- 72 -

294.   Plaintiffs and the Class and Defendants acted within the context of a business transaction when Plaintiffs and the Class purchased Defendants' Baby Foods for household or business use, and not for resale.

295.   Plaintiffs and the Class were ordinary non-business consumers.

296.   Defendants actively and knowingly concealed from and failed to disclose to Plaintiffs and the Class that the Baby Foods included undisclosed levels of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants that do not conform to the products' packaging.

297.   Defendants have admitted Heavy Metals are in foods.

298.   As baby food manufacturers, Defendants are in a special position of trust upon which consumers rely.

299.   Defendants were under a duty to disclose to Plaintiffs and the Class the true quality, characteristics, ingredients and suitability of the Baby Foods because:

(a)   Defendants were in a superior position to know the true state of facts about their products;

(b)   Defendants were in a superior position to know the actual ingredients, characteristics, and suitability of the Baby Foods for consumption by infants and children; and

(c)   Defendants knew that Plaintiffs and the Class could not reasonably have been expected to learn or discover the presence or risk of inclusion of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants without Defendants disclosing it on the Baby Foods' packaging.

300.   Defendants know their customers trust the quality of their products and they expect Defendants' Baby Foods to be free of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants. Defendants also know that certain consumers seek out and wish to purchase premium baby foods that possess high quality ingredients free of toxins, contaminants, or chemicals, and that these consumers will pay more for baby foods that they believe possess these qualities.

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

301.   Due to the Omissions on the Baby Foods' packaging, Defendants had a duty to disclose the whole truth about the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants in the Baby Foods to Plaintiffs and the Class.

302.   Defendants acted in bad faith when they intended that Plaintiffs and the Class would rely on the Omissions when purchasing the Baby Foods, unaware of the undisclosed material facts.

303.   Defendants were under a duty to disclose the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants because Defendants undertook the disclosure of information about the Baby Foods on the Baby Foods' packaging.

304.   Defendants failed to discharge their duty to disclose the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants in the Baby Foods.

305.   Defendants allowed their packaging to intentionally mislead consumers, such as Plaintiffs and the Class.

306.   The facts concealed or not disclosed by Defendants to Plaintiffs and the Class are material in that a reasonable consumer would have considered the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants important when deciding whether to purchase the Baby Foods.

307.   Defendants knew or should have known the Omissions were material to Plaintiffs' and the Class' decisions to purchase the Baby Foods and would induce Plaintiffs and the Classes to purchase the Baby Foods.

308.   Defendants intentionally concealed the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants in the Baby Foods with intent to defraud and deceive Plaintiffs and the Class.

309.   Plaintiffs and the Class justifiably relied on Defendants' Omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of the Baby Foods, which is misleading when compared to how the Baby Foods are advertised and represented by Defendants and inherently unfair to consumers of the Baby Foods, such as Plaintiffs and the Class.

310.     As a direct and proximate result of Defendants' conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known Baby Foods included undisclosed levels of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants that do not conform to the products' packaging.

311.     Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

### COUNT VIII
**(Violations of New York's Deceptive Practices Act, N.Y. Gen. Bus. Law § 349, Against Defendants on Behalf of Plaintiff Torrence and the New York Subclass)**

312.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

313.     New York General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

314.     In their sale of goods throughout New York, Defendants conduct business and trade within the meaning and intention of New York General Business Law § 349.

315.     Defendants violated N.Y. Gen. Bus. Law § 349 by failing to disclose the inclusion of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants in the Baby Foods.

316.     Defendants intentionally represented that the Baby Foods were of a particular standard, grade, or quality when they in fact included undisclosed levels of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants and were not safe for consumption by infants and children.

317.     The facts that Defendants concealed or misrepresented were material in that Plaintiff Torrence and the New York Subclass, and any other reasonable consumer would have considered them when deciding whether to purchase the Baby Foods.

318.     Defendants' conduct and Omissions described herein repeatedly occurred in the course of Defendants' business and were capable of deceiving a substantial portion of the

consuming public, including Plaintiff Torrence and the New York Subclass.

319.   Defendants have engaged and continue to engage in deceptive conduct in violation of the New York General Business Law.

320.   Defendants' deceptive acts or practices resulted in Plaintiff Torrence and the New York Subclass and other reasonable consumers suffering actual damages when they purchased the Baby Foods that were worth less than the price paid and that they would not have purchased at all had they known of the inclusion of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants.

321.   Defendants intended for Plaintiff Torrence and the New York Subclass and other reasonable consumers to rely on their Omissions and conduct when they decided to purchase the Baby Foods.

322.   As a direct and proximate result of these violations, Plaintiff Torrence and the New York Subclass and other reasonable consumers have been harmed, and that harm will continue unless the Court orders Defendants to disclose that the Baby Foods contain Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants are enjoined from misrepresenting the quality and ingredients of the Baby Foods described herein.

323.   Pursuant to N.Y. Gen. Bus. Law § 349(h), Plaintiff Torrence and the New York Subclass seek injunctive and declaratory relief, full refund, actual and punitive damages, statutory damages, and attorneys' fees.

### <u>COUNT IX</u>
**(Violations of New York's Deceptive Practices Act, N.Y. Gen. Bus. Law § 350, Against Defendants on Behalf of Plaintiff Torrence and the New York Subclass)**

324.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

325.   The Baby Foods' packaging is deceptive and materially misleading because Defendants' fail to disclose the inclusion (or risk of inclusion) of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants in the Baby Foods.

326.   The inclusion (or risk of inclusion) of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants in the Baby Foods is material information to consumers like Plaintiffs and the Class. Defendants omitted this material information knowingly, willfully, wantonly, and with reckless disregard for the truth.

327.   Plaintiffs and the New York Subclass were induced to purchase the Baby Foods by Defendants' packaging, to which all consumers are exposed. Plaintiffs and the New York Subclass have been injured as a result of their reliance on the Baby Foods' packaging and have received less than what they bargained for.

328.   Pursuant to N.Y. Gen. Bus. Law § 350(e), Plaintiff Torrence and the New York Subclass seek injunctive and declaratory relief, full refund, actual and punitive damages, statutory damages, and attorneys' fees.

## COUNT X

**(Violation of Minnesota Unlawful Trade Practices Act Minn. Stat. § 325D.13, *et seq.*, Against Defendants on Behalf of Plaintiff McKeon and the Minnesota Subclass)**

329.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

330.   Defendants are a "person" within the meaning of the Minnesota Unlawful Trade Practices Act ("MUTPA").

331.   Defendants violated the MUTPA by knowingly failing to disclose levels of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants in the Baby Foods.

332.   Defendants knew or should have known the Baby Foods were not of the true quality and ingredients advertised because they included undisclosed levels of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants.

333.   Defendants' pattern of knowing concealment, omissions, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff McKeon and the Minnesota Subclass with respect to the Baby Foods' quality, ingredients, and suitability for consumption by infants and children.

334. Defendants intended for Plaintiff McKeon and the Minnesota Subclass to rely on their Omissions, concealment, warranties, and/or deceptions regarding the Baby Foods' quality, ingredients, and suitability for consumption by infants and children.

335. Defendants' conduct and omissions described herein occurred repeatedly in their trade or business and were capable of deceiving a substantial portion of the consuming public.

336. Defendants were under a duty to disclose the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants because Defendants undertook the disclosure of information about the Baby Foods on the Baby Foods' packaging.

337. Defendants failed to discharge their duty to disclose the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants in the Baby Foods.

338. The facts concealed or not disclosed by Defendants were material facts in that Plaintiff McKeon, the Minnesota Subclass, and any reasonable consumer would have considered them in deciding whether to purchase the Baby Foods.  Had Plaintiff McKeon and the Minnesota Subclass known the Baby Foods did not have the quality advertised by Defendants, they would not have purchased the Baby Foods or paid the premium price.

339. Defendants' unlawful conduct is continuing, with no indication that they intend to cease this fraudulent course of conduct.

340. As a direct and proximate result of Defendants' conduct, Plaintiff McKeon and the Minnesota Subclass have suffered actual damages in that they purchased the Baby Foods that were worth less than the price they paid and may have not purchased.

341. Plaintiff McKeon and the members of the Minnesota Subclass would not have purchased the Baby Foods at all had they known of the presence of Heavy Metals, perchlorate, and/or any other undesirable toxins or contaminants in the Baby Foods that do not conform to the packaging.

342. Pursuant to Minn. Stat. §8.31, subd. 3a, and §325D.15, Plaintiff McKeon and the Minnesota Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' violations of the MUTPA.

- 78 -

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

**COUNT XI**

**(Violation of Minnesota Uniform Deceptive Trade Practices Act**
**Minn. Stat. § 325D.44, *et seq.*, Against Defendants on Behalf of Plaintiff McKeon and the**
**Minnesota Subclass)**

343.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

344.    Defendants are a "person" within the meaning of the Minnesota Uniform Deceptive Trade Practices Act ("MUDTPA").

345.    Defendants willingly engaged in deceptive trade practices, in violation of the MUDTPA, by failing to disclose levels of Heavy Metals, perchlorate, and/or any other undesirable toxins or contaminants.

346.    Defendants knew or should have known the Baby Foods included undisclosed levels of Heavy Metals, perchlorate, and/or any other undesirable toxins or contaminants.

347.    Defendants' Omissions, concealment, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff McKeon and the Minnesota Subclass with respect to the Baby Foods' ingredients, uses, benefits, standards, quality, grade, and suitability for consumption by infants and children.

348.    Defendants intended that Plaintiff McKeon and the Minnesota Subclass would rely on Defendants' Omissions, concealment, warranties, and/or deceptions regarding the Baby Foods' ingredients, uses, benefits, standards, quality, grade, and suitability for consumption by infants.

349.    Defendants' conduct and Omissions described herein occurred repeatedly in their trade or business and were capable of deceiving a substantial portion of the consuming public.

350.    The facts concealed or not disclosed by Defendants were material facts in that Plaintiff McKeon, the Minnesota Subclass, and any reasonable consumer would have considered them in deciding whether to purchase the Baby Foods.  Had Plaintiff McKeon and the Minnesota Subclass known the Baby Foods did not have the quality advertised by Defendants, they would not have purchased the Baby Foods.

351.    Defendants intended that Plaintiff McKeon and the Minnesota Subclass would rely

on the Defendants' Omissions, concealment, and other deceptive conduct when purchasing the Baby Foods, unaware of the undisclosed material facts. This conduct constitutes consumer fraud.

352.     Defendants' unlawful conduct is continuing, with no indication they intend to cease this fraudulent course of conduct.

353.     Defendants were under a duty to disclose the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants because Defendants undertook the disclosure of information about the Baby Foods on the Baby Foods' packaging.

354.     Defendants failed to discharge their duty to disclose the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants in the Baby Foods.

355.     As a direct and proximate result of Defendants' conduct, Plaintiff McKeon and the Minnesota Subclass have suffered actual damages in that they purchased the Baby Foods that were worth less than the price they paid.

356.     Plaintiff McKeon and the members of the Minnesota Subclass would not have purchased the Baby Foods at all had they known of the presence of these Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants that do not conform to the packaging.

357.     Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325D.45, Plaintiff McKeon and the Minnesota Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' violations of the MUDTPA.

## COUNT XII
### (Violation of Minnesota False Statement in Advertising Act
### Minn. Stat. § 325F.67, *et. seq.*, Against Defendants on Behalf of Plaintiff McKeon and the Minnesota Subclass)

358.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

359.     Plaintiff McKeon and the Minnesota Subclass purchased "goods," specifically the Baby Foods discussed herein, and are a "person" within the meaning of the False Statement in Advertising Act ("FSAA").

- 80 -

360.    Plaintiff McKeon and the Minnesota Subclass purchased the Baby Foods because of the Omissions asserted on the packaging that were made, published, disseminated, circulated, and placed before the public by Defendants.

361.    By engaging in the conduct as described herein, Defendants continue to violate Minn. Stat. § 325F.67.

362.    Defendants knew or should have known the Baby Foods did not have the quality and ingredients described above because they included undisclosed levels of Heavy Metals, perchlorate, and/or any other undesirable toxins or contaminants that do not conform to the packaging.

363.    The Omissions were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff McKeon and the Minnesota Subclass with respect to the Baby Foods' ingredients, uses, benefits, standards, quality, grade, and suitability for consumption by infants and children.

364.    Defendants' conduct and Omissions described herein occurred repeatedly in Defendants' trade or business and were capable of deceiving a substantial portion of the consuming public.

365.    The Omissions were made to customers in Minnesota, including Plaintiff McKeon and the Minnesota Subclass, thus the cause of action serves the public benefit of informing Minnesota consumers about the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants in the Baby Foods.

366.    The facts concealed or not disclosed by Defendants were material facts in that Plaintiff McKeon, the Minnesota Subclass, and any reasonable consumer would have considered them in deciding whether to purchase the Baby Foods.  Had Plaintiff McKeon and the Minnesota Subclass known the Baby Foods did not have the quality as advertised by Defendants, they would not have purchased the Baby Foods or paid the premium price.

367.    Defendants intended that Plaintiff McKeon and the Minnesota Subclass would rely on the deception by purchasing the Baby Foods, unaware of the Omissions and other undisclosed material facts. This conduct constitutes consumer fraud.

- 81 -

368.    Defendants' unlawful conduct is continuing, with no indication that they intend to cease this fraudulent course of conduct.

369.    As a direct and proximate result of Defendants' conduct, Plaintiff McKeon and the Minnesota Subclass have suffered actual damages in that they purchased the Baby Foods that were worth less than the price paid and may not have purchased.

370.    Plaintiff McKeon and the members of the Minnesota Subclass would not have purchased the Baby Foods at all had they known of the presence of these Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants.

371.    Pursuant to Minn. Stat. §8.31, subd. 3a, and §325F.67, Plaintiff McKeon and the Minnesota Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Plum's violations of the FSAA.

## COUNT XIII
**(Violation of Minnesota Prevention of Consumer Fraud Act
Minn. Stat. § 325F.69, *et. seq.*, Against Defendants on Behalf of Plaintiff McKeon and the
Minnesota Subclass)**

372.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

373.    Plaintiff McKeon is a resident of the State of Minnesota.

374.    Defendants are a "person" within the meaning of the Minnesota Prevention of Consumer Fraud Act ("MPCFA").

375.    The Omissions were made in connection with the sale of the Baby Foods to Plaintiff McKeon and the Minnesota Subclass.

376.    Defendants knowingly acted, used, and employed fraud, false pretenses, and deceptive practices in connection with the sale of the Baby Foods.  Specifically, Defendants failed to disclose the Baby Foods contained levels of Heavy Metals, perchlorate, and/or unnatural or other ingredients.

377.    Defendants knew or should have known the Baby Foods did not have the quality reasonable consumers expected because they included undisclosed levels of Heavy Metals,

1   perchlorate, and/or other undesirable toxins or contaminants that do not conform to the packaging.

2   Defendants intended for Plaintiff McKeon and the Minnesota Subclass to rely on the Baby Foods'

3   packaging in deciding whether to purchase the Baby Foods.

4       378.    Defendants' unfair or deceptive acts or practices were likely to deceive reasonable

5   consumers about the Baby Foods' quality, ingredients, fitness for consumption by infants and

6   children and, by extension, the true value of the Baby Foods. Plaintiff McKeon and the Minnesota

7   Subclass relied on, and were in fact deceived by, Defendants' Omissions with respect to the Baby

8   Foods' quality, ingredients, and fitness for consumption in deciding to purchase them over

9   competitors' baby foods.

10      379.    The facts concealed or not disclosed by Defendants were material facts in that

11  Plaintiff McKeon, the Minnesota Subclass, and any reasonable consumer would have considered

12  them in deciding whether to purchase the Baby Foods. Had Plaintiff McKeon and the Minnesota

13  Subclass known the Baby Foods did not have the quality advertised by Defendants, they would

14  not have purchased the Baby Foods or paid the premium price.

15      380.    Defendants' Omissions were made to customers in Minnesota, including Plaintiff

16  and the Class, thus the cause of action serves the public benefit of informing Minnesota consumers

17  about the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants

18  in the Baby Foods.

19      381.    Defendants' unlawful conduct is continuing, with no indication that they intend to

20  cease this fraudulent course of conduct.

21      382.    As a direct and proximate result of Defendants' conduct, Plaintiff McKeon and the

22  Minnesota Subclass have suffered actual damages in that they purchased the Baby Foods that were

23  worth less than the price they paid and may not have purchased at any price.

24      383.    Plaintiff McKeon and the members of the Minnesota Subclass would not have

25  purchased the Baby Foods at all had they known of the presence of these Heavy Metals,

26  perchlorate, and/or other undesirable toxins or contaminants.

27      384.    Pursuant to Minn. Stat. §8.31, subd. 3a, and §325F.69, Plaintiff McKeon and the

28

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

Minnesota Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' violations of the MPCFA.

**COUNT XIV**

**(Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. Ann. §§201-1 et seq. (the "UTPCPL"), Against Defendants on Behalf of Plaintiff Crawford and the Pennsylvania Subclass)**

385.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

386.    Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. Ann. §§201-1 et seq. (the "UTPCPL") makes unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

387.    Defendants are a manufacturer, marketer, seller, and distributor of the Baby Foods.

388.    Defendants market and sell the Baby Foods with warranties created on the products' packaging regarding the qualities, ingredients, and benefits of the Baby Foods.

389.    Plaintiff Crawford and the Pennsylvania Subclass purchased the Baby Foods for household or business use, and not for resale.

390.    Defendants engaged in fraudulent and deceptive conduct creating a likelihood of confusion or of misunderstanding by failing to disclose the inclusion of Heavy Metals, perchlorate, and/or unnatural or other ingredients in the Baby Foods.

391.    Defendants' Omissions deceived Plaintiff Crawford and the Pennsylvania Subclass and deceived a substantial segment of the target consumer audience in violation of the UTPCPL.

392.    The conduct described above and throughout this Complaint took place within the Commonwealth of Pennsylvania and constitutes unfair methods of competition or unfair or deceptive acts or practices pursuant to §§201-2(4) (xxi) of the UTPCPL.

393.    Defendants had a duty to disclose the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants to Plaintiff Crawford and the Pennsylvania Subclass because:

(a)    Plaintiff Crawford and the Pennsylvania Subclass and the Defendants acted

- 84 -

within the context of a business transaction when Plaintiff Crawford and the Pennsylvania Subclass purchased Defendants' Baby Foods for household or business use, and not for resale;

(b)      Plaintiff Crawford and the Pennsylvania Subclass were ordinary non-business consumers;

(c)      Defendants had superior knowledge of the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants in the Baby Foods; and

(d)      Plaintiff Crawford and the Pennsylvania Subclass could not have reasonably discovered the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants in the Baby Foods before purchasing the Baby Foods.

394.   In violation of the UTPCPL, Defendants omitted and concealed material facts from Plaintiff Crawford and the Pennsylvania Subclass regarding the quality, characteristics, and benefits of the Baby Foods.

395.   Defendants' Omissions described herein were likely to deceive consumers into purchasing the Baby Foods.

396.   Defendants knew or reasonably should have known their Baby Foods included undisclosed levels of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants.

397.   Defendants knew or should have known, at the time the Baby Foods left their control that they included undisclosed levels of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants, and were not made of ingredients fit for consumption by infants and children.

398.   Defendants' deception is material as they influenced consumers' purchasing and payment decisions.

399.   Defendants intended that Plaintiff Crawford and the Pennsylvania Subclass would rely on their Omissions, as their reliance was crucial to Defendants being able to command a premium for the Baby Foods.

400.   Plaintiff Crawford and the Pennsylvania Subclass have been damaged as a direct and proximate result of Defendants' deceptive and unfair practices.

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

401.    Defendants deceived and continue to deceive consumers about the quality and ingredients of their Baby Foods as well as the fitness of these products for consumption by infants and children. This conduct constitutes unfair or deceptive acts or practices within the meaning of the UTPCPL. This illegal conduct by Defendants is continuing, with no indication that it will cease.

402.    Defendants' actions in connection with the manufacture and distribution of the Baby Foods as set forth herein evidence a lack of good faith, honesty in fact, and observance of fair dealing so as to constitute unconscionable commercial practices, in violation of the UTPCPL.

403.    Defendants acted willfully, knowingly, intentionally, unconscionably, and with reckless indifference when they committed these acts of consumer fraud.

404.    Defendants intended that Plaintiff Crawford and the Pennsylvania Subclass would rely on the Omissions and concealment regarding the nature of the Baby Foods so that Plaintiff Crawford and the Pennsylvania Subclass members would purchase the Baby Foods.

405.    Plaintiff Crawford and the Pennsylvania Subclass relied on Defendants' Omissions and concealment regarding the nature of the Baby Foods.

406.    Plaintiff Crawford and the Pennsylvania Subclass, had Defendants disclosed to them all material information regarding the Baby Foods, would have considered the omitted information material to their decision to purchase the Baby Foods at the price they paid.

407.    As a direct proximate result of Defendants' Omissions, Plaintiff Crawford and the Pennsylvania Subclass suffered direct economic loss by purchasing the Baby Foods at a premium, and unwarranted, price. Had Plaintiff Crawford and the Pennsylvania Subclass known of the presence of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants content in the Baby Foods, they would not have bought them, or they would not have paid the premium price that they did.

408.    Plaintiff Crawford and Pennsylvania Subclass are entitled to recover compensatory damages, plus interest, attorneys' fees, and costs.

409.    Defendants' conduct was intentional, willful, wanton, malicious, and egregious,

- 86 -

entitling Plaintiff Crawford and the Pennsylvania Subclass to recover actual compensatory and statutory damages, as well as attorneys' fees and costs of suit, to the fullest extent.

### COUNT XV

**(Violation of Illinois Consumer Fraud and Deceptive Practices Act, 815 Ill. Comp. Stat. § 505/1, *et seq*. (the "ICFA"), Against Defendants on Behalf of Plaintiffs Nurre and Gonzalez and the Illinois Subclass**

410.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

411.    Plaintiffs Nurre and Gonzalez and the Illinois Subclass are a "person" within the meaning of 815 Ill. Comp. Stat. § 505/1(c).

412.    Defendants are a "person" within the meaning of 815 Ill. Comp. Stat. § 505/1(c).

413.    The Baby Foods are "merchandise" within the meaning of 815 Ill. Comp. Stat. § 505/1(b).

414.    There was a sale of merchandise from Defendants to Plaintiffs Nurre and Gonzalez and the Illinois Subclass, as defined by 815 Ill. Comp. Stat. § 505/1(d).

415.    Illinois's Consumer Fraud and Deceptive Practices Act, 815 Ill. Comp. Stat. § 505/1, *et seq*. (the "ICFA") makes "it unlawful to engage in unfair methods of competition and unfair or deceptive acts or practices," including the "concealment, suppression, or omission of any material fact."

416.    Defendants willingly engaged in unfair methods of competition and unfair or deceptive acts or practices, in violation of the ICFA, by failing to disclose the presence of Heavy Metals, perchlorate, and/or any other undesirable toxins or contaminants.

417.    Defendants knew or should have known the Baby Foods included undisclosed levels of Heavy Metals, perchlorate, and/or any other undesirable toxins or contaminants.

418.    Defendants' Omissions, concealment, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiffs Nurre and Gonzalez and the Illinois Subclass with respect to the Baby Foods' ingredients, uses, benefits, standards, quality, grade, and suitability for consumption by infants and children.

419.    Defendants intended for Plaintiffs Nurre and Gonzalez and the Illinois Subclass to rely on the Omissions, concealment, and/or deceptions regarding the Baby Foods' ingredients, uses, benefits, standards, quality, grade, and suitability for consumption by infants and children.

420.    Defendants' conduct and Omissions as described herein occurred repeatedly in their trade or business and were capable of deceiving a substantial portion of the consuming public.

421.    The facts concealed or not disclosed by Defendants were material facts in that Plaintiffs Nurre and Gonzalez, the Illinois Subclass, and any reasonable consumer would have considered them when deciding whether to purchase the Baby Foods. Had Plaintiffs Nurre and Gonzalez and the Illinois Subclass known the Baby Foods did not have the quality advertised by Defendants, they would not have purchased the Baby Foods.

422.    Defendants' unlawful conduct is continuing, with no indication they intend to cease this fraudulent course of conduct.

423.    As a direct and proximate result of Defendants' conduct, Plaintiffs Nurre and Gonzalez and the Illinois Subclass have suffered actual damages in that they purchased the Baby Foods that were worth less than the price they paid.

424.    Plaintiffs Nurre and Gonzalez and the Illinois Subclass would not have purchased the Baby Foods at all had they known of the presence of undisclosed levels of Heavy Metals, perchlorate, and/or any other undesirable toxins or contaminants that do not conform to the packaging.

425.    As a direct and proximate result of Defendants' conduct as set forth above, Plaintiffs Nurre and Gonzalez and the Illinois Subclass are entitled to actual damages, compensatory damages, penalties, attorneys' fees, and costs as set forth in 815 Ill. Comp. Stat. § 505/10(a). Defendants' deceptive, misleading, unfair, and unconscionable conduct as set forth above were done willfully, wantonly, and maliciously, thus entitling Plaintiffs Nurre and Gonzalez and the Illinois Subclass to an award of punitive damages.

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against Defendants as to each and every count, including:

A.      An order declaring this action to be a proper class action, appointing Plaintiffs and their counsel to represent the Class, and requiring Defendants to bear the costs of class notice;

B.      An order enjoining Defendants from selling the Baby Foods until the levels of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants are removed or full disclosure of the presence of such appears on all packaging;

C.      An order enjoining Defendants from selling the Baby Foods in any manner suggesting or implying that they are healthy, nutritious, and safe for consumption;

D.      An order requiring Defendants to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing products;

E.      An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

F.      An order requiring Defendants to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of law, plus pre- and post-judgment interest thereon;

G.      An order requiring Defendants to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

H.      An order requiring Defendants to pay all actual and statutory damages permitted under the counts alleged herein, including under CLRA §1780(a)(1), in an amount to be determined by this Court, but at least $5,000,000;

I.      An order requiring Defendants to pay punitive damages on any count so allowable;

J.      An order awarding attorneys' fees and costs to Plaintiffs and the Class; and

K.      An order providing for all other such equitable relief as may be just and proper.

- 89 -

1

### JURY DEMAND

2

Plaintiffs hereby demand a trial by jury on all issues so triable.

3

Dated:  September 3, 2021

4

LOCKRIDGE GRINDAL NAUEN P.L.L.P.

5

By:  s/  Rebecca A. Peterson
Rebecca A. Peterson, #241858

6

Robert K. Shelquist, *Pro Hac Vice*
Krista K. Freier *Pro Hac Vice*

7

100 Washington Avenue South, Suite 2200

8

Minneapolis, MN 55401
Telephone: (612) 339-6900

9

Facsimile:  (612) 339-0981
E-mail: rapeterson@locklaw.com

10

rkshelquist@locklaw.com
kkfreier@locklaw.com

11

12

LITE DEPALMA GREENBERG & AFANADOR, LLC
Susana Cruz Hodge, *Pro Hac Vice*

13

Joseph J. DePalma, *Pro Hac Vice*
570 Broad Street, Suite 1201

14

Newark, NJ 07102
Telephone: (973) 623-3000

15

E-mail: scruzhodge@litedepalma.com
jdepalma@litedepalma.com

16

17

**CO-LEAD INTERIM CLASS COUNSEL**

18

BARRACK RODOS & BACINE
Stephen Basser

19

One America Plaza
600 West Broadway, Suite 900

20

San Diego, CA 92101
Telephone: (619) 230-0800

21

Facsimile:  (619) 230-1874

22

E-mail: sbasser@barrack.com

23

24

25

26

27

28

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

CUNEO GILBERT & LADUCA, LLP
Charles LaDuca, *Pro Hac Vice*
Katherine Van Dyck, *Pro Hac Vice*
C. William Frick
4725 Wisconsin Avenue NW, Suite 200
Washington, DC 20016
Telephone:(202) 789-3960
Facsimile: (202) 789-1813
E-mail: charles@cuneolaw.com
          kvandyck@cuneolaw.com
          bill@cuneolaw.com

GUSTAFSON GLUEK PLLC
Daniel E. Gustafson, *Pro Hac Vice*
Mary M. Nikolai
Catherine K. Smith
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
E-mail: dgustafson@gustafsongluek.com
          mnikolai@gustafsongluek.com
          csmith@gustafsongluek.com

GUSTAFSON GLUEK PLLC
Dennis Stewart (SBD 99152)
600 B Street
17th Floor
San Diego, CA 92101
Telephone: (619) 595-3299
E-mail: dstewart@gustafsongluek.com

WEXLER WALLACE, LLP
Kenneth A. Wexler, *Pro Hac Vice*
Kara A. Elgersma
55 West Monroe, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
E-mail: kaw@wexlerwallace.com
          kae@wexlerwallace.com

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

1

2

3

4

5

CARLSON LYNCH LLP
Todd D. Carpenter (234464)
Scott G. Braden (305051)
1350 Columbia Street, Suite 603
San Diego, CA 92101
Telephone: (619) 762-1900
E-mail: tcarpenter@carlsonlynch.com
          sbraden@carlsonlynch.com

6

7

8

9

10

CALCATERRA POLLACK LLP
Michael Liskow
Janine L. Pollack
1140 Avenue of the Americas, 9th Floor
New York, NY 10036
Telephone: (917) 899-1765
E-mail: mliskow@calcaterrapollack.com
          jpollack@calcaterrapollack.com

11

12

13

14

15

GEORGE GESTEN MCDONALD, PLLC
Lori G. Feldman
102 Half Moon Bay Drive
Croton-on-Hudson, NY 10520
Telephone: (917) 983-9321
E-mail:  LFeldman@4-Justice.com
          eService@4-Justice.com

16

17

18

19

20

GEORGE GESTEN MCDONALD, PLLC
David J. George
Brittany L. Brown
9897 Lake Worth Road, Suite #302
Lake Worth, FL 33467
Telephone: (561) 232-6002
E-mail: DGeorge@4-Justice.com
          eService@4-Justice.com

21

22

23

24

25

TAUS, CEBULASH & LANDAU, LLP
Kevin Landau
Miles Greaves
80 Maiden Lane, Suite 1204
New York, NY 10038
Telephone: (212) 931-0704
E-mail: klandau@tcllaw.com
          mgreaves@tcllaw.com

26

27

28

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SALTZ, MONGELUZZI, & BENDESKY, P.C.
Simon B. Paris
Patrick Howard
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Telephone: (215) 575-3895
E-mail: sparis@smbb.com
          phoward@smbb.com

SAUDER SCHELKOPF
Matthew D. Schelkopf
Lori G. Kier
Davina C. Okonkwo
1109 Lancaster Avenue
Berwyn, PA 19312
Telephone: (610) 200-0581
E-mail: mds@sstriallawyers.com
          lgk@sstriallawyers.com
          dco@sstriallawyers.com

THRONDSET MICHENFELDER LLC
Chad A. Throndset
Pat Michenfelder
1 Central Avenue West
St. Michael, MN 55376
E-mail: chad@throndsetlaw.com
          pat@throndsetlaw.com

MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, PLLC
Rachel Soffin
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
E-mail: rsoffin@millberg.com

PEARSON SIMON & WARSHAW, LLP
Melissa Weiner
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
Telephone: (612) 389-0600
Facsimile:  (612) 389-0610
E-mail: mweiner@pswlaw.com

**Attorneys for Plaintiffs**

- 93 -

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Court File 21-cv-000913-YGR