LOCKRIDGE GRINDAL NAUEN P.L.L.P.
REBECCA A. PETERSON (241858)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
E-mail: rapeterson@locklaw.com

LITE DEPALMA GREENBERG & AFANADOR, LLC
SUSANA CRUZ HODGE, *Pro Hac Vice*
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
E-mail: scruzhodge@litedepalma.com

**Co-Lead Interim Class Counsel**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| IN RE PLUM BABY FOOD LITIGATION | ) ) Case No. 21-cv-00913-YGR |
| This Document Relates to: | ) ) Hon: Yvonne Gonzalez Rogers |
| ALL ACTIONS | ) ) **PLAINTIFFS' MEMORANDUM IN** ) **OPPOSITION TO DEFENDANTS'** ) **MOTION TO DISMISS OR, IN THE** ) **ALTERNATIVE, TO STAY;** ) **MEMORANDUM OF POINTS AND** ) **AUTHORITIES IN SUPPORT** ) **THEREOF** ) ) Date:    January 11, 2022 ) Time:    2:00 PM ) Courtroom: 1 ) |

# TABLE OF CONTENTS

STATEMENT OF ISSUES TO BE DECIDED ................................................................. 1

I.     INTRODUCTION ................................................................................................ 1

II.    SUMMARY OF THE CASE ............................................................................... 1

    A.    Plum Omitted Material Information on Heavy Metals and Other Toxins ........... 1

    B.    The Truth is Revealed Relating to Plum's Material Omissions ........................ 2

III.   ARGUMENT ...................................................................................................... 4

    A.    Plaintiffs' Claims Premised on Perchlorate Should Proceed .............................. 4

    B.    Article III Standing is Satisfied ........................................................................ 4

        1.    Plaintiffs suffered an injury in fact ............................................................ 4

        2.    Plaintiffs have standing to seek injunctive relief....................................... 7

    C.    Plaintiffs' Claims Are Not Preempted............................................................... 9

    D.    The Court Should Not Invoke Primary Jurisdiction........................................... 13

    E.    Deception is Sufficiently Pled ........................................................................... 19

        1.    Ubiquity of Heavy Metals Does Not Absolve Plum .................................. 20

        2.    Plaintiffs' Allegations of Contamination and Risk Are Sufficient............ 21

    F.    Breach of Implied Warranty Is Properly Pled .................................................. 23

    G.    Request for Judicial Notice and Response ........................................................ 24

    H.    In the Alternative, Leave to Amend Should Be Granted ................................... 25

IV.   CONCLUSION ................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Abrantes v. Northland Grp., Inc.*,
    2015 WL 1738255 (N.D. Cal. Apr. 13, 2015) ............................................................17

*Allen v. Hyland's Inc.*,
    300 F.R.D. 643 (C.D. Cal. 2014) .................................................................................6

*Anderson v. Holder*,
    673 F.3d 1089 (9th Cir. 2012) ...................................................................................24

*Astiana v. Hain Celestial Grp., Inc.*,
    783 F.3d 753 (9th Cir. 2015) ...............................................................................13, 17

*Axon v. Citrus World, Inc.*,
    354 F. Supp. 3d 170 (E.D.N.Y. 2018) .......................................................................22

*Backus v. General Mills*,
    122 F. Supp. 3d 909 (N.D. Cal. 2015) .......................................................................18

*Backus v. Nestlé USA, Inc.*,
    167 F. Supp. 3d 1068 (N.D. Cal. 2016) .....................................................................13

*Beaty v. Ford Motor Co.*,
    854 F. App'x. 845 (9th Cir. 2021) .............................................................................23

*Bell v. Publix Super Markets, Inc.*,
    982 F.3d 468 (7th Cir. 2020) ...............................................................................19, 21

*Berke v. Whole Foods Mkt.*,
    2020 WL 5802370 (C.D. Cal. Sep. 18, 2020).............................................................6

*Boysen v. Walgreen Co.*,
    2012 WL 2953069 (N.D. Cal. July 19, 2012).............................................................6

*Brazil v. Dole Food Co., Inc.*,
    935 F. Supp. 2d 947 (N.D. Cal. 2013) .........................................................................6

*Brazil v. Dole Packaged Foods LLC*,
    660 F. App'x. 531 (9th Cir. 2016) ...............................................................................6

*Capaci v. Sports Rsch. Corp.*,
    445 F. Supp. 3d 607 (C.D. Cal. 2020) .......................................................................16

*Chavez v. Blue Sky Nat. Beverage Co.*,
    340 F. App'x. 359 (9th Cir. 2009) ..........................................................................5, 7

*Chem. Specialties Mfrs. Ass'n, Inc., v. Allenby,*
   958 F.2d 941 (9th Cir. 1992) ............................................................9

*Cimoli v. Alacer Corp.,*
   2021 WL 2711770 (N.D. Cal. July 1, 2021) ..................................8

*Clark v. Time Warner Cable,*
   523 F.3d. 1110 (9th Cir. 2008) ....................................................19

*Cohen v. Apple Inc.,*
   497 F. Supp. 3d 769 (N.D. Cal. 2020) ........................................12

*Cohen v. ConAgra Brands, Inc.,*
   16 F.4th 1283 (9th Cir. 2021) ......................................11, 12, 13

*Colangelo v. Champion Petfoods USA, Inc.,*
   2020 WL 777462 (N.D.N.Y. Feb. 18, 2020) ...............................23

*Cole v. Asurion Corp.,*
   2008 WL 5423859 (C.D. Cal. Dec. 30, 2008) ...............................5

*Colette v. CV Sciences, Inc.,*
   2020 WL 2739861 (C.D. Cal. May 22, 2020) .............................19

*Corbett v. Pharmacare U.S., Inc.,*
   2021 WL 4866124 (S.D. Cal. Oct. 19, 2021) .......................10, 11

*Cortina v. Goya Foods, Inc.,*
   94 F. Supp. 3d 1174 (S.D. Cal. 2015) .....................................9, 13

*Curtis v. Philip Morris Cos.,*
   2004 WL 2776228 (Minn. Dist. Ct. Nov. 29, 2004) ...................19

*Davidson v. Kimberly-Clark Corp.,*
   889 F.3d 956 (9th Cir. 2018) ........................................................7

*Doss v. Gen. Mills, Inc.,*
   816 F. App'x. 312 (11th Cir. 2020). .............................................7

*Farina v. Nokia Inc.,*
   625 F.3d 97 (3d Cir. 2010) .........................................................12

*Fla. Lime & Avocado Growers, Inc. v. Paul,*
   373 U.S. 132 (1963) ...................................................................11

*Geier v. Am. Honda Motor Co.,*
   529 U.S. 861 (2000) ...................................................................12

*Green v. Pepsico, Inc.,*
   2019 WL 8810364 (S.D. Fla. Apr. 12, 2019) ...............................7

*Hadley v. Kellogg Sales Co.*,
   243 F. Supp. 3d 1074 (N.D. Cal. 2017) ........................................................25

*Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*,
   2019 WL 2515919 (N.D. Cal. June 18, 2019) ...........................................22

*Herrington v. Johnson & Johnson Consumer Cos., Inc.*,
   2010 WL 3448531 (N.D. Cal. Sep. 1, 2010) ...................................................5

*Hough v. Big Heart Pet Brands, Inc.*,
   2020 WL 7227198 (N.D. Cal. Dec. 5, 2020) ...................................................6

*Humetrix, Inc. v. Gemplus S.C.A.*,
   268 F.3d 910 (9th Cir. 2001) .........................................................................15

*Hunter v. Philip Morris USA*,
   582 F.3d 1039 (9th Cir. 2009) .......................................................................10

*In re 5-Hour ENERGY Mktg. and Sales Practices Litig.*,
   2017 WL 385042 (C.D. Cal. Jan. 24, 2017) ..................................................24

*In re Gen. Mills Glyphosate Litig.*,
   2017 WL 2983877 (D. Minn. July 12, 2017) ................................................22

*In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*,
   497 F. Supp. 3d 552 (N.D. Cal. 2020) .....................................................15, 17

*In re KIND LLC "Healthy & All Natural" Litig.*,
   209 F. Supp. 3d 689 (S.D.N.Y. 2016) ...........................................................17

*In re KIND LLC "Healthy & All Natural" Litig*,
   287 F. Supp. 3d 457 (S.D.N.Y. 2018).......................................................17, 18

*In re Tobacco Cases II*,
   240 Cal. App. 4th 779 (2015) ..........................................................................6

*In re Valsartan, Losartan, and Irbesartan Prods. Liab. Litig.*,
   2020 WL 7418006 (D.N.J. Dec. 18, 2020).....................................................11

*Isip v. Mercedes-Benz USA, LLC*,
   155 Cal. App. 4th 19 (2007) ...........................................................................24

*Jackson v. Gen. Mills, Inc.*,
   2020 WL 5106652 (S.D. Cal. Aug. 28, 2020) .................................................8

*Joslin v. Clif Bar & Co.*,
   2019 WL 5690632 (N.D. Cal. Aug. 26, 2019) .................................................8

*Kane v. Chobani, LLC*,
   645 F. App'x. 593 (9th Cir. 2016) .................................................................17

*Koronthaly v. L'Oreal USA, Inc.*,
  2008 WL 2938045 (D.N.J. July 29, 2008)....................................................................7

*Kosta v. Del Monte Corp.*,
  2013 WL 2147413 (N.D. Cal. May 15, 2013) ...........................................................16

*Krommenhock v. Post Foods, LLC*,
  255 F. Supp. 3d 938 (N.D. Cal. 2017) .......................................................................20

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011) ................................................................................................6

*Landau v. Viridian Energy PA LLC*,
  223 F. Supp. 3d 401 (E.D. Pa. 2016) .........................................................................19

*Landgraf v. USI Film Prods.*,
  511 U.S. 244 (1994)....................................................................................................15

*Lanovaz v. Twinings N. Am., Inc.*,
  726 F. App'x. 590 (9th Cir. 2018) ...............................................................................8

*Leppert v. Champion Petfoods USA Inc.*,
  2019 WL 216616 (N.D. Ill. Jan. 16, 2019) ...............................................................23

*Lilly v. Jamba Juice Co.*,
  2015 WL 1248027 (N.D. Cal. Mar. 18, 2015)..............................................................8

*Lockwood v. Conagra Foods, Inc.*,
  597 F. Supp. 2d 1028 (N.D. Cal. 2009) .......................................................................9

*Lujan v. Defs. Of Wildlife*,
  504 U.S. 555 (1992).....................................................................................................6

*Madenlian v. Flax USA Inc.*,
  2014 WL 7723578 (C.D. Cal. Mar. 31, 2014)......................................................19, 21

*Marsh v. Zaazoom Sols., LLC*,
  2012 WL 952226 (N.D. Cal. Mar. 20, 2012)..............................................................10

*Maya v. Centex Corp.*,
  658 F.3d 1060 (9th Cir. 2011) ...............................................................................4, 7

*McGee v. S-L Snacks National*,
  982 F.3d 700 (9th Cir. 2020) .......................................................................................7

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996).....................................................................................................10

*Moore v. Trader Joe's Co.*,
  4 F.4th 874 (9th Cir. 2021). .........................................................................................21

*Morgan v. Wallaby Yogurt Co., Inc.*,
 2013 WL 5514563 (N.D. Cal. Oct. 4, 2013)................................................6, 7

*Myers v. Starbucks Corp.*,
 2021 WL 1921120 (C.D. Cal. May 5, 2021) ...............................................8

*Nguyen v. Medora Holdings, LLC*,
 2015 WL 4932836 (N.D. Cal. Aug. 18, 2015) .............................................5

*Pac. Botanicals, LLC v. Sego's Herb Farm, LLC*,
 2016 WL 11187249 (D. Or. Dec. 8, 2016) ................................................24

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*,
 461 U.S. 190 (1983)........................................................................10

*Padilla v. Whitewave Foods Co.*,
 2019 WL 4640399 (C.D. Cal. July 26, 2019) ............................................9

*Parks v. Ainsworth Pet Nutrition, LLC*,
 2020 WL 832863 (S.D.N.Y. Feb. 20, 2020)..............................................22

*Parks v. Ainsworth Pet Nutrition, LLC*,
 377 F. Supp. 3d 241 (S.D.N.Y. 2019)....................................................21

*People ex rel. Spitzer v. Gen. Elec. Co.*,
 302 A.D.2d 314 (N.Y. App. 2003) .......................................................19

*People of State of Cal. v. F.C.C.*,
 905 F.2d 1217 (9th Cir. 1990) ...........................................................10

*Prescott v. Bayer Healthcare LLC*,
 2020 WL 4430958 (N.D. Cal. July 31, 2020)........................................16, 17

*Rahman v. Mott's LLP*,
 2018 WL 4585024 (N.D. Cal. Sept. 25, 2018) ...........................................8

*Reese v. Odwalla, Inc.*,
 30 F. Supp. 3d 935 (N.D. Cal. 2014) .....................................................18

*Reid v. Johnson & Johnson*,
 780 F.3d 952 (9th Cir. 2015) ...................................................14, 15, 17

*Roberts v. Arizona Bd. of Regents*,
 661 F.2d 796 (9th Cir. 1981) ............................................................25

*Robles v. Domino's Pizza, LLC*,
 913 F.3d 898 (9th Cir. 2019) ...................................................13, 14, 16

*Rosillo v. Annie's Homegrown Inc.*,
 2017 WL 5256345 (N.D. Cal. Oct. 17, 2017)............................................18

*Sandoval v. PharmaCare US, Inc.*,
   145 F. Supp. 3d 986 (S.D. Cal. 2015)........................................................................12

*Schneider v. Chipotle Mexican Grill, Inc.*,
   328 F.R.D. 520 (N.D. Cal. 2018)..............................................................................6

*Sciortino v. Pepsico, Inc.*,
   108 F. Supp. 3d 780 (N.D. Cal. 2015)..................................................................9, 25

*Souter v. Edgewell Pers. Care Co.*,
   2021 WL 3892670 (S.D. Cal. June 7, 2021)............................................................16

*Syntek Semiconductor Co. Ltd. v. Microchip Tech. Inc.*,
   307 F.3d 775 (9th Cir. 2002). ..................................................................................19

*Ting v. AT&T*,
   319 F.3d 1126 (9th Cir. 2003) ................................................................................12

*Tran v. Sioux Honey Ass'n, Coop.*,
   471 F. Supp. 3d 1019 (C.D. Cal. 2020) ..................................................................22

*Tran v. Sioux Honey Association, Cooperative*,
   2017 WL 5587276 (C.D. Cal. Oct. 11, 2017)..........................................................18

*Tucker v. Post Consumer Brands, LLC*,
   2020 WL 1929368 (N.D. Cal. Apr. 21, 2020) ..........................................................8

*United States v. Mead Corp.*,
   533 U.S. 218 (2001)................................................................................................13

*Viggiano v. Hansen Nat. Corp.*,
   944 F. Supp. 2d 877 (C.D. Cal. 2013) ....................................................................24

*Watson v. Solid Gold Pet, LLC*,
   2019 WL 3308766 (C.D. Cal. Feb. 22, 2019)..........................................................21

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ............................................................................19, 23

*Wyeth v. Levine*,
   555 U.S. 555 (2009)......................................................................................11, 12, 13

*Zarinebaf v. Champion Petfoods USA Inc.*,
   2019 WL 3555383 (N.D. Ill. July 30, 2019)............................................................23

*Zeiger v. WellPet LLC*,
   304 F. Supp. 3d 837 (N.D. Cal. 2018) ........................................................5, 7, 21, 25

*Zeiger v. WellPet LLC*,
   526 F. Supp. 3d 652 (N.D. Cal. 2021) ..................................................................8, 19

**RULES**

Fed. R. Civ. P. 12 ...................................................................................6, 21

Fed. R. Civ. P. 15 ...........................................................................................25

Fed. R. Evid. 201 ............................................................................................24

**STATUTES**

104 Stat. 2343 (1990) ......................................................................................9

21 U.S.C. § 343-1 ......................................................................................9, 12

47 U.S.C. § 258 ..............................................................................................19

Cal. Bus. & Prof. Code § 17200, *et seq.* ......................................................12

Cal. Bus. & Prof. Code § 17500, *et seq.*.. ..............................................12, 13

Cal. Civil Code § 1750, *et seq.* ...............................................................12, 13

**STATEMENT OF ISSUES TO BE DECIDED**

Whether dismissal is improper because: (1) Plaintiffs satisfy Article III standing; (2) their state law claims are not preempted; (3) primary jurisdiction is not proper; and both (4) deception and (5) breach of implied warranty are properly pled.

## I.   INTRODUCTION

This case is about Plum, a baby food manufacturer holding a special position of trust, choosing to omit information it knows is material to any parent. Plum knowingly remained silent on the presence of heavy metals in its premium-priced baby foods despite the known health and developmental risks of heavy metal exposure to infants and toddlers. After hiding the truth from parents and refusing to cooperate with a governmental investigation, Plum now asks this Court to help it evade any liability for its material omissions. But its request is not supported by the law or facts—preemption and primary jurisdiction are inapplicable and there is no doubt that parents were unaware of the presence and risk of heavy metals in Plum's premium baby foods.[1]

## II.   SUMMARY OF THE CASE

### A.   Plum Omitted Material Information on Heavy Metals and Other Toxins

Plum's premium Baby Foods are sold to unsuspecting reasonable consumers with misleading and deceptive packaging that fails to disclose information any parent would consider material.[2] (¶¶17, 73-85.) Although Plum acknowledges on its website's FAQ section that heavy metals "will be present in food" and it "is committed to minimizing [] heavy metals within our products," (¶88), its packaging omits that the Baby Foods contain (or have a material risk of

---

[1] For brevity, Plaintiffs collectively refer to defendants as "Plum." Plum, PBC alleges that Plum, Inc. no longer exists. (Dkt. 103 n.1.) However, Plum, Inc.'s 2019 and 2021 state filings list "Plum Inc." as its corporate name and state it is doing business as Plum PBC. (Dkt. 53-2, 75-8, 75-9.)

[2] "Baby Foods" collectively refers to the products identified in the First Amended Class Action Complaint (Dkt. No. 98, (the "FACC") at 3 n.1.) All ¶ references are to the FACC and all references to exhibits are to the Declaration of Rebecca A. Peterson unless otherwise noted.

containing) heavy metals and perchlorate. (¶¶5, 7, 19-24, 77, 125, 135, 159-161, 175-176, 183.)

For example, testing has detected high levels of arsenic in the Super Puffs. (¶19); Ex. 1 at 19-20.

Plum's testing also shows its Baby Foods contain levels of lead exceeding bottled water standards

and levels of cadmium exceeding drinking water standards. Ex. 1 at 20-21. These amounts of

heavy metals are more than just "trace" amounts, contrary to Plum's characterization.

Plum chose not to disclose *any* information on its packaging about heavy metals or toxins

despite knowing that parents "trust manufacturers like [Plum] to sell baby food that is healthy,

nutritious, and free from harmful toxins, contaminants, and chemicals" and that "[t]hey certainly

expect the food they feed their infants and toddlers to be free from Heavy Metals or perchlorate,

substances known to have significant and dangerous health consequences." (¶2.) Plaintiffs and

other reasonable consumers relied on Plum's misleading and deceptive packaging and paid a

premium price for the Baby Foods, just as Plum intended. (¶¶157-188.)

**B.    The Truth is Revealed Relating to Plum's Material Omissions**

On February 4, 2021, the U.S. House of Representatives' Committee on Oversight and

Reform, Subcommittee on Economic and Consumer Policy (the "Subcommittee") published a

report (the "Report") describing "significant" and "concerning" levels of heavy metals in baby

foods, including Plum's. (¶¶15-17, 93; Dkt. 98-1 at 3, 6, 46.) The Report concluded that

"[m]anufacturers knowingly sell [baby food] to unsuspecting parents [] without any warning

labeling whatsoever," and that "[c]onsumers believe that they would not sell unsafe products."

(¶17; Dkt. 98-1 at 7.) Plum refused to cooperate with the Subcommittee's investigation and did

not disclose its testing standards or results to the Subcommittee. (¶¶68, 71; Dkt. 98-1 at 3, 6, 45-

46.) As a result, the Report referenced independent testing results for a sample of Plum products,

showing they contained "concerning levels" of heavy metals. (Dkt. 98-1 at 45-46; ¶¶16, 125,

135.) The Subcommittee expressed concern that Plum's lack of cooperation and transparency

"hides more than it reveals," that it may be concealing "the presence of even higher levels of toxic heavy metals in their baby food products," and that it "has hidden its policies and the actual level of toxic heavy metals in its products." (Dkt. 98-1 at 3, 6, 45-46.)

Plum has since provided test results that were included in the Subcommittee's September 29, 2021, follow-up report (the "Second Report"). Ex. 1 at 2, 18-21, COR-000047-53. The Subcommittee's initial concerns about Plum's evasiveness proved true—the results from Plum's own internal testing results exposed even higher levels of heavy metals in even more of Plum's products. *Id.* at 2, 18-21.[3] Indeed, despite Plum's alleged "commitment to minimizing…heavy metals within [its] products[]," (¶88), the presence of toxins increased over the years.[4]

While not specifically required to state a claim, *see infra* at B.1, Plum's testing showed that Baby Food varieties purchased by Plaintiffs contain heavy metals:

1. Mashup Pouch: Strawberry Beet, purchased by Plaintiff David (¶46): 17 ppb of lead in July 2018. *See* Ex. 1 at COR-000049-Row 2.

2. Stage 2 Baby Food Pouch: Pumpkin, Spinach, Chickpea & Broccoli, purchased by Plaintiff David (¶46): 33 ppb of cadmium in May 2018. *See id.* at COR-000051-Row 4.

3. Teensy Snacks: Berry, purchased by Plaintiffs McKeon (¶34) and Mathieson (¶40): 15 ppb of arsenic in Oct. 2017. *See id.* at COR-000051-Row 36.

4. Jammy Sammy Sandwich Bar: Apple Cinnamon & Oatmeal, purchased by Plaintiff Brown (¶49): 20 ppb of arsenic and 15 ppb of cadmium in Jan. 2021. *See id.* at COR-000053-Row 4.

---

[3] The Second Report states that all samples of Plum's Super Puffs contained between 200 and 470 parts per billion ("ppb") for arsenic and an average of 79 ppb of inorganic arsenic; that most of Plum's Baby Foods contained more than 5 ppb of lead, with some products containing up to 73 ppb; and that almost 40% of Plum's Baby Foods contain more than of 5 ppb of cadmium, with some products containing up to 43 ppb. *See* Ex. 1 at 18-21.

[4] Stage 2 Organic Baby Food Pouch: Apple & Carrot contained 8 ppb of cadmium in Nov. 2017 and 12 ppb of cadmium in Oct. 2020. Ex. 1 at COR-000047-Row 1; COR-0000053-Row 22. Mighty Snack Bars: Strawberry contained 15 ppb of arsenic and 8 of ppb cadmium in Oct. 2017 and 31 ppb of arsenic and 39 ppb of cadmium in Oct. 2020. *Id.* at COR-000047-Row 4; COR-0000053-Row 12.

Plum's testing shows it knew that the Baby Foods were tainted with heavy metals as far back as 2017 and continuing into 2021 and it knowingly misled consumers by failing to disclose the presence of heavy metals. *See Id*. at COR-000047-53; (¶¶157-188.) [5]

## III.   ARGUMENT

### A.   Plaintiffs' Claims Premised on Perchlorate Should Proceed

Plum's motion entirely ignores Plaintiffs' claims premised on the inclusion or risk of inclusion of perchlorate in the Baby Foods, which form a separate basis for liability from the allegations relating to heavy metals. (*See, e.g.*, ¶¶11, 139-148.) Those claims should proceed to discovery. Efficiency also dictates that both sets of claims, which will involve much of the same discovery, should proceed concurrently, thereby further supporting denial of dismissal or a stay.

### B.   Article III Standing is Satisfied

#### 1.   Plaintiffs suffered an injury in fact

Under Article III, there is a "quintessential injury-in-fact" when the "plaintiffs spent money that, absent defendants' actions, they would not have spent." *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011).[6] Plaintiffs allege just that—economic injury caused by paying for products they would not have purchased, or would not have paid a premium for, if Plum had disclosed material information about the presence (or risk) of heavy metals (¶¶28-57, 157-188, 249, 262, 290, 310, 341, 356, 370, 382, 407, 424.) Plaintiffs further allege that baby food with these substances is valueless or not worth as much as baby food that is safe for consumption by infants or children. (¶¶93-141, 157-188.)

"[S]imilar allegations in the food mislabeling context have repeatedly been held

---

[5] For example, Plum claims its "top priority" is to "serve children healthy, nutritious food made from the best ingredients," and that it has a "comprehensive quality and food safety program…which includes testing for heavy metals." (¶¶72, 80-82.) According to the Second Report, however, "Plum provided its test results, which confirmed the Subcommittee's concerns about the danger of some of its products." Ex. 1 at 2.

[6] All emphasis is deemed added and citations are deemed omitted unless otherwise noted.

1   sufficient to establish an economic injury for purposes of both constitutional and statutory

2   standing." *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 846 (N.D. Cal. 2018) ("*Zeiger I*"). *See*

3   *also Chavez v. Blue Sky Nat. Beverage Co.*, 340 F. App'x. 359, 361 (9th Cir. 2009) (injury in

4   fact where a plaintiff "asserts that he purchased beverages that he otherwise would not have

5   purchased in absence of the alleged misrepresentations"); *Nguyen v. Medora Holdings, LLC*,

6   2015 WL 4932836, at *5 n.38 (N.D. Cal. Aug. 18, 2015) (injury in fact where consumer paid a

7   premium price for a mislabeled product or would not have purchased the product had she

8   known); *Cole v. Asurion Corp.*, 2008 WL 5423859, at *4 (C.D. Cal. Dec. 30, 2008) (same).

9   Plum offers arguments that "largely go to the merit of [P]laintiffs' claims, and not their

10  standing to bring th[eir] claims" when arguing the injury here is 'hypothetical." *Zeiger I*, 304 F.

11  Supp. 3d at 846; (Dkt. 103 at 15). Even analyzing the merits, these arguments fail. Both

12  independent testing and Plum's testing demonstrate the presence of heavy metals and

13  perchlorate. (¶¶159-163; Ex. 1 at 18-21.) *Herrington v. Johnson & Johnson Consumer Cos., Inc.*

14  is inapposite because the plaintiffs did not allege that "the levels of the substances in [the]

15  products were unsafe," or that "they overpaid or otherwise did not enjoy the benefit of their

16  bargain," or that the products were "unfit for use." 2010 WL 3448531, at *4-5 (N.D. Cal. Sep. 1,

17  2010). Plaintiffs allege that here. (¶¶93-141 (peer reviewed medical journals, public

18  investigations, and government studies show heavy metals pose health risks to infants by causing

19  developmental issues, poisoning, injury, and/or diseases); ¶250 (unfit for use); *see, e.g.,* ¶¶28-

20  57, 157-188, 262 (Plaintiffs paid a premium; would not have purchased the Baby Foods); ¶70

21  (toxic heavy metals "pose serious health risks to babies and toddlers.") ¶¶154-156, 159-163

22  (testing results).)

23  Plaintiffs have exceeded the minimal pleading standard for standing. Allegations that the

24  Baby Foods contain heavy metals and perchlorate based on testing sufficiently show an injury in

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

fact. (¶¶19, 28-57, 159-163); Ex. 1 at 18-21; *see Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice...").[7] Allegations that Plaintiffs tested their purchased baby food are not required. *See Hough v. Big Heart Pet Brands, Inc.*, 2020 WL 7227198, at *2-4 (N.D. Cal. Dec. 5, 2020) (rejecting argument that plaintiffs had to link independent testing to the particular dog food products they purchased); *accord*, *Berke v. Whole Foods Mkt.*, 2020 WL 5802370, at *7 (C.D. Cal. Sep. 18, 2020).

Plaintiffs also need not prove or plead that the Baby Foods are unsafe. *See Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d 947, 961-62 (N.D. Cal. 2013) (standing is satisfied if plaintiff would not have purchased misbranded products). Proof of physical injury is irrelevant because:

> plaintiffs' point is that they were misled[.] [Defendant]'s argument leads to the untenable conclusion that consumers have no legal recourse for intentionally misidentified products. Such a result has no basis in law.

*Morgan v. Wallaby Yogurt Co., Inc.*, 2013 WL 5514563, at *4 (N.D. Cal. Oct. 4, 2013). Nonetheless, the FACC is replete with allegations demonstrating the dangers heavy metals and perchlorate pose to infants and toddlers. (¶¶93-141; Dkt. 98-1.)

The cases cited by Plum do not show otherwise. *Boysen v. Walgreen Co.* has no applicability as the levels of lead and arsenic alleged there fell "within the FDA advisory guideline levels for [the] fruit juices" at issue. 2012 WL 2953069, at *5 (N.D. Cal. July 19, 2012).

---

[7] Whether "a full refund [is proper] addresses a question of damages, not one of standing." *Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520, 530-31 (N.D. Cal. 2018); *see also Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 336 (2011) (a failure to establish a right to damages "does not demonstrate that [a plaintiff] lacks standing to argue" she is entitled to them). None of Plum's cases involved Rule 12 dismissals based on standing. *See Allen v. Hyland's Inc.*, 300 F.R.D. 643 (C.D. Cal. 2014) (judgment); *Brazil v. Dole Packaged Foods LLC*, 660 F. App'x. 531, 534 (9th Cir. 2016) (class certification); *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 802 (2015) (same). Plum's argument on the price premium theory is premature. (Dkt. 103 at 17.) First, First, whether heavy metals is "irrelevant to pricing," (*id.*), will be addressed at the expert stage. Second, Plaintiffs allege other manufacturers make baby food without heavy metals and that manufacturers can eliminate heavy metals. (¶¶149-155.)

"This case is distinguishable for the simple reason that the FDA has not promulgated guidelines with respect to safe or acceptable levels of arsenic and lead in [baby] foods." *Zeiger I*, 304 F. Supp. 3d at 846 (rejecting *Boysen*); *see also Morgan*, 2013 WL 5514563, *4 (same).[8] In *Doss v. Gen. Mills, Inc.*, the plaintiffs did not allege "a level of glyphosate that is so harmful the Cheerios are 'presumptively unsafe' and therefore worthless." 816 F. App'x. 312, 314 (11th Cir. 2020). In contrast, Plaintiffs allege that the Baby Foods contain unsafe heavy metals and perchlorate that dangerously accumulate in the body, placing infants and children—who repeatedly consume the same baby foods—particularly at risk. (¶¶28-56, 93-141); Ex. 1 at 18-21. In *McGee v. S-L Snacks National*, the plaintiffs failed to allege injury in fact because the challenged label "disclos[ed] that the product contained artificial trans fat." 982 F.3d 700, 706 (9th Cir. 2020). There is no such disclosure here. Plum's Article III standing argument should be rejected.

## 2.    Plaintiffs have standing to seek injunctive relief.

"[A] previously deceived consumer may have standing to seek an injunction [] even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018). A threat of future harm may be shown by "the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Id.* at 969-70.

*Davidson* is satisfied because Plaintiffs are willing to purchase the Baby Foods in the future if they could be certain that the Baby Foods do not contain (or have a material risk of

---

[8] Plum's out-of-circuit cases contradict *Zeiger I*, *Chavez*, *Maya*, and *Morgan*. *See Koronthaly v. L'Oreal USA, Inc.*, 2008 WL 2938045, at *5 (D.N.J. July 29, 2008), *aff'd*, 374 F. App'x. 257 (3d Cir. 2010) (plaintiff *lacked* standing in part because "the FDA [] does not provide limitations on lead levels in lipstick."); *Green v. Pepsico, Inc.*, 2019 WL 8810364, at *2 (S.D. Fla. Apr. 12, 2019) (refusing to recognize that economic loss is an injury in fact).

containing) heavy metals or perchlorate.  (¶¶30, 33, 36, 39, 42, 45, 51, 53, 56); *Tucker v. Post Consumer Brands, LLC*, 2020 WL 1929368, at *6 (N.D. Cal. Apr. 21, 2020). Since Plaintiffs' willingness to purchase the Baby Foods in the future directly relates to the injunctive relief they seek, standing is satisfied.[9] (*See* Dkt. 98 at 90 (seeking an "[o]rder enjoining [Plum] from selling the Baby Foods until the levels of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants are removed[.]")); *see also Lilly v. Jamba Juice Co.*, 2015 WL 1248027, at *5 (N.D. Cal. Mar. 18, 2015) (standing met by "a willingness to consider a future purchase"); *Myers v. Starbucks Corp.*, 2021 WL 1921120, at *6 (C.D. Cal. May 5, 2021) (same); *cf. Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x. 590, 591 (9th Cir. 2018) (no threat of future harm because plaintiff would not purchase the products even if misleading labels were cured); *Joslin v. Clif Bar & Co.*, 2019 WL 5690632, at *3 (N.D. Cal. Aug. 26, 2019) ("Plaintiffs do not allege they want to or intend to purchase the Products in the future.").

In Plum's cited cases, the plaintiffs could easily decipher a misrepresentation by looking at the label. *See Jackson v. Gen. Mills, Inc.*, 2020 WL 5106652, at *5 (S.D. Cal. Aug. 28, 2020) (weight disclosed on the label informs plaintiffs for future purchases); *Cimoli v. Alacer Corp.*, 2021 WL 2711770, at *7 (N.D. Cal. July 1, 2021) (plaintiff now knows that the representations on the front label refer to a serving size); *Joslin*, 2019 WL 5690632, at *4 (label discloses real white chocolate is not in the product); *Rahman v. Mott's LLP*, 2018 WL 4585024, at *3 (N.D. Cal. Sept. 25, 2018) (plaintiff cannot be misled again by "no sugar added" on label). Here, Plaintiffs "allege[] pure omissions, so there is no 'meaning' that could be learned to remedy [the] alleged failure to disclose." *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 688 (N.D. Cal. 2021)

---

[9] Plum's statement that Plaintiffs are now "fully aware" that "it is not possible to eliminate" heavy metals from baby food (with no citation), (Dkt. 103 at 18), is false and creates a fact issue irrelevant to standing. It also contradicts Plaintiffs' allegations that Plum's competitors manufacture baby foods without heavy metals. (¶¶149-153.) It is thus plausible that reasonable consumers, like Plaintiffs, could believe that Plum can eliminate heavy metals in the Baby Foods.

8

("*Zeiger II*"). Plaintiffs would have to perform expensive testing to confirm if Plum's omissions about heavy metals and perchlorates were cured. *See Padilla v. Whitewave Foods Co.*, 2019 WL 4640399, at *8 (C.D. Cal. July 26, 2019) ("Plaintiffs would not be able to access the full information they seek by [] the product labels."). There is standing to pursue injunctive relief.

### C.    Plaintiffs' Claims Are Not Preempted

Plum disregards the language of the federal Food Drug and Cosmetic Act ("FDCA"), and the accompanying federal statutes governing its application. The Nutrition Labeling and Education Act ("NLEA") *expressly exempts safety disclosures* from preemption and Plaintiffs' claims are rooted in consumer protection statutes that are within the states' historic police powers and entitled to the presumption against preemption. *See, e.g., Chem. Specialties Mfrs. Ass'n, Inc., v. Allenby,* 958 F.2d 941, 943 (9th Cir. 1992) (historic police powers include "[l]aws regulating the proper marketing of food, including the prevention of deceptive sales practices.").

Section 6(c)(2) of the NLEA, which was not codified, states that section 403A of the FDCA, 21 U.S.C. §343-1, "shall not be construed to apply to any requirement respecting a statement on the labeling of food that provides *a warning concerning the safety of the food or a component of the food.*" Pub. L. 101-535, section 6, 104 Stat. 2343 (1990); *see Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780, 801 (N.D. Cal. 2015) ("Section 6(c)(2) saves from express preemption state laws such as Proposition 65 requiring food safety warnings"); *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1033 (N.D. Cal. 2009) ("NLEA—including the savings clause (no preemption unless the law is expressly preempted)—shall not be construed to affect preemption of food safety laws."). The point was made even clearer in *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1188 (S.D. Cal. 2015), where the court sustained the plaintiffs' claims based on a theory of omission—that the defendant's products failed to disclose the presence of substances known to cause cancer.

Plum, as the party seeking preemption, bears a heavy burden. *See Hunter v. Philip Morris USA*, 582 F.3d 1039, 1046 (9th Cir. 2009). The presumption against preemption is long standing. *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996); *Corbett v. Pharmacare U.S., Inc.*, 2021 WL 4866124, at *8 (S.D. Cal. Oct. 19, 2021). Plum ignores or misconstrues prevailing authorities and relevant law. As a threshold matter, federal law can preempt state law only under three circumstances: (1) an explicit federal statutory command preempting state law; (2) a sufficiently comprehensive scheme of federal regulation supporting a reasonable inference that Congress left zero room for supplementary state regulation; or (3) a demonstration that it is physically impossible to comply with both federal and state claims. *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 203–04 (1983). Preemption is not justified

> merely by showing that *some* of the preempted state regulation would [] frustrate [agency] regulatory goals. Rather, the [party supporting preemption] bears the burden of justifying its *entire* preemption order by demonstrating that the [regulatory] order is narrowly tailored to preempt *only* such state regulations as would negate valid … regulatory goals.

*People of State of Cal. v. F.C.C.*, 905 F.2d 1217, 1243 (9th Cir. 1990). Plum only argues conflict preemption applies here (Dkt. 103 at 19-21.) As this Court stated, "conflict preemption arises when 'compliance with both federal and state regulations is a physical impossibility' [and]... may also exist where 'state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress' [] Showing preemption by impossibility is a 'demanding defense.'" *Marsh v. Zaazoom Sols., LLC*, 2012 WL 952226, at *6 (N.D. Cal. Mar. 20, 2012).

Plum has not met its heavy burden to demonstrate conflict preemption. *First*, Plum has cited no relevant federal statute showing state statutory and common law claims concerning nondisclosure of the presence of heavy metals and perchlorate in baby food would be an obstacle to objectives of Congress. This is unsurprising since the NLEA expressly *exempts* these claims as discussed above and the Report properly concluded that there was none. (Dkt. 98-1 at 11

1   ("Currently, there is no federal standard on, or warning to parents and caregivers about, these

2   toxins.").) *Second*, Plum cannot show that there is a comprehensive regulatory scheme that

3   precludes all state legal obligations. *Finally*, Plum cannot demonstrate it would be physically

4   impossible to comply with both federal and state law.

5       In *Wyeth v. Levine*, when addressing preemption in the context of the FDCA, the Supreme

6   Court stated, "If Congress thought state-law suits posed an obstacle to its objectives, it surely

7   would have enacted an express pre-emption provision at some point during the FDCA's 70-year

8   history." 555 U.S. 555, 574 (2009).[10] Accordingly, the Supreme Court rejected the suggestion

9   that a state's failure to warn claims would obstruct federal regulation of drug labeling. *Id.* at 573-

10  81; *see also Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 144 (1963) ("States have

11  always possessed a legitimate interest in the protection of (their) people against fraud and

12  deception[.]"). As the *Wyeth* Court further noted, "[i]mpossibility pre-emption is a demanding

13  defense," and a defendant's "argu[ment] that requiring it to comply with a state-law duty to

14  provide a stronger warning … would obstruct the purposes and objectives of federal … labeling

15  regulation" has no merit. *Wyeth*, 555 U.S. at 573. Following *Wyeth*, courts have rejected the

16  suggestion that the FDCA preempts state law and consumer-protection laws and noted that

17  contrary rulings preempting such claims pre-dated *Wyeth*. *See*, *e.g.*, *In re Valsartan, Losartan,*

18  *and Irbesartan Prods. Liab. Litig.*, 2020 WL 7418006, at *7 (D.N.J. Dec. 18, 2020).

19      The Ninth Circuit's decision in *Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1287-88

20  (9th Cir. 2021), likewise supports that preemption is not proper here. There, the Court held that

21  preemption would apply where a branch of the FDA had reviewed and approved the product

---

[10] Congress took a decidedly different position on the regulation of medical devices. *See, e.g.,*
*Wyeth*, 555 U.S. at 567 ("when Congress enacted an express pre-emption provision for medical
devices in 1976 … it declined to enact such a provision for prescription drugs"). Thus, any
decisions construing the FDCA in the context of medical devices are simply inapplicable. *See
Corbett*, 2021 WL 4866124, at *12 (cases decided under Medical Device Amendment to FDCA
are distinct from the NLEA and "inapposite" to case challenging dietary supplements).

1 label, but would *not* bar state law challenges to representations on the defendant's webpage

2 because those statements had not been subject to agency review and approval. *Id.* at 1290-91.

3 Since there has been no FDA review or approval of the Baby Foods' packaging here, Plaintiffs'

4 claims, including those under California's consumer protection laws, are not preempted.[11]

5       "District courts have routinely rejected arguments that state-law UCL, FAL, and CLRA

6 food-labeling claims [] are impliedly preempted." *Sandoval v. PharmaCare US, Inc.*, 145 F.

7 Supp. 3d 986, 995 (S.D. Cal. 2015). Plum's argument to the contrary is based on a

8 misunderstanding of preemption and how the courts have narrowly applied it in the context of

9 the FDA and its powers under the FDCA, 21 U.S.C. §343-1. Plum's misguided analysis is

10 underscored by its reliance on preemption decisions involving different agencies, such as the

11 Department of Transportation regulating vehicle safety systems and the Federal Communications

12 Commission ("FCC") regulating cell phones. *Geier v. Am. Honda Motor Co.*, 529 U.S. 861

13 (2000); *Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003); *Farina v. Nokia Inc.*, 625 F.3d 97 (3d Cir.

14 2010); *Cohen v. Apple Inc.*, 497 F. Supp. 3d 769 (N.D. Cal. 2020) ("*Apple*"). In fact, as discussed

15 *supra*, the Supreme Court's subsequent opinion in *Wyeth v. Levine*, specifically distinguished

16 cases such as *Geier* as a situation where the agency had "conducted a *formal rulemaking* and

17 then adopted a plan to phase in a mix of passive restraint devices" and declared that it would pay

18 no deference to informal agency statements. *Wyeth*, 555 U.S. at 580-81 & n.14. No such formal

19 rule making has been adopted here. Further, Plum's reliance on *Farina* and *Apple* is misplaced.

20 Both decisions involved the FCC's authority where the relevant statute conferred *exclusive*

21 jurisdiction to the FCC. *Farina*, 625 F.3d at 105–06; *Apple*, 497 F. Supp. 3d at 774 ("At the

22 service's regulatory core is the Commission's *sole* jurisdiction over radio licensing pursuant to

---

[11] Plaintiffs bring claims under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*.; False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq*.; and Consumer Legal Remedies Act ("CLRA"), Cal. Civil Code § 1750, *et seq*.

1  Section 301 of the 1934 Act."). Plum also mischaracterizes Plaintiffs' central claim—that Plum

2  is liable as a matter of state statute or common law for *failure to disclose* the presence of heavy

3  metals and perchlorate. Plum cannot point to an explicit or implied preemption of all state law

4  claims concerning the disclosure of such toxins in baby foods and offers no statutory support for

5  such preemption while completely ignoring the preemption carve out under the NLEA. *See*

6  *Cortina*, 94 F. Supp. 3d at 1187.

7      Following the public's understandable outcry in response to the Report, the FDA is

8  *considering* a multi-year goal of reducing the levels of heavy metals in baby food. This does not

9  show the existence of formal rule making that might conflict with Plaintiffs' state law claims

10  under the UCL, FAL, and CLRA.[12] *Wyeth*, 555 U.S. at 577-81; *United States v. Mead Corp.*, 533

11  U.S. 218, 230 (2001). Nor has the FDA expressly or impliedly preempted Plaintiffs' claims based

12  on failures to disclose heavy metals or other toxins. Preemption does not apply here.

### D.    The Court Should Not Invoke Primary Jurisdiction

14      The Ninth Circuit identified the strict limitations for invoking primary jurisdiction:

> not every case that implicates the expertise of federal agencies warrants invocation
> of primary jurisdiction…rather, the doctrine is reserved for a limited set of
> circumstances that requires resolution of an issue of first impression, or of a
> particularly complicated issue that Congress has committed to a regulatory agency.

19  *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015). *See also Cohen*, 16 F.4th

20  at 1291 (finding the primary jurisdiction doctrine inapplicable in product label case); *Robles v.*

22  *Domino's Pizza, LLC*, 913 F.3d 898, 910 (9th Cir. 2019) (in rejecting the application of primary

23  jurisdiction: "[t]he purpose of the doctrine is not to 'secure expert advice' from an agency 'every

---

[12] Plum's citation to *Backus v. Nestlé USA, Inc.,* 167 F. Supp. 3d 1068, 1071-72 (N.D. Cal. 2016), is misplaced.  In *Backus*, the FDA published a final determination and declaratory order establishing that partially hydrogenated oil ("PHO") is a food additive and established a date for its removal from food, and Congress passed a statute affirmatively declaring that PHOs or foods containing PHOs shall not be deemed unsafe or adulterated until that deadline had passed.  Thus, there was both (a) a final agency determination and (b) express congressional approval of that agency determination. Neither factor, let alone both, is present here.

time a court is presented with an issue conceivably within the agency's ambit.'").

Liability here turns on whether reasonable consumers were misled based on information omitted from the Baby Foods' packaging. As Plum concedes, the FDA has been regularly testing baby foods for heavy metals for years, (Dkt. 103 at 10), thus there are no issues of first impression triggering primary jurisdiction. Nor would it be efficient to dismiss or stay this action given that the FDA may or may not take further action that would impact the marketing of baby foods containing heavy metals, which Plum acknowledges. (*Id.* at 11 (FDA "has previewed that it will determine based on review [of its previous heavy metal work] whether rulemaking is warranted")); *see Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015).

The relevant factors under the primary jurisdiction doctrine are: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Robles*, 913 F.3d at 910. "[T]he 'deciding factor' in determining whether the primary jurisdiction doctrine should apply is efficiency." *Reid*, 780 F.3d at 967. Plum fails to satisfy its burden of meeting these stringent factors.

Plum argues, relying primarily on the FDA's "Closer to Zero Initiative" (the "Action Plan"), that the primary jurisdiction factors are met because "regulation of heavy metals in food is an issue that Congress has placed within the jurisdiction of FDA because issues surrounding establishment of standards for food safety and labeling require uniformity in administration." (Dkt. 103 at 24.) However, this argument can be made as to all foods and food labels; it begins, rather than ends, the inquiry.

Plum correctly notes that the FDA is reviewing the amounts of heavy metals in baby foods. (*See id.* at 25.) But the Action Plan does not discuss regulations that pertain to disclosure

of these toxins on product packaging.[13] The Constituent Update Plum cites relates to the FDA's analysis of how to reduce the levels of toxins in baby foods and in setting acceptable action levels of toxins—not the packaging, as Plum infers. (*See id.*, *citing* Dkt. 103-1, Ex. C.) Since the FDA activity in progress does not specifically relate to baby food packaging, there is no basis to invoke primary jurisdiction on Plaintiffs' deceptive packaging state law claims. Nor can one determine when or *if* the Action Plan will result in any guidelines or whether those guidelines will be mandatory. (*See* Dkt. 103 at 10-11 (FDA indicated that "if deemed necessary by qualified experts reviewing relevant evidence, and after hearing from all stakeholders—it may adopt regulations, including action levels, regarding heavy metals in food").)[14]

This case does not involve "technical and policy considerations" or a particularly "complicated" issue. (Dkt. 103 at 23-24, 26.) It solely concerns deceptive packaging and whether reasonable consumers were misled by Plum's concealment of material facts under state law. And the Ninth Circuit has repeatedly held that courts are competent to weigh these questions, even if they arise in the context of parallel or potential regulatory activity that could be within the purview of the FDA's statutory mandate. *See Reid*, 780 F.3d at 967 (declining primary jurisdiction when "this case ultimately turns on [ ] whether a reasonable consumer would be

---

[13] *See generally* "Closer to Zero: Action Plan for Baby Foods," https://www.fda.gov/food/metals-and-your-food/closer-zero-action-plan-baby-foods (last accessed Dec. 1, 2021).

[14] No present governmental activity suggests that any future legislation or guidance will be retroactive. Importantly, there is a "presumption against retroactive legislation … deeply rooted in our jurisprudence." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994). Likewise, the Ninth Circuit has held that "a presumption against retroactive legislation' prevails...absent a 'clear indication from Congress that it intends' that new legislation apply retroactively." *Humetrix, Inc. v. Gemplus S.C.A.*, 268 F.3d 910, 922 (9th Cir. 2001). Thus, Plaintiffs' deceptive packaging claims are not subject to a primary jurisdiction argument. *See In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 497 F. Supp. 3d 552, 581 (N.D. Cal. 2020) (rejecting stay under primary jurisdiction as unwarranted and noting "[t]he FDA will determine on a *going-forward basis* whether, and if so how, JLI's product may be sold, with respect to nicotine delivery, labeling and warnings. It will not determine whether JLI's and the other defendants' past conduct [] --was illegal and caused plaintiffs' injury.").

misled by McNeil's marketing, which the district courts have reasonably concluded they are competent to address in similar cases").

This Court and others have routinely denied identical primary jurisdiction arguments when faced with similar consumer deception claims. *See*, *e.g.*, *Kosta v. Del Monte Corp.*, 2013 WL 2147413, at *10 (N.D. Cal. May 15, 2013) ("[t]he FDA's expertise…is not necessary to determine whether the labels are misleading [and t]he reasonable-consumer determination and other issues involved in Plaintiff's lawsuit are within the expertise of the courts to resolve"); *Capaci v. Sports Rsch. Corp.*, 445 F. Supp. 3d 607, 623 (C.D. Cal. 2020) (declining to invoke primary jurisdiction because "plaintiffs' claims concern defendant's allegedly misleading labeling with promises of 'weight management' and 'appetite control,' a determination this court is equipped to make"); *Souter v. Edgewell Pers. Care Co.*, 2021 WL 3892670, at *7 (S.D. Cal. June 7, 2021) (denying invocation of primary jurisdiction because whether "product labels are *misleading*, [] is not a technical area in which the FDA has greater technical experience than the courts"). Instead, "false advertising suits [] are squarely within the conventional experiences of judges and courts." *Prescott v. Bayer Healthcare LLC*, 2020 WL 4430958, at *4 (N.D. Cal. July 31, 2020).

Plum makes the conclusory statement that "[the] FDA is uniquely situated to draw on vast resources and scientific data to resolve the questions[.]" (Dkt. 103 at 26.) This assertion again ignores the reality that the claims at issue, *alleging consumer deception through packaging*, are routinely weighed by courts, *not action levels*. And the Ninth Circuit suggests simply utilizing expert witnesses to fill the gap for tackling any technical issues. *See Robles*, 913 F.3d at 911 (refusing to invoke primary jurisdiction and noting "if the court requires specialized or technical knowledge to understand assertions, the parties can submit expert testimony").

Finally, even if the Action Plan involved the claims at issue here—which it does not—

the FDA set forth a generalized and long period of review under the Action Plan, the last prong of which vaguely extends to "April 2024 and beyond."[15] In considering efficiency, the Ninth Circuit has made clear that courts must also consider whether it would needlessly delay resolution. *Reid*, 780 F.3d at 966. Courts within this Circuit have repeatedly held that primary jurisdiction should not be invoked where awaiting related uncertain agency action would result in undue delays. *See Abrantes v. Northland Grp., Inc.*, 2015 WL 1738255, at *2 (N.D. Cal. Apr. 13, 2015); *Prescott*, 2020 WL 4430958, at *3; *In re Juul Labs,* 497 F.Supp.3d at 581-582. This militates against dismissal or a stay.[16]

Plum's case citations are unavailing. For example in *Astiana*, 783 F.3d at 761, the FDA was actively determining "what chemical compounds may be advertised as natural on cosmetic product labels" and three other district courts had already invoked the FDA's primary jurisdiction on the question. These factors are not present here since the FDA is not determining packaging mandates with respect to heavy metals in baby food. *Cf. Kane v. Chobani, LLC*, 645 F. App'x. 593, 594 (9th Cir. 2016) (primary jurisdiction was appropriate for state law mislabeling claims based on use of specific claims that were made in alleged violation of FDA adopted regulations); *In re KIND LLC "Healthy & All Natural" Litig.*, 209 F. Supp. 3d 689, 693-97 (S.D.N.Y. 2016) (invoking primary jurisdiction because the FDA's definition of "natural" was already forthcoming).[17]

---

[15] *See generally* "Closer to Zero: Action Plan for Baby Foods," https://www.fda.gov/food/metals-and-your-food/closer-zero-action-plan-baby-foods#action-items-timeline (last accessed Dec. 1, 2021).

[16] Plum incorrectly contends that allowing courts to act before the FDA completes its work on the Action Plan will disrupt the regulatory process and destroy national uniformity. (Dkt. 103 at 27.) Courts routinely rule on deceptive packaging claims like those alleged here, even while the FDA is considering action under the Action Plan, and these rulings do not interfere with that process.

[17] Ultimately, the *Kind* court found that "[t]here [wa]s no telling when the FDA [would] complete its work on the term 'natural,' much less provide any public guidance on its progress," that it would not "sit idly by on an illusory assurance that something is likely to happen." *In re KIND LLC "Healthy & All Natural" Litig*, 287 F. Supp. 3d 457, 470-71 (S.D.N.Y. 2018). Since there

In *Rosillo v. Annie's Homegrown Inc.*, also relating to the use of "natural," the court opted to stay the case pending completion of the FDA's regulatory process, as noted above. 2017 WL 5256345, *2-3 (N.D. Cal. Oct. 17, 2017). In *Tran v. Sioux Honey Association, Cooperative*, a claim that "100% Pure" was deceptive due to the presence of glyphosate was stayed based on a concurrent Environmental Protection Agency review of the chemical and its health risks. 2017 WL 5587276, at *2 (C.D. Cal. Oct. 11, 2017). In *Backus v. General Mills*, primary jurisdiction was invoked in a class action where "the case ultimately turn[ed] on the safety of the ingredient, not whether a reasonable consumer would be misled." 122 F. Supp. 3d 909, 935 (N.D. Cal. 2015). And there, the challenged partially hydrogenated oils had previously been deemed by the FDA and food manufacturers as Generally Regarded As Safe ("GRAS"). *Id.* at 916-17. Here, the question is whether a reasonable consumer was misled by the omissions and the heavy metals or perchlorate at issue do not have such a designation. Similarly, in *Reese v. Odwalla, Inc.*, the claims turned on whether the classification of ingredients within a food product were "misleading" and prohibited under the FDCA, "not on whether the labels are misleading in a general legal sense." 30 F. Supp. 3d 935, 941-42 (N.D. Cal. 2014). This Court noted that "the issue of proper declaration of ingredients on food labels is one as to which Congress vested the FDA with comprehensive regulatory authority." *Id.* at 941. Since the determination of whether the label was misleading was governed entirely by compliance with federal regulations, invoking primary jurisdiction was proper. *Id.* at 941-42. In short, the plaintiffs were only seeking to enforce law that already existed at the time. Here, there is no challenge to any federally governed ingredient and no such federal laws exist regarding disclosure or non-disclosure of heavy metals or perchlorate in baby food.

---

was a significant interest in litigating the "all natural" and "non-GMO" claims together, it continued staying the "all natural" claims, but only until two weeks after the date the USDA was expected to define and promulgate the "non-GMO" standard. *See id.* at 470.

1

2

3

4

5

6

7

8

9

10

In *Clark v. Time Warner Cable,* the Ninth Circuit determined the FCC had primary jurisdiction over the question of whether a VoIP provider qualified as a "telecommunications carrier" under the Telecommunications Act of 1996. 523 F.3d. 1110, 1113-14 (9th Cir. 2008). Notably, Congress had specifically delegated responsibility to the FCC under 47 U.S.C. §258 and the FCC had already developed a detailed and comprehensive regulatory scheme in response to the statute's instructions. *See id.* at 1115. Similarly, in *Syntek Semiconductor Co. Ltd. v. Microchip Tech. Inc.*, the Court concluded that the doctrine of primary jurisdiction required it to stay the action so the parties could pursue administrative remedies, circumstances not present here. 307 F.3d 775, 781 (9th Cir. 2002). [18]

11

### E.  Deception is Sufficiently Pled

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Plum seeks dismissal of the "consumer deception claims" with no analysis of what "deception" means. (Dkt. 103 at 31.) Conduct is deceptive or misleading if it is "likely to deceive a reasonable consumer." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *People ex rel. Spitzer v. Gen. Elec. Co.*, 302 A.D.2d 314, 314 (N.Y. App. 2003); *Curtis v. Philip Morris Cos.*, 2004 WL 2776228, at *4 (Minn. Dist. Ct. Nov. 29, 2004); *Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 419 (E.D. Pa. 2016); *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 475 (7th Cir. 2020). "[T]he issue of whether a business practice is deceptive is a fact question that cannot properly be resolved on a motion to dismiss." *Madenlian v. Flax USA Inc.,* 2014 WL 7723578, at *2 (C.D. Cal. Mar. 31, 2014); *Zeiger II,* 526 F. Supp. 3d at 682; *Williams*, 552 F.3d at 938. It is only "in 'rare' cases, the Court can grant a motion to dismiss based upon its review of the disputed packaging." *Madenlian*, 2014 WL 7723578, at *2. This is not such a "rare" case.

26

27

28

---

[18] In contrast to this case, in *Colette v. CV Sciences, Inc.*, the "crux of this lawsuit [was] … that [d]efendant's [dietary supplements] are illegal under the [FDCA]." 2020 WL 2739861, at *1 (C.D. Cal. May 22, 2020).

### 1.    Ubiquity of Heavy Metals Does Not Absolve Plum

Plum's first argument—that Plaintiffs could not possibly be deceived—has already been rejected in this district. *See Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938, 964 (N.D. Cal. 2017) (allegedly "widely known" risk of overconsuming sugar did not render misrepresentation claims implausible). It is also belied by the FACC. Plaintiffs allege that they trusted Plum "to sell baby food that is healthy, nutritious, and free from harmful toxins, contaminants, and chemicals" and "expect the food they feed their infants and toddlers to be free from Heavy Metals or perchlorate." (¶2.) "Consumers lack the scientific knowledge necessary to determine whether the [Plum's] products do in fact contain Heavy Metals[.]" (¶3.) The studies and reports described in the FACC, which Plum uses to prematurely rebut allegations of deception, were outside the realm of Plaintiffs' and other reasonable consumers' knowledge when they purchased the Baby Foods. "[A]nd due to the Omissions by [Plum], Plaintiffs w[ere] unaware the Baby Foods contained (or had a material risk of containing) any level of Heavy Metals, perchlorate, and/or other undesirable toxins or contaminants, and would not have purchased the Baby Foods if that information had been fully disclosed." (¶¶30, 33, 36, 39, 42, 45, 48, 51, 53, 56.) These allegations are further supported by the Report's conclusion that "[m]anufacturers knowingly sell [baby food] to unsuspecting parents [] without any warning labeling whatsoever." (¶17.)

Plum also contends that "absent allegations that the levels contained in the challenged products exceed FDA levels or render the products adulterated, the mere presence of heavy metals is not material to reasonable consumers." (Dkt. 103 at 31.) But Plaintiffs describe at length that information about heavy metals is material to their purchasing decisions due to the health risks for infants and children. (¶¶95-112, 120-141.) The risks are so serious that "[n]o level of exposure to these [heavy] metals has been shown to be safe in vulnerable infants." (¶95.) As the

1   Report concluded, "[a]ccording to the FDA, 'even low levels of harmful metals from individual

2   food sources, can sometimes add up to a level of concern.' FDA cautions that infants and children

3   are at the greatest risk[.]" (Dkt 98-1 at 10-11.) Plum has long known about these risks but refused

4   to disclose that the Baby Foods contain heavy metals. Moreover, there is *no FDA level* to exceed.

5   (*Id.* at 11 ("Currently, there is no federal standard on, or warning to parents and caregivers about,

6   these toxins.").)

7        As in *Zeiger I*, which involved heavy metals in dog food, "Plaintiffs have provided an

8   actionable theory why the Products are unsafe and why the labels are misleading." 304 F. Supp.

9   at 852; *see also Watson v. Solid Gold Pet, LLC*, 2019 WL 3308766, at *5 (C.D. Cal. Feb. 22,

10  2019) (allegations "that the presence of Heavy Metals [] is a material fact for a reasonable

11  consumer when purchasing the products, that she would not have purchased the products or paid

12  a premium if she had known about the contaminants, and that she had no way of acquiring this

13  information on her own" were sufficient). This is all that Rule 12(b)(6) requires.

14       The cases Plum relies on have no application here. In *Moore v. Trader Joe's Co.*, the

15  Ninth Circuit affirmed dismissal of a *misrepresentation* (not a pure omission) claim: Manuka

16  honey was properly listed "as the sole ingredient" because "the product in fact d[id] '100%'

17  consist of honey whose chief floral source is Manuka." 4 F.4th 874, 886 (9th Cir. 2021). And in

18  *McGee*, the label at issue actually "disclosed the presence of artificial trans fat." 982 F.3d at 707.

19  No such disclosures occurred here—*non*-disclosure is the entire basis of this case.

20              **2.    Plaintiffs' Allegations of Contamination and Risk Are Sufficient**

21       Plum next relies on a series of decisions in cases alleging glyphosate and herbicide

22  contamination. (Dkt. 103 at 30-31.) They are easily distinguishable. In *Parks v. Ainsworth Pet*

23  *Nutrition, LLC*, the plaintiff "[did] not set forth in his complaint the amount of glyphosate in [the

24  dog food at issue] or whether that amount [wa]s harmful or innocuous." 377 F. Supp. 3d 241,

247 (S.D.N.Y. 2019). (*Contra* ¶119 (alleging arsenic levels "over 100 ppb"); ¶125 (alleging "cadmium levels as high as 24.3 ppb"); ¶135 (alleging "lead levels as high as 14 ppb"); ¶¶95-112, 120-141 (detailing the significant dangers posed by repeated ingestion).) Plaintiffs even allege that "'[n]o level of exposure to these [heavy] metals has been shown to be safe in vulnerable infants.'" (¶95.) Plaintiffs further emphasize that, "[b]ecause Heavy Metals accumulate in the body [] the risk they pose grows over time and can remain in one's body for years" and that the infants and toddlers who consume the Baby Foods are "particularly susceptible to the toxic effects of heavy metals." (¶¶99-100.) These and similar allegations put Plaintiffs' claims of risk and deception in a different category than those at issue in *Parks v. Ainsworth Pet Nutrition, LLC,* and other cases cited by Plum, where glyphosate levels were "significantly lower than the FDA's limit." 2020 WL 832863, at *2 (S.D.N.Y. Feb. 20, 2020), *appeal withdrawn*, 2020 WL 3422356 (2d Cir. June 2, 2020); *see also In re Gen. Mills Glyphosate Litig.*, 2017 WL 2983877, at *6 (D. Minn. July 12, 2017) (deception allegations regarding glyphosate in *non-organic products* were implausible because they "satisf[ied] the federal standard for *organic labelling* with regard to the small amount [] found [therein]"). Other cases cited by Plum again involve *misrepresentation* claims based on labels that were facially accurate. *See Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 184 (E.D.N.Y. 2018), *aff'd sub nom. Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x. 701, 705 (2d Cir. 2020) ("natural" misrepresentation is "only contained in the brand name"). Others were decided at summary judgment after allowing discovery on the reasonable consumer issue, *Tran v. Sioux Honey Ass'n, Coop.*, 471 F. Supp. 3d 1019, 1029 (C.D. Cal. 2020), or lacked allegations as to why a reasonable consumer was misled. *Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*, 2019 WL 2515919, at *3 (N.D. Cal. June 18, 2019).

*Herrington* (the only case with even remotely similar facts) is inapplicable for the reasons

stated above and is a decade-old outlier. In more recent cases involving heavy metals, courts have found that "[t]he fact that [p]laintiffs do not allege that [a product] contained unsafe levels of heavy metals [] does not, at least at this stage, undermine the claim that the advertising was deceptive." *Colangelo v. Champion Petfoods USA, Inc.*, 2020 WL 777462, at *5 (N.D.N.Y. Feb. 18, 2020); *see also Zarinebaf v. Champion Petfoods USA Inc.*, 2019 WL 3555383, at *6-7 (N.D. Ill. July 30, 2019) (same); *Leppert v. Champion Petfoods USA Inc.*, 2019 WL 216616, at *6 (N.D. Ill. Jan. 16, 2019) (finding that a reasonable consumer may "not purchase that cat food if she knew it contained any amount of heavy metals[.]"). And more recently, *Herrington*'s reasoning was implicitly rejected in *Beaty v. Ford Motor Co.*, which found, under Washington's consumer protection laws, that the materiality standard "does not require a risk to safety, much less an 'unreasonable' one." 854 F. App'x. 845, 849 (9th Cir. 2021). The purpose of consumer protection laws "would hardly be served if deception were not actionable unless the consumers' very lives were at stake." *Id*. Thus, "a reasonable juror could find that the risk of a spontaneously shattering [sunroof] is material to consumers," even if that risk was only 0.05 percent. *Id*. This is because the practical question there and here is whether that risk is material to a consumer's decision in paying a premium price. *Id*. at 849-50. Plaintiffs allege that the risks of heavy metals and perchlorate are material and the omission of those facts was deceptive. (¶175.) At this stage, those allegations must be accepted as true, and they are sufficient to state "consumer deception claims" under the laws of California, New York, Minnesota, Pennsylvania, and Illinois.[19]

## F.   Breach of Implied Warranty Is Properly Pled

According to Plum, a breach of implied warranty claim requires that the challenged product be defective or not fit for its ordinary purpose and, with respect to food, "[it] is fit for its

---

[19] Plum improperly attempts to resolve factual disputes with exhibits attached to its motion regarding the amount of heavy metals and whether those levels are safe. This should be rejected. *See Williams*, 552 F.3d at 937 (allegations must be accepted as true); *see also infra* Section G.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ordinary purpose if it is fit for consumption." (Dkt. 103 at 32.) This contention defies common sense and well-settled law.  A product is not merchantable or fit for its ordinary purpose if it is contaminated. *See In re 5-Hour ENERGY Mktg. and Sales Practices Litig.*, 2017 WL 385042, at *12 (C.D. Cal. Jan. 24, 2017); *Isip v. Mercedes-Benz USA, LLC,* 155 Cal. App. 4th 19, 27 (2007) (a car that "smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose" even if it provides the basic function). The FACC is rife with allegations that the Baby Foods include undisclosed contaminants that are unfit for infants and children to consume based on the health risks. (*See generally* Dkt. 98.) Thus, the FACC adequately alleges that Plum's foods are unfit for their ordinary use. *See Viggiano v. Hansen Nat. Corp.,* 944 F. Supp. 2d 877, 896 (C.D. Cal. 2013) (contamination is a basis for an implied warranty claim); *Pac. Botanicals, LLC v. Sego's Herb Farm, LLC,* 2016 WL 11187249, at *8 (D. Or. Dec. 8, 2016), *report and recommendation adopted*, 2017 WL 1536432 (D. Or. Apr. 26, 2017) ("a reasonable jury could find that ginseng's ordinary purposes is to be purchased for consumption … and that DDE contamination therefore rendered the product unfit for this purpose.")

### G.    Request for Judicial Notice and Response

Judicial notice is proper if an adjudicative fact "is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" and is "properly a subject of judicial notice." Fed. R. Evid. 201. *See Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012). According to that standard, the Court should take judicial notice of the Second Report,[20] but not Plum's Exhibits B-F and J (various articles and press releases from the FDA website) and I (FDA Guidance document), because Plum's documents "are not regulations, guidelines, or even studies that conclusively

---

[20] *See* Ex. 1. Plaintiffs do not oppose Plum's request for judicial notice of the existence of the statements in Exhibits A and H, as both are cited in the FACC, but not for their truth. *See Langer v. Interval Int'l, Inc.*, 2021 WL 5494192, *2 (N.D. Cal. July 2, 2021).

establish that arsenic, lead, [] are safe at any level." *Zeiger I*, 304 F. Supp. 3d at 845; *see, e.g.,* Ex. I at 4 ("FDA's guidance documents, including this guidance, do not establish legally enforceable responsibilities. Instead, guidances describe our current thinking on a topic and should be viewed only as recommendations"). Even if the Court were to take notice of the *existence* of Plum's documents, it should not take notice of their contents *for their truth*, because they consist of non-binding statements regarding highly contested factual issues. This is an improper use of judicial notice. *Zeiger I*, 304 F.3d at 845; *Hadley v. Kellogg Sales Co*., 243 F. Supp. 3d 1074, 1087-1088 (N.D. Cal. 2017); *Sciortino*, 108 F. Supp. 3d at 791 n.2.

Plum's contention that Exhibits G and K should also be subject to notice merely because they are cited in documents attached to or referenced in the FACC has no supporting authority and is both illogical and impractical. Plum, as a multi-million dollar business that manufactures baby foods, can be charged with knowledge of industry evidence that contamination with heavy metals is a serious threat to the health of infants and toddlers. However, parents, who are not in that business, did not know and are not chargeable with knowledge of its dangers. Accordingly, Plum's request should be denied as to Exhibits B-G and I-K.

## H. In the Alternative, Leave to Amend Should Be Granted

Leave to amend "shall be freely given when justice so requires" and should be granted "absent a showing of bad faith by the moving party or prejudice to the opposing party." Fed. R. Civ. P. 15(a); *Roberts v. Arizona Bd. of Regents*, 661 F.2d 796, 798 (9th Cir. 1981). Here, no undue delay, bad faith, or dilatory motive is present. The facts described in the FACC are well known to Plum, and Plum has known of this case since its initial filing in February 2021. Plaintiffs' only purpose in seeking to amend would be to cure any deficiencies.

## IV. CONCLUSION

Plaintiffs respectfully request that the Court deny the Motion in its entirety.

Dated:  December 1, 2021                    LOCKRIDGE GRINDAL NAUEN P.L.L.P.

By:  s/  Rebecca A. Peterson
Rebecca A. Peterson, #241858
Robert K. Shelquist, *Pro Hac Vice*
Krista K. Freier *Pro Hac Vice*
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile:  (612) 339-0981
E-mail: rapeterson@locklaw.com
           rkshelquist@locklaw.com
           kkfreier@locklaw.com

LITE DEPALMA GREENBERG & AFANADOR, LLC
Susana Cruz Hodge, *Pro Hac Vice*
Joseph J. DePalma, *Pro Hac Vice*
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
E-mail: scruzhodge@litedepalma.com
           jdepalma@litedepalma.com

**CO-LEAD INTERIM CLASS COUNSEL**