UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| IN RE PLUM BABY FOOD LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>All Actions | Case No. 21-cv-00913-YGR<br><br>Hon: Yvonne Gonzalez Rogers<br><br>**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY** |

Plaintiffs Sarah Brown, Josh Crawford, Jessica David, Autumn Ellison, Ludmila Gulkarov, Vanessa Mathiesen, Kelly McKeon, Tommy Nurre and Janine Torrence (collectively, "Plaintiffs") lodge this Notice of Supplemental Authority concerning a recent decision in *Susan Clark v. Eddie Bauer LLC; Eddie Bauer Parent, LLC*, Case No. 2:20-cv-01106-JCC, (Ninth Circuit Jan. 17, 2024) in support of their Opposition to Plum PBC's Motion for Summary Judgment [Docket 238], which is under submission. The decision is attached hereto as Exhibit 1.

Dated: January 18, 2024        **LITE DEPALMA GREENBERG & AFANADOR, LLC**

    */s/ Susana Cruz Hodge*
Susana Cruz Hodge, *Pro Hac Vice*
Joseph J. DePalma, *Pro Hac Vice*
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
E-mail: scruzhodge@litedepalma.com
       jdepalma@litedepalma.com

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
Rebecca A. Peterson, #241858
Robert K. Shelquist, *Pro Hac Vice*
Krista K. Freier *Pro Hac Vice*
Caitlin E. Keiper, *Pro Hac Vice*
Develyn J. Mistriotti, *Pro Hac Vice*
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: rapeterson@locklaw.com
　　　　rkshelquist@locklaw.com
　　　　kkfreier@locklaw.com
　　　　cekeiper@locklaw.com
　　　　djmistriotti@locklaw.com

**CO-LEAD INTERIM CLASS COUNSEL**

# EXHIBIT 1

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JAN 17 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SUSAN CLARK, for herself and/or on behalf of all others similarly situated,<br><br>              Plaintiff-Appellant,<br><br>   v.<br><br>EDDIE BAUER LLC; EDDIE BAUER PARENT, LLC,<br><br>              Defendants-Appellees. | No.    21-35334<br><br>D.C. No. 2:20-cv-01106-JCC<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Western District of Washington
John C. Coughenour, District Judge, Presiding

Argued and Submitted February 9, 2022
Submission Vacated April 14, 2022
Resubmitted January 17, 2024
Seattle, Washington

Before:  BYBEE, BEA, and CHRISTEN, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge BEA.

   Plaintiff Susan Clark appeals the district court's dismissal with prejudice of her putative class-action complaint against Defendants Eddie Bauer LLC and Eddie Bauer Parent, LLC (collectively, "Eddie Bauer").  Because the parties are familiar

---

   *   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

with the facts of this case, we do not recount them here. We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part, reverse in part, and remand.

Clark alleges that Eddie Bauer's signs, product tags, and receipts misled her into believing that she was purchasing clothing items for 50% of their normal sale prices, when, in reality, Eddie Bauer had never sold those items at their normal sale prices. Under Oregon's Unlawful Trade Practices Act ("UTPA"), Clark seeks punitive damages in addition to the greater of her actual or statutory damages, retrospective equitable relief in the form of disgorgement or restitution, and prospective equitable relief in the form of an injunction.

1. The district court dismissed Clark's claims for monetary damages on the basis that she could not plead "ascertainable loss of money or property[.]" Or. Rev. Stat. § 646.638(1). According to the district court, Clark could not state a claim under the UTPA because she did not allege a misrepresentation as to "a characteristic, quality, or feature" of the clothing items she purchased. Employing Oregon's certification procedure, *see* Or. R. App. P. 12.20, we asked the Oregon Supreme Court whether such a misrepresentation is necessary to state a claim under the UTPA. *See Clark v. Eddie Bauer LLC*, 30 F.4th 1151, 1157 (9th Cir. 2022). The Oregon Supreme Court accepted the certified question, *Clark v. Eddie Bauer LLC*, 510 P.3d 880 (Or. 2022), and answered as follows:

> [A]n "ascertainable loss" within the meaning of the UTPA can, under some circumstances, flow from a consumer's

2

> decision to purchase a product in reliance upon the retailer's misrepresentation as to price history or comparative prices. Thus, plaintiff's purchase price theory is a viable theory of ascertainable loss even in the absence of a showing that the seller misrepresented some characteristic or quality of the product sold.

*Clark v. Eddie Bauer LLC*, 532 P.3d 880, 893 (Or. 2023).

Because Clark's "purchase price theory" adequately alleges ascertainable loss under the UTPA,[1] we reverse the district court's dismissal of Clark's claims for monetary damages under the UTPA.[2]

---

[1] At its essence, the purchase price theory is that one person has been induced by another person's unlawful activities to pay money for something that the first person would not otherwise have bought. In plaintiff's case, what she wanted was items of clothing whose selling price had, at some earlier time, been what defendants' false price listings indicated. What she received, on the other hand, was merchandise that had never been offered for sale at those prices. Thus, whether or not those items ever *sold* at those higher price points, and whether or not defendants' alleged pricing scheme can be viewed as representing that the items previously had retail or market values equivalent to the prices shown on their product tags, plaintiff paid money to defendants for articles of clothing that she would not have bought had she known their true price history. The money that plaintiff is out as a result is her "loss."

*Clark*, 532 P.3d at 891 (emphasis in original).

[2] Clark also alleged ascertainable loss under what she describes as her "advantageous bargain" and "inflated consumer demand" theories. In our certification order, we invited the Oregon Supreme Court to address these theories, *Clark*, 30 F.4th at 1156–57, but it declined, *Clark*, 532 P.3d at 885 n.6, 887. It "express[ed] no view" on those theories. *Id.* at 887 n.10. We do not address the

3

2. The district court dismissed Clark's claims for equitable relief for failure to state a claim, *see* Fed. R. Civ. P. 12(b)(6), reasoning that she did not sufficiently plead that she lacked an adequate remedy at law, *see Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). We affirm in part and reverse in part.

a. We agree that Clark fails to state a claim for retrospective equitable relief, because her complaint contains no allegations as to why she lacks an adequate remedy at law for her disgorgement and restitution claims. Even assuming that the UTPA permits equitable relief without proof of inadequate legal remedies, "state law can neither broaden nor restrain a federal court's power to issue equitable relief." *Id.* at 841. In federal court, "a plain, adequate and complete remedy at law must be wanting" before the court may grant equitable relief. *Id.* at 840 (quoting *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 105 (1945)). We therefore affirm the district court's dismissal of Clark's disgorgement and restitution claims.

b. The district court's dismissal of Clark's injunctive relief claim, however, was error. First, we conclude that Clark has Article III standing to bring this claim based on our precedent in *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018). In *Davidson*, a class of consumers paid extra for wipes labeled

---

viability of Clark's other theories because she states that "[i]t should not matter for purposes of this appeal which of these theories fits which of Ms. Clark's forms of loss."

as "flushable" that were not, in fact, flushable. *Id.* at 961–62. We held that "misled consumers may properly allege a threat of imminent or actual harm sufficient to confer standing to seek injunctive relief" to prohibit the defendants from falsely advertising their product in the future. *Id*. at 961. Although the reasoning of *Davidson* has since been called into question by the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), the Supreme Court has not sufficiently undermined *Davidson* to meet the "clearly irreconcilable" standard that we articulated in *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc). Under *Miller*, "[i]t is not enough for there to be 'some tension' between the intervening higher authority and prior circuit precedent." *Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012) (quoting *United States v. Orm Hieng*, 679 F.3d 1131, 1140 (9th Cir. 2012)). Because *Davidson* "can be applied consistently" with *TransUnion*, we must apply *Davidson* here. *Fed. Trade Comm'n v. Consumer Def., LLC*, 926 F.3d 1208, 1213 (9th Cir. 2019).

In her complaint, Clark alleges that she "would shop at one of Eddie Bauer's Oregon Outlet Stores again if she could have confidence regarding the truth of Eddie Bauer's prices and the value of its products." Accordingly, she "will be harmed if, in the future, she is left to guess as to whether Eddie Bauer is providing a legitimate sale or not, and whether products are actually worth the amount that Eddie Bauer is representing." *Cf. Davidson*, 889 F.3d at 969–70 ("In some cases, the threat of future

5

harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to."). Our dissenting colleague argues that Clark's alleged harm is insufficient to establish Article III standing but does not distinguish Clark's alleged harm from the harm we found suffered in *Davidson*. Whatever the impact of the Supreme Court's decision in *TransUnion*, we are not persuaded that it has entirely undercut the reasoning and cases on which *Davidson* rested. *See Davidson*, 889 F.3d at 971 (citing *Wilderness Soc., Inc. v. Rey*, 622 F.3d 1251, 1258 (9th Cir. 2010) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374 (1982))).

Eddie Bauer asserts a "factual attack on jurisdiction," *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1028 (9th Cir. 2023), by submitting an affidavit attesting that it changed the above-described pricing representations seven months before Clark filed her complaint. At that time, Eddie Bauer began using "the term 'Comparable Value' to describe" its prices, which is "based on the price of competing products of similar quality and style in the market." Eddie Bauer represents that it "has no intention to return to the previous price tags."

Eddie Bauer's adoption of the new pricing policy does not change our analysis of Clark's standing. *Davidson* instructs us to look at the injury the plaintiff has suffered and may suffer in the future, not the method by which that injury is inflicted. *See Davidson*, 889 F.3d at 971 ("[W]here standing for prospective

6

injunctive relief is premised entirely on the threat of repeated injury," the claimant must show "a sufficient likelihood that she will again be wronged in a similar way." (internal quotations and citation omitted and alteration adopted)). By making claims about the value of competitors' products, Eddie Bauer is representing that its own products are being offered at a discount relative to products of similar quality. In any event, Eddie Bauer's new policy only changes a single component of what Clark alleges to be a broader false advertising scheme consisting of misleading signage, tags, and receipts. As a result, Clark will continue to face the same prospective injury of being unable to rely on "the validity of the information advertised [by Eddie Bauer] . . . despite [a] desire" to do so—the same injury evident in *Davidson*. *Id.*

Having concluded that Clark has standing, we turn now to the district court's finding that Clark has failed to state a claim for injunctive relief. The injunctive relief requested in Clark's complaint was to "enjoin Defendants from the unlawful conduct alleged herein," that is, to prevent Eddie Bauer from engaging in misleading pricing schemes in the *future*. Unlike a claim for disgorgement or restitution, injunctive relief does not seek "the same amount of money for the exact same harm" that Clark had suffered in the past. *Sonner*, 971 F.3d at 844. The district court thus erred in concluding that both "past and future harms . . . are financial and both can be cured by the monetary damages." *See, e.g.*, *Andino v. Apple, Inc.*, No. 2:20-cv-01628-JAM-AC, 2021 WL 1549667, at *5 (E.D. Cal. Apr. 20, 2021) ("Money

7

damages are an inadequate remedy for future harm, as they will not prevent Defendant from continuing the allegedly deceptive practice."). We therefore reverse the district court's dismissal of Clark's injunctive relief claim.

3.  Finally, the district court concluded that Clark's complaint is barred by the UTPA's one-year statute of limitations. *See* Or. Rev. Stat. § 646.638(6). Clark purchased the clothing items in March 2017 and April 2018, but did not file her complaint until July 2020. Although Clark alleges that she did not discover that she was defrauded until March 2020, the district court found that Clark failed to explain the circumstances associated with that discovery, which is a requirement for application of the discovery rule. The district court acknowledged that Clark could cure this defect through an amendment but reasoned that an amendment would be futile because Clark failed to plead ascertainable loss. Because we conclude that Clark did adequately plead ascertainable loss, we reverse the district court's denial of leave to amend.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**[3]

---

[3] The parties shall bear their own costs on remand.

FILED

JAN 17 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*Susan Clark v. Eddie Bauer, LLC*, No. 21-35334

BEA, Circuit Judge, concurring in part and dissenting in part:

I concur in Parts 1, 2.a, and 3 of the memorandum disposition. But in my view, Clark's claim for injunctive relief must be dismissed because she has not "identified a close historical or common-law analogue for [her] asserted injury," as is required to establish Article III standing and, in turn, to invoke the jurisdiction of the federal courts. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). In concluding that Clark has established Article III standing, the majority considers itself bound by our Circuit's prior decision in *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018). But *Davidson*'s reasoning was "fatally undercut by the Supreme Court" in *TransUnion* and is therefore no longer binding in this Circuit. *See United States v. Lindsey*, 634 F.3d 541, 550 (9th Cir. 2011); *see also Langere v. Verizon Wireless Servs., LLC*, 983 F.3d 1115, 1121 (9th Cir. 2020) ("While following our past decisions is important to preserve the stability of circuit law, that is secondary to following the Supreme Court."). Hence, I would dismiss Clark's claim for injunctive relief for lack of subject matter jurisdiction. I respectfully dissent.

1. Article III of the Constitution limits the judicial power to the resolution of "Cases" and "Controversies." U.S. Const. art. III. That limit on our jurisdiction reflects the principle that "[f]ederal courts do not possess a roving commission to publicly opine on every legal question." *TransUnion*, 594 U.S. at 423.

To establish a case or controversy, the plaintiff must establish the "irreducible constitutional minimum" of Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A plaintiff has standing only if he can show, among other elements, that he has suffered a "concrete harm." *TransUnion*, 594 U.S. at 417. And the Supreme Court has instructed that, to establish a concrete harm, the plaintiff must "identif[y] a close historical or common-law analogue for [his] asserted injury." *TransUnion*, 594 U.S. at 424; *id.* ("[C]ourts should assess whether the alleged injury . . . has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). We do not open the doors to the federal courts merely because a plaintiff is confused, distraught, upset, or the victim of a "microaggression." *See Pucillo v. Nat'l Credit Systems, Inc.*, 66 F.4th 634, 639 (7th Cir. 2023) ("If we were to recognize standing based solely on confusion or alarm, unmoored from concrete harm, there would be no limiting principle."). As the Supreme Court has put it, we cannot "loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *TransUnion*, 594 U.S. at 425.

2.  In my view, Clark lacks Article III standing to pursue injunctive relief because she has not alleged a concrete harm to pursue that form of relief. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 185 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought."); *TransUnion*,

2

594 U.S. at 435 (explaining that, to establish standing for injunctive relief, a plaintiff must show a risk of future harm that is "imminent and substantial"). Clark's alleged "injury"—that she is unable to rely on Eddie Bauer's future marketing representations, despite her desire to do so, because Eddie Bauer deceived her in the past—does not have a historical or common-law analogue. Clark is merely upset with Eddie Bauer. That does not give us the power to hear her suit. *See TransUnion*, 594 U.S. at 424.

The closest historical analogue to Clark's alleged injury is the tort of misrepresentation. But "[f]or centuries, misrepresentation torts have required a showing of justifiable reliance and actual damages." *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 998 (11th Cir. 2020); *see* Restatement (Second) of Torts, § 552. At common law, the justifiable reliance requirement "exclude[d] recovery if the [plaintiff] knows or suspects the truth." *Mayer v. Spanel Intern. Ltd.*, 51 F.3d 670, 676 (7th Cir. 1995). Thus, there is no justifiable reliance if the plaintiff "is on notice that the statement is not to be trusted." Dobbs Law of Torts, § 672. Indeed, "once the plaintiff believes the defendant to be dishonest," a plaintiff generally must investigate *before* transacting. *Id.* § 673. Here, Clark already believes Eddie Bauer's marketing representations are misleading. At common law, she could not establish justifiable reliance if she opted to transact with Eddie Bauer despite her suspicions.

3

Moreover, at common law, a claim for misrepresentation was available only if the plaintiff suffered pecuniary damages. *See Pasley v. Freeman* (1789) 100 Eng. Rep. 450, 453 (Buller, J.) ("Fraud without damage, or damage without fraud, gives no cause of action; but where these two concur, an action lies."); *Trichell*, 964 F.3d at 998 (referring to actual damages as a "bedrock element" of misrepresentation at common law); *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 825 (5th Cir. 2022) ("The nature of the harm recognized by fraudulent misrepresentation is a traditional, tangible harm: the 'pecuniary loss' the plaintiff sustains. And that means . . . intangible harm, if it's a harm at all—is necessarily different 'in kind' from her common-law analog."). Common law did not protect people like Clark, who merely *wished* to transact in the future, *before* any damages were suffered. *See* Restatement (Second) of Torts, § 525; Restatement (First) of Torts, § 549. Thus, the historical tort of misrepresentation does not make Clark's confusion a concrete harm.

Nor has Clark stated a claim that is similar to the tort of Intentional Infliction of Emotional Distress ("IIED"). At most, Clark claims she is disillusioned to learn that what she thought was her coup in scoring a bargain turned out to have evaporated; she can't boast to her friends of her sharp shopping. But to state a claim for IIED, Clark would need to allege that Eddie Bauer (1) engaged in "extreme and outrageous conduct," and (2) "intentionally or recklessly cause[d] severe emotional distress to [her]." Restatement (Second) of Torts § 46. Clark's allegations of

4

confusion and disillusionment do not amount to the severe emotional distress necessary to state an IIED claim. *See id.* cmt. j ("The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it."). Moreover, Clark did not allege that Eddie Bauer *intended* to cause her severe emotional distress.

In sum, Clark has not identified a historical or common-law analogue for her alleged injury. Under *TransUnion*, then, she has not established a concrete harm. *See* 594 U.S. at 424. Thus, she lacks standing to pursue injunctive relief. *See id.* at 417.

3. In holding that Clark has established a concrete harm, the majority does not even consider whether Clark satisfies the requirements of *TransUnion*. Instead, the majority opts to follow our Circuit's prior decision in *Davidson*, 889 F.3d at 971. The problem for the majority, however, is that *TransUnion*—which postdated *Davidson*—directly undercut *Davidson* and is "clearly irreconcilable" with its reasoning and holding. *See Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc). Regardless whether Clark's injury is distinguishable from that recognized in *Davidson*, our duty as inferior court is to apply the Supreme Court's commands whenever the Court has "undercut the theory or reasoning underlying the prior circuit precedent." *See id.* We should not simply follow our precedent reflexively.

In *Davidson*, we held that the plaintiff's "inability to rely on the validity of the information advertised on Kimberly-Clark's wipes despite her desire to

purchase" those wipes amounted to a "concrete . . . informational injur[y]" sufficient for Article III standing. 889 F.3d. at 971. We concluded that Davidson's injury was "concrete" because "[t]his court recognizes a history of lawsuits based on similar informational injuries." *Id.* (citing *Wilderness Soc., Inc. v. Rey*, 622 F.3d 1251, 1258 (9th Cir. 2010)). That "history of lawsuits" derived from *Rey*, which we described as "discussing the history of informational injury serving as an injury-in-fact sufficient for standing." *Id. Rey*, in turn, held "the notion of an informational injury serving as an injury-in-fact sufficient for standing can be traced" to *Federal Election Commission v. Akins*, 524 U.S. 11 (1998), *Pub. Citizen v. United States Dep't of Justice*, 491 U.S. 440 (1989), and *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982).¹ 622 F.3d at 1258. *Davidson*, in turn, rests exclusively on those same cases.

But three years later, the Supreme Court in *TransUnion* held *Akins* and *Public Citizen* do *not* establish a concrete harm in cases, like this one, involving the receipt of inaccurate information. There, the plaintiffs sued under the Fair Credit Reporting Act after they had received inaccurate credit reports. 594 U.S. at 439. The United

---

1   In *Akins*, the Court held that voters had suffered a concrete harm because they had been denied information that the Federal Election Campaign Act required to be made public. 524 U.S. at 24–25. In *Public Citizen*, the Court held that public interest organizations had suffered a concrete harm because they had been denied reports and notes from an advisory committee that the Federal Advisory Committee Act required to be made public. 491 U.S. at 449. In *Havens*, the Court held a Black "tester" had standing to sue for a violation of the Fair Housing Act because a real estate agent failed to disclose apartments to her because of her race. 455 U.S. at 373.

6

States, as *amicus curiae*, argued the plaintiffs suffered a concrete "informational injury" under *Akins* and *Public Citizen*. *Id.* at 441. The Court rejected that argument:

> The plaintiffs did not allege that they failed to receive any required information. They argued only that they received it in the wrong format. *Therefore, Akins and Public Citizen do not control here*. In addition, those cases involved denial of information subject to public-disclosure or sunshine laws that entitle all members of the public to certain information. *This case does not involve such a public-disclosure law*.
>
> Moreover, the plaintiffs have identified no "downstream consequences" from failing to receive the required information. They did not demonstrate, for example, that the alleged information deficit hindered their ability to correct erroneous information before it was later sent to third parties. An asserted informational injury that causes no adverse effects cannot satisfy Article III.

*Id.* at 441–42 (cleaned up) (emphases added).

Like the plaintiffs in *TransUnion*, neither Clark nor Davidson "allege[d] that they failed to receive any required information." *See id*. "Therefore, *Akins* and *Public Citizen* do not control here." *Id.* And like the Fair Credit Reporting Act in *TransUnion*, Oregon's Unfair Trade Practices Act "does not involve such a public-disclosure law" as at issue in *Akins* and *Public Citizen*. *See id*. Finally, as in *TransUnion*, neither Clark nor Davidson alleged the misrepresentations would cause them monetary harm or any other harm that has a historical or common-law analogue in the future. To the contrary, Clark alleged her *lack* of intent to shop at Eddie Bauer until she can trust its marketing representations. In other words, Clark alleged there

7

is *no* risk that she will "imminent[ly]" suffer any "downstream consequences"—such as money damages—that amount to a concrete harm. *See id.* at 435, 442. Under the express terms of *TransUnion*, then, *Akins* and *Public Citizen* "do not control," notwithstanding *Davidson*'s irreconcilable reasoning to the contrary. *See id.* at 441.

Nor does *Havens* save *Davidson*. The Court in *TransUnion* did not even suggest that *Havens* might support the plaintiffs' injuries, even though both cases involved the receipt of misleading information. Indeed, *Havens* involved the weighty interest in not being subjected to racial discrimination, a far cry from the receipt of an incorrect credit report, or, as here, an inability to rely on a retail store's purported bargains. If *Havens* supported an injury in more benign contexts, the Court in *TransUnion* would have reached a contrary conclusion or explained why *Havens* was inapposite. But it did not do so. In fact, the Court has, in other cases, clarified that racial discrimination alone can afford standing to "persons who are personally denied equal treatment by the challenged discriminatory conduct." *Allen v. Wright*, 468 U.S. 737, 755 (1984) (quoting *Heckler v. Mathews*, 465 U.S. 728, 739-40 (1984) ("[D]iscrimination itself, by perpetuating 'archaic and stereotypic notions' or by stigmatizing members of the disfavored group as 'innately inferior' and therefore as less worthy participants in the political community, can cause serious non-economic injuries to those persons who are personally denied equal treatment . . . .")).

8

Moreover, unlike the plaintiff in *Havens*, who was told no units were available, Clark's access to Eddie Bauer's goods was never impeded. *See* 455 U.S. at 368.

In sum, *Davidson*'s reasoning was "fatally undercut" by the Supreme Court in *TransUnion* and is, therefore, no longer binding. *See Lindsey*, 634 F.3d at 550. And under *TransUnion*, Clark lacks Article III standing because her grievance with Eddie Bauer lacks a historical or common-law analogue. Thus, I would dismiss Clark's claim for injunctive relief for lack of subject matter jurisdiction. I dissent.