**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **IN RE PLUM BABY FOOD LITIGATION**<br><br>This Document Relates To: ALL ACTIONS | CASE NO. 4:21-CV-00913-YGR<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 210, 233, 245 |

Nine plaintiffs, namely Sarah Brown, Josh Crawford, Jessica David, Autumn Ellison, Ludmila Gulkarov, Vanessa Mathiesen, Kelly McKeon, Tommy Nurre, and Janine Torrence, sue defendant Plum, PBC on behalf of a putative class of purchasers of baby food products sold under the "Plum Organics" brand.[1] Plaintiffs allege that they were deceived because defendant's labeling did not disclose that levels of certain heavy metals and perchlorate may exist in those products as a result of their ingredients. Defendant Plum, PBC brings the instant motion for summary judgment.

Fourteen claims remain in this action, eleven based in state statutes and three in common law. Thus, plaintiffs allege statutory violations of California Consumers Legal Remedies Act ("CLRA"), California Civil Code §§1750, *et seq.*, (Count 1); California False Advertising Law

---

[1] Defendant Plum, PBC notes that Plum, Inc. was converted into a public benefit corporation and was renamed Plum, PBC and thus Plum, Inc. no longer exists. (Dkt. No. 103 at 2 n.1.). Thus, the Court conditionally dismisses Plum, Inc. Further, in July 2022, Mayer Brown LLP and King & Spalding LLP withdrew as representing Plum, PBC and Campbell Soup Company. At the same time, Perkins Coie LLP was added to the case to represent only Plum, PBC only. At oral argument, both parties appeared surprised that Campbell Soup Co. had not been formally dismissed. Accordingly, the Court conditionally dismisses Campbell Soup Co. The parties are afforded five business days to challenge these dismissals.

("FAL"), California Business & Professions Code §§17500, *et seq.* (Count 2); California Unfair Competition Law ("UCL"), California Business & Professions Code §§17200, *et seq.* (Count 3); New York Deceptive Practices Act, General Business Law §§ 349–350 (Count 8 and Count 9); Minnesota Unlawful Trade Practices Act, Minn. Stat. § 325D.13, *et seq.* (Count 10); Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44, *et seq.* (Count 11); Minnesota False Statement in Advertising Act, Minn. Stat. § 325F.67, *et. seq.* (Count 12); Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.69, *et. seq.* (Count 13); Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. Ann. §§201-1, *et seq.* (Count 14); Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") 815 Ill. Comp. Stat. § 505/1, *et seq*. (Count 15).  The remaining three counts allege unjust enrichment (Count 5); fraudulent misrepresentation by omission (Count 6); and fraud by omission (Count 7).

For the reasons discussed below, the Court **GRANTS** defendant's motion for summary judgment.  The Court also **GRANTS IN PART AND DENIES IN PART** plaintiffs' motion to seal another party's material (Dkt. No. 233) and **GRANTS** defendant's motion to seal (Dkt No. 245).

## I.   BACKGROUND

Plaintiffs allege as follows:

Defendant's baby foods sold under the "Plum Organics Brand" ("Baby Food") have been shown to contain detectable levels of arsenic, cadmium, lead, mercury ("heavy metals") and/or perchlorate, all known to pose health risks to humans, and particularly to infants and children. (Dkt. No. 98 ¶¶ 5, 10 (First Amended Consolidated Complaint ("FACC")); Pls.' Statement of Undisputed Material Facts in Supp. of Pls.' Opp'n to Defs.' Mot. for Sum. J., Dkt. No. 238-1 at 10:1 ("PSF").)  Even when trace amounts are found in food, these heavy metals can alter the developing brain and erode a child's IQ.  (FACC ¶ 98).  Because heavy metals can bioaccumulate in the body, even regular consumption of small amounts can increase the risk of various health issues, including the risk of bladder, lung, and skin cancer; cognitive and reproductive problems; and type 2 diabetes.  (*Id.* ¶ 104.)

Defendant knew it was possible to control the levels of heavy metals in its Baby Foods. (PSF 10:2; Plaintiffs' Response to Defendant's Separate Statement of Undisputed Material Facts

in Supp. of Mot. for Sum. J., Dkt. No. 238-1 at 1:2 ("PRDF").)  Other baby food manufacturers have shown that it is possible to manufacture baby food without detectable levels of heavy metals or perchlorate.  (FACC ¶¶ 149–155; PRDF 1:2; 9:3.)  The U.S. Food and Drug Administration has stated that there are no safe levels of lead, and the Environmental Protection Agency, the World Health Organization, the Centers for Disease Control and Prevention, and the American Academy of Pediatrics agree.  (PRDF 2:3.)  Defendant never disclosed the presence or risk of heavy metals or perchlorate on any labels.  (PRDF 5:2; PSF 11:1.)

Plaintiffs brought this putative class action on February 5, 2021.  (Dkt. No. 1.)  Plaintiffs filed the FACC on September 3, 2021. (Dkt. No. 98).  On January 12, 2022, the Court denied the motion to dismiss except as to the breach of implied warranty claim.  (Dkt. No. 125.) On June 9, 2023, defendant Plum, PBC moved for summary judgement.  (Dkt. No. 210.)  Plaintiffs have not yet moved to certify a class action.

## II. PROCEDURAL OBJECTIONS

Plaintiffs raised certain procedural objections to the motion per the Court's Standing Order.  Plaintiffs first claim that defendant relies on nine documents not previously disclosed or produced in this action.  However, plaintiffs fail to provide any facts whatsoever as to how they were prejudiced by the non-disclosure of these nine publicly available articles.  The Court does not exclude these documents from consideration.

Plaintiffs next claim that defendant's pre-filing summary judgment letter did not include several arguments included in the motion.  Plaintiffs first point to defendant's arguments that the Illinois and Minnesota consumer protection claims fail because these states do not recognize pure omission claims, and that Pennsylvania consumer protection claim fails because state law requires that the "omitted information goes to some 'serious and life-threatening latent defect.'"  (Dkt. No. 238 at 11 ("Opp.").)  Although defendant should have mentioned these arguments in its pre-filing letter, the Court does not exclude these arguments from its consideration, especially because these arguments refer to basic elements of the claims that a plaintiff should expect to litigate.  Plaintiffs also cite defendant's argument that the common law claims rise and fall with the consumer protection claims.  While accurate, plaintiffs use this very point to argue that its common law

3

1  claims should survive. (Opp. at 21–22.) The Court does not exclude this argument from
2  consideration.
3        Third, plaintiffs claim that defendants did not raise a First Amendment defense in their
4  Answer. The issue is mooted because the Court does not reach the First Amendment arguments.

### III. ARTICLE III STANDING

As a threshold issue, defendant offers three reasons to claim plaintiffs lacks Article III standing, namely (i) lack of economic injury; (ii) lack of future risk of harm; and (iii) that the remedy sought intrudes on First Amendment protections. The Court addresses each in turn.

#### A. Economic Injury

First, defendant contends that plaintiffs lack Article III standing because they suffered no economic injury and adduced no evidence of some lesser-priced alternative baby foods that are "free" of heavy metals as required.

The Ninth Circuit has "consistently recognized that a plaintiff can satisfy the injury in fact requirement by showing that she paid more for a product than she otherwise would have due to a defendant's false representations about the product." *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020). Plaintiffs may establish a cognizable injury where they did not receive the full value of a purchase by alleging that they paid a "price premium" due to the defendant's deceptive conduct. *See Izquierdo v. Mondelez Int'l Inc.*, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016).

Here, plaintiffs testified that they would not have purchased or paid more for the products at issue if they knew about the presence or risk of heavy metals and perchlorate. (PRDF 2:1.) In other words, plaintiffs were injured by paying a "price premium" for defendant's products that they otherwise would not have paid. To demonstrate this price premium, plaintiffs provide the expert report of Steven Gaskin, supported by the expert report of Colin Weir. (Dkt. No. 234-8, Ex. 34 ¶¶ 14, 15, 60–63 (Gaskin Report); 235-4 ¶ 7 (Weir Report); *see also* PSF 2:1, 9:1; PRDF 2:1.) Gaskin conducted a conjoint analysis to determine the price impact of the alleged

4

omissions.[2] Weir's analysis evaluated the economic suitability of Gaskin's surveys. Such a conjoint price premium analysis can "reliably calculat[e] the value (or "premium") that consumers paid" for the product. *See Bailey v. Rite Aid Corp.*, 338 F.R.D. 390, 403–404 (N.D. Cal. 2021) (conjoint analysis proposed by Gaskin and Weir is "capable . . . of reliably calculating the value (or 'premium') that consumers paid" due to the representations at issue); *see also Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 567, 576 (N.D. Cal. 2020) (same). This is sufficient for standing purposes.[3]

Defendant's motion for summary judgment as to plaintiffs' lack of standing due to economic injury is **DENIED**.

### B.     Injunctive Relief

Second, defendant contends that plaintiffs lack Article III standing to seek the remedy of injunctive relief because all have admitted in deposition testimony that they would never buy defendant's Baby Food if it contained trace heavy metals and perchlorate, and thus there is no threatened future injury necessary to sustain that remedy. (Defendant's Separate Statement of Fact 8:1 ("DSF").) Plaintiffs do not dispute this fact. (PRDF 8:1.) Plaintiffs' admissions that they would never buy baby food if it contained detectable heavy metals or perchlorate precludes injunctive relief relating to re-labeling.[4]

Plaintiffs also seek to enjoin defendants from selling the Baby Foods until the levels of heavy metals and perchlorate are removed. (FACC at 89; *see also* PRDF 8:1 ("However,

---

[2] Specifically, Gaskin's analysis "determine[d] the relative market values of a product with and without a particular product feature or claim on the label or given the disclosure or non-disclosure of a product feature at the time and point of first purchase." (Gaskin Report ¶ 15); *see also id.* ¶ 29 ("The suggested price points in the surveys were chosen by researching the invoice pricing documents, Plum's and competitor websites, and retail websites that sell the products at issue.")

[3] Defendant's argument that plaintiffs must point to specific lesser-priced alternative baby foods that are "free" of heavy metals does not persuade. Defendant relies entirely on cases decided on a motion to dismiss, in which the Court would not have considered the conjoint analysis provided here.

[4] Accordingly, any arguments concerning the First Amendment as to re-labeling are rendered moot.

Plaintiffs would consider purchasing baby food products with non-detectable heavy metals.").) Supporting this request for injunctive relief, plaintiffs identify testimony from six of the nine plaintiffs who would apparently consider purchasing baby food products with non-detectable heavy metals. (Dkt. No. 238-3, Ex. 14 at 210:8–211:6 ("Brown Dep."); Ex. 15 at 316:17–317:7 ("Crawford Dep."); Ex. 19 at 108:1–12 ("David Dep."); Ex. 20 at 114:4–12, 137:14–22 ("Gulkarov Dep."); Ex. 21 at 116:2–9 ("Mathiesen Dep."); Ex. 22 at 140:23–141:11 ("McKeon Dep.").) Plaintiff McKeon testified that it is "possible" she would purchase foods labeled as having some risk of containing trace heavy metals. (McKeon Dep. at 140:23–141:1.) Plaintiff Crawford would only "consider" buying defendant's products. (Crawford Dep. at 316:19.) Plaintiffs David, Gulkarov, and Brown would only consider buying the product for hypothetical grandchildren. (David Dep. at 108:1–12; Gulkarov Dep. at 114:4–25; Brown Dep. at 210:8–23.)

Under Ninth Circuit authority, a "'some day' intention[ ]—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do[es] not support a finding of the 'actual or imminent' injury that" Article III requires. *Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018) (citing *Lujan v. Defenders of Wildlife* 504 U.S. 555, 564 (1992)). Nor does a statement that a plaintiff would "consider buying" products satisfy this standard. *Id.* at 591. Only plaintiff Mathiesen claims the requisite intent to purchase defendant's products in the future if they did not contain detectable levels of the chemicals at issue. (Mathisen Dep. at 116:2–9, 117:2–4) ("Ms. Mathiesen, do you have any intention to purchase Plum products in the future? A. I would like to, if there are certain standards that are met. Q. What are those standards? A. I would like there to be a more monitoring and testing, and I would like there to be a labeling, appropriate, appropriate labeling . . . I want it to read the standard words 'undetectable,' so that I may buy it.") Plaintiff Matheisen therefore retains Article III standing for injunctive relief.

Thus, defendant's motion for summary judgment as to lack of standing to seek an injunctive remedy is **GRANTED** as to plaintiffs Brown, Crawford, David, Ellison, Gulkarov, McKeon, Nurre, and Torrence and **DENIED** as to plaintiff Mathesien.

### IV. FAL, CLRA, AND UCL FRAUDULENT PRONG

Under the FAL, the CLRA, and the fraudulent prong of the UCL, conduct is considered deceptive or misleading if the conduct is "likely to deceive" a "reasonable consumer." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Because the same standard for fraudulent activity governs all three statutes, courts often analyze the three statutes together. *See, e.g.*, *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F.Supp.2d 942, 985 (S.D. Cal. 2014).

To plausibly allege a fraudulent omission, the omission must either (1) "be contrary to a representation actually made by the defendant," or (2) "an omission of a fact the defendant was obliged to disclose." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 865 (9th Cir. 2018) (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006)).

The Court must first determine whether defendant had a duty to disclose the risk of the presence of heavy metals or perchlorate in the Baby Food. A "defendant only has a duty to disclose when either (1) the defect at issue relates to an unreasonable safety hazard or (2) the defect is material, 'central to the product's function,' and the plaintiff alleges one of the four *LiMandri* factors." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1085 (N.D. Cal. 2022) (quoting *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1102 (N.D. Cal. 2021); *see also Hodsdon*, 891 F.3d at 864. California courts have interpreted the *LiMandri* factors as follows, namely when the defendant (1) is the plaintiff's fiduciary; (2) has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) actively conceals a material fact from the plaintiff; and (4) makes partial representations that are misleading because some other material fact has not been disclosed. *Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1033 (N.D. Cal. 2014) (citing *Collins v. eMachines, Inc.*, 202 Cal.App.4th 249, 255 (2011); *see also Kavehrad v. Vizio, Inc.*, 2023 WL 2558535, at *5 (C.D. Cal. Jan. 26, 2023); *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997)).[5]

---

[5] Plaintiffs cite several California state cases and a pair of federal district court cases decided after *Hodsdon* that have not analyzed whether a defect presents an unreasonable safety hazard or is central to the product's function. The Court is bound to follow the precedent set in

7

**A.      Unreasonably Unsafe Requirement**

"Where a plaintiff alleges a sufficiently close nexus between the claimed defect and the alleged safety issue, the injury risk need not have come to fruition." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1028 (9th Cir. 2017). However, the alleged "unreasonable safety hazard must describe more than merely 'conjectural and hypothetical' injuries." *Id.* at 1028 (quoting *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009)).

Here, plaintiff asserts that the risk of the presence of heavy metals and perchlorate in defendant's Baby Food created an unreasonable safety hazard. Plaintiffs provide evidence that the Baby Food has been shown to contain detectable levels of arsenic, cadmium, lead, mercury, and/or perchlorate, all known to pose health risks to humans, and particularly to infants and children. (PSF 12:22–23; FACC ¶¶ 97–99.) Plaintiffs provide some evidence that at least lead—one of the "heavy metals"—can be harmful in any amount. (PRDF 2:3.) Defendant does not effectively dispute these facts.[6]

However, plaintiffs do not establish that the amount of heavy metals and perchlorate in defendant's Baby Food poses an *unreasonable* safety hazard.[7] Without more evidence, the theory that regular consumption of defendant's Baby Food over a period of time may lead to potentially dangerous accumulations of these chemicals is simply too conjectural. Other courts have held similarly in cases involving similar allegations. *See Grausz v. Hershey Co.*, 2024 WL 312688, at

---

*Hodsdon*, and majority of district courts have applied the *Hodsdon* approach. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1086 (N.D. Cal. 2022); *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1176 (N.D. Cal. 2019); *Beyer v. Symantec Corp.*, 333 F. Supp. 3d 966, 979-80 (N.D. Cal. 2018); *Ahern v. Apple*, 411 F. Supp. 3d 541, 567 (N.D. Cal. 2019); *Rodriguez v. Mondelez Glob. LLC*, 2023 WL 8115773, at *10 (S.D. Cal. Nov. 22, 2023).

[6] Defendant claims the FDA has stated that the potential presence of trace heavy metals does not render baby foods unsafe, but the Court is not convinced that the evidence cited establishes this proposition. DSF 1:1; Dkt. 210-6 (FDA, *FDA Response to Questions About Levels of Toxic Elements in Baby Food, Following Congressional Report* (Feb. 16, 2021)).

[7] Although this fact is not dispositive, the Court notes that plaintiffs concede the Baby Food as purchased was safe. (Opp. at 16.) ("Plum is correct that this case does not allege that any specific lot or pouch of the Products was unsafe."); *see also* Dkt. No. 205 at 5:20-21 ("we do not allege that the Plum baby food as sold to our plaintiffs had levels that are unsafe").

8

\*5 (S.D. Cal. Jan. 25, 2024) (on motion to dismiss, holding that assertion that lead and cadmium are carcinogens, that "[t]here may be no safe level of exposure to a carcinogen," and that defendant's products contain some amount of these substances insufficient to plead an unreasonable safety hazard"); *Rodriguez*, 2023 WL 8115773, at \*10 (similar).  Moreover, plaintiffs also fail to cite any authority that the potential accumulation of a chemical can lead to an "unreasonably unsafe" condition.  Accordingly, plaintiffs fail to establish that defendant's product is unreasonably unsafe.

### B.  The *LiMandri* Factors, Centrality to Function, and Materiality

#### 1.  The *LiMandri* Factors

Plaintiffs fail to satisfy the *LiMandri* factors.  As to the first and fourth factors, plaintiffs conceded at oral argument that they do not allege a fiduciary relationship and maintain the action based only on omissions.

With respect to the second factor—exclusive knowledge that its products were at a high risk of containing heavy metals or percolate—the Court notes that since 2017, following a report from the Clean Label Project, defendant has disclosed on its own website that its products may contain heavy metals.  (Defendant's Separate Statement of Facts 5:2 ("DSF"); *see also* Dkt. No. 210-35 ("Our testing confirmed that the averaged results for heavy metals in all tested Plum products gave concentrations that are typical for those ingredients").)  Defendant downplays and expresses skepticism towards the Clean Label report in the web post, but this characterization does not negate the disclosure.  The record also establishes that the risk of the presence heavy metals and perchlorate in the food supply, including in ingredients used in defendant's products, has been covered by the media before this lawsuit was filed.[8]

---

[8] *See, e.g.*, DSF 5:2, 5:3; Dkt. Nos. 210-4 (Healthy Babies Bright Futures, *What's in My Baby's Food?* (Oct. 2019)) ("The lab detected [perchlorate] in 19 of 25 foods tests"); 210-10 ((FDA, Survey Data on Perchlorate in Food –2005-2006 and 2008-2012 Total Diet Study Results (May 2017)); 210-21 (S.F. Chronicle, *EPA to Regulate Harmful Chemical in Drinking Water* (Feb. 3, 2011)); 210-22 ((Richmond Times Dispatch, *EPA May Not Take Action on Perchlorate* (May 7, 2008) 210-23 (Forbes, *Arsenic Found in Organic Brands Nudges FDA to Regulate* (Feb. 28, 2012)); 210-24 (Consumer Reports, *Arsenic in Your Food* (Nov. 2012)); 210-25 ((NBC News, *Dr. Mehmet Oz Discusses Study About Arsenic in Baby Formula* (Feb. 16, 2012)); 210-29 ((ABC News, *Rocket Fuel Chemical Found in Food, Water Supply* (Apr. 28, 2017); 210-30 (L.A. Times, Officials Blast EPA on Perchlorate Standards (Mar. 16, 2006)); 210-32 (CNN, *95% of Tested*

1    Plaintiffs do not dispute this evidence, and only dispute whether information disclosing the

2    risk of heavy metals and perchlorate in defendant's products was "widely covered in the media" or

3    reasonably accessible to consumers. (PRDF 5:1; *see also* PSF 5:1.) The public availability of this

4    information undermines plaintiffs' arguments that their allegations are sufficient to support

5    defendant's exclusive knowledge and that plaintiffs had no reason to know of these facts.

6    *Kumandan v. Google LLC*, 2022 WL 103551, at *9 (N.D. Cal. Jan. 11, 2022). Indeed, plaintiffs'

7    own evidence provides that more than a third of survey respondents were aware of a congressional

8    report discussing "levels of arsenic, lead, cadmium, and mercury in baby foods." (Dkt. No. 238-3,

9    Ex. 14 ¶ 5.)[9]

10   As to the third factor, active concealment, the plaintiff must identify specific facts showing

11   that defendant was "concealing or covering up the matters complained of"—here, the risk of

12   heavy metals and perchlorate in defendant's products. *Herron v. Best Buy Co., Inc.*, 924 F. Supp.

13   2d 1161, 1176 (E.D. Cal. 2013). Even if defendant concealed the information as alleged, it did not

14   conceal "the matter of complained of": that its products contained high risk of containing heavy

15   metals or percolate. *See Kavehrad*, 2023 WL 2558535, at *5–6 (rejecting active concealment

16   theory where fact at issue disclosed on defendant's website). Here, while the specifics are under

17   seal, the plaintiffs do not so allege.

18   **2.    Central Function Requirement**

19   To satisfy the "central function" prong, plaintiffs must establish that the defect renders the

20   product "incapable of use by any consumer." *Hodsdon*,891 F.3d at 864. Here, plaintiffs contend

21   that whether the presence or risk of heavy metals and perchlorate impacts the intended purpose or

---

*Baby Foods in the US Contain Toxic Metals, Report Says* (Nov. 1, 2019)); 210-33 (USA Today, *These Baby Foods and Formulas Tested Positive for Arsenic, Lead and BPA in New Study* (Oct. 25, 2017); 210-34 ((Good Morning America, *Consumer Reports Finds 'Concerning' Levels of Heavy Metals in Some Baby Foods* (Aug. 10, 2018)). Defendant was also mentioned by name in 92 articles in response to an August 2018 Consumer Reports article disclosing facts related to heavy metals in baby food. (Dkt. No. 235-2, Ex. 49) (explaining that the story related to a Consumer Reports study had "been picked up by 800+ broadcast outlets").

[9] Plaintiffs argue that "some" of the documents upon which defendant relies require subscriptions to access. (Opp. 14.) Plaintiffs do not identify which documents require subscriptions.

10

"central function" of baby food is a disputed issue of fact. As an initial matter, this Court has already held that plaintiffs failed to allege in the FACC that Plum Products are "not fit for consumption, that is, the ordinary purpose for which the goods at issue are used." (Dkt. No. 125 at 2.) The evidence presented on this motion does not establish otherwise.

Plaintiffs first cite the testimony of their expert, Dr. Hannah Gardener, who opined that when "baby food contains these toxic compounds that have no nutritional or health purpose, it affects the physical make-up of the food and contradicts the intended purpose of the baby food." (PSF 10:9; Dkt No. 238-3, Ex. 24 ("Second Gardener Report").) Specifically, as Dr. Gardener explains, the presence of heavy metals and perchlorate in baby food

> degrade[s] the health impact and nutritional value of baby food because (1) heavy metals and perchlorate are toxic compounds with substantial and varied harmful effects on the health and development of babies and children, (2) heavy metals compete with and functionally interfere with essential nutrients in the body and thereby impact the need for the consumption of nutrients, degrading the value of that which is consumed, and (3) the nutrient profiles of foods have been shown to be impacted by the contamination of heavy metals[.]

(Second Gardener Report ¶ 11; *see also* PRDF 2:1-2, 3:1, 9:1; PSF 10:9.)

Despite this testimony, the Court finds that no reasonable jury could determine that the presence of heavy metals and perchlorate renders the product incapable of nourishment. Even if consumers find the presence of these trace contaminants to be of material concern, the Baby Food continues to function as food if it contains these contaminants. Indeed, Gardener testified that "I'm not saying this food isn't food or doesn't function as food or nobody is saying this food isn't food and doesn't function as food. It would be such a weird thing for FDA or anyone to say." (Dkt. No. 235-2, Ex. 50 at 271:20–24); *see Hodsdon*, 891 F.3d at 865 (in "pure omission case" involving chocolate bars, where there was no "product defect relating to the central function of the chocolate and no safety defect . . . Plaintiff's CLRA, UCL and FAL claims are foreclosed"); *In re Intel Corp. CPU Mktg., Sales Pracs. & Prod. Liab. Litig.*, 2023 WL 7211394, at *1 (9th Cir. Nov. 2, 2023) (processors did not stop operating as "the 'brains' of the computing device[s], performing

11

all necessary computations for each application" despite security vulnerabilities)).[10]

Defendant's motion for summary judgment as to the FAL, CLRA, and fraudulent prong of the UCL claim is **GRANTED**.

### V.     UNFAIR AND UNLAWFUL PRONGS OF THE UCL

As to the "unfair" prong, plaintiffs contend that even if the fraudulent and unlawful prongs of the UCL claim fail, the unfairness prong remains separately viable. Specifically, plaintiffs assert the "packaging and sale" of defendant's products is unfair because defendant was "obligated to disclose the presence of Heavy Metals." (FACC ¶ 247.) Generally, where conduct that comprises the UCL fraudulent or unlawful prongs is the same conduct as the unfair prong, "the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive." *Hadley v. Kellogg Sales Co.*, 243 F.Supp.3d 1074, 1104–05 (N.D. Cal. 2017). Here, the Court can discern no difference between the allegations informing the fraudulent or unlawful prongs and the unfair prong. As such, plaintiffs' claim under the unlawful prong fails because the predicate violations of the FAL and CLRA claims fail.

Separately, the claim also fails on the merits. An "unfair" prong claim must be proven under either (1) the "tethering test," which looks to whether the defendant's conduct violates some policy set forth in a statute or regulation, or (2) by establishing that the defendant's conduct is "substantially injurious, immoral, or unethical." *Hodsdon*, 891 F.3d at 866–67. As to the "tethering" test, plaintiffs point only to statutory claims this Court rejected. As to the "balancing" test, the Court finds that defendant's actions as alleged are not substantially injurious, immoral, or unethical. Defendant publicized the risk of heavy metals in its products on its website, and the media publicized the risks of heavy metals and perchlorate in the ingredients comprising baby food, in baby food generally, and in defendant's products specifically. Moreover, it is undisputed that use of a single Baby Food product from defendant is not unsafe. Selling the product without this warning on the label does not violate the "unfair prong."

---

[10] The parties do not analyze the materiality requirement specifically. Because plaintiffs already failed to establish the two of the three required elements in the second prong of the duty test, the Court need not reach materiality.

Defendant's motion for summary judgment as to the unfair and unlawful prongs of the UCL claim is **GRANTED**.[11]

## VI. NEW YORK DECEPTIVE PRACTICES ACT, N.Y. GEN. BUS. LAW §§ 349–350

Under Section 349 of the New York General Business Law (GBL), the plaintiff must show that: "(1) the defendant's conduct was consumer-oriented; (2) the defendant's act or practice was deceptive or misleading in a material way; and (3) the plaintiff suffered injury as a result of the deception." *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 171 N.E.3d 1192, 1197 (N.Y. 2021). Section 350 of the GBL "prohibits false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." New York courts generally merge analysis of Section 349 and Section 350 claims. *Housey v. Proctor & Gamble Co.*, 2022 WL 17844403, at *1 (2d Cir. Dec. 22, 2022) ("Section 350 of the GBL prohibits false advertising in the conduct of any business, trade or commerce, and is analyzed under the same reasonable consumer standard as Section 349.").

When evaluating whether an act was deceptive or misleading, New York courts apply an objective standard, asking whether the representation or omission is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611–12 (N.Y. 2000) (quoting *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995)). A "reasonable consumer" includes those "who, in making purchases, do not stop to analyze but are governed by appearances and general impressions." *Guggenheimer v. Ginzburg*, 372 N.E.2d 17, 19 (N.Y. 1977). "In the case of omissions in particular," the New York Court of Appeals has cautioned that Section 349 "surely does not require businesses to ascertain consumers' individual needs and guarantee that each consumer has all relevant information specific to its situation." *Oswego*, 647 N.E.2d at 745. Accordingly, a plaintiff bringing an omission-based claim must show that "the business alone possesses material information that is relevant to the consumer and fail[ed] to provide this

---

[11] The Court does not find the materials introduced by plaintiffs at Dkt. No. 254 concerning the UCL unfairness prong pertinent to the ruling and finds the motion moot.

13

information," or that plaintiffs could not "reasonably have obtained the relevant information they now claim the [defendant] failed to provide." *Id.*[12]

### A. Exclusive Knowledge Requirement

As to exclusive knowledge, this Court has already ruled that defendant did not maintain exclusive knowledge of the material risk that its products would contain heavy metals and perchlorate. Plaintiffs again dispute this evidence by pointing to certain facts defendants allegedly withheld. Although defendant may have maintained exclusive knowledge over these specific facts, the precise question presented is whether defendants had exclusive knowledge of the presence or risk of heavy metals and perchlorate in their Baby Food products. As noted, defendant disclosed this fact on its website, and the presence heavy metals and perchlorate in the food supply, including in ingredients used in defendant's products, has been the subject of media coverage for years prior to this lawsuit. Defendant did not maintain exclusive knowledge over the relevant facts at issue.

### B. Reasonable Accessibility Requirement

Plaintiffs contend that information about the risks at issue was not reasonably accessible. "Reasonably accessible" information is any information that a plaintiff can obtain through "ordinary diligence." *See Colangelo v. Champion Petfoods USA, Inc.*, 2022 WL 991518, at *27 (N.D.N.Y. Mar. 31, 2022), *aff'd sub nom. Paradowski v. Champion Petfoods USA, Inc.*, 2023 WL 3829559 (2d Cir. June 6, 2023). Again, the information about heavy metals has been easily accessible on defendant's website, and the record establishes that the risk of heavy metals and perchlorate in baby foods is publicly available. Plaintiffs' own evidence provides that more than a third of survey respondents were aware of a congressional report discussing levels of arsenic, lead, cadmium, and mercury in baby foods. (PRDF 5:1.) The Court finds that the information at issue

---

[12] The parties dispute whether New York law requires a plaintiff to prove both exclusive knowledge and reasonable obtainability. Relevant New York authority suggests that plaintiffs can satisfy either condition to prevail. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 647 N.E.2d 741, 745 (N.Y. 1995); *see also Paradowski v. Champion Petfoods USA, Inc.*, 2023 WL 3829559, at *2 (2d Cir. June 6, 2023).

was reasonably accessible.[13]

Defendant's motion for summary judgment as to the New York General Business Law §§ 349–350 claim is **GRANTED**.

### VII. ILLINOIS, MINNESOTA, AND PENNSYLVANIA CONSUMER CLAIMS

#### A. Violation of Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 Ill. Comp. Stat. § 505/1, *et seq*.

The ICFA prohibits the omission or concealment of material facts in the conduct of trade. *Chandler v. Zinus, Inc.*, 2022 WL 2104516, at *7 (S.D. Ill. June 10, 2022). However, under "the ICFA, an 'omission' is an omission from a communication, rather than a general failure to disclose." *Darne v. Ford Motor Co.*, 2017 WL 3836586, at *10 (N.D. Ill. Sept. 1, 2017) (citation omitted).

Here, plaintiffs fail to point to any statement regarding safety that conveys a material omission upon which they relied. Thus, they have no viable omission-based ICFA claim. *See Castillo v. Unilever United States, Inc.*, 2022 WL 17976163, at *4 (N.D. Ill. Dec. 28, 2022); *see Guajardo v. Skechers USA, Inc.*, 2021 WL 4302532, at *3 (C.D. Ill. Sept. 21, 2021) (dismissing an omission-based ICFA claim where the plaintiff "did not allege any direct statements that contain[ed] material omissions, only opportunities or locations where Skechers could have disclosed the alleged defect," such as "advertising, labeling, and packaging") (internal quotation marks omitted); *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 719–20 (N.D. Ill. 2020) (holding that the plaintiff did not state an omission-based ICFA claim where he alleged that the defendant failed to disclose dangers posed by its vehicles, but did "not identify any particular direct statements from [the] [d]efendant that contain[ed] material omissions"). Defendant's motion for summary judgment as to the ICFA is **GRANTED**.

---

[13] Plaintiffs' citation to *Willoughby v. Abbott Labs*, No. 22-cv-01322, 2023 WL 3585759, at *10 n.3 (May 22, 2023), which involved a motion to dismiss, is unavailing because here the Court may consider undisputed facts.

**B.     Violation of Minnesota (i) Unlawful Trade Practices Act Minn. Stat. § 325D.13, *et seq.*, § 325D.44, *et seq.*; (ii) False Statement in Advertising Act, Minn. Stat. § 325F.67, *et. seq.*; and (iii) Prevention of Consumer Fraud Act, § 325F.69, *et. seq***

Under each of the relevant Minnesota consumer protection statutes, an "omissions" theory is viable so long as the defendant has "special knowledge of material facts to which the other party does not have access." *Graphic Commc'ns Loc. 1B Health & Welfare Fund A v. CVS Caremark Corp.,* 850 N.W.2d 682, 695 (Minn. 2014).

As noted above, the Court finds defendant did not have special and exclusive knowledge of the material fact at issue: whether their products may contain trace amounts of heavy metals. *See Song v. Champion Petfoods USA, Inc.*, 2020 WL 7624861, at *11 (D. Minn. Dec. 22, 2020), *aff'd*, 27 F.4th 1339 (8th Cir. 2022) (dismissing claim involving trace heavy metals in food, explaining that the Minnesota Supreme Court has "only applied the special-knowledge theory in one case," in which "a bank that had actual knowledge that one of its depositors was irretrievably insolvent and thus engaging in fraud by entering into a contract with the plaintiff"). Defendant's motion for summary judgment as to the Minnesota Unlawful Trade Practices Act and Minnesota False Statement in Advertising Act is **GRANTED.**

**C.     Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. Ann. §§201-1 *et seq.* ("UTPCPL")**

UTPCPL omissions claims survive only "when the seller has superior knowledge of a material fact that is unavailable to the consumer," *Zwiercan v. Gen. Motors Corp.*, 2002 WL 31053838, at *3 (Pa. Com. Pl. Sept. 11, 2002), and where the omitted information concerns "serious and life threatening latent defects." *Zwiercan v. Gen. Motors Corp.*, 2003 WL 1848571, at *2 (Pa. Com. Pl. Mar. 18, 2003).

Again, for the reasons set forth above, and based upon the record presented, the Court has found that defendant did not have exclusive knowledge of the risk of trace heavy metals. Thus, the Court does not find that the risk of accumulation of trace heavy metals and perchlorate in defendant's Baby Foods presents an "unreasonable" safety risk or that such a risk presents a "serious or life threatening" danger. As such, the court **GRANTS** the motion for summary judgment as to the UTPCPL claim.

16

### VIII. COMMON LAW CLAIMS

When common law claims of fraud and unjust enrichment are based on the same conduct on related statutory claims, these claims rise and fall together. *See Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 643 (N.D. Cal. 2021) ("because [the plaintiff's UCL and CLRA claims] rest upon this unified theory, all of [the] claims must 'rise or fall together'") (quoting *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1089 (N.D. Cal. 2017)); *Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 904 (N.D. Cal. 2021) (unjust enrichment claim sustained because it "rises and falls" alongside the UCL, CLRA, and common law fraud claims, all of which survived). Because the UCL, CLRA, and FAL claims fail, so too do the common law claims. Defendant's motion for summary judgment as to the common law claims is **GRANTED**.

### IX. ADMINISTRATIVE MOTIONS TO SEAL

The parties seek to seal materials filed in connection with plaintiffs' summary judgment brief (Dkt. No. 233) and materials filed in connection with defendant's summary judgment reply brief (Dkt. No. 245). The parties seek to seal portions or the entirety of these documents on the ground that they contain sensitive and confidential information that could harm their business interests if made public.

As for plaintiffs' motion to seal another party's material (Dkt. No. 233), the Court has reviewed the parties' requests and grants all of them with the exception of Exhibits 33, 34, and 66 to the Declaration of Rebecca A. Peterson. Despite the dispositive nature of this motion, the parties have presented compelling reasons to keep these documents under seal and have mostly narrowly tailored the redactions. The Court also declines to seal Exhibits 26, 59, and 96 pursuant to the defendant's representation that these were mistakenly designated as confidential. (*See* Dkt. No. 241 ¶ 13.) As such, the Court **GRANTS IN PART AND DENIES IN PART** plaintiffs' motion to seal another party's material.

As for defendant's motion to seal (Dkt No. 245), the Court **GRANTS** the motion in full, as the defendant presented compelling reasons to keep these documents under seal and have mostly narrowly tailored the redactions.

## X. CONCLUSION

For the reasons stated above, the Court **GRANTS** summary judgment as to all remaining claims in this action. The parties shall provide the Court within five business days a proposed form of judgment, approved as to form.

The Court also **GRANTS IN PART AND DENIES IN PART** plaintiffs' motion to seal another party's material (Dkt. No. 233) and **GRANTS** defendant's motion to seal (Dkt No. 245). Within seven days of the issuance of this Order, in compliance with this Court's Standing Order, defendant shall file more narrowly tailored versions of Exhibits 33, 34, and 66 to the Declaration of Rebecca A. Peterson or file a public version of the documents.

This Order terminates Docket Nos. 210, 233, 245, and 254.

**IT IS SO ORDERED.**

Dated: March 28, 2024

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**